UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
STEPHEN ELLIOTT,                                                 :
                                                                 :     18 Civ. 5680
                                    Plaintiff,                   :
                                                                 :     COMPLAINT
            -against-                                            :
                                                                 :
MOIRA DONEGAN, and JANE DOES (1-30),                             :
                                                                 :
                                    Defendants.                  :
-----------------------------------------------------------------X

Plaintiff, Stephen Elliott ("Plaintiff"), by his attorneys Nesenoff & Miltenberg, LLP, as and for his Complaint (the "Complaint"), respectfully alleges as follows:

## THE NATURE OF THE ACTION

1. This action is brought by Plaintiff to recover, *inter alia*, damages caused by Defendants' libelous communication of knowingly false statements in a publicly accessible, shared Google spreadsheet circulated via electronic mail ("email") to the parties' professional colleagues, namely women in the media industry. Upon information and belief, Defendants conspired to create the Google Spreadsheet entitled "Shitty Media Men" (herein referred to as the List) and circulated the link to the List via email, without password protection, for the stated purpose of encouraging the female recipients to anonymously publish allegations of sexual misconduct by men. The wholly unsubstantiated allegations published in the List, particularly with regard to allegations about Plaintiff, contained numerous false statements alleging criminal sexual conduct on the part of Plaintiff.

2. Participants interested in contributing to the list, including the Defendants, published defamatory allegations without corroborating evidence or a means of assessing the credibility of

the claimants. The List contained false information and unsubstantiated allegations, including untrue statements alleging Plaintiff engaged in criminal sexual conduct, namely rape accusations, sexual harassment, coercion and unsolicited invitations to his apartment. The inflammatory false statements published in the List were abusive, vulgar, intentionally misleading as well as damning to the Plaintiff's reputation and good name. The List was sent to numerous members of the parties' shared profession, the media industry to intentionally harm Plaintiff's reputation and further cause harm to Plaintiff's career.

3. Plaintiff is a private citizen who is neither a politician nor a celebrity.

4. The Defendants' actions were malicious in nature, taken solely to damage Plaintiff's reputation and career.

## JURISDICTION AND VENUE

5. This Court has diversity and supplemental jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

6. This Court has personal jurisdiction over Defendants on the grounds that Defendant Moira Donegan, and some of the Jane Doe Defendants reside within the Eastern District of New York.

7. Venue for this action properly lies in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and Defendant Moira Donegan, along with at least some of the Jane Doe Defendants, reside in this judicial district.

## PARTIES

8. Plaintiff Stephen Elliott is a resident of New Orleans, Louisiana.

9. Defendant Moira Donegan (referred to herein as "Defendant Donegan") is a resident of Kings County, New York.

10. The true names and capacities, whether individual, corporate, or otherwise, of Defendants Jane Does 1-30 (collectively referred to herein as the "Jane Doe Defendants") are currently unknown to Plaintiff, who therefore sue said Jane Doe Defendants by such fictitious names.

11. Plaintiff will know, through initial discovery, the names, email addresses, pseudonyms and/or "Internet handles" used by Jane Doe Defendants to create the List, enter information into the List, circulate the List, and otherwise publish information in the List or publicize the List. Through discovery, Plaintiff can obtain the email address information, Google account, Internet Protocol ("IP") address assigned to the accounts used by the Jane Doe Defendants by the account holders' Internet Service Provider ("ISP"), email accounts and/or Google accounts, on the date and time at which the Posts were published and/or information was entered into the List. Plaintiff intends to subpoena the shared Google spreadsheet metadata for the List, email accounts, Google accounts and ISPs in order to learn the identity of the account holders for the email addresses and IP addresses.

12. Though an email address or IP address alone does not reveal the name or contact information of the account holder, it does reveal that person's full name, other identifying information and/or physical location. IP addresses are distributed to ISPs by public, nonprofit organizations called Regional Internet Registries. As the name implies, these registries assign blocks of IP addresses to ISPs by geographic region. In the United States, these blocks are assigned and tracked by the American Registry of Internet Numbers. Master tables correlating the IP addresses with local regions are maintained by these organizations in a publicly-available and

searchable format. An IP address' geographic location can be further narrowed by cross-referencing this information with secondary sources such as data contributed to commercial databases by ISPs. Plaintiff may utilize these techniques to uncover the geographic location of each IP address associated with the Defendants. Further, upon information and belief, Plaintiff intends to obtain the digital information, including but not limited to metadata, associated with the List from Google, which can include information regarding Jane Doe Defendants who created the list, information entered in the list, the account or email which accessed the List and otherwise participated in the creation, editing, publication, publicizing and viewing of the List as well as the time stamps for information entered, the various distinct versions of the list, and information about the protection on the List as well as the circulation of the list both before and after the List was circulated.

13. Plaintiff believes that information obtained in discovery will reveal the Jane Doe Defendants' true names, addresses and other identifying information and allow Plaintiff to amend this Complaint to state the same. Plaintiff further believes that the information obtained in discovery may lead to the identification of additional parties to be added to this action as defendants.

14. Upon information and belief, each of the Defendants named herein, including Defendant Donegan and the Jane Doe Defendants (collectively referred to herein as "Defendants"), performed, participated in, conspired to commit, or abetted the acts alleged herein and proximately caused the damages alleged, and are thus liable to Plaintiff for the damages and relief sought herein.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

15.     Plaintiff is an author living in New Orleans, Louisiana. He has published multiple books and articles expressing his sexual preferences. In these nonfiction works, of which Defendants are aware, Plaintiff openly describes his sexual preferences in detail so that it is clear he could not physically participate in the false, unsubstantiated allegations published about him in the List by Defendants.

16.     Defendant Donegan is a writer and activist who resides in Brooklyn, New York. She was a former of employee of *The New Republic* magazine. Defendant Donegan has a well-documented history of publicly publishing statements professing a hatred of men.

17.     On or about October 11, 2017, Defendants conspired to create the List, a publicly accessible, shared Google spreadsheet entitled "Shitty Media Men," for the stated purpose of encouraging women to anonymously publish allegations of sexual misconduct by men. Upon information and belief, Defendants created the List and circulated it to numerous women in the media industry via email and other electronic means. The List was not password-protected. It was accessible via a link which was circulated without discernment, but for the caveat that it should not be forwarded to men.

18.     The allegations were wholly unsubstantiated. Indeed, participants interested in contributing to the List, some of whom were Jane Doe Defendants, were encouraged to publish any and all defamatory allegations without evidence to corroborate the allegations or a means of assessing the credibility of the anonymous accusers.

19.     On or about October 11, 2017, Defendants published Plaintiff's full name in the List, along with the names of several other men connected to the media industry; Plaintiff's name was entry #13, along with an AFFILIATION of "Freelance writer/novelist." Defendants further

published the defamatory allegations of, "Rape accusations, sexual harassment"[sic] under the ALLEGED MISCONDUCT column heading. (Plaintiff's entry on the List hereinafter referred to as "Plaintiff's Entry")

20. On or about and between October 11, 2017, and October 12, 2017, Plaintiff's entry was amended by Defendants to read: "Rape accusations, sexual harassment [sic], coercion, unsolicited invitations to his apartment, a dude who snuck into Binders???" and Defendants published "Multiple women allege misconduct" in the NOTES column of the List. Further, Plaintiff's entry was moved to entry #12 on the list as other individuals' entries were removed by the Defendants.

21. Defendant Donegan, both herself and together with some of the Jane Doe Defendants, actively edited, removed, organized, contributed, highlighted, published, and added names to The List.

22. At the top of The List Defendant Donegan wrote, "Men accused of physical sexual violence by multiple women are highlighted in red." Defendant Donegan, both by herself and with some of the Jane Doe Defendants, outlined Plaintiff's entry on the List in red along with some of the other individuals named on the List.

23. Defendant Donegan, along with some of the Jane Doe Defendants, outlined the defendant's entry in red, with malice, to signify he was being accused of "physical sexual violence by multiple women" a statement Defendant Donegan, and at least some of the Jane Doe Defendants, knew or had reason to know was false.

24. On October 12, 2017, *Buzzfeed* published an article about the existence of the List. Articles referencing the List, in *The New York Times, New Yorker, Atlantic, and Harpers*, soon followed.

25. On or about and between October 11, 2017, and July 17, 2018, and many times following the creation of the list Defendant Donegan publicized the existence of the list both in traditional publications and on social media.

26. On or about and between October 11, 2017, and July 17, 2018, Defendant Donegan made public statements on social media stating "The problem is men," "I really hate men," "I like the witch hunt," and re-publishing statements assuming the guilt of all men accused on The List.

27. Since the List was created on or about October 11, 2017 it has been freely available to download from public sites including *Reddit* and *Wordpress*.

28. Plaintiff's book was released on or about November 7, 2017. Much of the planned publicity for the book was cancelled, including a finished interview for *The Paris Review* as well as an excerpt that was supposed to run in *Lithub*. Plaintiff was uninvited from multiple events including readings and a panel at the Los Angeles Book Festival.

29. Plaintiff's book sales, historically, are dependent on Plaintiff's ability to promote his written works at publicity events like interviews in various media outlets, excerpt publications, as well as public readings, panels and appearances. Plaintiff's book sales for his most recent book were below projections and significantly less than previous works.

30. In or about December 2017 Plaintiff was told by a producer that the producer could not forward his work to film or television production companies. A substantial portion of Plaintiff's income, historically, was generated from his written works being sold to film and television production companies for adaptation to film.

31. In or about December 2017 and thereafter, Plaintiff became extremely depressed as a direct result of the List, finding employers, colleagues, business associates, friends and family

members did not return his calls as they had in the past. He attributed this to the false allegations recently published in the List in which he was falsely accused of being a rapist.

32. Following continued publicity in multiple publications for the List Plaintiff was unfriended or blocked on social media by many friends, acquaintances, fans and readers. Plaintiff, historically, utilized social media to market his works and maintain relationships.

33. In or about January 2018 Defendant Donegan published an article in *New York Magazine's* online page "*The Cut*" taking credit for creating and disseminating the List. The article was entitled, "I Started the Media Men List My name is Moira Donegan."

34. In or about January 2018 Plaintiff's sister, a researcher living in Chicago, called to say she had heard the Plaintiff had been accused of rape.

35. In or about January 2018 Plaintiff enrolled in therapy while actively contemplating suicide.

36. In January 2018 Plaintiff wrote an essay about being on The List which was accepted and then, two weeks later, rejected by New York Magazine.

37. On February 2, 2018, the same essay written by Plaintiff was accepted and then rejected in the same day by the London Guardian.

38. Defendant Donegan has benefited substantially from publication of the List. In addition to favorable publicity, Defendant Donegan has been hired on contract at the *New Yorker* and was given a contract worth a minimum of six figures to write a book about the list for Scribner Books.

39. On September 25, 2018, Plaintiff published an essay about the experience of being falsely accused of rape. Despite the essay being widely circulated online, particularly in the literary

community, no one came forward to accuse the Plaintiff of rape, even though there were supposedly "multiple rape accusations."

40. Defendants' actions were malicious in nature and taken solely to damage Plaintiff's reputation and career. Defendants published the List, with reckless disregard for the truth of the allegations asserted therein, and circulated said List to numerous women in the media industry with the intention the List be forwarded in perpetuity.

41. Defendants knew the List contained false defamatory statements, including the entirety of Plaintiff's entry, but published the List to numerous women to intentionally injure, harass, defame, endanger, aggrieve and embarrass Plaintiff.

42. Defendants published the List, and Plaintiff's entry, with the intention to damage Plaintiff's reputation and good name, impugn Plaintiff's character to the parties' colleagues in the media industry and otherwise diminish Plaintiff's earning potential and career opportunities.

43. Plaintiff has suffered irreparable damage to his professional and personal reputation as the direct and proximate result of Defendants' defamatory statements and publication of the Letter.

44. Plaintiff has suffered economic damage to his career as a writer/producer/content creator including but not limited to diminished book sales, loss of income, loss of business opportunities, including but not limited to an inability to market and publicize various works, as well as diminished popularity, good will and interest of journalists, fans, friends, associates, customers and the public at large.

45. Plaintiff has endured severe emotional pain and suffering as the direct and proximate result of Defendants' defamatory statements, the Letter, and the public reaction to them.

46.     As the direct and proximate result of Defendant's defamatory publications, Plaintiff has required continued psychological therapy.

## AND AS FOR A FIRST CAUSE OF ACTION

### (Defamation of Character by Libel)

47.     Plaintiff repeats and realleges the foregoing paragraphs as if fully stated herein.

48.     Defendants knowingly published the aforementioned false statements about Plaintiff by maliciously circulating the defamatory List and publishing the false, unsubstantiated allegations, alleging Plaintiff engaged in criminal sexual conduct, namely rape accusations, sexual harassment, coercion and unsolicited invitations to his apartment, to numerous members of the parties' industry, the literary community and media industry at large.

49.     Defendants are aware the published statements are false because of Plaintiff's published sexual preferences, including his preferences as a submissive male in a BDSM context, which are commonly known in the parties' industry. Defendants also published the defamatory statements, in the List, with a reckless disregard for the truth of the allegations as Defendants published the information anonymously without proof, corroboration or a means of assessing credibility of the anonymous publishers.

50.     Defendant Donegan publicized the List and publicly admitted her hatred of men, in particular her distrust of and bias against "straight" men, as well as her enjoyment of "the witch hunt."

51.     Defendants published this defamatory information without privilege or authorization. Plaintiff did not know about the publication of the List initially.

52. Defendants published the false statements about Plaintiff, described herein, with malice as they knew the statements were false as pertaining to Plaintiff.

53. Defendants also published and circulated the List with a reckless disregard for the truth of the unsubstantiated allegations which were published anonymously.

54. Defendants' false publications achieved their desired effect of exposing Plaintiff to contempt, aversion and vitriol. Plaintiff's personal and professional reputations were damaged as the result of Defendants' defamatory statements.

55. Plaintiff suffered economic damages as the result of Defendants' defamatory statements including, but not limited to, diminished books sales, loss of employment opportunities and diminished ability to market and publicize his works or otherwise earn profit from his works.

56. Plaintiff suffered emotional pain and suffering as the result of Defendants' defamatory statements.

57. Plaintiff is entitled to *per se* damages because the defamatory statements made by Defendant were inherently harmful, in that they addressed sexual morality and professionalism.

58. Plaintiff is further entitled to Actual Damages, Compensatory Damages, and Punitive Damages for Defendants' malicious, defamatory conduct, as Plaintiff has been damaged in an amount to be determined at trial.

### AS AND FOR THE SECOND CAUSE OF ACTION
#### (Intentional Infliction of Emotional Distress)

59. Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

60. Based on the foregoing facts and circumstances, Defendants intentionally defamed Plaintiff and intentionally inflicted emotional harm by creating the List and publishing the unsubstantiated allegations about Plaintiff.

61. In publishing the List with the intent to inflict said emotional harm, Defendants were condoning publication of inflammatory, unsubstantiated allegations and permitting the publication of false information about plaintiff with actual knowledge of the falsity, and a deliberate indifference to and an apparent approval of the publication of the false allegations about Plaintiff, with the consequence that Plaintiff has been effectively blackballed, with a ruined reputation, and denied well-earned economic opportunities, thereby undermining and detracting from Plaintiff's well-being and livelihood.

62. The above actions and inactions by Defendants were so outrageous and utterly intolerable that they caused mental anguish and severe psychological and emotional distress to Plaintiff, as well as physical harm, financial loss, humiliation, loss of reputation and other damages.

63. As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of career opportunities, other economic injuries and other direct and consequential damages.

64. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

### AS AND FOR THE THIRD CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

65. Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

66. Based on the foregoing facts and circumstances, Defendants negligently defamed Plaintiff and negligently inflicted emotional harm by creating the List and publishing the unsubstantiated allegations about Plaintiff.

67. In publishing the List with a blatant disregard for the truth of the allegations and blatant disregard for the emotional harm caused, Defendants were condoning publication of inflammatory, unsubstantiated allegations and permitting the publication of false information about plaintiff with actual knowledge of the falsity, and a deliberate indifference to and an apparent approval of the publication of the false allegations about Plaintiff, Defendants knew or should have known their outrageous conduct would result in the consequence that Plaintiff has been effectively blackballed, with a ruined reputation, and been denied well-earned economic opportunities, thereby undermining and detracting from Plaintiff's well-being and livelihood.

68. The above actions and inactions by Defendants were so outrageous and utterly intolerable that they knew or should have known they would cause the mental anguish and severe psychological and emotional distress suffered by Plaintiff, as well as physical harm, financial loss, humiliation, loss of reputation and other damages.

69. As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of career opportunities, other economic injuries and other direct and consequential damages.

70. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Prays for the following relief:

i. This Court's FINDING that the information published by Defendants was false and defamatory;

ii. This Court's FINDING that Defendants published the defamatory statements with malice;

iii. This Court's ORDER that Defendants issue a written retraction to each and every person to whom they originally published the false and defamatory statements;

iv. On the first cause of action for defamation, a judgment awarding the Plaintiff damages in an amount to be determined at trial, but in no event less than $1,500,000.00, plus interest, attorney's fees, expenses, costs and disbursements, as described below:

v. This Court's AWARD of *per se* damages in an amount to be determined at trial, but in no event less than the amount of five hundred thousand dollars ($500,000.00);

vi. This Court's AWARD of Actual and Compensatory damages in an amount to be determined at trial, but in no event less than the amount of five hundred thousand dollars ($500,000.00);

vii. This Court's AWARD of Punitive Damages in an amount to be determined at trial, but in no event less than the amount of five hundred thousand dollars ($500,000.00);

viii. Attorneys' fees as against Defendants jointly and severally, in an amount to be determined at trial;

ix. On the second cause of action for intentional infliction of emotional distress, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of career and business opportunities, as well as loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

x. On the third cause of action for negligent infliction of emotional distress, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to

reputation, past and future economic losses, loss of career and business opportunities, as well as loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements; and

    xi.    Such other and further relief as the Court deems just and proper

Dated this __10th__ day of October, 2018

                                                Respectfully Submitted,

                                                By: _____
                                                Andrew T. Miltenberg, Esq.
                                                Stuart Bernstein, Esq.
                                                Nicholas Lewis, Esq.
                                                Nesenoff & Miltenberg, LLP
                                                363 7th Avenue, 5th Floor
                                                New York, New York 10001