# KAPLAN HECKER & FINK LLP

350 Fifth Avenue
Suite 7110
New York, NY 10118
(212) 763-0883
www.kaplanhecker.com

Direct Dial: (212) 763-0883
Direct Email: rkaplan@kaplanhecker.com

**By ECF**

January 11, 2019

The Honorable LaShann DeArcy Hall
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *Elliott v. Donegan et al*, 1:18-cv-05680-LDH-SJB

Dear Judge DeArcy Hall:

Pursuant to Rule III.A of Your Honor's Individual Practices, we write this letter on behalf of defendant Moira Donegan to request a pre-motion conference in connection with our intent to file a motion to dismiss under Rule 12(b)(6) and a motion to stay discovery pending a decision on our motion to dismiss. Mr. Elliott's counsel has informed us that he will not consent to a stay of discovery. We submit this letter to Your Honor (instead of Magistrate Judge Bulsara) because there is substantial overlap between the legal issues presented in the motion to stay and the motion to dismiss, for which a request for a pre-motion conference is required.

## Mr. Elliott's Claims Against Ms. Donegan Should Be Dismissed Under Rule 12(b)(6)

"To withstand a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Gershberg* v. *Bd. of Directors of Nostrand Gardens Coop. Inc.*, No. 8-Civ-1980, 2018 WL 4471634, at *1 (E.D.N.Y. Sept. 17, 2018) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

According to the Complaint, Ms. Donegan created an online spreadsheet entitled "Shitty Media Men" (the "List") to encourage women to report allegations of sexual misconduct. ¶ 1. On October 11, 2017, somebody added Mr. Elliott's name to the List. ¶ 19. Some combination of persons amended his entry to read, "Rape accusations, sexual harassment, coercion, unsolicited invitations to his apartment, a dude who snuck into Binders???" ¶ 20 ("Binders" is a Facebook group for female writers). Someone wrote, "Multiple women allege misconduct." *Id.* Someone highlighted his entry in red, to indicate that he had been accused of "physical sexual violence by multiple women." ¶ 23. Mr. Elliott alleges that the "entirety of [his] entry" was false. ¶ 19. He adds that everyone who contributed to the List knew that the claims about him were false, since his "preferences as a submissive male in a BDSM context" are "commonly known in the [media] industry." ¶ 49. He opines that Ms. Donegan hates men. ¶ 50.

Even accepting these allegations as true, Mr. Elliott's defamation claim is meritless. As a writer and producer who promotes his works at "publicity events," "interviews," and "panels"—and whose writing and sexual preferences are supposedly "commonly known"—Mr. Elliott qualifies as a public figure. ¶¶ 15, 29, 44, 49; *see James* v. *Gannett Co.*, 40 N.Y.2d 415, 422 (N.Y. 1976) (holding that anyone who "has taken an affirmative step to attract public attention" falls into the "necessarily broad" category of "public figure"). The First Amendment therefore requires him to allege plausibly that Ms. Donegan published any defamatory statements with "'actual malice'— that is, with knowledge that the statements were false or with reckless disregard as to their falsity." *Biro* v. *Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). At minimum, because this case involves speech regarding sexual assaults by powerful men in the media industry—a subject "within the sphere of legitimate public concern"—Mr. Elliott must allege that Ms. Donegan "acted in a grossly irresponsible manner." *Chapadeau* v. *Utica Observer-Dispatch*, 38 N.Y.2d 196, 199 (1975).

Mr. Elliott comes nowhere close to satisfying this requirement. To start, he does not allege what role Ms. Donegan played in publishing the relevant statements. In a textbook example of improper pleading, he asserts that various unspecified Defendants defamed him: maybe with Ms. Donegan's involvement, and maybe without it; maybe as part of a conspiracy among anonymous contributors, and maybe not. *Contra Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 556–57 (2007).

Things only get worse when it comes to pleading that the statements were published with actual malice—that is, with knowledge of falsity. *Contra Biro*, 807 F.3d at 544 (requiring that constitutional malice be pleaded with particularity). Mr. Elliott's principal allegation is that, because he is a well-known BDSM submissive, he "could not physically participate" in the alleged misconduct. ¶ 15. As a factual matter, this "too submissive to rape" defense is obviously absurd. Regardless, it does not plausibly follow that whoever published or edited Mr. Elliott's entry on the List (a) agreed that BDSM submissives cannot engage in rape; and (b) nonetheless decided to falsely accuse him. This allegation thus fails to support Mr. Elliott's burden under *Twombly* and *Biro*—particularly given the glaring absence of any allegation that Ms. Donegan knew *anything* about Mr. Elliott. Indeed, Mr. Elliott's only allegation about Ms. Donegan's state of mind is that she has "hatred of men." ¶ 50. But even if that were true, Mr. Elliott fails to allege why, if Ms. Donegan hates *all* men, she decided to publish a knowingly false accusation against *him*. It would make a mockery of the law to hold that any woman charged in a complaint with "hatred of men" will be presumed to have acted with actual malice in a defamation case like this one.[1]

Ultimately, Mr. Elliott offers no particularized allegations supporting the inference that Ms. Donegan (or anyone else) knowingly defamed him. This claim should therefore be dismissed, particularly given the importance of "resolving defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Biro* v. *Conde Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012).

Nor will Mr. Elliott's "extremely disfavored" emotional distress claims survive under Rule 12(b)(6). *Hogan* v. *J.P. Morgan Chase Bank*, No. 05-Civ-5342, 2008 WL 4185875, at *4 (E.D.N.Y. Sept. 4, 2008). The Complaint fails to allege that Ms. Donegan engaged in conduct

---

[1] Mr. Elliott also conjectures that malice might be inferred from the failure of Ms. Donegan—and all other Defendants—to verify the information published on the List. ¶ 49. Not so. "There is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter establishes reckless disregard in a defamation action." *Liberman* v. *Gelstein*, 80 N.Y.2d 429, 438 (N.Y. 1992).

directed at Mr. Elliott that was "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Howell* v. *New York Post Co.*, 612 N.E.2d 699, 703 (N.Y. 1993). Further, for the reasons given above, the Complaint fails to allege *intentional* infliction of harm, *see id.* at 702, and fails to allege the existence of a relationship or duty that could support liability on a negligence theory, *Johnson* v. *State of New York*, 334 N.E.2d 590, 592 (N.Y. 1975).

Not only do Mr. Elliott's claims fail on their own terms; they are also precluded by the Communications Decency Act, 47 U.S.C. § 230. *See Fed. Trade Comm'n* v. *LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016). Ms. Donegan is allegedly a provider and user of an "interactive computer service": the Google Docs spreadsheet. But she did not provide any content in that spreadsheet; the closest Mr. Elliott comes to suggesting otherwise is alleging that Ms. Donegan outlined his entry in red "along with" others. ¶ 23. (The Complaint does not explain how multiple people allegedly highlighted his entry in red—a discrete action that only a single person could perform.) This allegation, even if true, does not overcome Ms. Donegan's CDA immunity. *See Ascentive, LLC* v. *Opinion Corp.*, 842 F. Supp. 2d 450, 476 (E.D.N.Y. 2011).

### The Court Should Stay Discovery Pending a Ruling on Our Motion to Dismiss

In deciding whether to stay discovery, courts primarily consider "1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; 2) the breadth of discovery and the burden of responding to it; and 3) the risk of unfair prejudice to the party opposing the stay." *Forsher* v. *J.M. Smucker Co.*, No. 15-Civ-7180, 2016 WL 5678567, at *1 (E.D.N.Y. Sept. 30, 2016). For the reasons given above, the first factor cuts strongly in favor of a stay.

Turning to the second factor, permitting immediate discovery will substantially burden Ms. Donegan and the Does, eviscerating their right to anonymous speech while chilling protected expression by other victims of sexual assault. *See* Michelle Kaminsky, *"Shitty Media Men" Defamation Lawsuit Is a Danger to Both Free Speech and the #MeToo Movement*, FORBES (Oct. 22, 2018); Aaron Mackey, *Lawsuit Seeking to Unmask Contributors to "Shitty Media Men" List Would Violate Anonymous Speakers' First Amendment Rights*, EFF (Oct. 16, 2018). That is no accident: Mr. Elliott's lawyer has publicly gloated that his wide-ranging discovery strategy might turn this into a "500-person RICO case." Bari Weiss, *What Do You Do When You Are Anonymously Accused of Rape?*, THE NEW YORK TIMES (Oct. 13, 2018). To safeguard free speech and equal protection principles, this Court should reject Mr. Elliott's efforts to use legal process against women who have disclosed wrongdoing to protect other women. *See* Bruce Johnson, *Worried About Getting Sued for Reporting Sexual Abuse?*, ACLU (Jan. 22, 2018).

A stay is especially appropriate in this case because efforts to unmask the Does—or to engage in other discovery—would raise difficult legal issues and spark expensive, time-consuming litigation in multiple jurisdictions. *See Arista Records, LLC* v. *Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010); Eriq Gardner, *Google to Fight Subpoena Demands Over "Shitty Media Men" Spreadsheet*, HOLLYWOOD REPORTER (Oct. 12, 2018). Many of these court battles would involve weighty questions about the constitutional right to anonymous speech, the merits of Mr. Elliott's defamation claims against Ms. Donegan and the Does, how to structure appropriation limitations on discovery, and whether the high standard for unmasking is satisfied. The unusual litigation and judicial costs associated with such litigation would be avoided if the case were dismissed under

Rule 12(b)(6). *See Chesney* v. *Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 116 (E.D.N.Y. 2006).

Finally, staying discovery until this Court decides our motion to dismiss will not cause unfair prejudice to Mr. Elliott. *See, e.g.*, *Borislow* v. *Canaccord Genuity Grp. Inc.*, No. 14-Civ-80134, 2014 WL 12580035, at *1 (S.D. Fla. June 24, 2014). And to the extent Mr. Elliott identifies any potential burdens of a stay, they are decisively outweighed by the extraordinary weakness of his allegations—and by the profound societal and constitutional harms of authorizing immediate, wide-ranging discovery in these sensitive circumstances. *See Weyrich* v. *New Republic, Inc.*, 235 F.3d 617, 628 (D.C. Cir. 2001) ("[T]rial courts are understandably wary of allowing unnecessary discovery where First Amendment values might be threatened.").

Accordingly, Ms. Donegan respectfully requests that the Court stay discovery pending a ruling on her motion to dismiss and that it schedule a pre-motion conference.

Respectfully submitted,

Roberta A. Kaplan