**NESENOFF & MILTENBERG** LLP

ATTORNEYS AT LAW

nmllplaw.com

| | | |
|---|---|---|
| Ira S. Nesenoff | Barbara H. Trapasso | Philip A. Byler |
| Andrew T. Miltenberg | Ariya M. Waxman | *Senior Litigation Counsel* |
| | Tara J. Davis | Megan S. Goddard |
| Stuart Bernstein | Diana R. Warshow | *Counsel* |
| | Gabrielle M. Vinci | Rebecca C. Nunberg |
| | Kara L. Gorycki | *Counsel* |
| | Cindy A. Singh | Jeffrey S. Berkowitz |
| | Nicholas E. Lewis | *Counsel* |
| | Adrienne D. Levy | Marybeth Sydor |
| | | *Title IX Consultant* |

January 18, 2019

**VIA ECF**
The Honorable LaShann DeArcy Hall
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: <u>Elliott v. Donegan et al, l:18-cv-05680 (LDH) (SJB)</u>

Dear Judge DeArcy Hall:

We represent Plaintiff, Stephen Elliott ("Elliott" or "Plaintiff") in the above-referenced matter and respectfully submit this letter, pursuant to Your Honor's Individual Practice Rule III.A, in opposition to Defendant Moira Donegan's ("Donegan") January 11, 2019 request for a pre-motion conference to file a motion to dismiss under Rule 12(b)(6) and motion to stay discovery.[1]

Plaintiff's complaint centers on Defendants' malicious publication of defamatory statements of criminal sexual conduct by Plaintiff in a publicly accessible Google spreadsheet entitled "Shitty Media Men," (the "List") on or about October 11, 2017. Donegan has publicly come forward as the creator of the List. *See* Moira Donegan, *I Started the Media Men List My name is Moira Donegan*, TheCUT.com (Jan. 10, 2018), *available at* https://www.thecut.com/2018/01/moira-donegan-i-started-the-media-men-list.html. Donegan has publicly stated she created the List for the express purpose of inducing, collecting, and disseminating unverified, unchecked, anonymous rumors of sexual misconduct, including criminal sexual conduct, within Donegan and Plaintiff's shared professional community. *Ibid.* To that end, Donegan created column headings for the List including name of the accused and "ALLEGED MISCONDUCT." (Cmplt. ¶ 19). She also included instructions for posting anonymously. Of crucial importance, Donegan also created and implemented a system for designating certain men on the list, including Plaintiff, as being accused of "physical sexual

---

[1] As an initial matter, Donegan's filing of a discovery motion with Your Honor was improper and in violation of the practice rules of this Court. Well before Donegan's January 11 filing, Plaintiff's counsel had been in touch with Defense counsel with respect to Plaintiff's intent to file a motion for expedited discovery, per the meet-and-confer requirement. Knowing that Plaintiff's discovery motion was forthcoming, Donegan filed an improper motion to stay discovery with Your Honor, in violation of Magistrate Judge Bulsara's Individual Rules III.B, IV.B. Plaintiff intends to properly file his expedited discovery motion with Magistrate Judge Bulsara, in accordance with Individual Rule IV.B, on Wednesday January 23, 2019, absent a direction otherwise by this Court.

1

| NEW YORK | 363 Seventh Avenue | Fifth Floor | New York, NY 10001 | T: 212.736.4500 | F: 212.736.2260 |
| BOSTON | 101 Federal Street | 19th Floor | Boston, MA 02110 | T: 617.209.2188 | |



violence by multiple women," and edited and contributed content accordingly. (Cmplt. ¶¶ 21-23).

Contrary to Donegan's assertions, the Complaint does not merely allege that "someone" created and edited Plaintiff's entry on the List and designated him as being accused of sexual assault by multiple women. (ECF Doc. 17, at 1). The Complaint alleges that Defendants—including Donegan—did so (Cmplt. ¶¶ 21, 48). These actions constitute per se defamatory allegations of criminality. *See Friends of Falun Gong v. Pac. Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 284 (E.D.N.Y. 2003) *aff'd* 109 Fed. Appx. 442 (2d Cir. 2004). As the Complaint alleges, Donegan knowingly acted in concert with the Does, rendering Defendants jointly and severally liable. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010). As such, the Complaint does "allege what role Donegan played in publishing the relevant statements," (ECF Doc. 17, at 2), and is sufficiently specific to state a claim for defamation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Donegan furthered both her own and the Doe Defendants' tortious acts, namely defamation, by organizing, encouraging, creating, publishing, circulating and promoting the defamatory statements to others (Cmplt. ¶¶ 17-23). *See also Cianci v. New Times Pub. Co.*, 639 F.2d 54 (2nd Cir 1980) (defendant who reports allegation is responsible for truth of the allegation itself, not simple fact that it was alleged).

Donegan argues that Plaintiff fails to allege actual malice.[2] This argument is frivolous. The Complaint repeatedly alleges Donegan acted "maliciously," "with malice." (Cmplt. ¶¶ 4, 23, 40, 48, 52, 58) and/or with "reckless disregard" for the truth (Cmplt. ¶¶ 40, 49, 53). *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). In addition, Plaintiff alleges sufficient facts to demonstrate actual malice. The Complaint alleges Donegan deliberately sought and published anonymous, unsubstantiated "rumors" of criminal sexual conduct and subsequently publicly stated "I hate men" and "I like the witch hunt." (Cmplt. ¶¶ 17, 18, 26, 50). Actual malice may be shown where the defamatory statements are "based wholly on an unverified, anonymous source," *Church of Scientology Int'l. v. Behar*, 238 F.3d 168, 174 (2d Cir.2001) (citing *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)), or "'the words or acts of the defendant . . . indicate that the defendant knew that his or her statement was or may well have been false." *Biro*, 936 F. Supp. 2d at 278 (citation omitted). The phrase "witch hunt" expressly indicates knowledge of <u>false</u> accusations.

Donegan's attempt to deny malice by distorting the thrust of the Complaint is unavailing. Donegan refers to Plaintiff's description of his known sexual preferences as a "too timid to rape <u>defense</u>" (ECF Doc. 17, at 2) (emphasis added). Plaintiff's preferences are not a "defense" to anything. Rather, the Complaint mentions Plaintiff's known proclivities as an indicator that Defendants would or should have had reason to question the false and unsubstantiated rumors before publicly promoting, disseminating, and highlighting them. (Cmplt. ¶¶ 15, 49).

Donegan's fallback position is that she is entitled to immunity based on Section 230 of the Communications Decency Act, 47 U.S.C. § 230. (ECF Doc. 17, at 2). She is not. The CDA provides immunity to providers and users of an "interactive computer service" from liability for content provided by others under certain circumstances, but not if Defendant herself is a "provider" of the information or content in question. The CDA defines "information content

---

[2] Plaintiff reserves his right to contest the status of public figure and/or matter of public concern.



provider" as "any person or entity that is responsible, in whole <u>or in part</u>, for the creation <u>or development</u> of information." 47 U.S.C. § 230(f)(3) (emphasis added). It is well established that a defendant is not protected under the CDA "if [she] contributes materially" to the allegedly unlawful content. *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008) (Roommates.com not protected under the CDA where it created drop-down menus enabling users to select discriminatory housing preferences). In the instant case, Donegan created the spreadsheet including headings for name of the accused and "MISCONDUCT", specifically creating a forum for other contributors, including the Doe Defendants, to create unlawful, defamatory content, constituting a material contribution to the illegal content pursuant to *Fair Housing*. *See also MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, No. 02-CV-2727-G, 2004 WL 833595, at *10 (N.D. Tex. Apr. 19, 2004) ("the CDA does not distinguish between acts of creating or developing the contents of reports, on the one hand, and acts of creating or developing the titles or headings of those reports, on the other. The titles and headings are clearly part of the web page content.").

In addition, Donegan forwarded the List to the Doe Defendants and actively encouraged them to add content. (Cmplt. ¶ 17). By expressly soliciting anonymous, unvetted rumors of sexual misconduct, Donegan was responsible for the "development" of the defamatory content. *See Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 475 (E.D.N.Y. 2011) ("[A]ctively encouraging and instructing a consumer to gather specific detailed information is an activity that goes substantially beyond the traditional publisher's editorial role." (quoting *MCW*, 2004 WL 833595, at *10)). "[D]efendants cannot disclaim responsibility for disparaging material that they actively solicit." *MCW*, 2004 WL 833595, at *10. Finally, Donegan created the special designation of "accus[ations] of physical sexual violence by multiple women," (Cmplt. ¶¶ 21-23), and her act of creating and implementing that designation—and so designating Plaintiff—constitutes added content and commentary to the allegations. *See Doe v. City of New York*, 583 F. Supp. 2d 444, 449 (S.D.N.Y. 2008) (no immunity where "host" added commentary to third-party content).

Given Donegan's expressed, intentional, and deliberate purpose in soliciting and disseminating unvetted, unproven rumors of criminal sexual misconduct and distributing them within the parties' shared professional community, her behavior undoubtedly constitutes outrageous and extreme behavior sufficient to ground a claim of intentional infliction of emotional distress. Plaintiff need not prove specific intent to cause distress, only that the acts were intentional. *See Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142 (1985). Donegan admits they were.

Donegan's motion to stay is improper and unsupported. First, as Defense counsel is aware, Plaintiff is seeking early discovery for a court-ordered Google subpoena to unmask the Doe Defendants, which imposes no burden or expense on Donegan. Second, as described above, Plaintiff's claims are meritorious. Third, the discovery sought is specific and narrowly circumscribed. Fourth, Plaintiff believes Google will comply with a valid subpoena, and any expedited discovery motion practice will not impact Donegan's frivolous Motion to Dismiss. Thus, Donegan fails to sustain her burden of "good cause" for a stay. *See Hachette Distribution, Inc. v. Hudson Cty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991).



For the foregoing reasons, Plaintiff respectfully requests the Court deny Donegan's motion.

                            **Very truly yours,**
                            **NESENOFF & MILTENBERG, LLP**

                        By: */s/ Andrew T. Miltenberg*
                              **Andrew Miltenberg, Esq.**
                              **Stuart Bernstein, Esq.**
                              **Nicholas Lewis, Esq.**

**CC: All Counsel (Via ECF)**