# KAPLAN HECKER & FINK LLP

Direct Dial: 212-763-0884
Direct Email: rkaplan@kaplanhecker.com

350 Fifth Avenue, Suite 7110
New York, NY 10118
(212) 763-0883
www.kaplanhecker.com

April 8, 2019

**By CM/ECF**

The Honorable LaShann DeArcy Hall
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  *Elliott v. Donegan, et al.*, No. 1:18-civ-05680-LDH-SJB

Dear Judge DeArcy Hall:

    Pursuant to Rule III.A of Your Honor's Individual Practices, we write this letter on behalf of defendant Moira Donegan to request a pre-motion conference in connection with our intent to file a motion to dismiss plaintiff Stephen Elliott's Amended Complaint under Rule 12(b)(6). As Your Honor is aware, we previously filed a similar letter dated January 11, 2019 in connection with Plaintiff's initial complaint; a pre-motion conference was held on March 1, 2019.

    During that conference, Your Honor observed that Mr. Elliott (who concedes he is a public figure) had failed to adequately allege facts demonstrating "a reasonable inference of malice." The Amended Complaint now pleads the following alternative (and inconsistent) theories of malice with respect to Ms. Donegan: (1) that Ms. Donegan, of her own accord, personally fabricated the entry concerning Mr. Elliott; or (2) that Ms. Donegan merely wrote the entry concerning Mr. Elliott at the behest of someone she knew *and* had substantial reason to doubt; or (3) that someone else unknown to her added the entry, which Ms. Donegan published merely by creating and circulating the List. However, consistent with Your Honor's prior explanations on March 1, these allegations do not suffice to cure the pleading deficiencies identified by this Court with respect to malice.

    A.  <u>Theory #1: Ms. Donegan personally fabricated Mr. Elliott's entry of her own accord</u>

    Mr. Elliott's first theory pivots on the allegation—supported only by "information and belief"—that Ms. Donegan "was personally the individual who posted the false and defamatory entries about Plaintiff on the List, and therefore acted with actual knowledge of falsity." ¶ 51. That is, Mr. Elliott alleges that Ms. Donegan acted alone in fabricating a rape accusation against him and placing it on the List. But a plaintiff cannot plead "conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007). He must plead particularized factual allegations that make his claim plausible. For "information and belief" allegations, this requires "factual information that makes the inference of culpability plausible." *Arista Records, LLC* v. *Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). In other words, "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018).

    Here, the only "information" alleged is that nobody else has claimed to be the source of the entry regarding Mr. Elliott. This comes nowhere close to supporting an allegation that Ms. Donegan randomly decided to manufacture—out of whole cloth—false rape accusations about Mr. Elliott, a total stranger. There are no allegations, for example, that Ms. Donegan knew (or even

knew of) Mr. Elliott; that she had any reason to falsify rape allegations against him; or that she had any connection to him whatsoever. The only allegations with respect to malice in the Amended Complaint under this theory are Plaintiff's generalized allegations that Ms. Donegan "hate[s] men" (*see* ¶ 68), but this Court has already rejected those allegations as supporting a plausible inference of actual malice with regard to Mr. Elliott. Moreover, an article from *The Cut*[1]—incorporated by reference—refutes any suggestion of malice. There, Ms. Donegan explains that she created the List as "a first attempt at solving what has seemed like an intractable problem: how women can protect ourselves from sexual harassment and assault." She adds that she had no expectation that the List would receive a broad circulation. In light of this on-point statement, it would be unreasonable to infer that Ms. Donegan maliciously fabricated a rape allegation against Mr. Elliott, a writer across the country who she had never met and didn't even know. The fact that Mr. Elliott does not know who was the source of this information does not entitle him to assert, without any plausible basis, that Ms. Donegan was the source of the accusation and that she made it with actual malice: "[W]hile a plaintiff is entitled to plead on information and belief, [Mr. Elliott] points to no 'information' that will render these statements any more than a speculative claim." *Williams* v. *Calderoni*, No. 11 Civ. 3020, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012).[2]

B. Theory #2: Ms. Donegan wrote Mr. Elliott's entry as a scribe for someone she knew

Mr. Elliott's second theory is that, while Ms. Donegan didn't herself "fabricate" the statements concerning him, she instead "wrote . . . them with reckless disregard for their truth or falsity." ¶ 54. Here, Mr. Elliott claims that Ms. Donegan did not fabricate the entry, but knowingly served as a scribe for the true author (whose identity and connection to her are not alleged).

This theory is squarely precluded by the Communications Decency Act, 47 U.S.C. § 230. As the Court noted at the March 1 conference, "if, indeed, the only allegation in the complaint is that she created the list, created the headers, even the development of the coding system as alleged without authorship . . . the CDA would likely provide immunity to Ms. Donegan." Tr. 4-5. On that basis, if Ms. Donegan's only involvement was as a scribe, the CDA applies with equal force because she did not "assist[] in the development of what made the content unlawful." *Fed. Trade Comm'n* v. *LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016); *see also Jones* v. *Dirty World Entm't Recordings LLC*, 755 F.3d 398, 410 (6th Cir. 2014); *Ascentive, LLC* v. *Opinion Corp.*, 842 F. Supp. 2d 450, 474 (E.D.N.Y. 2011) ("[O]ne is responsible for the 'development' of information when he engages in an act beyond the normal functions of a publisher . . . that changes the meaning and purpose of the content."). Simply transcribing another's statement does not make Ms. Donegan a content developer under the CDA. Defamation liability is thus preempted.

In any event, Mr. Elliott has failed to plead that Ms. Donegan ever had "a high degree of awareness of [the] probable falsity," as is required to show actual malice. *Harte-Hanks Communications, Inc.* v. *Connaughton*, 491 U.S. 657, 688 (1989). Here, too, Mr. Elliott relies *exclusively* on Ms. Donegan's article in *The Cut*. *See* ¶ 56. But this Court rejected that reliance at the March 1 conference, and for good reason; this article indicates the opposite. In it, Ms. Donegan explains that she created the List as a small, closely held "place for women to share their stories of harassment and assault without being needlessly discredited or judged." Ex. A at 5. After many such stories appeared, Ms. Donegan was struck by "the sense that the capacity for honesty, long suppressed, had finally been unleashed." *Id*. at 7. Of course, she "took seriously" the possibility of

---

[1] Moira Donegan, *I Started the Media Men List: My Name is Moira Donegan*, THE CUT (Jan. 10, 2018) (**Ex. A**).
[2] Mr. Elliott identifies no new information to support his new allegation about Ms. Donegan writing the entry.

some "false accusations," and thus added disclaimers. *Id*. But Ms. Donegan clearly emphasized that "all available information suggests that false allegations are rare." *Id*. Simply stated, Ms. Donegan believed that women contributing to the List would nearly always tell the truth.

It is not reasonable to infer from this article that Ms. Donegan strongly believed that any particular entry on the List was probably false. And there is surely no basis whatsoever to infer that Ms. Donegan believed the entry regarding Mr. Elliott, in particular, was probably false. After all, the Amended Complaint does not allege that Ms. Donegan knew anything about Mr. Elliott. Accordingly, this theory of actual malice must be rejected. *See Spiteri* v. *Russo*, No. 12 Civ. 2780, 2013 WL 4806960, at *8 (E.D.N.Y. Sept. 7, 2013) (holding that dismissal is proper where materials incorporated into a complaint by reference defeat the plaintiff's allegations).

    C. <u>Theory #3: Ms. Donegan recirculated allegations from unknown sources</u>

Mr. Elliott's third theory is that Ms. Donegan should be held liable for publishing—not authoring or writing—statements about Mr. Elliott "wholly on the basis of unverified information from individuals whose identities she did not know." ¶ 60. This theory fails as well. To start, it is also precluded by the CDA as previously interpreted by the Court: if Ms. Donegan did not develop or author the alleged defamatory content, she can't be held liable for publishing it.

More fundamentally, however, the Amended Complaint still fails to meet the basic requirement of alleging actual malice. Plaintiff contends that malice may be inferred when a defendant "publishes defamatory statements 'based wholly on information from unverified, anonymous sources.'" ¶ 60 (misquoting *Biro* v. *Conde Nast*, 807 F.3d 541, 545-56 (2d Cir. 2015)). To be sure, malice *may* be inferred under such circumstances. But this is not a strict liability rule: "[R]eliance on anonymous sources alone does not support an inference that the publisher acted with actual malice. The *Biro* court reasoned that 'reliance on anonymous or unreliable sources without further investigation *may* support an inference of actual malice,' *where the plaintiff includes additional allegations to buttress such an inference*." *Cabello-Rondon* v. *Dow Jones & Co., Inc.*, 720 F. App'x 87, 89 (2d Cir. 2018) (emphasis added); *accord St. Amant* v. *Thompson*, 390 U.S. 727, 732 (1968). Such additional allegations might include "the inherent improbability of the story" or "obvious reasons to doubt the veracity of the informant." *Celle* v. *Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 183 (2d Cir. 2000) (quotation marks and citations omitted).

Here, accepting Mr. Elliott's allegations as true, Ms. Donegan recirculated statements made by anonymous, unverified third parties. But there are no allegations supporting an inference that Ms. Donegan harbored ill-will toward Mr. Elliott. And Ms. Donegan lacked any reason to distrust contributors to the List, as discussed above. In fact, looking to her statements in *The Cut*, Ms. Donegan considered contributors *uniquely* trustworthy by virtue of the significant professional risks that women take in making such allegations, and believed that the anonymous nature of the reports was crucial to learning the truth. As a matter of law, actual malice cannot be inferred from allegations that Ms. Donegan allowed women to anonymously report sexual assault when there was nothing inherently improbable about such claims and she believed they would speak the truth.

                                            Respectfully submitted,

                                            Roberta A. Kaplan, Esq.
                                            Kaplan Hecker & Fink LLP