1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK

2     ------------------------------------X
                                          :
3     STEPHEN ELLIOTT,                    :
                                          :
4                    Plaintiff,           : 18-CV-05680 (LDH)(SJB)
                v.                        :
5                                         : April 12, 2019
      MOIRA DONEGAN,                      :
6                                         : Brooklyn, New York
                     Defendant.           :
7     ------------------------------------X

8

9         TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
            BEFORE THE HONORABLE SANKET J. BULSARA
10                UNITED STATES MAGISTRATE JUDGE

11

      APPEARANCES:

12

13    For the Plaintiff:        NICHOLAS LEWIS, ESQ.
                                Nesenoff & Milternberg LLP
14                              363 Seventh Avenue, 5th Floor
                                New York, New York 10001

15

16    For the Defendant:        JOSHUA MATZ, ESQ.
                                TOM RAWLINSON, ESQ.
17                              Kaplan Hecker & Fink LLP
                                350 Fifth Avenue, Suite 7710
18                              New York, New York 10118

19
      Court Transcriber:        SHARI RIEMER, CET-805
20                              TypeWrite Word Processing Service
                                211 N. Milton Road
21                              Saratoga Springs, New York 12866

22

23

24

25

      Proceedings recorded by electronic sound recording,
      transcript produced by transcription service

2

1   (Proceedings began at 1:07 p.m.)

2               THE CLERK:  All rise.

3               THE COURT:  Please be seated.  Good afternoon.

4               UNIDENTIFIED SPEAKER:  Good afternoon, Your Honor.

5               THE COURT:  Okay.  We're here for a status

6   conference in 18-5680.  Can the parties state their names for

7   the record, please?

8               MR. LEWIS:  Nicholas Lewis of Nesenoff & Milternberg

9   for plaintiff Stephen Elliott.  Good afternoon, Your Honor,

10  and good afternoon, counsel.

11              THE COURT:  Good afternoon, Your Honor.

12              MR. MATZ:  Your Honor, Joshua Matz of Kaplan Hecker

13  & Fink for defendant Moira Donegan, and I'm joined by my

14  colleague from the firm Tom Rawlinson.

15              THE COURT:  Good afternoon.

16              MR. MATZ:  Thank you, Your Honor.

17              THE COURT:  So we're here for both the status

18  conference and an initial conference.  A couple of things, one

19  is I see and I appreciate that the parties have provided  a

20  stipulation about the Google subpoena.  I have a couple of

21  questions.  Is the Google subpoena intended to obtain content

22  information, i.e., the contents of the actual spreadsheet?

23              MR. LEWIS:  No, Your Honor.

24              THE COURT:  Okay.

25              MR. LEWIS:  Just identifying information.

3

1            THE COURT:  Okay.  So it's just what we'll call
2    attribution information, and is that the defendant's
3    understanding as well?
4            MR. MATZ:  Yes, Your Honor.  So our consent to that
5    of course is linked to the other things that were referenced
6    in the letter.  But, yes, it's attribution information,
7    basically who authored the specific statements about Mr.
8    Elliott.
9            THE COURT:  Okay.  The reason I asked that is
10   because I think you otherwise run into an ECPA problem, a
11   Stored Communications Act problem if you seek the contents.
12   Okay.  Then the second question is so the --
13                   [Pause in proceedings.]
14           THE COURT:  So the subpoena as drafted, okay, and I
15   realize that this was drafted in March, has a return date of
16   April 19th which is contemplating both notification to the
17   people who are authors or -- in other words, whose information
18   is being sought, as well as production of that information as
19   well as any motion to quash or otherwise.  And I think that's
20   a little aggressive actually.
21           And actually, I think we have to think about a
22   slightly different process that we have used or at least I
23   have used in the context of asking whether it's a company like
24   Google or Yahoo! where they're being asked for either the
25   owner of an account or information that's being sought in the

4

1    subpoena, which is -- and I'll give you a sight to another

2    case where you can look on PACER for the kind of order that I

3    have issued.  And it doesn't need to be on the same time

4    frames that we're talking about, but it usually operates in

5    the following fashion.

6            The company like Google, okay, gives a notification

7    to the account owner or the subscriber that they've received a

8    subpoena.  It gives -- and they are given an opportunity to

9    then, you know, move to quash to take any other protective

10   measures that they wish.  During that time, they can either

11   proceed anonymously or not in this court until that motion to

12   quash is resolved.  And until that time, there is no

13   disclosure to the plaintiff of the information of the identity

14   of the person.

15           The reason to do that is it is the -- whatever the

16   privacy protection is but also more importantly I think is for

17   what can be inaccurate attribution, namely someone owns the

18   account is logged in as somebody else but it is your -- but

19   the person who actually did the editing is another person who

20   utilizes that account.  And I think the benefit of doing that

21   in a case like this, putting aside the privacy interest, is so

22   that if the plaintiff does not end up suing the wrong person

23   or persons, namely that they are actually suing someone who's

24   actually I take it edited the spreadsheet or made the comments

25   that are the subject of the action.

5

1          So, you know, I'd like you reactions to this as a

2   concept, and then I'll give you a citation to a case where

3   this has been entered.  And then we can discuss, you know, how

4   you'd like to -- you know, you don't have to -- I will say

5   about this process, I'll leave it -- if you agree to work out

6   the dates and timing of this so that, you know, it's not

7   extended forever because obviously the case should move

8   forward.

9          So I'll hear from plaintiff's counsel.

10         MR. LEWIS:  I certainly am open to the Court's

11  suggestion.  If I might just know if the person who comes

12  forward says it was not them, is there a practice or a

13  procedure that's followed to buy what they can say or someone

14  else can say was me?

15         THE COURT:  Well, I think we have to then cross that

16  bridge --

17         MR. LEWIS:  Okay.

18         THE COURT:  -- as it were.

19         MR. LEWIS:  Okay.

20         THE COURT:  And certainly, we have to, you know,

21  obviously enable the plaintiff to figure out who it is.

22         MR. LEWIS:  Okay.

23         THE COURT:  You know, I think it really would be --

24  I'm certainly open to suggestions and we have to figure out

25  how to proceed.  Usually --

6

1          MR. LEWIS:  Okay.

2          THE COURT:  -- it may require some additional

3     discovery of some kind.  It also depends on what frankly --

4     the reason I'm a little bit hesitant to answer definitively,

5     it also depends on what Google comes forward with to say that

6     they have --

7          MR. LEWIS:  Sure.  Okay.

8          THE COURT:  -- right, because, you know, you -- to

9     open a Google account, you're supposed to give certain

10     information and let's see what else they have.

11          MR. LEWIS:  Sure.

12          THE COURT:  If it's a multi-member household, that's

13     one thing.  If we're talking about an account that is

14     affiliated with, say, some group or company or et cetera

15     that's accessed by lots and lots of people, we're talking

16     about a different kind of inquiry.

17          MR. LEWIS:  Understood.

18          THE COURT:  That's why I hedge it that way.

19          MR. LEWIS:  So, yes, Judge, we would certainly be

20     open to that.  We certainly don't want to have somebody have

21     -- be wrongfully served or sued, so I would just ask that I

22     guess the timeline be somewhat perhaps expedited versus what

23     we might otherwise do in a "if we knew the person" situation.

24          THE COURT:  Understood.

25          MR. LEWIS:  Thank you, Judge.

7

1          MR. MATZ:  Your Honor, so thank you very much for

2    this idea.  I mean I think it makes a lot of sense, and my

3    understanding is this is a common way of doing it.  You know,

4    I think -- one question I have here respectfully is it is my

5    understanding from Google's letter which was submitted to Your

6    Honor as an attachment that their view is that the subpoena

7    enforcement proceeding would occur not before this court,

8    before the Northern District of California where subpoenas

9    were customarily adjudicated with respect to Google.

10          THE COURT:  I believe that Rule 45 provides that the

11   protective order proceeding/motion to quash proceeding can

12   take place in either the place where compliance is requested

13   or where the subpoena is issued from.  And so it could take

14   place there.  It also could take place here.  But I think

15   Google is correct that we could not -- if they chose to

16   proceed in the Northern District of California, this Court

17   would certainly defer to the reading of the law which allows

18   them to proceed that way.

19          I think it may be a separate question if say an

20   individual who submitted information wishes to assert his or

21   her rights.  In other words, a person who edited the

22   spreadsheet asserts his or her rights.  I think it depends on

23   there may be a different question as to where they could

24   appear.  But I think that's certainly -- I don't think Google

25   is incorrect that they could adjudicate it in the Northern

8

1  District of California.  And, obviously, the judge who looks

2  at that may have a different view as to how to proceed on this

3  issue.

4          MR. MATZ:  Of course.  And I flag that only in the

5  spirit of noting that there was a possibility that Google or

6  potentially any of the Doe defendants -- you know, and I don't

7  know what they'll do -- might take the view that an

8  appropriate forum for adjudicating the subpoena may be located

9  elsewhere including in California.

10         With respect to the procedure that Your Honor

11 described, that procedure makes a great deal of sense to us.

12 You know, I have sort of perhaps two questions about it.  The

13 first is that you noted that during the time in which the

14 subpoena is pending but before there is any production in

15 response to the subpoena that the Does could either sort of

16 appear in this court and proceed as they wish or not.  And I

17 just wanted to make sure that I was correct in understanding

18 that sort of if the Doe were not to appear during the pendency

19 of that either because they don't know or because they want to

20 see how the subpoena process occurs, they would then still

21 retain the ability to assert any rights and defenses in this

22 court?

23         THE COURT:  Well, maybe we should think about it in

24 the following way because the use of the Doe may be different

25 in two places of things you said.  So on the one hand,

9

 1   individuals who Google believes satisfy the criteria laid

 2   forth in the subpoena, namely say an email address associated

 3   with someone who altered a cell or edited a cell or

 4   highlighted a cell in the spreadsheet, those persons to the

 5   extent Google has information about that would receive some

 6   notification from Google that they've -- Google has received a

 7   subpoena.

 8          That person, call that person X, person X would have

 9   an opportunity to move to quash the subpoena or assert

10   whatever other rights like limitations on the subpoena, et

11   cetera.  As you point out, that could potentially occur in

12   this court or potentially in some other court.  But if the

13   person -- and if the person -- if X appeared in this court and

14   made an application and said I'd like to move to quash and for

15   the quash proceedings, I would like to proceed anonymously,

16   that's often granted.

17          Then going forward, say either if the person X, if

18   assume -- if person X is deemed by the plaintiff as someone

19   they would like to sue and/or the subpoena quash motion is

20   denied, the litigation would begin with respect to that

21   person.  I don't think what he or she does during the subpoena

22   quash proceedings affects in any way their right to make

23   substantive and procedural arguments in defense of the

24   litigation.  As to whether the person could proceed

25   anonymously during the pendency of the substantive litigation

1    should they be actually named as a defendant, that's a

2    slightly separate question and for which, you know, I don't

3    take any view right now.  But it would be addressed I think at

4    the time that they're added as a putative defendant.  I hope

5    that makes sense.

6              MR. MATZ:  That makes perfect sense.

7              THE COURT:  Okay.

8              MR. MATZ:  That was our understanding as well.  I

9    just wanted to sort of make sure, although, you know, I do not

10   represent the Does.  You know, obviously, I have some concern

11   at least that their interests are protected.

12             The other question --

13             THE COURT:  Yes.

14             MR. MATZ:  -- that I had for Your Honor is that in

15   the complaint, it's a little unclear to us who exactly it is

16   they believe they are suing.  And so the Google subpoena, for

17   example, seeks to unmask the identity of persons who

18   essentially made any modifications to the Elliott entry on the

19   spreadsheet.  In the complaint, however, the amended

20   complaint, and here I would direct Your Honor to Paragraph 11,

21   they say, "Plaintiff will know through initial discovery the

22   names, email addresses, pseudonyms and/or internet handles

23   used by the Jane Doe defendants to create the list, enter

24   information into the list, circulate the list, and otherwise

25   publish information in the list or publicize the list."

1    And counsel to plaintiffs have given interviews

2 including to The New York Times suggesting that they believe

3 there may potentially be quite a large number of defendants

4 here, presumably quite a bit larger than any who may or may

5 not have modified any part of Mr. Elliott's spreadsheet.  And

6 so, well, I suppose one of the concerns we have is

7 understanding from the plaintiff perhaps, who exactly it is

8 that he believes he is suing and how this subpoena fits into

9 figuring out the structure of the litigation because that may

10 in turn bear on some of the questions that arise in the course

11 of adjudicating the subpoena.

12    THE COURT:  Well, let me say the following, right.

13 And certainly, the part -- I took the parties' stipulation,

14 okay, as to agreeing to the scope of the subpoena, right.  And

15 the subpoena asks, as you point out, about particular kinds of

16 individuals who had certain relationships to the spreadsheet.

17 Now, what I took the complaint to say, the paragraph you just

18 read to me -- and I certainly will hear from plaintiff's

19 counsel on this -- that the information on the -- that's

20 sought in the subpoena may no give the full universe of people

21 who are affected or -- the answer to the Google subpoena may

22 not identify every single person who would fit in the category

23 of individuals that plaintiff wishes to sue.

24    At this point, what I understand the structure of

25 the litigation is is that we are not doing any other discovery

1   under -- besides the Google subpoena.  To the extent that the

2   Google subpoena does not give the plaintiff access to all of

3   the larger universe of individuals he may wish to sue, I don't

4   view that as a discovery issue at this point.  It may be an

5   issue as to, you know, either future amendments, other things

6   because certainly, you know, consistent with the laws, you

7   know, and the plaintiff may have information from other public

8   sources or investigations that are known to him or otherwise.

9          And so, I don't think -- my larger point being the

10  plaintiff -- the subpoena is making a strategic decision about

11  information that is being sought from Google.  Whether that

12  turns out to be sufficient to name all of the putative

13  defendants I don't think is a problem to be addressed at this

14  point in light of the fact that we're not doing any other

15  discovery at this point.

16         MR. MATZ:  Understood.

17         THE COURT:  Does that answer your question?

18         MR. MATZ:  It does.

19         THE COURT:  Okay.

20         MR. MATZ:  And you can understand that we were just

21  sort of concerned that, you know, to the extent that he

22  imagines there to be thousands of potential defendants,

23  essentially anyone who has ever circulated the spreadsheet may

24  be on the hook on some, you know, free-wheeling theory of

25  aiding and abetting or conspiracy that would place substantial

1   concerns.

2           And just understanding that that's the structure of

3   the litigation at this point and that the subpoena fits into

4   it in that very particular way is very helpful, Your Honor.

5           THE COURT:  I'll hear from the plaintiff if there's

6   anything else, you know.

7           MR. LEWIS:  I completely agree with Your Honor.

8   This was limited in scope simply for the purpose under the

9   Sony Music test of identifying the Jane Doe defendants that

10  actually manipulated or input stuff into Mr. Elliott's cells.

11  And if in discovery we find additional information that

12  somebody may have circulated the spreadsheet with perhaps

13  additional things in the email about Mr. Elliott, that's --

14  we're not going to be precluded from attempting to identify

15  those people as well.

16          THE COURT:  Well, all I'll say about that is, you

17  know, there are the customary rules about when you can amend,

18  how many times you can amend --

19          MR. LEWIS:  Of course.

20          THE COURT:  -- showing good cause, Rule 15 comes

21  into play and all of those things.

22          MR. LEWIS:  Of course.

23          THE COURT:  And certainly by limiting discovery at

24  this point just to this subpoena and basically staying all

25  other discovery, we'll have to cross other bridges.  And I

14

1  certainly will hear arguments on both sides as to the

2  appropriateness of those various avenues, but -- and so just

3  to be clear about what you're not precluded. what other

4  arguments may come to bear, the parties will certainly raise

5  them and I'm not preventing the defendants from saying, you

6  know what, by the way, a subsequent amendment is too late.

7          MR. LEWIS:  Yes, sir.

8          THE COURT:  And I certainly would allow you to say a

9  subsequent amendment is based on diligence is appropriate.

10         MR. LEWIS:  Thank you.  And if I might just add one

11 more thing, Judge.  It would be our position that the subpoena

12 could and should be returnable in this Court.  I would just

13 respectfully disagree with opposing counsel or with Google

14 that they cannot be brought into court here considering the

15 death of the business New York Life [Ph.].

16         THE COURT:  Well, look, I think they're two separate

17 questions, right.  You know --

18         MR. LEWIS:  And I understand we're not arguing that

19 now, of course.

20         THE COURT:  And, you know --

21         MR. MATZ:  With respect, is Your Honor referring to

22 Rule 45(c)(2) which refers to sort of a place of compliance

23 for other discovery?

24         THE COURT:  Well, I wasn't referring to anything at

25 this point.  But you mean in my --

15

1        MR. MATZ:  When Your Honor referred to where the

2  subpoena would be returnable or enforceable.

3        THE COURT:  Well, I was actually saying now -- I

4  mean there are a couple of things, right.

5                    [Pause in proceedings.]

6        THE COURT:  The subpoena, you know, it is a document

7  subpoena which under 45(c)(2)(A), I believe, requires a

8  production between -- within 100 miles of where the person

9  resides or is employed or as regularly transacts business in

10  person.  Now, obviously, the parties may have different views

11  as to where that is for Google.  I don't intend to litigate

12  that right now.

13        MR. LEWIS:  Yes.

14        THE COURT:  But what I was referring to before is

15  if, for instance, compliance is directed in the Northern

16  District of California, it's not the issue in court.  Under

17  (f), it could be transferred here.

18                    [Pause in proceedings.]

19        THE COURT:  But I do think it's a question of -- I

20  mean if to answer your question, Google may take the position

21  that under (c)(2)(A), within 100 miles of the Northern

22  District of California regardless of the place of compliance

23  being an email address as listed in the subpoena.

24        MR. MATZ:  Yes, Your Honor.  And, of course, I agree

25  with you.  We don't need to and really we can't litigate that

16

1   before the Court at this stage.  I would just direct the

2   Court, it may be helpful to document 22-1 in this case.

3           THE COURT:  You have to give me a second.

4                   [Pause in proceedings.]

5           THE COURT:  Okay.  I have 22-1 in front of me.  Is

6   there something in particular?

7           MR. MATZ:  No, yeah.  Your Honor, I realize of

8   course that this isn't the appropriate moment at which to

9   litigate where and how Google may or may not comply.  I had

10  just wanted to direct Your Honor to the final page of a letter

11  from Google that had been sent in response to a letter from

12  Mr. Lewis, my colleague, in which Google simply said -- they

13  cite Rule 45(c)(2)(A) as well as the other provisions of Rule

14  45 that Your Honor mentioned.  And they say, "Google is

15  headquartered in Mountain View, California and as a result,

16  the place for compliance must be in the Northern District of

17  California."  They cite authority.

18          So I didn't mean to sort of send this off down that

19  rabbit hole.  I just wanted to flag that for the Court's

20  attention.

21          THE COURT:  Well, at least Google is citing the same

22  portion of the rule that I am.  Whether that's correct or not

23  is for another day.

24          MR. MATZ:  Right.

25          THE COURT:  Okay.  So one of the examples, you can

1   look at 18-CV-3156, okay.  And I issued an order on July 2nd

2   of last year in that case.  And obviously feel free to modify

3   that time frames, et cetera.  How much time would the parties

4   like to -- well, there are a couple of things.  One is, you

5   know, a Rule 45 subpoena is self-executing.  I don't intend to

6   so order a subpoena.  That being said, obviously in this case,

7   the parties, it is helpful to understand the scope of what

8   someone is seeking.

9          But I will so order a -- you know, some proposed

10  motion to adopt a procedure akin to the one in this case I've

11  talked about.  But if the subpoena is going to be the same in

12  terms of what it is seeking, at this point, I don't view that

13  it requires any court action, obviously, you know, until a

14  motion to quash or a motion to compel is filed.  Do the

15  parties have any questions about how to proceed in that way?

16         MR. MATZ:  No, Your Honor.  We'll meet and confer

17  with plaintiff's counsel and within the next two weeks if that

18  would be acceptable to Your Honor propose if we're able to

19  reach agreement on one a motion of this sort that Your Honor

20  described.

21         THE COURT:  That's fine.

22         MR. MATZ:  Thank you.

23         THE COURT:  And then I will otherwise -- otherwise,

24  I believe there's -- well, let me see.

25                    [Pause in proceedings.]

1        THE COURT:  So I don't recall while I'm sitting here

2   whether Judge DeArcy Hall formerly entered a stay of discovery

3   on the docket.  What I will say is following is when you make

4   the motion in two weeks, it would be fine if the parties

5   agreed to a partial lifting of the stay for the purposes of

6   serving of this subpoena.  If the parties can't agree about

7   that, I will obviously resolve any other stay application if

8   that can't be agreed to.  But I take it that that's what needs

9   to be done because my recollection is at least that there is

10  at least a stay of discovery in place already.

11       MR. MATZ:  Your Honor, there was not a notation on

12  the docket.  What Judge DeArcy Hall said, and I would direct

13  the Court to Page 24 and 25 of the transcript of the premotion

14  conference.

15       THE COURT:  Uh-huh.

16       MR. MATZ:  What she said is if there's no operative

17  complaint, we're not going to proceed to discovery so let's

18  figure out what you're going to do with the complaint, and

19  they then did subsequently amend.  And she said, "I will

20  caution the defendants that the likelihood that I won't allow

21  some limited discovery for the purpose of determining who the

22  Jane Does are is not likely."  And then she sort of mentions

23  about the amended complaint.  And then she says, "But, again,

24  folks should expect that the plaintiff is going to be able to

25  have some limited discovery."  And then she says she's not

19

1  making determinations about the scope of it.

2      THE COURT:  That was consistent with my recollection

3  which is why --

4      MR. MATZ:  Yes, Your Honor.

5      THE COURT:  -- I didn't feel like I had to -- or at

6  least act on No. 22 at the time.  So, you know, I think it

7  would be appropriate either to agree to a stay of discovery

8  accepting the Google subpoena or some stipulation as to that

9  effect if you can reach it in that motion in two weeks.

10 Otherwise I think we should put the formal notation of a stay

11 of discovery on if the parties can't agree.

12     MR. LEWIS:  I would suggest our letter to the Court

13 lays out our understanding.  We agreed to not start initial

14 disclosures until the return -- two weeks after the return

15 date of the subpoena, so.

16     THE COURT:  Yeah.  So that's fine, too.  You should

17 exempt initial disclosures from that as well based on what I

18 understand the parties are doing.  Okay.

19     MR. MATZ:  Yes, Your Honor.  And I think our letter,

20 I mean the letter uses words like "defer" and "delay."  I

21 think everyone agrees, and it was certainly my understanding

22 of my conversation with Mr. Lewis that led to this letter that

23 everyone agrees the Google subpoena will be served, there will

24 be, I suspect, substantial litigation surrounding it.  And

25 then discovery will otherwise be stayed until we sort of see

20

1   what becomes of that.

2            THE COURT:  Okay.  The other thing is it is an

3   initial conference, and at every initial conference, I discuss

4   settlement.  And there are lots of reasons to have a

5   settlement conference in all kinds of cases.  And, you know, I

6   have lots of cases where settlement conferences occur at the

7   beginning of a case.

8            My sense is that, but I'll hear from you, that it

9   may be more appropriate to wait for further developments in

10  the case for there to be any real settlement conferences.  But

11  I'll hear from you both.

12           MR. MATZ:  Well, Your Honor, plaintiff -- I mean the

13  plaintiff has not made a demand.  You know, respectfully, I

14  think it is our understanding that in light of the parties'

15  positions and of the plaintiff's apparent goals in the

16  litigation that a settlement or a mediated result as between

17  us and the plaintiff is extremely unlikely at this stage.

18           THE COURT:  I mean if the issue is the plaintiff

19  making a demand, I can solve that issue really quickly, right.

20  I can just tell the plaintiff to make a demand.  And if I held

21  a settlement conference, my rules require the parties to

22  exchange demands and offers in advance.  So if that's the

23  hurdle, but --

24           MR. LEWIS:  We're all -- it was my understanding

25  that there was not going to be a settlement on behalf of Ms.

1  Donegan, so I had not made a demand.  I'm certainly always

2  open to start a dialogue, but I think it's -- I would think it

3  would not be [inaudible].

4         THE COURT:  How about we do this, okay.  Why don't

5  you serve a demand on the defendants, and if the parties both

6  agree that in this time a settlement conference would be

7  productive, you can indicate that in the letter you file in

8  two weeks.

9         MR. MATZ:  Yes, Your Honor.  And I should say I hate

10  to say never, but respectfully we do think it's most unlikely

11  that that would occur.  But we of course will be sure to

12  discuss it and indicate our view in the letter.

13         THE COURT:  I understand.  And whether it's because

14  of my charms or because I somehow managed to, you know, show

15  up as an imposter in a black robe, sometimes I can get parties

16  to settle in all kinds of ways that they thought not

17  imaginable.  Now there are obviously monetary settlements and

18  then there are also nonmonetary settlements, so I just -- you

19  know, keep that in mind.  And litigation is time consuming,

20  but also expensive.

21         All right.  So other than that, I will simply wait

22  for the parties to submit a motion and/or letter in two weeks.

23         MR. LEWIS:  Might I suggest if we do settlements in

24  the Northern District of California, Judge, with you?

25         THE COURT:  Well, I'm not so empowered.  Actually,

22

1   you know, but San Francisco isn't necessarily warmer at this

2   time of year, but --

3           MR. MATZ:  I've never had a winter colder than

4   summer in San Francisco.  Isn't that the same?

5           THE COURT:  Yes.

6           MR. MATZ:  Your Honor, we appreciate your careful

7   attention to the case.

8           MR. LEWIS:  Thank you, Judge.

9           THE COURT:  Okay.  It's --

10           MR. MATZ:  We of course will get back in two weeks.

11           THE COURT:  All right.  There's nothing else I

12   assume.  And thank you all.  Have a nice weekend.

13           MR. LEWIS:  Thank you, sir.

14           MR. MATZ:  Thank you, Your Honor.

15   (Proceedings concluded at 1:45 p.m.)

16                       *  *  *  *  *  *

17

18

19

20

21

22

23

24

25

23

1       I certify that the foregoing is a court transcript from

2  an electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5  _____

6                              Shari Riemer, CET-805

7  Dated:  April 16, 2019

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25