UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
STEPHEN ELLIOTT,

                Plaintiff,

        -against-

MOIRA DONEGAN, and JANE DOES (1-30),

                Defendants.
-----------------------------------------------------------------X

Case No.: 18-cv-5680

**SECOND AMENDED COMPLAINT**

Plaintiff, Stephen Elliott ("Plaintiff"), by his attorneys Nesenoff & Miltenberg, LLP, as and for his Amended Complaint (the "Amended Complaint"), respectfully alleges as follows:

## THE NATURE OF THE ACTION

1. This action is brought by Plaintiff to recover, *inter alia*, damages caused by Defendants' libelous communication of knowingly false statements in a publicly accessible, shared Google spreadsheet circulated via electronic mail ("email") to the parties' professional colleagues, namely women in the media industry. Upon information and belief, Defendants conspired to create the Google Spreadsheet entitled "Shitty Media Men" (herein referred to as "The List") and circulated the link to The List via email, without password protection, for the stated purpose of encouraging the female recipients to anonymously publish allegations of sexual misconduct by men. The List, by design, was then circulated further to recipients unknown to Defendants. The wholly unsubstantiated allegations published in The List, particularly with regard to allegations about Plaintiff, contained numerous false statements alleging criminal sexual conduct on the part of Plaintiff.

2. Participants interested in contributing to The list, including the Defendants, published defamatory allegations without corroborating evidence or a means of assessing the credibility of the claimants. The List contained false information and unsubstantiated allegations, including untrue statements alleging Plaintiff engaged in criminal sexual conduct, namely rape accusations, sexual harassment, coercion and unsolicited invitations to his apartment. The inflammatory false statements published in The List were abusive, vulgar, intentionally misleading as well as damning to the Plaintiff's reputation and good name. The List was sent to numerous members of the parties' shared profession, the media industry to intentionally harm Plaintiff's reputation and further cause harm to Plaintiff's career.

3. Plaintiff is a private citizen who is neither a politician nor a celebrity.

4. The Defendants' actions were malicious in nature, taken solely to damage Plaintiff's reputation and career.

## JURISDICTION AND VENUE

5. This Court has diversity and supplemental jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

6. This Court has personal jurisdiction over Defendants on the grounds that Defendant Moira Donegan, and some of the Jane Doe Defendants reside within the Eastern District of New York.

7. Venue for this action properly lies in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and Defendant Moira Donegan, along with at least some of the Jane Doe Defendants, reside in this judicial district.

## PARTIES

8. Plaintiff Stephen Elliott is a resident of New Orleans, Louisiana.

9. Defendant Moira Donegan (referred to herein as "Defendant Donegan") is a resident of Kings County, New York.

10. The true names and capacities, whether individual, corporate, or otherwise, of Defendants Jane Does 1-30 (collectively referred to herein as the "Jane Doe Defendants") are currently unknown to Plaintiff, who therefore sue said Jane Doe Defendants by such fictitious names.

11. Plaintiff will know, through initial discovery, the names, email addresses, pseudonyms and/or "Internet handles" used by Jane Doe Defendants to create The List, enter information into The List, circulate the List, and otherwise publish information in the List or publicize the List. Through discovery, Plaintiff can obtain the email address information, Google account, Internet Protocol ("IP") address assigned to the accounts used by the Jane Doe Defendants by the account holders' Internet Service Provider ("ISP"), email accounts and/or Google accounts, on the date and time at which the Posts were published and/or information was entered into The List. Plaintiff intends to subpoena the shared Google spreadsheet metadata for The List, email accounts, Google accounts and ISPs in order to learn the identity of the account holders for the email addresses and IP addresses.

12. Though an email address or IP address alone does not reveal the name or contact information of the account holder, it does reveal that person's full name, other identifying information and/or physical location. IP addresses are distributed to ISPs by public, nonprofit organizations called Regional Internet Registries. As the name implies, these registries assign blocks of IP addresses to ISPs by geographic region. In the United States, these blocks are

assigned and tracked by the American Registry of Internet Numbers. Master tables correlating the IP addresses with local regions are maintained by these organizations in a publicly-available and searchable format. An IP address' geographic location can be further narrowed by cross-referencing this information with secondary sources such as data contributed to commercial databases by ISPs. Plaintiff may utilize these techniques to uncover the geographic location of each IP address associated with the Defendants. Further, upon information and belief, Plaintiff intends to obtain the digital information, including but not limited to metadata, associated with The List from Google, which can include information regarding Jane Doe Defendants who created The List, information entered in The List, the account or email which accessed The List and otherwise participated in the creation, editing, publication, publicizing and viewing of The List as well as the time stamps for information entered, the various distinct versions of The List, and information about the protection on The List as well as the circulation of The List both before and after The List was circulated.

13. Plaintiff believes that information obtained in discovery will reveal the Jane Doe Defendants' true names, addresses and other identifying information and allow Plaintiff to amend this Complaint to state the same. Plaintiff further believes that the information obtained in discovery may lead to the identification of additional parties to be added to this action as defendants.

14. Upon information and belief, each of the Defendants named herein, including Defendant Donegan and the Jane Doe Defendants (collectively referred to herein as "Defendants"), performed, participated in, conspired to commit, or abetted the acts alleged herein and proximately caused the damages alleged, and are thus liable to Plaintiff for the damages and relief sought herein.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

15. Plaintiff is an author living in New Orleans, Louisiana.

16. Defendant Donegan is a writer and activist who resides in Brooklyn, New York. She was a former of employee of *The New Republic* magazine. Defendant Donegan has a well-documented history of publicly publishing statements professing a hatred of men.

17. On or about October 11, 2017, Defendants conspired to create The List, a publicly accessible, shared Google spreadsheet entitled "Shitty Media Men," for the stated purpose of encouraging women to anonymously publish allegations of sexual misconduct by men.

18. Upon information and belief, Defendants created The List and circulated it to numerous women in the media industry via email and other electronic means. The List was not password-protected. It was accessible via a link which was circulated without discernment, but for the caveat that it should not be forwarded to men. There was of course no way of knowing where The List would be sent.

19. Many of the recipients of The List, and a portion of the people who posted allegations, were unknown to Defendants.

20. Defendant Donegan added headings including, NAME, AFFILIATION, ALLEGED MISCONDUCT and NOTES, directing recipients to publish unsubstantiated allegations of sexual misconduct.

21. Defendant Donegan actively encouraged women, many of whom were anonymous to Defendant Donegan, to post unsubstantiated defamatory statements.

22.     Upon information and belief, Defendant Donegan encouraged recipients of The List to post rumors they had heard, even if they did not have personal knowledge of the allegations.

23.     The allegations were wholly unsubstantiated. Indeed, participants interested in contributing to The List, some of whom were Jane Doe Defendants, were encouraged to publish any and all defamatory allegations without evidence to corroborate the allegations or a means of assessing the credibility of the anonymous accusers.

24.     On or about October 11, 2017, Defendants published Plaintiff's full name in The List, along with the names of several other men connected to the media industry; Plaintiff's name was entry #13, along with an AFFILIATION of "Freelance writer/novelist." Defendants further published the defamatory allegations of, "Rape accusations, sexual harassment"[sic] under the ALLEGED MISCONDUCT column heading. (Plaintiff's entry on the List hereinafter referred to as "Plaintiff's Entry")

25.     On or about and between October 11, 2017, and October 12, 2017, Plaintiff's entry was amended by Defendants to read: "Rape accusations, sexual harassment [sic], coercion, unsolicited invitations to his apartment, a dude who snuck into Binders???" and Defendants published "Multiple women allege misconduct" in the NOTES column of The List. Further, Plaintiff's entry was moved to entry #12 on the list as other individuals' entries were removed by the Defendants.

26.     Defendant Donegan, both personally and together with some of the Jane Doe Defendants, actively edited, removed, organized, contributed, highlighted, published, and added names to The List.

27.     At the top of The List Defendant Donegan wrote, "Men accused of physical sexual violence by multiple women are highlighted in red." Defendant Donegan, both by herself and with some of the Jane Doe Defendants, outlined Plaintiff s entry on the List in red along with some of the other individuals named on The List.

28.     Defendant Donegan, along with some of the Jane Doe Defendants, outlined the defendant's entry in red, with malice, to signify he was being accused of "physical sexual violence by multiple women," a statement Defendant Donegan, and at least some of the Jane Doe Defendants, knew or had reason to know was false.

29.     On October 12, 2017, *Buzzfeed* published an article about the existence of The List. Articles referencing The List, in *The New York Times, New Yorker, Atlantic,* and *Harpers*, soon followed.

30.     On or about and between October 11, 2017, and July 17, 2018, and many times following the creation of The List, Defendant Donegan publicized the existence of The List both in traditional publications and on social media.

31.     On or about and between October 11, 2017, and July 17, 2018, Defendant Donegan made public statements on social media stating, "The problem is men," "I really hate men," "I like the witch hunt," and re-publishing statements assuming the guilt of all men accused on The List.

32.     The Merriam-Webster Dictionary defines a "witch hunt" as: 1) a searching out for persecution of those accused of witchcraft; 2) the searching out and deliberate harassment of those (such as political opponents) with unpopular views.   https://www.merriam-webster.com/dictionary/witch%20hunt.

33. Since The List was created on or about October 11, 2017 it has been freely available to download from public sites including *Reddit* and *Wordpress*.

34. Plaintiff's book was released on or about November 7, 2017. Much of the planned publicity for the book was cancelled, including a finished interview for *The Paris Review* as well as an excerpt that was supposed to run in *Lithub*. Plaintiff was uninvited from multiple events, including readings and a panel at the Los Angeles Book Festival.

35. Plaintiff's book sales, historically, are dependent on Plaintiff's ability to promote his written works at publicity events like interviews in various media outlets, excerpt publications, as well as public readings, panels and appearances. Plaintiff's book sales for his most recent book were below projections and significantly less than previous works.

36. In or about December 2017 Plaintiff was told by a producer that the producer could not forward his work to film or television production companies. A substantial portion of Plaintiff's income, historically, was generated from his written works being sold to film and television production companies for adaptation to film.

37. In or about December 2017 and thereafter, Plaintiff became extremely depressed as a direct result of The List, finding employers, colleagues, business associates, and friends did not return his calls as they had in the past. He attributed this to the false allegations recently published in The List in which he was falsely accused of being a rapist.

38. Following continued publicity in multiple publications for The List Plaintiff was "unfriended" or blocked on social media by many friends, acquaintances, fans and readers. Plaintiff, historically, utilized social media to market his works and maintain relationships.

39. In or about January 2018, Defendant Donegan published an article in *New York Magazine's* online page "*The Cut*" taking credit for creating and disseminating The List. The article was entitled, "I Started the Media Men List. My name is Moira Donegan."

40. In or about January 2018, Plaintiff's sister, a researcher living in Chicago, called to say she had heard the Plaintiff had been accused of rape.

41. In or about January 2018, Plaintiff enrolled in therapy while actively contemplating suicide.

42. In January 2018, Plaintiff wrote an essay about being on The List which was accepted and then, two weeks later, rejected by *New York Magazine*.

43. On February 2, 2018, the same essay written by Plaintiff was accepted and then rejected in the same day by the London *Guardian*.

44. Defendant Donegan has benefited substantially from publication of the List. In addition to favorable publicity, Defendant Donegan has been hired on contract at the *New Yorker* and was given a contract worth a minimum of six figures to write a book about The List for Scribner Books.

45. On September 25, 2018, Plaintiff published an essay about the experience of being falsely accused of rape. Despite the essay being widely circulated online, particularly in the literary community, no one came forward to accuse the Plaintiff of rape, even though there were supposedly "multiple rape accusations."

46. Defendants' actions were malicious in nature and taken solely to damage Plaintiff's reputation and career. Defendants published The List with reckless disregard for the truth of the allegations asserted therein, and circulated The List to numerous women in the media industry with the intention The List be forwarded in perpetuity.

47. Defendants knew The List contained false defamatory statements, including the entirety of Plaintiff's entry, but published The List to numerous women to intentionally injure, harass, defame, endanger, aggrieve and embarrass Plaintiff.

48. Defendants published The List, and Plaintiff's entry, with the intention to damage Plaintiff's reputation and good name, impugn Plaintiff's character to the parties' colleagues in the media industry and otherwise diminish Plaintiff's earning potential and career opportunities.

49. Plaintiff has suffered irreparable damage to his professional and personal reputation as the direct and proximate result of Defendants' defamatory statements and publication of the Letter.

50. Plaintiff has suffered economic damage to his career as a writer/producer/content creator including but not limited to diminished book sales, loss of income, loss of business opportunities, including but not limited to an inability to market and publicize various works, as well as diminished popularity, goodwill and interest of journalists, fans, friends, associates, customers and the public at large.

51. Plaintiff has endured severe emotional pain and suffering as the direct and proximate result of Defendants' defamatory statements, The List, and the public reaction to them. The harassment and vitriol continue to this day as Plaintiff's home and vehicle have been vandalized recently.

52. As the direct and proximate result of Defendant's defamatory publications, Plaintiff has required continued psychological therapy.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Defamation of Character by Libel)

53. Throughout this course of defamatory conduct, Defendants acted at all relevant times with actual malice.

54. Actual malice exists when a defendant publishes a defamatory statement with knowledge that the statement is false or with reckless disregard for its truth or falsity.

55. Actual malice through knowing falsehood exists where a story was "fabricated by the defendant" himself or herself. St. Amant v. Thomson, 390 U.S. 727, 732 (1968).

56. The individual(s) who posted the false entries about plaintiff on The List, whether such individual(s) consisted of Defendant Donegan and/or one or more of the Jane Doe defendants, personally fabricated the statements contained therein, and hence acted with actual knowledge of falsity.

57. On information and belief, Defendant Donegan was personally the individual who posted the false and defamatory entries about Plaintiff on The List, and therefore acted with actual knowledge of falsity.

58. Under the express law of the Second Circuit, to satisfy the pleading requirements for actual malice in a defamation suit, a plaintiff "may allege that 'a story [was] fabricated by the defendant' *if the defendant provides no source for the allegedly defamatory statements*." Biro v. Conde Nast, 807 F.3d 541, 545 (2d Cir. 2015) (citation omitted) (emphasis added).

59. Defendants have not provided any source for The List's defamatory statements against Plaintiff. The entries on The List claiming that Plaintiff had been accused of rape, and had been accused more than once of sexual assault, and making other defamatory accusations against him, provided no source for these outrageous defamatory statements. Nor has anyone

11

come forward since publication of The List claiming any source for these accusations. Nor has Defendant Donegan provided any source for them. Indeed, after this case was originally filed, Plaintiff specifically requested information from Defendant Donegan about the source(s) of the defamatory statements, and Defendant Donegan refused to provide any such information. Defendants failed to provide a source for The List's defamatory allegations against Plaintiff because they fabricated these allegations themselves, thus acting with knowledge of falsity and actual malice.

60. If Defendant Donegan, personally, and/or the other Defendants did not themselves fabricate the false defamatory accusations against Plaintiff, knowing them to be false, then, in the alternative, they wrote and published them with reckless disregard for their truth or falsity.

61. Reckless disregard exists when the defendant "in fact entertained serious doubts as to the truth of his publication." St. Amant, 390 U.S. at 731. "Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." Id.

62. Defendant Donegan has publicly and expressly admitted that she entertained serious doubts as to the truth of the allegations contained in the List. In an article that appeared online in January, 2018, Defendant Donegan described her creation, work on, and publication of The List, expressly stating:

> There were pitfalls. *The document was indeed vulnerable to false accusations, a concern I took seriously.* I added a disclaimer to the top of the spreadsheet: "This document *is only a collection of misconduct allegations and rumors.* Take everything *with a grain of salt.*"

Moira Donegan, "I Started the Media Men List: My Name is Moira Donegan," Jan. 10, 2018, *The Cut*, https://www.thecut.com/2018/01/moira-donegan-i-started-the-media-men-list.html (emphasis added).

12

63. Thus Defendant Donegan by her own admission was "seriously" "concern[ed]" at the time of publication that the accusations contained on The List were false. Indeed, she was so concerned about falsity that she added a "disclaimer" stating that these facially defamatory accusations of rape and other offenses were "only" a collection of "allegations and rumors." This disclaimer was added precisely because, and further demonstrates that, at the time of publication, Defendant Donegan entertained serious doubts as to truth of the allegations on The List.

64. Because she published defamatory statements while entertaining serious doubts as to their truth, Defendant Donegan acted with reckless disregard and therefore with actual malice.

65. Reckless disregard for the truth can also be inferred when a defendant publishes defamatory statements "based wholly on information from unverified, anonymous sources." Biro, 807 F.3d at 545-46 (citing St. Amant, 390 U.S. at 732).

66. If Defendant Donegan was not herself the individual who posted and fabricated all of The List's accusations against Plaintiff, then, in the alternative, she published those specific accusations wholly on the basis of unverified information from individuals whose identities she did not know.

67. The List was specifically created and designed so that individuals could post entries on it fully anonymously—i.e., with their identities unknown not only to readers of The List, but to the creator of The List, Defendant Donegan herself.

68. Individuals did in fact post entries to the List fully anonymously—i.e., with their identities hidden both from readers of the list and from Defendant Donegan herself.

69. In the article cited in paragraph 62 above, and elsewhere, Defendant Donegan has admitted that The List was circulated to individuals whose identities she did not know and that

such individuals were able to and did post entries on The List. When asked by Plaintiff for information as to the identities of the individuals posting the entries on The List specifically concerning Plaintiff, Defendant Donegan (through counsel) replied, "We would not provide any information about who wrote the statements and we would not provide any information regarding our client's knowledge, or lack thereof, regarding who wrote the statements."

70. As stated above, Defendant Donegan expressly described some or all of the accusations on the List as "rumors." By dictionary definition, and in common usage, a rumor is an allegation the truth of which is unsubstantiated and the source of which is unknown. By admitting that some or all of the accusations on The List were "rumors," Defendant Donegan was admitting that the sources of those unsubstantiated accusations were unknown to her—*i.e.*, anonymous.

71. Defendant Donegan made no efforts of any kind to verify or investigate the accusations on The List.

72. Thus if Defendant Donegan did not personally post and fabricate the defamatory statements against Plaintiff, then, in the alternative, she published those statements wholly on the basis of unverified, anonymous sources and therefore acted with reckless disregard for the truth.

73. Finally, while ill will or animosity is not equivalent to actual malice, nor required to prove it, evidence of ill will or animosity is highly relevant and admissible to support an inference of actual malice. E.g., Duffy v. Leading Edge Prods., 44 F.3d 308, n.10 (5th Cir. 1995) ("Although we recognize that proof of ill will or animosity is not required to show actual malice, evidence of ulterior motive can often bolster an inference of actual malice.")(citation omitted).

14

74. As noted above, Defendant Donegan has made numerous public statements demonstrating ill will and animus against men in general, including the statement, "I really hate men."

75. Indeed, with specific reference to the List, Defendant Donegan has publicly admitted that she looked forward to and took pleasure in the destructive effect that The List would have on the lives and careers of the men who were the targets of The List's unsubstantiated, anonymous heinous accusations, even if those men were falsely accused, stating, "I like the witch hunt."

76. Thus Defendant Donegan was motivated by ill will and animus when she created and published The List, and such ill will and animus further support an inference of actual malice.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Prays for the following relief:

   i. This Court's FINDING that the information published by Defendants was false and defamatory;

   ii. This Court's FINDING that Defendants published the defamatory statements with malice;

   iii. This Court's ORDER that Defendants issue a written retraction to each and every person to whom they originally published the false and defamatory statements;

   iv. On the first cause of action for defamation, a judgment awarding the Plaintiff damages in an amount to be determined at trial, but in no event less than $1,500,000.00, plus interest, attorney's fees, expenses, costs and disbursements, as described below:

v. This Court's AWARD of *per se* damages in an amount to be determined at trial, but in no event less than the amount of five hundred thousand dollars ($500,000.00);

vi. This Court's AWARD of Actual and Compensatory damages in an amount to be determined at trial, but in no event less than the amount of five hundred thousand dollars ($500,000.00);

vii. This Court's AWARD of Punitive Damages in an amount to be determined at trial, but in no event less than the amount of five hundred thousand dollars ($500,000.00);

viii. Attorneys' fees as against Defendants jointly and severally, in an amount to be determined at trial;

Dated this 6th day of May, 2019

Respectfully Submitted,

By: *Nicholas Lewis*
Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Nicholas Lewis, Esq.
Nesenoff & Miltenberg, LLP
363 7th Avenue, 5th Floor
New York, New York 10001