**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
STEPHEN ELLIOTT,                                       :
                                                       :
                                   **Plaintiff,**      :
                                                       :
                                                       :
              -against-                                :         **Case No.: 18-cv-5680**
                                                       :
                                                       :
MOIRA DONEGAN, and JANE DOES (1-30),                   :
                                                       :
                                   **Defendants.**     :
-------------------------------------------------------------------X


### PLAINTIFF'S MEMORANDUM OF LAW
### IN OPPOSITION TO DEFENDANT DONEGAN'S MOTION TO DISMISS



Dated:  June 6, 2019
        New York, New York


                                                        **NESENOFF & MILTENBERG, LLP**
                                                         Andrew T. Miltenberg, Esq.
                                                         Nicholas E. Lewis, Esq.
                                                         363 Seventh Avenue, 5th Floor
                                                         New York, New York 10001

## **Table of Contents**

Page

Table of Authorities ............................................................................ iii

Preliminary Statement............................................................................1

Factual Statement................................................................................2

Argument ......................................................................................3

I.    DEFENDANT'S CONTENTION THAT PLAINTIFF HAS NOT ADEQUATELY
      PLEADED ACTUAL MALICE IS FRIVOLOUS UNDER CLEAR AND
      CONTROLLING CASE LAW .....................................……...ıaı……………..3

   A. Defendant Donegan Has Not Established and Cannot Establish That Plaintiff is a
      Public Figure .............................................................................3

   B. Plaintiff has Pleaded an Incontrovertible Case of Actual Malice Under Clear,
      Controlling Supreme Court and Second Circuit Law ...............................7

      1.  Standard of Review........................................................7

      2.  Reckless Disregard for The Truth Exists When Defendant Had Serious Doubts
          as to Truth at the Time of Publication ..............................................7

      3.  Defendant Has Publicly Admitted That She Entertained Serious Doubt as to
          The Truth of the List's Accusations.................................................8

      4.  Defendant Additionally Acted with Reckless Disregard by Publishing Wholly
          in Reliance on Unverified Anonymous Sources without Making Any Effort to
          Verify or Substantiate ...........................................................11

      5.  Plaintiff has also Adequately Pleaded Knowledge of Falsity.........................12

      6.  The Complaint Pleads Particularized Facts Showing that Defendant Acted
          with Ill Will, Further Bolstering an Inference of Actual Malice ....................13

II.   DEFENDANT HAS NOT ESTABLISHED AND CANNOT ESTABLISH
      IMMUNITY UNDER SECTION 230 OF THE COMMUNICATIONS DECENCY
      ACT .....................................................................................14

   A. Defendant Grossly Misrepresents the Applicable Standard of Review.................14

i

B.  Far from Conclusively Establishing Immunity Under Section 230, The Allegations in the Complaint Establish that Defendant acted as an Information Content Provider and is Therefore Disqualified from Section 230 Immunity ...................................17

Conclusion .....................................................................................................................22

## **Table of Authorities**

**Cases**                                                                        **Page(s)**

Abbas v. Dixon,
480 F.3d 636 (2d Cir. 2007)...........................................................................15

Ashcroft v. Iqbal,
556 U.S. 662 (2009)........................................................................................7

Banco Santander de P.R. v. Lopez-Stubbe,
324 F.3d 12 (1st Cir. 2003)...........................................................................16

Barreca v. Nickolas,
683 N.W.2d 111 (Iowa 2004) ........................................................................11

Batzel v. Smith,
333 F.3d 1018 (9th Cir. 2003) .......................................................................19

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)....................................................................................7,13

Biro v. Condé Nast,
807 F.3d 541 (2d Cir. 2015)..........................................................7, 11, 12, 13

Broadspring, Inc. v. Congoo, LLC,
2014 U.S. Dist. Lexis 116070 (S.D.N.Y. 2014) .............................................6

Claude v. Wells Fargo Home Mortgage,
2014 U.S. Dist. Lexis 112493 (D. Conn. 2014)............................................16

Curran v. Amazon, Inc.,
 2008 U.S. Dist. 12479 (S.D. W. Va. 2008).............................................16, 20

Doctor's Assocs., Inc. v. QIP Holders, LLC,
2007 U.S. Dist. Lexis 28811 (D. Conn. 2007)....................................15, 16, 19

Doe v. GTE Corp.,
347 F.3d 655 (7th Cir. 2003) .........................................................................15

Duffy v. Leading Edge Prods.,
44 F.3d 308 (5th Cir. 1995) ...........................................................................13

Fair Housing Counsel v. Roomates.com, LLC,
521 F.3d 1157 (9th Cir. 2008) .......................................................................20

Franze v. Bimbo Foods Bakeries Distrib., LLC,
2019 U.S. Dist. Lexis 43432 (S.D.N.Y. 2019) ..................................................15

Foretich v. Capital Cities/ABC,
37 F.3d 1541 (4th Cir. 1994) .........................................................................3

FTC v. Accusearch, Inc.,
570 F.3d 1187 (10th Cir. 2009) ....................................................................20

FTC v. LeadClick Media, LLC,
838 F.3d 158 (2d Cir. 2016)........................................................14, 17, 21, 22

FTC v. LeanSpa, LLC,
920 F. Supp. 2d 270 (D. Conn. 2013) ......................................................15 16

Garrison v. Louisiana,
379 U.S. 64 (1964)...........................................................................................8

Gertz v. Robert Welch,
418 U.S. 323 (1974)..................................................................................4, 5, 6

Hale v. Scott,
371 F.3d 917 (7th Cir. 2004) ....................................................................9, 21

Hardaway v. Hartford Pub. Works Dep't,
879 F.3d 486 (2d Cir. 2018)...........................................................................15

Harte-Hanks Communications Inc. v. Connaughton,
491 U.S. 657 (1989)..........................................................................................8

Henry v. Nannys for Grannys Inc.,
86 F. Supp. 3d 155 (E.D.N.Y. 2015) ..............................................................16

Hutchinson v. Proxmire,
443 U.S. 111 (1979).......................................................................................5, 7

Hyson USA v. Hyson 2U, Ltd.,
821 F.3d 935 (7th Cir. 2016) .........................................................................16

Jang v. Trustees of St. Johnsbury Acad.,
331 F. Supp. 3d 312 (D. Vt. 2018)....................................................................5

Krauss v. Globe International, Inc.,
251 A.D.2d 191 (N.Y. App. Div. 1st Dept. 1998).........................................3, 5

Lebeau v. Town of Spencer,
167 F. Supp. 2d 449 (D. Mass. 2001) ...................................................................9

Lluberes v. Uncommon Prods.,
663 F.3d 6 (1st Cir. 2011).....................................................................................5

Martin v. Wilson Pub. Co.,
497 A.2d 322 (R.I. 1985) ......................................................................................9

Matthaus v. Hadjedi,
2018 N.Y. Misc. LEXIS 1682 (N.Y. Sup. Ct. 2018) ...........................................3

MCW, Inc. v. BadBusinessbureau.com, LLC,
2004 U.S. Dist. Lexis 6678 (N.D. Tex. 2004) ............................................20, 21

Meloff v. New York Life Ins. Co.,
240 F.3d 138 (2d Cir. 2001)..................................................................................8

New York Times Co. v. Sullivan,
376 U.S. 254 (1964)...............................................................................................7

Next Communications v. Viber Media,
2016 U.S. Dist. Lexis 43525 (S.D.N.Y. 2019) ..................................................16

Novak v. Overture Servs., Inc.,
309 F. Supp.2d 446 (E.D.N.Y. 2004) ...........................................................15, 16

NPS, LLC v. StubHub, Inc.,
2009 Mass. Super. Lexis 97 (Mass. Super 2009) ...............................................21

Patmont v. Int'l Christian Missionary Ass'n,
142 Minn. 147 (Minn. 1919)...............................................................................21

Richards v. Direct Energy Servs.,
915 F.3d 88 (2d Cir. 2019)....................................................................................7

Romero v. Bestcare, Inc.,
2017 U.S. Dist. Lexis 18786 (S.D.N.Y. 2019) ..................................................16

SEC v. Caledonian Bank, Ltd.,
145 F. Supp. 3d 290 (S.D.N.Y. 2015).................................................................16

St. Amant v. Thompson,
390 U.S. 727 (1968).......................................................................7, 9, 10, 11, 12

Sullivan v. American Airlines,
26 Misc. 3d 1202 (A) (N.Y. Sup. Ct. 2018) aff'd in part and modified in part on other
grounds, 80 A.D.3d 600 (N.Y. App. Div. 2d Dep't. 2011) .................................................. 4

Skakel v. Grace,
5 F. Supp. 3d 199 (D. Conn. 2014) ...................................................................................... 4

Spagnola v. Chubb Corp.,
574 F.3d 64 (2d Cir. 2009)........................................................................................... 15, 22

Taylor v. City of Shreveport,
798 F.3d 276 (5th Cir. 2015) ........................................................................................... 16

**Statutes**

47 U.S.C. § 230 .................................................................................................................. 14

**Other Authorities**

*Cambridge Dictionary,* https://dictionary.cambridge.org/us/dictionary/english/take-
something-with-a-grain-of-salt .............................................................................................. 9

Oxford English Dictionaries, https://en.oxforddictionaries.com/definition/rumour ........... 9

Oxford English Dictionaries, https://en.oxforddictionaries.com/definition/multiple ........ 18

<u>**Plaintiff's Memorandum of Law in Opposition to Defendant Donegan's Motion to Dismiss**</u>

**Preliminary Statement**

On or about October 11, 2017, a spreadsheet entitled "Shitty Media Men" was anonymously posted online, accusing certain men of rape, sexual assault, and other grossly defamatory sexual misconduct.  The men were identified by name; the sources of the accusations were not identified in any way.  Nor was any information provided supporting the vicious charges. *See* Plaintiff's Second Amended Complaint (hereafter the "Complaint"), filed May 6, 2019, ¶¶ 1-2, 17-18.

Plaintiff Stephen Elliott, a writer, was among the men named and defamed.  His entry on the document (hereafter the "List") included accusations of "rape," "coercion," and "sexual harassment," and was highlighted in red, indicating—according to an explanatory header published on the List itself—that he had been "accused of physical sexual violence by multiple women."  Complaint ¶¶ 24-28.  All these accusations were outrageously and completely false.

On October 12, 2017, *Buzzfeed* published an article about the List. More articles soon followed in the *New York Times,* the *New Yorker,* the *Atlantic, Harpers*, and elsewhere.  The List remained publicly available online; untold numbers of readers saw its allegations.  Mr. Elliott was blacklisted by important media outlets, vilified on social media, and ostracized by his community. His own sister telephoned him from Chicago to say she'd heard he'd been accused of rape.  As a direct result of the List, Plaintiff's career and reputation suffered irreparable damage, he has received a consistent stream of hateful harassment, his home has been repeatedly vandalized, and he has suffered devastating psychological injury, including suicidal ideation requiring intensive therapy, as well.  Complaint ¶¶ 29-30, 34-38, 40-43, 49-52.

1

In January 2018, Defendant Moira Donegan published an essay in *New York* magazine proudly taking credit for the List, admitting that she created it and circulated it online.  In this essay, Ms. Donegan also acknowledged that she was responsible for the red-highlighting system used on the List to communicate that an individual had been "accused of physical sexual violence by multiple women."  Ms. Donegan further admitted that at the time she published the List, she was "seriously" "concern[ed]" as to the truth of its accusations, some of which she conceded were "only . . . rumors."  Far from being upset about the devastating consequences false rape accusations could have, Ms. Donegan admitted in a subsequently deleted tweet that she "liked the witch hunt." For her efforts, Ms. Donegan has been well rewarded, receiving a book contract worth at least six figures.  *See* Complaint ¶¶ 27, 39, 44.

Plaintiff sued, and Defendant Donegan has moved to dismiss; this Memorandum is respectfully submitted by Mr. Elliott in opposition to that motion.  Evidently, Ms. Donegan believes that the Constitution and laws of this country permit her with complete impunity to recklessly or knowingly publish defamatory, anonymous, utterly false accusations destroying an innocent man's career, reputation, and personal life, without the slightest effort to confirm those accusations, and without any regard for their consequences. She is mistaken.

**Factual Statement**

The facts of this case are set forth in detail in the Complaint, which must, of course, be taken as true on this motion.  Given the Court's familiarity with this case, and because Defendant's motion must be denied as a matter of law, Plaintiff will not repeat the facts here but refer to them below insofar as they are pertinent to this motion.

**Argument**

Defendant Donegan makes two claims in support of her motion to dismiss: (1) that Plaintiff has not adequately pleaded actual malice; and (2) that she has immunity under the federal Communications Decency Act.  Both claims are frivolous.

<u>POINT ONE</u>

**DEFENDANT'S CONTENTION THAT PLAINTIFF HAS NOT ADEQUATELY PLEADED ACTUAL MALICE IS FRIVOLOUS <u>UNDER CLEAR AND CONTROLLING CASE LAW</u>**

Asserting without argument that Plaintiff is a public figure, Defendant Donegan contends that the Complaint does not adequately plead actual malice.  Memorandum of Law in Support of Defendant Moira Donegan's Motion to Dismiss, May 8, 2019 (hereafter "Def. Mem.") at 6-13.  This contention fails for two reasons.  First, Defendant has not established, and cannot establish, that Plaintiff is a public figure.  Second, the Complaint plainly pleads a valid claim of actual malice under the clear, controlling case law of the Supreme Court and Second Circuit.

A. Defendant Donegan Has Not Established And <u>Cannot Establish That Plaintiff Is A Public Figure.</u>

It is beyond dispute—although Defendant neglects to mention it in her Memorandum of Law—that in defamation cases, the *defendant* bears the burden of proof on the public figure issue.  *See, e.g.*, <u>Foretich v. Capital Cities/ABC</u>, 37 F.3d 1541, 1553 (4th Cir. 1994) ("the defamation plaintiff" is "presume[ed]" to be "a private individual, *subject to the defendant's burden of proving that the plaintiff is a public figure*") (emphasis added); <u>Krauss v. Globe International, Inc.</u>, 251 A.D.2d 191, 192 (N.Y. App. Div. 1st Dept. 1998); <u>Matthaus v. Hadjedj</u>, 2018 N.Y. Misc. LEXIS 1682 (N.Y. Sup. Ct. 2018) ("The defendant has the burden of proving that the plaintiff is a public figure."); <u>Sullivan v. American Airlines</u>, 26 Misc. 3d 1202(A) (N.Y. Sup. Ct. 2009) ("Whether a

3

plaintiff is a public figure for purposes of a defamation action is . . . to be determined by the Court, *and on that question the defendant has the burden of proof*.") (citations omitted) (emphasis added), *aff'd in part and modified in part on other grounds*, 80 A.D.3d 600 (N.Y. App. Div. 2d Dept. 2011).  The "defendant must show" that plaintiff is a public figure, and libel defendants do not meet that burden where they have "offered only conclusory statements that the Plaintiff is a public figure and have failed to support these assertions." Skakel v. Grace, 5 F. Supp. 3d 199, 212 (D. Conn. 2014) (denying motion to dismiss).

As in Skakel, Defendant Donegan has offered only conclusory assertions that Plaintiff is a public figure, with no support whatever.  Her Memorandum's discussion of this issue consists of a single footnote in which she states that "Mr. Elliott has not mounted any serious challenge to our repeated observation that he qualifies as a limited purpose public figure." Def. Mem. at 6 n.4.  She omits to mention: (a) that she—not Mr. Elliott—bears the burden of pleading and proof on this issue; (b) that an "observation" is not a proof; and (c) that Mr. Elliott was not required to introduce any evidence of his *not* being a public figure, much less "mount[]" a "serious challenge" to a showing that has not been made.  Because Defendant has offered only "conclusory statements that Plaintiff is a public figure" without any support, Skakel, 5 F. Supp. 3d at 212, her contention that Plaintiff has not adequately pleaded actual malice is legally frivolous and should be rejected as a matter of law.

Nor could Defendant have carried her burden of proof on this issue.  To prove that Plaintiff was a public figure, Defendant would have to show either that Plaintiff had "achieve[d] such pervasive fame or notoriety that he [became] a public figure for all purposes and in all contexts," or that he was a so-called limited purpose public figure.  Gertz v. Robert Welch, 418 U.S. 323, 351 (1974).  Crucially, Plaintiff must have been a public figure *prior to* the defamation.  *See*

Hutchinson v. Proxmire, 433 U.S. 111, 135 (1979); Lluberes v. Uncommon Prods., 663 F.3d 6, 18 (1ˢᵗ Cir. 2011) (stating "the requirement that public-figure status—whether acquired for all purposes and in all contexts or derived from a particular controversy—*predate the alleged defamation*") (emphasis added); Krauss, 251 A.D.2d at 192 (plaintiff must have been "a public figure *at the time the [defamation] was published*") (emphasis added).   Neither the unwanted notoriety Plaintiff has suffered as a result of the List, nor his subsequent efforts to refute the malicious charges against him, have any bearing on his public figure status.  "[T]hose charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." Hutchinson, 433 U.S. at 135.

No facts before this Court remotely suggest that Mr. Elliott was an all-purpose public figure prior to the List's publication.  As stated in the Complaint, Mr. Elliott is a "private citizen," not a "celebrity."  Complaint ¶ 3.  At the time of the libel, he was neither famous nor notorious.  By no stretch of the imagination had he attained a role of "pervasive involvement in the affairs of society." Gertz, 418 U.S. at 352.  In Gertz, the Supreme Court held that a successful book author who was also a prominent civil rights attorney was *not* an all-purpose public figure.  *Id*. at 351.  Accordingly, Mr. Elliott cannot be one either.

Nor could Defendant prove that Mr. Elliott was a limited purpose public figure prior to the List's publication.  "In the Second Circuit, to establish that a plaintiff is a limited-purpose public figure, the defendant must show that a plaintiff . . . 'voluntarily injected himself into a public controversy *related to the subject of the litigation*'" and "'assumed a position of prominence in [that] controversy.'" Jang v. Trustees of St. Johnsbury Acad., 331 F. Supp. 3d 312, 338 (D. Vt. 2018) (citations omitted) (emphasis added).  No facts before this Court remotely suggest that Mr. Elliott had any involvement in any "public controversy related to the subject of [this] litigation,"

5

much less that he had "assumed a position of prominence" therein, until *after* the List accused him of rape. *See, e.g.*, <u>Broadspring, Inc. v. Congoo, LLC</u>, 2014 U.S. Dist. Lexis 116070 at * 23-24 (S.D.N.Y. 2014) (plaintiff cannot be a public figure based on controversy arising out of defendant's own allegations).

Instead of trying to carry her burden of proof on any of these issues, Defendant argues that the Complaint somehow concedes the public figure issue by "expressly addressing itself to an actual malice pleading threshold." Def. Mem. at 6 n.4. This absurd argument would not only preclude defamation plaintiffs from prudently pleading actual malice on pain of waiving the public figure issue; in addition, it forgets that a *private figure* defamation plaintiff must *also* prove actual malice, in order to obtain punitive damages. <u>Gertz</u>, 418 U.S. at 350; *see* Complaint at p. 16 (seeking punitive damages).[1]

Defendant Donegan is apparently trying to capitalize on the fact that Mr. Elliott may *now* be a public figure—now that she published outrageously false rape accusations against him, destroying his livelihood, in an online document reported on by national news media, and now that he has publicly refuted those charges. But Defendant "cannot, by [her] own conduct, create [her] own defense by making the claimant a public figure." <u>Hutchinson</u>, 433 U.S. at 135. Because

---

[1] Defendant also asserts—without citation—that "at the pre-motion conference held on March 1, 2019, [Plaintiff] all but conceded that the actual malice standard applies." *Id*. Even were it true, this assertion would be irrelevant: an "all but concession" is not a concession and would have no legal effect. But the assertion is false. At that conference, the Court stated that the parties did not "*seem*" to be disputing the public figure issue, adding that "as I read *Defendant's* letter," Plaintiff was arguing that the actual malice standard was met. Tr. of Mar. 1, 2019 Conf. at 10-11 (emphasis added); *See* Declaration of Nicholas Lewis ("Lewis Decl."), June 6, 2019, Exh. A. Plaintiff's counsel responded, "Yes, your Honor, we believe it's— the actual malice is certainly met here," and the Court replied, "Let's put that aside." *Id*. at 11. No concession of any kind was made. Plaintiff's counsel merely stated that the actual malice standard was met in this case, so that the public figure issue did not have to be reached. As the Court directed, the issue was thereafter "put aside"—no further colloquy was had on it. Moreover, in correspondence to the Court (served on Defendant), counsel explicitly reserved Mr. Elliott's right to contest the public figure issue. Pltf. Ltr. January 18, 2019, ECF Doc. 18 at 2, FN2; Pltf. Ltr. April 22, 2019, ECF Doc. 33 at 2, FN1; *see* Lewis Decl., Exh. B.

Defendant has not remotely proved that Plaintiff was a public figure at the time of the libel, her motion to dismiss on actual malice grounds must be denied as a matter of law.

      B.      Plaintiff Has Pleaded an Incontrovertible Case of Actual Malice
                    Under Clear, Controlling Supreme Court and Second Circuit Case Law.

Nevertheless, Plaintiff would welcome the Court reaching the issue of actual malice. Defendant's arguments on this point rely on an incorrect definition of reckless disregard for the truth and an ostrich-like avoidance of facts pleaded in the Complaint.

      1.      Standard of Review

Under Biro v. Condé Nast, 807 F.3d 541, 545 (2d Cir. 2015), **a public figure defamation plaintiff must** "plead facts demonstrating that the claim of actual malice is plausible." **As always in a motion to dismiss, the Court must** "accept[] all factual allegations [in the complaint] as true and draw[] all reasonable inferences in favor of the plaintiff." Richards v. Direct Energy Servs., LLC, 915 F.3d 88, 105 (2d Cir. 2019).  The plausibility standard "does not impose a probability requirement," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007); rather, it "asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  **Plaintiff has more than met that burden here.**

      2.      Reckless Disregard For The Truth Exists When Defendant
                    Had Serious Doubts As To Truth At The Time Of Publication.

"Actual malice" in defamation law includes "reckless disregard" for the truth, New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964); Biro, 807 F.2d at 544, which exists when the defendant "*entertained serious doubts as to the truth of his publication*."  St. Amant v. Thompson, 390 U.S. 727, 731 (1968) (emphasis added); Harte-Hanks Communications Inc. v. Connaughton, 491 U.S. 657, 667 (1989); Meloff v. New York Life Ins. Co., 240 F.3d 138, 146 (2d Cir. 2001).

In her Memorandum of Law, Defendant Donegan repeatedly and misleadingly implies that reckless disregard instead requires "'a high degree of awareness' of a statement's 'probable falsity.'" Def. Mem. at 7, 11, 12 (quoting <u>Garrison v. Louisiana</u>, 379 U.S. 64, 74 (1964)).  This is false.  "[R]eckless disregard" is proven when the defendant *either* "made the publication with a 'high degree of awareness of . . . probable falsity' *or* . . . *'*entertained serious doubts as to the truth' of his publication."  <u>Harte-Hanks</u>, 491 U.S. at 667 (emphasis added) (citations omitted); <u>Meloff</u>, 240 F.3d at 146 ("Constitutional malice requires *either* 'a high degree of awareness of [the statement's] probable falsity' *or* 'serious doubts as to its truth.'") (emphasis added) (citations omitted).  Defendant's attempt to obfuscate this disjunctive—failing to clearly acknowledge that the "serious doubt" test is an independent standard for establishing reckless disregard—is not surprising, because Ms. Donegan has publicly admitted that she entertained serious doubt as to the truth of the accusations on the List.

        3.      <u>Defendant Has Publicly Admitted That She Entertained<br>Serious Doubt As To The Truth of the List's Accusations.</u>

As stated earlier and pleaded in the Complaint, Defendant Donegan published an essay for *New York* magazine in January 2018, taking credit for creating and circulating the List.  Complaint ¶ 62.  In that essay, as the Complaint states, Defendant Donegan wrote:

> There were pitfalls.  *The document was indeed vulnerable to false accusations, a concern I took seriously.*  I added a disclaimer to the top of the spreadsheet: "This document *is only a collection of misconduct allegations and rumors*.  Take everything *with a grain of salt*."

*Id.* (quoting Moira Donegan, "I Started the Media Men List: My Name is Moira Donegan," <u>https://www.thecut.com/2018/01/moira-donegan-i-started-the-media-men-list.html</u> (emphasis added)).

In other words, Defendant has publicly admitted that at the time she published the List, she knew perfectly well that the List was "vulnerable to false accusations" and that she was "seriously" "concern[ed]" about such falsity.  She went so far as to add a "disclaimer" to the List

acknowledging that some or all the accusations on the List were "only" "rumors"—and a rumor is by definition a "currently circulating story or report of *uncertain or doubtful truth*."  Oxford English Dictionaries, https://en.oxforddictionaries.com/definition/rumour (emphasis added).

Thus, this is the rare defamation case in which Defendant has already admitted, out of her own mouth, that she "in fact entertained serious doubts as to the truth of [her] publication." St. Amant, 390 U.S. at 731.  There is not a hair's breadth between a "serious[]" "concern" about falsity and a "serious doubt" as to truth.  To say that a statement must be "taken with a grain of salt" is precisely to express serious doubt as to its truth.    E.g., Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/take-something-with-a-grain-of-salt    (to "take something with a grain of salt" means to "understand that something is *likely to be untrue or incorrect*") (emphasis added).  And a person cannot believe that an accusation is "*only*" a "*rumor*" without "entertain[ing] serious doubts" as to its veracity sufficient to constitute actual malice.  *See* Hale v Scott, 371 F.3d 917, 919 (7th Cir. 2004) (Posner, J.) (finding actual malice where defendant published what he himself described as a "rumor" accusing plaintiff of sexual misconduct, and holding that a libeler cannot escape liability by "label[ing]" the accusation "a 'rumor' the accuracy of which the libeler declines to vouch for"); Lebeau v. Town of Spencer, 167 F. Supp. 2d 449, 456 (D. Mass. 2001) (denying defendants summary judgment because some of their defamatory allegations were acknowledged to be mere "hearsay and uncorroborated rumor," from which "a reasonable jury could conclude that the allegations were published with actual knowledge of or reckless disregard for their falsity"); Martin v. Wilson Pub. Co., 497 A.2d 322, 330 (R.I. 1985) (holding that free speech and other privileges are "wholly inapplicable to [defamatory] rumors" and "*publication of such rumors makes the publisher responsible under the 'actual malice' test*") (emphasis added).

9

In her Memorandum, Defendant's counsel struggles futilely to evade the plain meaning and import of Donegan's January 2018 admissions. The Memorandum argues that Donegan's admissions do not show "a high degree of awareness" of "probable falsity," Def. Mem. at 11, but this claim, as noted above, misrepresents the definition of reckless disregard, which under St. Amant requires only serious doubts as to the truth, not awareness of probable falsity. The Memorandum further claims Ms. Donegan is "overwhelmingly inclined to believe women when they say they were sexually assaulted" and "presumptively believes women who say they were raped." Def. Mem. at 13. But assertions in a memorandum of law about what Defendant "presumptively" believed are not facts; are not evidence of any kind before this Court; are not to be taken as true on a motion to dismiss; and in any event contradict Defendant's own admissions, which concede that she did, in fact, entertain serious doubts as to the truth of the List's accusations. At the very most, the Memorandum's claims about what Ms. Donegan believed raise disputed issues of fact, thus not supporting her motion to dismiss, but rather requires its rejection.[2]

_____

[2] Defendant also suggests that Plaintiff must show that Ms. Donegan was highly aware that the List's accusations against Mr. Elliott "*in particular*" were probably false. Def. Mem. at 12 (emphasis added). Once more, Defendant misstates the test for reckless disregard (awareness of probable falsity is not required), but in addition misstates Plaintiff's burden. Reckless disregard for truth is a state of mind; Defendant had that state of mind if she published the List despite serious overall doubts as to the truth of its accusations. *See* Harte-Hanks, 491 U.S. at 667 (reckless disregard exists if defendant "entertained serious doubts as to the truth *of his publication*") (emphasis added) (citation omitted). Indeed, her reckless disregard for the truth would be *especially* clear in Mr. Elliott's case if she had no information about him "in particular," because in that event, from her viewpoint, the List's defamatory accusations against him would have been among the mere "allegations and rumors" whose falsity she was so "seriously" "concern[ed]" about that she warned readers to take them "with a grain of salt." In any event, it is plainly sufficient on this motion for Plaintiff to have pleaded reckless disregard by quoting Defendant's own public admission that she published the List as a whole with serious doubts as to its truth; discovery will shed further light on what, if any, specific facts she knew about Mr. Elliott.

    4.      Defendant Additionally Acted With Reckless Disregard
              By Publishing Wholly in Reliance on Unverified Anonymous
              <u>Sources Without Making Any Effort to Verify or Substantiate.</u>

As the Supreme Court has stated, and as the Second Circuit has explicitly reaffirmed, a plaintiff adequately pleads reckless disregard if the complaint avers "that the allegedly defamatory statements were 'based wholly on an unverified, anonymous'" source. <u>Biro</u>, 807 F.3d at 545 (quoting <u>St. Amant</u>, 390 U.S. at 732). Such is the case here.

The Complaint specifically pleads that, to the extent Defendant Donegan did not herself fabricate or author the List's libelous statements against Mr. Elliott, she published them wholly in reliance on unverified, fully anonymous sources—sources whose identities were not only unrevealed to readers of the List but unknown to Donegan herself. Complaint ¶ 66. There can be no question as to the plausibility of this allegation. The List was deliberately designed to allow individuals to post accusations with full anonymity of this kind; a header on the List expressly instructed individuals on how to do so.[3] Accordingly, Defendant's motion to dismiss must be rejected on this ground as well. *See, e.g.*, <u>Barreca v. Nickolas</u>, 683 N.W.2d 111, 123 (Iowa 2004) (denying summary judgment in a defamation case where defendant "published the allegation to the public with no basis other than an anonymous and uncorroborated tip").[4]

---

[3] *See* Lewis Decl., Exh. C for portion of the List with Header in Row 1, Column C, instructing individuals how to post accusations anonymously, from the List found at https://docs.google.com/spreadsheets/d/1-VMgNMqk1kG8Fr-1nHEu5fsJRumWxcACJthDqH26daI/edit#gid=0 .

[4] Defendant quotes the non-precedential summary order in <u>Cabello-Rondon v. Dow Jones & Co.</u>, 720 Fed. Appx. 87, 89 (2d Cir. 2018), for the unquestioned proposition that "reliance on anonymous sources alone does not support an inference that the publisher acted with actual malice." Def. Mem. at 12. But Defendant appears to be trying to mislead the Court into misinterpreting the word "alone" in that proposition. The <u>Cabello-Rondon</u> Court plainly meant that reliance on anonymous sources does not *in and of itself* support an inference of actual malice—as where defendant additionally relied on *other* information or *investigated* the anonymous tip. <u>Cabello-Rondon</u> cannot mean that an accusation based *wholly* on an *unverified*, *uninvestigated* anonymous source does not support an inference of actual malice; that proposition would

5.    <u>Plaintiff Has Also Adequately Pleaded Knowledge of Falsity.</u>

Actual malice also exists when a defendant publishes a defamatory statement knowing it to be false, and the Supreme Court observed in <u>St. Amant</u> that knowledge of falsity can be found "where a story is fabricated by defendant." 390 U.S. at 732.  And as the Second Circuit stated in <u>Biro</u>, a defamation plaintiff "may allege 'a story [was] fabricated by the defendant' *if the defendant provides no source for the allegedly defamatory statements*."  <u>Biro</u>, 807 F.3d at 545 (quoting <u>St. Amant</u>, 390 U.S. at 732).  Plaintiff has satisfied this standard as well.

The Complaint specifically pleads that Defendant Donegan personally fabricated some or all of the libelous accusations against Plaintiff contained in the List, including the statement (communicated by highlighting his entry in red) that Plaintiff had been accused of sexual violence by multiple women.  Complaint ¶¶ 27, 59.  As the Complaint further states, Defendant Donegan has never provided any source for any of the accusations against Plaintiff, refusing direct requests from Plaintiff to do so.  Complaint ¶ 59.  Thus under <u>Biro</u>, Plaintiff has adequately pleaded that Defendant Donegan personally fabricated some or all of the accusations against Plaintiff.

In response, Defendant's Memorandum of Law attempts to put yet further self-serving factual assertions before the Court.  The Memorandum states without any support that Mr. Elliott was "a total stranger" to Ms. Donegan, and asks, "why would Ms. Donegan fabricate a lie about a total stranger?"  Def. Mem. at 8.  It is simply not known at this point in the proceedings whether Ms. Donegan knew Mr. Elliott, or knew of him, or had read his work, or knew individuals who claimed to know something about him, at the time she published the List.  And despite all the improper, non-evidentiary factual assertions in Defendant's Memorandum, the one fact she does

---

squarely contradict *Biro* and numerous other decisions, such as the just-cited <u>Barecca v. Nickolas</u>, as well as the Supreme Court's opinion in <u>St. Amant</u>, 390 U.S. at 372.

*not* assert is a *denial*: nowhere in the Memorandum does she squarely state that she did *not* create some or all of the List's libelous allegations against Mr. Elliott.  Instead, she artfully asks "why" she would have done such a thing, without actually denying that she did it.  This omission is striking given the Memorandum's propensity for asserting unsupported facts, and her suggestion of improbability ignores the applicable standard of review.  *See* Twombly, 550 U.S. at 556 ("a well-pleaded complaint may proceed even if" the facts alleged appear "improbable").[5]

Only discovery can shed further light on these issues.  Under the Second Circuit's clear ruling in *Biro*, Plaintiff is more than entitled to such discovery.

6.   The Complaint Pleads Particularized Facts Showing That Defendant Acted With Ill Will, Further Bolstering An Inference of Actual Malice.

Finally, Plaintiff has pleaded particularized facts showing that Defendant Donegan acted with ill-will and animosity, which, while neither equivalent to actual malice nor required to prove it, is admissible to bolster an inference of actual malice.  *E.g.*, Duffy v. Leading Edge Prods., 44 F.3d 308, n.10 (5th Cir. 1995) ("Although we recognize that proof of ill will or animosity is not required to show actual malice, evidence of ulterior motive can often bolster an inference of actual malice.") (citation omitted).

As pleaded in the Complaint, between October, 2017 and July, 2018, Defendant Donegan made several public statements on social media evincing animosity toward men, such as "The problem is men," and "I really hate men."  Complaint ¶ 31.  Indeed, with specific reference to the

---

[5] Defendant adds a hand-waving contention that by pleading allegations in the alternative, or by quoting from Ms. Donegan's January, 2018 essay, the Complaint somehow contains contradictory allegations, forfeiting the right to be taken as true on this motion. Def. Mem. at 9.  This argument barely deserves reply. Alternative pleadings are of course expressly permitted, Fed. R. Civ. P. 8(d)(2)-(3), and Plaintiff is undoubtedly entitled to quote particularly damaging admissions from Defendant's 2018 essay without somehow "incorporating" or assuming the truth of other statements made therein.  If there are internal contradictions in Ms. Donegan's 2018 essay, that is a problem she has to answer for.

List, Defendant Donegan stated "I like the witch hunt," *id*., effectively admitting that she looked forward to and took pleasure in the destructive effect that The List would have on the lives and careers of the men who were the targets of The List's unsubstantiated, anonymous accusations, even if those men were falsely accused.

Thus the Complaint more than adequately pleads that Defendant entertained serious doubt as to the truth of the List's accusations, that she relied wholly on anonymous, unverified sources without any investigation, that she personally fabricated accusations against Plaintiff, and that she acted with animosity and ill-will.  For all these reasons, Defendant's motion to dismiss for failure to plead actual malice must be denied.

POINT TWO

## DEFENDANT HAS NOT ESTABLISHED AND CANNOT ESTABLISH IMMUNITY UNDER SECTION 230 OF THE COMMUNICATIONS DECENCY ACT

Defendant Donegan also seeks dismissal under Section 230 of the federal Communications Decency Act ("CDA").  Def. Mem. at 13-20.   When it applies, Section 230 immunizes "interactive computer service" providers like Google or Twitter from being held liable for unlawful content posted by their users—content that the interactive service provider carried, but did not itself author, create, develop, encourage, or otherwise materially contribute to.   47 U.S.C. § 230; FTC v. LeadClick Media, LLC, 838 F.3d 158, 174 (2d Cir. 2016).  Defendant has not remotely established at this stage of the proceedings—and will not be able to establish, at any stage—that she is entitled to immunity under the CDA.

A.     Defendant Grossly Misrepresents The Applicable Standard of Review.

Defendant argues that the Complaint "*fails to establish* that Ms. Donegan 'created or developed'" the List's defamatory content—as if Plaintiff bore the burden of pleading as to her

14

Section 230 immunity claim.  Def. Mem. at 20 (emphasis added).  According to Defendant, if the Complaint does not conclusively refute Section 230 immunity, the Court should dismiss.  *See id.* at 15.  Defendant has grossly misrepresented the applicable standard of review.

What Defendant leaves out is that Section 230 immunity is *an affirmative defense*, and as such, Defendant—not Plaintiff—bears the burden of pleading and proof.  *E.g.*, Doe v. GTE Corp., 347 F.3d 655, 657 (7th Cir. 2003) (holding that Section 230 immunity is an "affirmative defense"); FTC v. LeanSpa, LLC, 920 F. Supp. 2d 270, 275 (D. Conn. 2013) ("Immunity under the CDA constitutes an affirmative defense"); Doctor's Assocs., Inc. . QIP Holders, LLC, 2007 U.S. Dist. Lexis 28811 at * 2 (D. Conn. 2007) ("Section 230 immunity constitutes an affirmative defense") (citation omitted); Novak v. Overture Servs., Inc., 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004) (same).

It is hornbook law that a plaintiff has no obligation to "anticipate" affirmative defenses in his complaint or to allege facts refuting them. "The pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses . . . and to affirmatively plead facts in avoidance of such defenses." Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007); *see* Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 490-91 (2d Cir. 2018) (holding that "the burden of pleading and proving" an "affirmative defense" "lies with defendants"); Spagnola v. Chubb Corp., 574 F.3d 64, 73 (2d Cir. 2009) (denying motion to dismiss because plaintiff "was not required to preemptively plead facts refuting" affirmative defense); Franze v. Bimbo Foods Bakeries Distrib., LLC, 2019 U.S. Dist. Lexis 43432 at * 13 (S.D.N.Y. 2019).

Accordingly, Rule 12(b)(6) motions to dismiss based on affirmative defenses are "generally inappropriate." Taylor v. City of Shreveport, 798 F.3d 276, 286 (5th Cir. 2015); *see,*

*e.g.*, <u>Next Communications v. Viber Media</u>, 2016 U.S. Dist. Lexis 43525 at * 22 (S.D.N.Y. 2016) ("This argument, which is essentially an affirmative defense, is inappropriate on a motion to dismiss."); <u>Claude v. Wells Fargo Home Mortgage</u>, 2014 U.S. Dist. Lexis 112493 at * 49 (D. Conn. 2014) ("this is an affirmative defense, which is inappropriate to consider on a motion to dismiss").  Because "[i]mmunity under the CDA constitutes an affirmative defense," a Section 230 immunity claim "'is generally not foddered for a Rule 12(b)(6) motion.'" <u>LeanSpa</u>, 920 F. Supp. 2d at 275 (denying motion to dismiss) (quoting <u>Doctors Associates</u>, 2007 Dist. Lexis 28811 at * 20); <u>Novak</u>, 309 F. Supp. 2d at 452; <u>Curran v. Amazon.com, Inc.</u>, 2008 U.S. Dist. 12479 at * 33-34 (S.D. W. Va. 2008).

As courts have repeatedly held, motions to dismiss **based on an affirmative defense must be denied unless** the affirmative defense is "unambiguously establish[ed]," "conclusively establish[ed]," "clearly established," or "unequivocally" established on "the face of the complaint."  <u>Hyson USA v. Hyson 2U, Ltd.</u>, 821 F.3d 935, (7th Cir. 2016) (denying motion to dismiss because the allegations in the complaint did not "unambiguously establish" affirmative defense); <u>Banco Santander de P.R. v. Lopez-Stubbe</u>, 324 F.3d 12, 16 (1st Cir. 2003) (affirmative defense must be "conclusively establish[ed]" by the allegations in the complaint to warrant dismissal); <u>Romero v. Bestcare, Inc.</u>, 2017 U.S. Dist. Lexis 18786 at * (E.D.N.Y. 2017) (denying motion to dismiss "because the face of the complaint does not clearly establish defendant's right to an affirmative defense"), *adopted*, 2017 U.S. Dist. Lexis 46760 (E.D.N.Y. 2017); <u>SEC v. Caledonian Bank Ltd.</u>, 145 F. Supp. 3d 290, 311 (S.D.N.Y. 2015) (denying 12(c) motion to dismiss based on affirmative defense where pleadings were not "conclusive"); <u>Henry v. Nannys for Grannys Inc.</u>, 86 F. Supp. 3d 155, 159 (E.D.N.Y. 2015) (denying motion to dismiss based on

affirmative defense where defense was not "unequivocally" demonstrated on the face of the complaint).  This standard is not remotely satisfied here.

> B.     Far From Conclusively Establishing Immunity Under Section 230, The Allegations in the Complaint Establish That Defendant Acted As An Information Content Provider And Is Therefore Disqualified From Section 230 Immunity.

Section 230 of the CDA grants immunity to "interactive computer service" providers who serve, as the Second Circuit has put it, as a "neutral intermediary" for others' content; it does *not* immunize "internet content providers."  47 U.S.C. § 230(c); FTC v. LeadClick Media, LLC, 838 F.3d 158, 174 (2d Cir. 2016).  The term "internet content provider" is defined—not narrowly, as Defendant falsely claims, Def. Mem. at 15—but broadly, to include "any person or entity that is responsible, *in whole or in part*, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3) (emphasis added). "This definition 'cover[s] even those who are *responsible for the development of content only in part*.'"  LeadClick, 838 F.3d at 174 (emphasis added) (citation omitted).

An individual can act *both* as an interactive service provider and as a content provider at the same time; if so immunity, is lost.  As the Second Circuit has held, Section 230's "grant of immunity applies *only if the interactive service provider is not **also** an 'information content provider' of the content which gives rise to the underlying claim*."  LeadClick, 838 F.3d at 174 (emphasis added).

Here, although Plaintiff was under no obligation to plead facts refuting Section 230 immunity, his allegations (taken as true) conclusively establish that Defendant Donegan was a content provider with respect to Mr. Elliott's entry on the List.[6]  The Complaint alleges that Ms.

---

[6] Plaintiff does not concede that Section 230's other requirements—for example, that Plaintiff's claims against Ms. Donegan necessarily treat her as a "publisher"—are satisfied, but because Defendant has plainly

Donegan was personally responsible for posting some or all of the List's libelous accusations against Mr. Elliott, including the false and defamatory statement (communicated by highlighting his entry in red) that he had been "accused of physical sexual violence by multiple women." Complaint ¶¶ 27, 59.  There can be no dispute that these facts make Defendant a "content provider" under Section 230, disqualifying her from immunity, and for this reason alone, Defendant's motion to dismiss must be denied.

Even Defendant does not seem to challenge this conclusion.  See Def. Mem. at 13 (apparently conceding that her Section 230 argument does not apply to the extent that Ms. Donegan personally created Mr. Elliott's entry on the List).  Nevertheless, Defendant seems to believe that she can somehow resuscitate her Section 230 argument by asserting that Ms. Donegan's contributions to Plaintiff's entry on the List merely repeated what others had already posted there. Def. Mem. at 19-20.

But this assertion is far from evident "on the face of the complaint" and cannot be accepted as true for purposes of this motion.  For example, as just noted, the red highlighting indicated that Plaintiff had been "accused of physical sexual violence by multiple women," and this statement was *not* communicated clearly by anything else in his entry.  See Complaint ¶¶ 25, 27.[7]  In any event, it simply isn't known at this juncture whether Defendant was personally responsible for the entirety of Plaintiff's entry on the List, or if only for some portions of it, what those portions were

---

failed to establish that she was not a content provider, the Court need not reach Section 230's other requirements on this motion.

[7] Elsewhere on Plaintiff's entry, Defendant Donegan and/or one of the other Defendants wrote, "Multiple women allege misconduct," Complaint ¶ 25, but that is by no means equivalent to multiple accusations of "physical sexual violence."  Plaintiff's entry also included the phrase "rape accusations," but rape is often understood to include sex not involving physical violence (for example, sex with a person who is intoxicated), and the term "rape accusations" could refer to just two accusations, whereas the word "multiple" can be reasonably understood to mean "numerous" or many or "several" (*i.e.*, more than two). See, e.g., Oxford English Dictionaries, https://en.oxforddictionaries.com/definition/multiple.

and what role she had in developing others' contributions.  Factual issues such as these are plainly inappropriate in a motion to dismiss based on an affirmative defense.  *See* <u>Doctors' Assocs.</u>, 2007 U.S. Dist. Lexis 28881 at * 7 ("taking the allegations in the Fourth Amended Complaint as true for purposes of this motion, the court cannot, as a matter of law, state that 'the plaintiff can prove no set of facts in support of' a finding of no immunity under the CDA.  Instead, whether or not [defendant] is an 'information content provider' is a question awaiting further discovery.").

Defendant also suggests the possibility that when Ms. Donegan personally posted Plaintiff's entry on the List, she was merely typing in allegations she had heard from someone else. Def. Mem. at 16.  According to Defendant, if Ms. Donegan was merely "adding someone else's statements about Mr. Elliott into the Spreadsheet," she would be immune under Section 230 and entitled to dismissal.  *Id*. This argument is baseless.

To begin with, it once again raises factual issues outside the scope of the pleadings.  (Did the alleged third party provide information to Ms. Donegan for use on the Internet, or did Ms. Donegan simply hear a rumor about Mr. Elliott and choose to post that rumor on the List?[8]  Did Ms. Donegan alter the supposed third party's allegation in any material way?)  As stated above, it was not Plaintiff's burden to answer such questions or plead allegations on these matters in his Complaint.  *See, e.g*,. <u>Curran</u>, 2008 U.S. Dist. Lexis at * 33-34 (denying motion to dismiss under Section 230 because defendant "relies upon the absence of facts not pled in the complaint," thereby

---

[8] If the information was *not* provided to Ms. Donegan for use on the Internet, then Defendant would not even arguably qualify for Section 230 immunity.  See, e.g, <u>Batzel v. Smith</u>, 333 F.3d 1018, 1033 (9th Cir. 2003) (Section 230 immunity does not extend to information received from third parties if that information was "not 'provided' for use on the Internet") (quoting 47 U.S.C. § 230(f)(3)).  Plaintiff does not concede that Section 230 would immunize Ms. Donegan if the information *was* conveyed to her for use on the Internet, but the Court need not reach that issue on this motion.

"seek[ing] to place the onus on the plaintiff to plead around affirmative defenses, which it need not do").

More fundamentally, if Section 230 immunized individuals who create an interactive Internet document and then personally post onto it unlawful content learned from a third party, the results would be absurd.  Suppose an individual wanted knowingly and unlawfully to publish a false and malicious rumor about A that she had heard from B; or to disclose true but private facts about C that she'd heard from D; or to publish a trade secret confided to her by E; or to identify the real name of a covert agent revealed to her by F.  These acts would all be unlawful, yet on Defendant's argument, she could do any of them and gain Section 230 immunity through the simple expedient of creating an online interactive spreadsheet and then posting the unlawful content herself.  Nothing in the text of Section 230 remotely supports so absurd a conclusion.  If Defendant personally typed libelous statements against Plaintiff into the List, she was plainly the content provider and cannot escape liability simply by asserting that she heard the allegations or rumors from "someone else."

Finally, even if Defendant Donegan did not personally enter any of the List's libelous statements against Mr. Elliott, she would still be disqualified from Section 230 immunity.  As the Second Circuit and other courts have stated, interactive computer service providers forfeit their Section 230 immunity if through their website's design, or through its headers, or through personal communications with other people, or otherwise, they "specifically encourage[d]" the posting of unlawful content.  *LeadClick*, 838 F.3d at 174 (quoting <u>FTC v. Accusearch Inc</u>., 570 F.3d 1187, 1199 (10th Cir. 2009)); <u>Fair Housing Council v. Roommates.com</u>, LLC, 521 F.3d 1157, 1171 (9th Cir. 2008) (rejecting Section 230 immunity and distinguishing cases where "the website *did absolutely nothing to encourage the posting of defamatory content*") (emphasis added); <u>MCW,</u>

Inc. v. Badbusinessbureau.com, LLC, 2004 U.S. Dist. Lexis 6678 at * 34 (N.D. Tex. 2004) (denying motion to dismiss where plaintiff alleged that "defendants actively encourage" the posting of defamatory content); NPS, LLC v. StubHub, Inc., 2009 Mass. Super. Lexis 97 (Mass. Super. 2009) (denying StubHub summary judgment on Section 230 immunity grounds where disputed issues of fact existed about StubHub's "inducing or encouraging" users to post unlawful content). "[D]efendants cannot disclaim responsibility for disparaging material that they actively solicit." Badbusinessbureau.com, 2004 U.S. Dist. Lexis 6678 at * 34. By "specifically encourag[ing]" illegal content, a website provider "materially contribute[s]" to the "unlawfulness" of the online material and becomes liable as a content provider under the CDA. LeadClick, 838 F.3d at 174 (quoting Roommates.com, 521 F.3d at 1168. Defendant Donegan did just that.

Publishing false, unverified and unsubstantiated "rumors" of defamatory sexual misconduct is of course unlawful; it is, and has long been, libel per se. E.g., Hale v. Scott, 371 F.3d 917, 919 (7th Cir. 2004) (Posner, J.); Patmont v. Int'l Christian Missionary Ass'n, 142 Minn. 147, 149 (Minn. 1919) ("one cannot defend against a charge of libel by proving that he did no more than circulate or repeat rumors libelous in character") (collecting authorities). But as the Complaint expressly alleges, Defendant Donegan specifically and actively "encouraged" people, including the List's recipients, to post on the List "rumors they had heard, even if they did not have personal knowledge of the allegations." Complaint ¶¶ 21, 22.

Indeed, as described above, Ms. Donegan put a statement on top of the List describing it as "only a collection of allegations and rumors" that should be taken "with a grain of salt." Id. ¶ 62. This statement alone could reasonably have been interpreted by the List's recipients as encouraging them to post their own "rumors"; in other words, recipients could plausibly have inferred from this statement that the List was intended to be a site not only for personal accounts

and well-founded allegations, but for unsubstantiated rumors as well.  (Nowhere did the List advise users that they were only to post about their own experiences.)  Further facts concerning what kinds of content Defendant encouraged people to post on the List, and whether such encouragement led to the libelous accusations against Plaintiff, will not be known until discovery; under clear Second Circuit case law, Plaintiff was under no obligation to plead such facts in his Complaint.  *See* Spagnola, 574 F.3d at 73 (denying motion to dismiss because plaintiff "was not required to preemptively plead facts refuting" affirmative defense).

Because Section 230 immunity is an affirmative defense, Defendant must establish that she was not a "content provider" under the CDA.  She has not done so on this motion and will not be able to do so.  This case differs radically from those in which a "website did absolutely nothing to encourage the posting of defamatory content."  Roommates.com, 521 F.3d at 1171.  Because Ms. Donegan "specifically encourage[d]" the unlawful posting of defamatory, unsubstantiated rumors on the List, she forfeited any Section 230 immunity she might otherwise have had.  LeadClick, 838 F.3d at 174.  Instead of serving merely as a "neutral intermediary," Defendant Donegan "materially contributed" to the "unlawfulness" of the List's content and is therefore liable as an information content provider. *Id.*

<u>**Conclusion**</u>

For the foregoing reasons, Plaintiff respectfully requests that Defendant Donegant's motion be denied in its entirety.

Dated: New York, New York
       **June 6, 2019**

                                     **NESENOFF & MILTENBERG, LLP**

                                     **/s/ Nicholas Lewis**
                                     **Nicholas Lewis, Esq.**