# EXHIBIT A

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                          :
                                          :
STEPHEN ELLIOT,                           :18-CV-5680 (LDH)
                                          :
          Plaintiff,                      :
                                          :
                                          :
                                          :United States Courthouse
     -against-                            :Brooklyn, New York
                                          :
                                          :
                                          :
MOIRA DONEGAN AND JANE (1-30)             :Friday, March 1, 2019
DOES,                                     :2:00 p.m.
                                          :
          Defendant.                      :
                                          :
                                          :
                                          :

- - - - - - - - - - - - - - - X

          TRANSCRIPT OF CIVIL CAUSE FOR PREMOTION CONFERENCE
             BEFORE THE HONORABLE LASHANN DEARCY HALL
                UNITED STATES DISTRICT COURT JUDGE


                    A P P E A R A N C E S:

 For the Plaintiff:       NESENOFF & MILTENBERG, LLP
                             363 Seventh Avenue - 5th Floor
                             New York, New York 10001
                          BY:NICHOLAS E. LEWIS, ESQ.


 For the Defendant        KAPLAN HECKER & FINK LLP
 Moira Donegan:              350 Fifth Avenue - Suite 7110
                             New York, New York 10018
                          BY:ROBERTA A. KAPLAN, ESQ.
                             MARTHA E. FITZGERALD, ESQ.
                             JOSHUA MATZ, ESQ.


 Court Reporter:          LINDA A. MARINO, Official Court Reporter
                          225 Cadman Plaza East / Brooklyn, NY 11201
                          **lindacsr@aol.com**

 Proceedings recorded by mechanical stenography, transcript
 produced by Computer-Assisted Transcription.

Proceedings                                          2

1          THE COURTROOM DEPUTY:  Civil cause for premotion

2   conference, 18-CV-5680, Elliot v. Donegan, et al.

3          Counsel, please state your name for the record.

4          MR. LEWIS:  Nicholas Lewis of Nesenoff & Miltenberg

5   363 Seventh Avenue --

6          THE COURT:  Give me a moment.

7          I'm sorry, go ahead.

8          MR. LEWIS:  Good afternoon, your Honor.  Nicholas

9   Lewis for Plaintiff, Stephen Elliot.

10         Good afternoon, counsel.

11         MS. KAPLAN:  Good afternoon, your Honor.  Roberta

12  Kaplan, Kaplan Hecker & Fink, for Defendant Moira Donegan.

13  I'm here with my colleagues, Jonathan Matz and Martha

14  Fitzgerald.  And my client is sitting in the courtroom as

15  well, your Honor.

16         THE COURT:  Good afternoon to you all.  You may be

17  seated.

18         Okay, folks, we are here in connection with

19  Defendant's impending motion to dismiss this case, where the

20  Plaintiff brings claims for defamation, intentional infliction

21  of emotional distress, as well as negligent infliction of

22  emotional distress.  I want to start off with what potentially

23  could be negating issue, which is Defendant's argument

24  concerning *Communications Decency Act*.

25         I'll hear from the Defendant.

Proceedings                                                3

1          MS. KAPLAN:  Your Honor, we believe that one of the

2    grounds that we will state in our motion to dismiss is

3    immunity under the CDA, that the form that was set up, the

4    Google document that was set up in this case, as alleged by

5    Plaintiff and further described in the article by Ms. Donegan,

6    which is cited by Plaintiff in their complaint and which is

7    thereby incorporated for reference, describes what she did in

8    doing this is essentially setting up precisely the kind of

9    electronic communication that was entitled to CDA immunity

10   under the statute.

11         If the Court wants to avoid the constitutional First

12   Amendment issues that are associated with the defamation

13   claims, one easy way, we think, to resolve this case is under

14   CDA immunity.

15         THE COURT:  Putting aside what facts could

16   potentially come out in discovery, if I'm to take the

17   complaint as it is alleged, don't Paragraphs 19 and 20 allege

18   that, indeed, Ms. Donegan authored some of the statements on

19   the list?

20         In particular, at Paragraph 19, Defendants -- and

21   "Defendants" in this instance is defined in the claim as

22   including Ms. Donegan and the Jane Doe defendants -- that they

23   published certain statements; in particular, rape accusations,

24   sexual harassment.

25         And that was under the column heading "alleged

Proceedings                                    4

1   misconduct."

2           And that, further, the column was amended to read:

3   Rape accusation, sexual harassment, coercion, unsolicited

4   invitations to his apartment, a dude who snuck into Binders.

5           MS. KAPLAN:  Your Honor, a fundamental problem with

6   the complaint that's related to this but is an independent,

7   which is improper group pleading under Rule 8.

8           Specifically, what the complaint does not say in

9   Paragraphs 19 or 20, as well as Paragraphs, your Honor, 4, 41,

10  and 42, is that Ms. Donegan, as opposed to any of these other

11  unnamed Jane Does, did this particular act.  And, in fact, I

12  think if you press Plaintiff, they will say they do not know

13  who put on the statements about Mr. Elliot.

14          And under Rule 8, which requires you to state what

15  you believe each individual defendant did, even more important

16  in the context of defamation, obviously, given the malice and

17  the mens rea requirements, the complaint fails under that to

18  begin with.  So, certainly, they cannot save the claim of

19  defamation for that.

20          But for CDA purposes, what's crucial is that she

21  created this anonymous document that allowed people on the

22  internet to say these things.  That's exactly what Congress

23  intended the CDA to protect.

24          THE COURT:  And I'll agree with you if, indeed, the

25  only allegation in the complaint is that she created the list,

Proceedings                                                    5

1    created the headers, even the development of the coding system

2    as alleged without authorship, that, indeed, the CDA would

3    likely provide immunity to Ms. Donegan.

4         The concern that I have is making the determination

5    that you argue that the allegations here run afoul of Rule 8

6    in terms of group pleading.  I'm not willing to go that far on

7    this complaint as it's alleged.

8         So, you know, again, the Court can't make a

9    determination at this point as to how and which discovery

10   would unfold.  But it seems to me for purposes of a motion to

11   dismiss and accepting the allegations as true, as I must, in

12   light of what is alleged in Paragraph 19 and 20 of the

13   complaint, that at this juncture the CDA doesn't act as a

14   shield.

15        So, let's put that aside for now and let's move on

16   to the negligent infliction of emotional distress.

17        Mr. Lewis, am I mistaken that you've effectively

18   conceded this claim?

19        I didn't see it, but certainly it could be the case

20   that it was written in fine print.  But I don't recall seeing

21   an argument in response to the negligent infliction of

22   emotional distress arguments.  And, again, I could be

23   mistaken.

24        MR. LEWIS:  No, your Honor, we did not oppose.

25        THE COURT:  And that's because you recognize there

Proceedings                                                    6

1   is no duty pleaded here.

2            MR. LEWIS:  Yes, your Honor.

3            THE COURT:  All right.  So, my expectation is that

4   the Plaintiff is voluntarily withdrawing that claim.

5            MR. LEWIS:  Yes, your Honor.

6            THE COURT:  Let's move on to the intentional

7   infliction of emotional distress claim.  I'll hear from the

8   Defendants.

9            MS. KAPLAN:  With respect to intentional infliction

10  of emotional distress, your Honor, the standard under the New

11  York common law, as I'm sure your Honor is aware, is extreme

12  and outrageous conduct, and particularly in New York,

13  particularly in cases where it's speech, because New York law

14  and New York common law and New York State constitutional Law

15  is so protective of free speech rights in this state.

16           The case law is very clear that when they say

17  extreme and outrageous, it needs to be extreme and outrageous.

18  When you look at the factual scenarios in which this claim has

19  been held to lie is really kind of ridden one end of the

20  spectrum.

21           Here's where that group pleading problem comes in

22  again.  There is no allegation here that Ms. Donegan, as

23  opposed to any of the other unnamed Jane Does, put out any of

24  the statements with respect to Mr. Elliot.  So, on that basis

25  alone, there's no basis to conclude that even if those

Proceedings                                    7

1  statements were sufficiently outrageous, which we believe

2  there are not, there's certainly nothing to allege that she

3  did anything with respect to intentional infliction of

4  emotional distress.  And they also haven't alleged, similar to

5  the defamation, the intention on her part to the create the

6  emotional distress; again, also relevant for the malice

7  required for defamation.

8          THE COURT:  Mr. Lewis, I wanted you to, if you

9  could, focus your arguments with regard to the requisite level

10 of extreme and outrageous conduct.  I think you have a problem

11 here, quite frankly.

12         MR. LEWIS:  Your Honor, respectfully, our argument

13 is that the soliciting of unsubstantiated rape allegations and

14 encouraging anonymous posting without any proof or further

15 evidence that these defamatory allegations are being posted

16 constitutes outrageous conduct and that the acts were

17 intentional by Ms. Donegan.

18         THE COURT:  I have a question for you:  In your

19 estimation, would statements, say, that a nurse was

20 euthanizing her patients and reporting those statements to a

21 hospital as well as the district attorney, would you say that

22 those sorts of statements, that someone was making an

23 intentional misrepresentation that a nurse was effectively

24 killing her patients and reporting that both to the hospital

25 and the district attorney, would you think that that would

Proceedings                                              8

1   fall into the category of extreme and outrageous conduct?

2          MR. LEWIS:  If it was a statement that was made

3   without any regard to whether those statements were true or

4   with knowledge they were false, I would.

5          THE COURT:  You would say that would fall into the

6   category of extreme and outrageous conduct?

7          MR. LEWIS:  I would agree with that.

8          THE COURT:  You see, at least the Appellate Division

9   disagrees with you on that.  And I wanted to look for some

10  cases that I thought might include conduct that looked like

11  the conduct that we had here, that at least one might say is

12  equal to degree and I would say that that conduct is equal to

13  degree.  The Appellate Division doesn't believe that that

14  conduct is sufficiently extreme and outrageous.

15         Will you pass this case to Mr. Lewis, please, and

16  you can pass a copy to defense counsel?

17         I don't think that you can get there.

18         Now, the other question I want to ask you is with

19  respect to IIED claims generally and the purpose of those

20  claims, isn't it the case that when an IIED claim falls within

21  the ambit of an existing tort claim, it shouldn't lie, and

22  here this existing tort claim would be the defamation claim

23  that you lodge?

24         MR. LEWIS:  If I may also, I think it's in response

25  to this as well, your Honor, it's not just the statement alone

Proceedings                                                    9

1   but the active soliciting of statements were also included in

2   the acts of Ms. Donegan; not just that the statements were

3   made, but that the purpose of list was created to solicit a

4   number of claims unsubstantiated.

5             That was just -- I just wanted to make that clear if

6   I hadn't already, your Honor.  Thank you.

7             THE COURT:  And I hear you.  I don't think that gets

8   you over the hurdle.

9             Putting that aside, again, isn't it the case that

10  the fact that you have here a defamation claim, which, at

11  least as I can see, would capture the conduct that you are

12  seeking to redress for with respect to your IIED claim, makes

13  it such that the IIED claim is ripe for dismissal?

14            MR. LEWIS:  Well, of course, your Honor, with the --

15  I would also note that if discovery were to reveal, as we

16  hoped it would, with a subpoena to unmask the Jane Does, if

17  there were definitive proof that some of the Defendants were

18  not involved in the actual defamatory statement but in the act

19  of --

20            THE COURT:  Right now we're talking about a motion

21  for Ms. Donegan.

22            MR. LEWIS:  I understand.

23            THE COURT:  And right now, what you have is a

24  defamation claim that you're pressing against Ms. Donegan.

25            MR. LEWIS:  Yes, your Honor.

```
                      Proceedings                   10
```

1       THE COURT:  I'm reading from another Appellate

2    Division case, the first department:  Plaintiff's cause of

3    action for intentional infliction of emotional distress must

4    also fail because it falls within the ambit of other

5    traditional tort liability, which in this case is reflected in

6    plaintiff's cause of action sounding in defamation.

7       Doesn't that in and of itself provide a basis for

8    this Court to dismiss the IIED claim in favor of the

9    defamation claim?

10       MR. LEWIS:  I suppose it does, your Honor, yes.

11       MS. KAPLAN:  Your Honor, not only do I agree, but

12    the Levin case, written by Judge Kaplan -- no relation -- of

13    the Southern District stands for exactly that proposition as

14    well.

15       MR. LEWIS:  I suppose it does, your Honor.

16       THE COURT:  Does that supposition mean that you

17    intend to withdraw that claim as well?

18       MR. LEWIS:  I will pull the case, but if that would

19    be helpful...

20       THE COURT:  I'll help you out.  Pass this to

21    Mr. Lewis.

22       I wanted to kind of go in this order so that we can

23    could now then get to the heart of it, which would be the

24    defamation claim.  It doesn't seem to me based on the

25    allegations in this complaint that the parties are disputing

1    that the Plaintiff in this case is a public figure.  I think

2    that, as I read the Defendant's letter, you argue that you've

3    met the standard necessary to proceed with the defamation

4    claim applying the standard as it would be against a public

5    figure.

6              So, I just want to make sure we're all operating on

7    the same sheet of music.

8              MR. LEWIS:  Yes, your Honor, we believe that it's --

9    the actual malice is certainly met here.

10             THE COURT:  Let's put that aside.

11             Ms. Kaplan, I know that you and I certainly view the

12   allegations in Paragraph 19 and 20 differently with respect to

13   whether they allege that Ms. Donegan engaged in the actual

14   publication, but let's proceed under my view of the world.

15             MS. KAPLAN:  Understood, your Honor.

16             THE COURT:  So, let's talk about malice.

17             MS. KAPLAN:  So, your Honor, as written in an

18   extremely comprehensive decision by Judge Oetken in the *Biro*

19   case that was then subsequently affirmed by the Second

20   Circuit, it's very clear today that allegations of malice in

21   this context in the wake of *Iqbal* and *Twombly* require the same

22   kind of plausibility allegations that you would see in any

23   other context that I'm sure your Honor is familiar with every

24   day.

25             Here, critically, all that's alleged with respect to

Proceedings                                    12

1    malice is, first of all, a whole bunch of boilerplate, which

2    obviously doesn't apply; she acted with malice, she acted

3    recklessly, we all know that under *Iqbal*, Twombly and *Biro*

4    that's not good enough; two, that she hated men; and, three --

5              And, again, this is even assuming Ms. Donegan did

6    this.  But you understand my position:  That's not

7    sufficiently pled, but assuming she did it.

8              -- and, three, and I'm a bit of a prude here so I'll

9    try to say without embarrassing myself, but that Ms. Donegan

10   was somehow aware of certain predilections on the part of

11   Mr. Elliot's behavior that she should somehow know he was not

12   possible of raping women, I guess.

13             So, let me address those one after the other.  As I

14   said before, the boilerplate is not good enough, I think we

15   can all agree.

16             Hatred of men.  Here's where you kind of I think

17   have to incorporate and look to the state that we're in, which

18   is New York, as your Honor knows, which has probably the

19   strongest common law defamation standard and state

20   constitutional defamation standard in the country and which

21   takes these things very seriously.  And alleging generally

22   that someone hates men is insufficient to state a case for

23   malice.

24             And I would cite on that Judge Kaye's very, very

25   well-developed opinion in the *Lieberman* case, cited in our

Proceedings                                          13

1   papers, where she talks about disliking someone or not liking

2   someone not even being close to the standard for malice.

3          And that only leaves you then, your Honor, with this

4   statement about Mr. Elliot's sexual behavior.  Again, your

5   Honor, I don't think there's anything there sufficient to

6   state a case for malice, particularly under Judge Kaye's

7   analysis in *Lieberman*.

8          On top of that, as I mentioned, your Honor, I think

9   the Court is perfectly entitled to read Ms. Donegan's own

10  statements in the article that's cited, that she wrote, by the

11  Plaintiff in the complaint in which she explains why she did

12  what she did, she explains the context, she explains how the

13  list was created.  And everything she says in that article not

14  only is inconsistent with any claim of malice but actually

15  rebuts any claim of malice.

16         So, I think under these allegations as pled,

17  essentially, as boilerplate, under *Biro*, under *Iqbal*, under

18  *Twombly*, and the New York cases like *Lieberman*, there's just

19  not enough here to go forward with the complaint.

20         THE COURT:  Mr. Lewis?

21         MR. LEWIS:  Your Honor, respectfully, with regard to

22  the Defendant's article, the statements regarding "I hate men"

23  and "I'm enjoying the witch-hunt" are relevant for her, I

24  guess -- belie the claims in the article that this was done --

25         THE COURT:  Let's assume she hates men.  Just for

Proceedings                                    14

1    the record, let's assume she hates them.  I don't see how you

2    can go from her generalized hatred of men to a reasonable

3    inference of malice with regard to your client, which is what

4    you'd have to establish.

5              MR. LEWIS:  Your Honor, I believe the more important

6    part of the quote is "I'm enjoying the witch-hunt" as

7    indicative that there's witch-hunt claims that are -- claims

8    that are indicative that she knows the claims, I guess

9    including claims against my client, are false.

10             THE COURT:  "Enjoying the witch-hunt" means that she

11   knows that they are false?

12             I don't see the logical connection there.

13             MR. LEWIS:  I believe the term "witch-hunt"

14   indicates --

15             THE COURT:  What if there's an actual witch?  There

16   are lots of people who go around saying that folks are engaged

17   in witch-hunts, and we can all have our own beliefs as to

18   whether or not witches exist.

19             MR. LEWIS:  Of course.

20             The point is Mr. Elliot brought this matter because

21   he is -- also regarding the too timid to rape defense, there's

22   no defense here:  Mr. Elliot is saying he's not a rapist, this

23   is a false statement, and the publishing of these statements

24   were done with a reckless disregard for whether they are true

25   or not.

```
                      Proceedings                    15
```

1      THE COURT:  I appreciate that.  The question is

2  whether the allegations in the complaint are sufficient to

3  make the claim.  I understand why he is pursuing the claim.

4  It's abundantly clear to me.

5      But what is not clear to me or what we're here to

6  discuss is whether the allegations are sufficient to proceed.

7  Again, I think you have a malice problem as the defense has

8  identified.

9      MR. LEWIS:  Your Honor, I would note that there's

10  the Second Circuit case law, *Church of Scientology* --

11      THE COURT:  Yes.

12      MR. LEWIS:  -- that refers to:  Actual malice may be

13  shown where the defamatory statements are based wholly on an

14  unverified anonymous source.

15      THE COURT:  I did see that, and you cited that case

16  in your submission.  And, so, I looked at that case closely

17  and then I looked at that case against the pleadings.

18      If we go to the complaint, particularly at Paragraph

19  17 as well as at Paragraph 1, but let's all go to Paragraph

20  17, because the case says, listen, if you publish information

21  from anonymous sources, that potentially could be a basis to

22  discern that there might be malice.

23      But what was pleaded here was that the site allowed

24  loud women to anonymously publish.  The way this is pleaded it

25  reads as -- I don't know of any other way to interpret it --

1  is that it gave an opportunity for women to provide this

2  information so that the public would not know who the women

3  were.  It was anonymous to the public.

4         The next sentence, you state that:  Upon information

5  and belief, the Defendants created and circulated it to

6  numerous women in the media industry via e-mail and electronic

7  means.

8         The reasonable inference drawn is that it was

9  circulated to someone who they knew.

10         And then you said, It was not password-protected.

11  The caveat was that it couldn't be forwarded to men.

12         So, it was circulated to someone that they knew.

13  Certainly they knew it wasn't a man, according to you.  But

14  the anonymous aspect of the pleadings is not about the source

15  being anonymous to the Defendants but being anonymous to the

16  people who received the information.

17         That is not the concern that's raised in *Church of*

18  *Scientology*.

19         MR. LEWIS:  Your Honor, if I may, the sentence in

20  stating that the list was created for the stated purpose of

21  encouraging women to anonymously publish allegations, so that

22  the people who are publishing the defamatory statements are

23  posting anonymously.

24         THE COURT:  Posting anonymously so that the

25  receivers of the information, the public, doesn't know who the

Proceedings                                    17

1    information is from.

2            Read the *Church of Scientology* case.  The concern

3    there was that someone was proceeding recklessly because their

4    own sources were unknown to them, so they weren't reliable to

5    them.

6            That's not what you pleaded.

7            MR. LEWIS:  I respectfully disagree, your Honor, in

8    that in saying that -- and this is also from Ms. Donegan's

9    article, I believe -- the purpose of the list was that the

10   people posting were posting anonymously so that they are

11   soliciting -- I don't believe where --

12           THE COURT:  This may be curable.  I'm not suggesting

13   that you can't cure the pleading.

14           MR. LEWIS:  Okay.

15           THE COURT:  But what I'm telling you, what you wrote

16   is not what the *Church of Scientology* case stands for.  It

17   just isn't.

18           MS. KAPLAN:  One thing I would add, your Honor,

19   because I'm a civil procedure geek, IS the *Church of*

20   *Scientology* case was decided before *Iqbal* and *Twombly* in the

21   Second Circuit and again in the *Biro* case has made it very

22   clear that those standards apply.  So, it's not even clear

23   whether that complaint would have survived today given the new

24   plausibility standard that applies here.

25           THE COURT:  Let's put aside the argument concerning

1   the anonymous publication.  There were additional arguments

2   that were made by the Defendants.

3           MR. LEWIS:  Yes, your Honor.

4           THE COURT:  Particularly concerning your client's

5   sexual preferences.  Again, I don't believe that it is a

6   reasonable inference to be drawn that even if Ms. Donegan or

7   the Jane Does knew of his sexual preferences, that that would

8   mean that it would be a reason for them to cast doubt on the

9   veracity of an allegation concerning sexual misconduct.

10          It could equally be argued that someone could say

11  that if you have these sexual preferences, that you might be

12  someone who would be likely to engage.  There's just no

13  necessary logical conclusion to the existence of his sexual

14  preferences with respect to his likelihood to engage in sexual

15  misconduct.

16          MR. LEWIS:  The other -- I agree, your Honor.  This

17  is not the only thing we are saying.

18          THE COURT:  Right.

19          MR. LEWIS:  It's just one of --

20          THE COURT:  But I don't think it's one that the

21  Court would use, right, this is not a situation where we can

22  add that to a pile.  It doesn't get added to a pile because I

23  don't think that there's a logical connection.

24          MR. LEWIS:  I think also, your Honor, just I believe

25  that the fact that this is a small community where,

Proceedings                              19

1   presumably, at least some of the people posting statements

2   know the Defendant personally.  It was more about their

3   knowledge --

4            THE COURT:  With respect to Ms. Donegan, the

5   allegation in the complaint as it's pleaded with respect to

6   his sexual preferences is that that should have put her on

7   notice.  I don't find that to be a reasonable inference to be

8   drawn.

9            MR. LEWIS:  Okay.

10           THE COURT:  So, that leaves us with what?

11           I think a problem with respect to malice here.

12           The generalized animus towards men.  It's

13  interesting because the Defendants cited the *Church of*

14  *Scientology*, and I'm not certain if you were aware the *Church*

15  *of Scientology* deals with that issue as well.

16           In that case, the Second Circuit states that:  CSI

17  argues that Behar had a negative view of Scientology and that

18  his bias pervaded his investigation and caused him to publish

19  false and defamatory statements about CSI.  The District Court

20  found that the evidence could not support such a claim.  The

21  Second Circuit agreed.

22           So, the Second Circuit in the very case that you

23  cite to the Court rejected the argument that you made that

24  this generalized bias towards a community was sufficient to

25  establish the requisite malice towards an individual necessary

Proceedings                                    20

1   to plead a claim for defamation.

2           I'm not deciding this case today -- this is a

3   premotion conference -- but I also don't like to play hide the

4   ball and I don't like to waste folks' time.  If this were

5   briefed, you're going to come up short.  And we can skip ahead

6   and you can certainly take an opportunity without you all

7   needing to brief it and the Court needing to then draft an

8   opinion, and we've already dealt with the intentional

9   infliction and negligent infliction of emotional distress

10  claims, you could undertake --

11          Somebody's phone is ringing and it's driving me a

12  little bit insane.

13          In any event, you can decide at this juncture, Let

14  me undertake to amendment the complaint.  The Court has made

15  the clear where she thinks the deficiencies lie.

16          I'm not going to bully you into doing that.

17          MR. LEWIS:  Of course, that will be something -- I

18  don't know, I'm not necessarily high enough on the totem pole

19  to make that decision by myself right here, but I will

20  certainly discuss with both my client and --

21          THE COURT:  You should tell your client and the

22  folks higher up on the totem pole that the Court believes that

23  proceeding to briefing, given the deficiencies that I've

24  identified --

25          You're not going to be able to, I'm going to tell

Proceedings                                                   21

1   you, change my interpretation of the allegations.  I don't

2   think there's any dispute here as to the applicable law.  The

3   question is how is it that the Court is interpreting the

4   allegations and whether or not they meet the requirements as

5   set out under the law.  I don't with respect to malice.  You

6   should let them know that so we can all move on.

7            And perhaps you can cure the deficiencies and then

8   we have an opportunity to decide whether this goes forward in

9   another direction, but that's where we really are today.

10           What's today, Friday, folks?

11           So talk to the folks higher up on the totem pole,

12  get a copy of this transcript and make sure your client sees

13  it, and advise the Court by next Friday whether you intend to

14  amend the complaint in an effort to cure the deficiencies.  If

15  you do not intend to amend the complaint to cure the

16  deficiencies, the Defendants will have two weeks to submit

17  their motion to dismiss.

18           MS. KAPLAN:  Thank you, your Honor.

19           THE COURT:  However, based on the conversation

20  today, I believe that the only claims that are surviving or

21  the only claim that's surviving is the defamation claim.

22           Am I correct, Mr. Lewis?

23           MR. LEWIS:  Yes.

24           If I might just ask your Honor, in citing the *Arista*

25  *Records* case with regard to the Defendant actively encouraging

Proceedings                                                  22

1   and enticing others to contribute --

2           THE COURT:  What claim are we talking about?

3           MR. LEWIS:  With regard to defamation.

4           THE COURT:  Okay.  And you want to refer me to which

5   case?

6           MR. LEWIS:  The *Arista Records LLC v. Doe*.  I, of

7   course, recognize it is a copyright infringement case, but the

8   test from *Arista Records* is, of course, also used for

9   defamation matters in the discovery context.

10          THE COURT:  If you want to talk about your

11  allegations with regard to encouraging because you believe

12  that that somehow establishes it, when I looked -- and I did

13  look because that was an argument that you made for purposes

14  of the CDA aspect as well -- I don't read the allegations the

15  way in which you are urging me to.

16          What you've said, They created a list of

17  publicly-accessible shared Google spreadsheet for the purposes

18  of encouraging women to anonymously publish allegations.

19          That doesn't suggest an encouragement of people to

20  engage in wrongdoing.  Simply making something open isn't the

21  same sort of encouragement, say, for example in the

22  *roommates.com* case, where they were encouraging them to engage

23  in discriminatory conduct.  This is simply opening up a

24  platform.  I don't see it in the same way that I think you'd

25  like the Court to view that.  I don't think it changes my

```
                    Proceedings                23
```

1   analysis here.

2           Next Friday is March 8.  You'll advise the Court in

3   writing by March 8 if you intend to amend the complaint; if

4   you don't, the defense will have two weeks to file their

5   motion to dismiss; you'll have one month from that date to

6   file your opposition.

7           What's that?

8           THE LAW CLERK:  March 22 for the motion to dismiss.

9           THE COURT:  And the opposition, one month later?

10          THE LAW CLERK:  Would be April 26.

11          THE COURT:  And then two weeks for a reply?

12          THE LAW CLERK:  May 3.

13          THE COURT:  Do you guys have those dates? because I

14  don't.

15          MR. LEWIS:  I just didn't have the April.

16          Was it April 23?

17          THE LAW CLERK:  April 26.

18          MR. LEWIS:  April 26.  Thank you.

19          THE COURT:  Opposition, April 26; reply, May 10.

20          If you intend to amend, you have two weeks from

21  March 8 to do so.

22          Which is, again, what date?

23          THE LAW CLERK:  Two weeks from the 8th?  That is the

24  22th.

25          THE COURT:  You'll have March 22 to file an amended

Proceedings                              24

1  complaint.

2          MS. KAPLAN:  One more thing, your Honor.

3          On the discovery issue -- because you know there's

4  request for a Google subpoena -- if it at all would help on

5  that, we would agree to have an even shorter schedule.  We

6  could follow one week if we could get some agreement from the

7  other side that in the interim, until the issues get resolved,

8  we won't have to proceed with the proceeding in the Northern

9  District of California --

10          THE COURT:  This is the deal:  I need to know what

11  you're going to do with the complaint.  If there's no

12  operative complaint, we're not going to proceed to discovery.

13  So, let's figure out what you're going to do with this

14  complaint.

15          I will caution the Defendants that the likelihood

16  that I won't allow some limited discovery for the purpose of

17  determining who the Jane Does are is unlikely.

18          But we're not proceeding right now.  I think we've

19  got some things we need to sort out.  I won't even know until

20  come Friday we have a complaint.  So, why don't we figure that

21  out first and then we will proceed once we have either an

22  amended complaint or we're clear we're going into briefing.

23          But, again, folks should expect that the Plaintiff

24  is going to be able to have some limited discovery.  I'm not

25  making any determinations on the scope of that discovery.  It

25

1   very well may be the case that as currently crafted it's

2   overly broad and you may want to consider that.  I suspect

3   that there may be if discovery proceeds a motion to quash at

4   least on the ground of scope.  But all of that is a bridge

5   that we'll cross when we get to it.

6               MS. KAPLAN:  Thank you, your Honor.

7               THE COURT:  Is there anything else that we need to

8   attend to.

9               MR. LEWIS:  No, I don't believe so, your Honor.

10              THE COURT:  Thank you.  I appreciate it.

11

12              (Matter concluded.)

13

14

15   *I certify that the foregoing is a correct transcript from*
     *the record of proceedings in the above-entitled matter.*

16

17   */s/ Linda A. Marino*          *March 1, 2019*
        *LINDA A. MARINO*              *Date*

18

19

20

21

22

23

24

25

LAM      OCR      RPR