## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

STEPHEN ELLIOTT,

*Plaintiff*,

- against -

MOIRA DONEGAN, and JANE DOES (1–30),

*Defendants*.

**Oral Argument Requested**

No. 1:18-cv-05680-LDH-SJB

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MOIRA DONEGAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Roberta A. Kaplan
Joshua Matz
Martha E. Fitzgerald
Thomas A. Rawlinson
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
(212) 763-0883
rkaplan@kaplanhecker.com
jmatz@kaplanhecker.com
mfitzgerald@kaplanhecker.com
trawlinson@kaplanhecker.com

*Attorneys for Defendant Moira Donegan*

Served on June 20, 2019

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................... 1

I.      MR. ELLIOTT IS A LIMITED-PURPOSE PUBLIC FIGURE. ..................................... 1

II.     MR. ELLIOTT HAS FAILED TO ALLEGE ACTUAL MALICE. ................................ 3

        A.      The Fabrication Theory............................................................................................4

        B.      The Scribe Theory....................................................................................................6

        C.      The Circulation Theory............................................................................................7

III.    THE COMPLAINT ESTABLISHES MS. DONEGAN'S CDA IMMUNITY TO MR.
        ELLIOTT'S SCRIBE AND CIRCULATION THEORIES. ............................................. 8

CONCLUSION...................................................................................................................... 11

APPENDIX............................................................................................................................ 12

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Adler* v. *Conde Nast Pubs., Inc.*,
643 F. Supp. 1558 (S.D.N.Y. 1986)..................................................................... 2

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007)........................................................................................... 5

*Biro* v. *Conde Nast*,
807 F.3d 541 (2d Cir. 2015)............................................................................... 5

*Biro* v. *Conde Nast*,
963 F. Supp. 2d 255 (S.D.N.Y. 2013)......................................................... 1, 2, 3

*Burns* v. *Smith-Corona Marchant, Inc.*,
320 N.Y.S.2d 869 (1st Dep't 1971) .................................................................. 7

*Cabello-Rondon* v. *Dow Jones & Co.*,
720 F. App'x 87 (2d Cir. 2018) ........................................................................ 8

*Church of Scientology Int'l* v. *Behar*,
238 F.3d 168 (2d Cir. 2001).............................................................................. 7

*Church of Scientology Int'l* v. *Time Warner, Inc.*,
903 F. Supp. 637 (S.D.N.Y. 1995) ................................................................... 6

*Cohen* v. *Facebook, Inc.*,
252 F. Supp. 3d 140 (E.D.N.Y. 2017) .............................................................. 8

*Daniel* v. *Armslist, LLC*,
926 N.W.2d 710 (Wis. 2019) ......................................................................... 10

*Dilworth* v. *Dudley*,
75 F.3d 307 (7th Cir. 1996) .............................................................................. 2

*Fair Hous. Council of San Fernando Valley* v. *Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ........................................................................ 10

*Fed. Trade Comm'n* v. *LeadClick Media, LLC*,
838 F.3d 158 (2d Cir. 2016)............................................................................ 10

*Gertz* v. *Robert Welch, Inc.*,
418 U.S. 323 (1974)....................................................................................... 2, 4

*Gibson* v. *Craigslist, Inc.*,
   2009 WL 1704355 (S.D.N.Y. June 15, 2009) ......................................... 8

*Hale* v. *Scott*,
   371 F.3d 917 (7th Cir. 2004) ......................................... 7

*Harte-Hanks Commc'ns, Inc.* v. *Connaughton*,
   491 U.S. 657 (1989) ......................................... 4, 6

*Karedes* v. *Ackerley Grp., Inc.*,
   423 F.3d 107 (2d Cir. 2005) ......................................... 7

*Konikoff* v. *Prudential Ins. Co. of Am.*,
   No. 94 Civ. 6863, 1999 WL 688460 (S.D.N.Y. Sept. 1, 1999) ......................................... 7

*Larkem* v. *Dep't of Educ.*,
   No. 17 Civ. 7017, 2018 WL 1959555 (S.D.N.Y. Apr. 23, 2018) ......................................... 7

*LeBeau* v. *Town of Spencer*,
   167 F. Supp. 2d 449 (D. Mass 2001) ......................................... 7

*Lemelson* v. *Bloomberg L.P.*,
   903 F.3d 19 (1st Cir. 2018) ......................................... 6

*Lerman* v. *Flynt Distrib. Co.*,
   745 F.2d 123 (2d Cir. 1984) ......................................... 2, 3

*Liberman* v. *Gelstein*,
   80 N.Y.2d 429 (1992) ......................................... 4, 7

*Martin* v. *Wilson Pub. Co.*,
   497 A.2d 322 (R.I. 1985) ......................................... 7

*Maule* v. *NYM Corp.*,
   54 N.Y.2d 880 (1981) ......................................... 2

*Michel* v. *NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) ......................................... 1

*MiMedx Grp., Inc.* v. *Sparrow Fund Mgmt. LP*,
   No. 17 Civ. 7568, 2018 WL 4735717 (S.D.N.Y. 2018) ......................................... 5

*Nemet Chevrolet, Ltd.* v. *Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ......................................... 5

*Ricci* v. *Teamsters Union Local 456*,
   781 F.3d 25 (2d Cir. 2015) ......................................... 8

*Schubert* v. *City of Rye*,
  775 F. Supp. 2d 689 (S.D.N.Y. 2011) ................................................................. 2

*Seldon* v. *Magedson*,
  No. 11 Civ. 6218, 2012 WL 4475274 (S.D.N.Y. July 10, 2012) ............................ 10

*Spiteri* v. *Russo*,
  No. 12 Civ. 2780, 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013) ............................ 7

*Staehr* v. *Hartford Fin. Servs. Grp., Inc.*,
  547 F.3d 406 (2d Cir. 2008) .................................................................................. 8

*Tavoulareas* v. *Piro*,
  817 F.2d 762 (D.C. Cir. 1987) .............................................................................. 7

**Treatises**

Robert D. Sack, 1 *Sack on Defamation* § 5:5.2 (5th ed. 2017) .............................. 4, 6, 7

**Other Authorities**

Bari Weiss, *What Do You Do When You Are Anonymously Accused of Rape?*,
  N.Y. Times (Oct. 13, 2018), https://www.nytimes.com/2018/10/13/opinion/stephen-
  elliott-moira-donegan-media-men.html ................................................................ 2

As set forth in our moving papers, Mr. Elliott's defamation claim must be dismissed for two reasons. First, Mr. Elliott has failed plausibly to allege that Ms. Donegan published the relevant statements with actual malice. Second, two of his three theories are preempted by the Communications Decency Act ("CDA"). Nothing in his opposition brief alters those conclusions. And because "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation," *Michel* v. *NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016), the Complaint should be dismissed with prejudice.

## ARGUMENT

## I.    MR. ELLIOTT IS A LIMITED-PURPOSE PUBLIC FIGURE.

This is not a close question. Mr. Elliott is a well-known author whose work obsessively explores the public morality and private dynamics of sex, power, and domination between men and women. He originally brought this lawsuit on the premise that his sexual mores and conduct are such common knowledge that *anybody* in the media industry would recognize them. While his amended complaint jettisons that theory, it articulates a theory of injury that equally presumes his industry renown: loss of access to "publicity events," fewer "interviews" and "public readings, panels and appearances," harm to "the goodwill and interest of journalists, fans . . . customers and the public at large," and difficulty in selling works for "adaptation to film."[1] Given these allegations—and given Mr. Elliott's longstanding participation in public controversy over sexual taboos—the Court should reject Mr. Elliott's claim that he is not a limited-purpose public figure.

Of course, "the Court may deem a plaintiff a public figure at the motion to dismiss stage." *Biro* v. *Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013). There are four factors relevant to this analysis; Mr. Elliott does not dispute two of them. First, long before "the incident that is the

---

[1]    Second Amended Complaint ¶¶ 35, 36, 50 ("Compl.").

subject of litigation," Mr. Elliott devoted his career to "successfully invit[ing] public attention to his views in an effort to influence others." *Lerman* v. *Flynt Distrib. Co.*, 745 F.2d 123, 136 (2d Cir. 1984); *see also Maule* v. *NYM Corp.*, 54 N.Y.2d 880, 881–82 (1981) (holding a sports writer satisfied this requirement). Second, since the dispute arose, Mr. Elliott has "maintained regular and continuing access to the media." *Lerman*, 745 F.2d at 137. A writer who can convince *New York Times* columnists to cover the filing of his lawsuit has enough "access to self-help through the media" that he need not rely on defamation law to protect his reputation. *Biro*, 963 F. Supp. 2d at 275 n.15; *see Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 344 (1974); Bari Weiss, *What Do You Do When You Are Anonymously Accused of Rape?*, N.Y. Times (Oct. 13, 2018); ¶ 45.

This leaves only two elements, which reduce to a single question: whether Mr. Elliott has "voluntary injected himself into a public controversy related to the subject of the litigation" and has "assumed a position of prominence" in that controversy. *Lerman*, 745 F.2d at 136. The answer to that question is clearly *yes*. Mr. Elliott has authored or edited 13 books, written at least 46 articles and opinion pieces, and directed 3 feature-length films.[2] His books have been reviewed dozens of times and he frequently engages with journalists, publishers, and scholars. (*See* App. ¶¶ 90–134.) In the media and literary worlds encompassed by his output, Mr. Elliott is a public figure. *See Dilworth* v. *Dudley*, 75 F.3d 307, 309 (7th Cir. 1996) (Posner, J.) ("[A]nyone who publishes becomes a public figure in the world bounded by the readership of the literature to which he has contributed."); *Adler* v. *Conde Nast Pubs., Inc.*, 643 F. Supp. 1558, 1564 (S.D.N.Y. 1986).

But Mr. Elliott isn't merely a man of letters; his fame rests in sustained study and violation of sexual taboos. Mr. Elliott thus errs in asserting that his notoriety is divorced from "public

---

[2]      A list of works by and about Mr. Elliott is annexed as Appendix A. The Court can "take judicial notice of the existence of articles written by and about" the plaintiff, *Biro*, 963 F. Supp. 2d at 271 n.9, in order to "determine what statements [the works] contain," *Schubert* v. *City of Rye*, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011).

controversy related to the subject of [this] litigation." Opp. 5 (quoting *Lerman*, 745 F.2d at 136).
Declaring that the personal is political—*especially* for sexual conduct—Mr. Elliott has made his
name setting fire to conventional sexual mores in an overt quest to reshape society. His works,
including his memoirs, repeatedly blur the line between consensual sadomasochism and outright
abuse.[3] And they are shot through with challenges to sexual norms and gender power dynamics—
challenges that are not merely theoretical, but that seek to change how people treat each other.
This case arose amid a public controversy that fits Mr. Elliott's oeuvre like a glove: debates over
the ethics of consent and the public significance of sexual misconduct by prominent men. And as
if that were not enough, Mr. Elliott was played by the celebrity James Franco in a movie adapted
from his own book about trauma and sexuality. He is obviously a public figure on matters of
permissible (and prohibited) sexual conduct.[4] *See, e.g.*, *Lerman*, 745 F.2d at 137 (holding the
plaintiff was a limited-purpose public figure where she had "voluntarily devot[ed] herself to the
public's interest in sexual mores, through extensive writing on this topic, reaping profits and wide
notoriety"); *see also Biro*, 963 F. Supp. 2d at 271 (explaining that "once a plaintiff is deemed a
limited purpose public figure, courts allow the heightened protections to sweep broadly, covering
all statements by defendants that are not 'wholly unrelated to the controversy'" (citation omitted)).

## II.    MR. ELLIOTT HAS FAILED TO ALLEGE ACTUAL MALICE.

A plaintiff who alleges actual malice on a theory of reckless disregard for the truth must
plausibly show "that the defendant actually had a 'high degree of awareness of . . . probable

---

[3]        For example, Mr. Elliott's memoir glamorizes a relationship in which his partner "didn't play 'safe,
sane, and consensually.'" (App. ¶ 79, *The Adderall Diaries* (Fitzgerald Decl. Ex. B at 147).) Elsewhere, Mr. Elliott
has written about a sex worker girlfriend who carved letters into his skin (App. ¶ 39, *The Score* (Ex. C).), and he has
written and directed a film about the exploits of an 18-year old adult film actress (App. ¶ 75, *About Cherry*.) We
reference these works not to judge or criticize, but to show that Mr. Elliott has risen to prominence by engaging with
(and starting) public controversy on matters inextricably intertwined with the subject matter of this litigation.

[4]        (App. ¶ 72, *The Adderall Diaries*.)

falsity.'" *Harte-Hanks Commc'ns, Inc.* v. *Connaughton*, 491 U.S. 657, 688 (1989). Our opening brief showed that the Complaint comes up short. Tacitly admitting as much, Mr. Elliott asserts that he need not meet this standard if he can instead plausibly allege that Ms. Donegan had "serious doubts as to the truth." Opp. 7–8. But this gets him nowhere, since the two standards mean exactly the same thing. As Judge Sack explains, "[t]he ultimate fact that a plaintiff must *always* prove with 'convincing clarity' under the *New York Times* 'actual malice' test is that the defendant published a falsehood either knowing it to be false or with a high degree of awareness of its probable falsity, that is, while in fact entertaining serious doubts as to the truth of the publication." 1 *Sack on Defamation* § 5:5.2 (5th ed. 2017) (emphasis in original). The New York Court of Appeals has thus warned that "there is a critical difference between not knowing whether something is true and being highly aware that it is probably false." *Liberman* v. *Gelstein*, 80 N.Y.2d 429, 438 (1992).

Mr. Elliott's brief depends on utterly collapsing that "critical difference." He treats a non-specific awareness of possible falsity somewhere on the Spreadsheet as damning proof that Ms. Donegan acted with actual malice regarding his specific entry. He implies that Ms. Donegan should have investigated further, even though "failure to investigate, without more, cannot establish reckless disregard for the truth." *Gertz*, 418 U.S. at 332. And he advances a rule of strict liability whenever publishers rely on unverified, anonymous sources—without any assessment of whether the publisher *in fact* had a high degree of awareness of the relevant statement's probable falsity. Time and again, Mr. Elliott seeks to read this requirement out of the law books. But Supreme Court precedent means what it says. His case must therefore be dismissed.

## A.     The Fabrication Theory

This theory of liability, ¶¶ 54–59, fails for many reasons. First, Mr. Elliott's "information and belief" allegation is facially deficient. Second, it is inexplicable from the Complaint why Ms.

Donegan would have fabricated a rape allegation against a total stranger. Third, this allegation is flatly inconsistent with materials incorporated by reference as integral to the Complaint.

In his opposition, Mr. Elliott says almost nothing in response to these arguments. Instead, he asserts that *Biro* v. *Conde Nast*, 807 F.3d 541 (2d Cir. 2015), mandates an inference of fabrication where the defendant does not provide a source. *See* Opp. 12. But, as explained in our moving brief, that misreads *Biro* and distorts the actual malice requirement. The Fourth Circuit's opinion in *Nemet Chevrolet, Ltd.* v. *Consumeraffairs.com, Inc.* is instructive. 591 F.3d 250 (4th Cir. 2009). There, the plaintiff sought to infer that statements critical of its business had been fabricated by the defendant because it could not identify who wrote them. *See id.* at 259. The Fourth Circuit, however, disagreed. It reasoned that such "conclusory statements are insufficient as a matter of law," since they amount to a "formulaic recitation" of the elements of a claim. *Id.* at 260. Because Rule 8 requires plaintiffs to nudge their claims "across the line from the conceivable to the plausible," it was not enough to allege facts suggesting "the mere possibility that [the defendant] was responsible for [fabricating] the allegedly defamatory content." *Id.* (citations omitted). The same logic controls here. *See MiMedx Grp., Inc.* v. *Sparrow Fund Mgmt. LP*, No. 17 Civ. 7568, 2018 WL 4735717, at *10 (S.D.N.Y. 2018) (holding "actual malice" could not be inferred without "clarity" on whether specific statements were "made up out of whole cloth").

Mr. Elliott also objects to our "self-serving factual assertion" that Ms. Donegan had no plausible reason to randomly accuse him of rape. Opp. 12. But this is a gross mischaracterization. While Mr. Elliott is entitled to the facts properly alleged in his complaint and reasonable inferences therefrom, he is not entitled to airy conjecture about the potential existence of secret relationships or hypothetical motives that lack any foundation whatsoever in the Complaint itself. *See Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007). As other courts have recognized, plaintiffs alleging

5

a defamatory fabrication should allege a "plausible motive for [the defendant] to have fabricated from whole cloth any story critical of [the plaintiff]," or at least allege that the defendant "knowingly relied on a source who had a clear motive to fabricate the story." *Lemelson* v. *Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018). Here, Mr. Elliott fails completely to do that.

## B.   The Scribe Theory

Mr. Elliott seeks to rehabilitate this theory by quoting Ms. Donegan's statement from *The Cut*: "The document was indeed vulnerable to false accusations, a concern I took seriously." *See* Opp. 8. While he treats this line as conclusive of actual malice, his logic collapses under scrutiny.

His first error, described above, is to assert that he need not allege that Ms. Donegan had a high degree of awareness of probable falsity. Instead, he claims it is enough to allege "serious doubts as to the truth." Opp. 10. But, again, these are not different standards. They are a single standard requiring Mr. Elliott to allege with "convincing clarity" that Ms. Donegan "published a falsehood either knowing it to be false or with a high degree of awareness of its probable falsity." 1 *Sack on Defamation* § 5:5.2; *accord Harte-Hanks*, 491 U.S. at 688. He has not done so.

This leads to his second error: asserting that actual malice can be alleged generally with respect to the entire contents of a publication, rather than as to the relevant allegedly defamatory statement. Opp. 10 n.2. But it is black letter law that courts "consider[] each allegedly libelous statement individually to determine whether a rational finder of fact could find actual malice by clear and convincing evidence." *Church of Scientology Int'l* v. *Time Warner, Inc.*, 903 F. Supp. 637, 641 (S.D.N.Y. 1995). Again, Judge Sack explains:

> To establish the "actual malice" requisite for liability, knowing or reckless falsehood as to the defamatory statement about the plaintiff must be shown. "[A] known falsehood or reckless indifference as to aspects of a publication which do not concern plaintiff is not sufficient to demonstrate actual malice with regard to the plaintiff." Indeed, *New York Times* and *Gertz*, by their terms, "require" the "defamatory falsehood" to have been "made with 'actual malice.'"

1 *Sack on Defamation* § 5:5.2 (citations omitted); *accord Tavoulareas* v. *Piro*, 817 F.2d 762, 794 & n.44 (D.C. Cir. 1987) (en banc); *Konikoff* v. *Prudential Ins. Co. of Am.*, No. 94 Civ. 6863, 1999 WL 688460, at *22 (S.D.N.Y. Sept. 1, 1999). Here, Mr. Elliott comes nowhere close to alleging that Ms. Donegan acted with actual malice with respect to *his entry* on the Spreadsheet.

Finally, Mr. Elliott asserts that he is entitled to cherry-pick statements helpful to him from *The Cut*, while ignoring all unhelpful statements (even those that provide essential context for the lines he has excerpted). Opp. 13 n.5. This assertion is baseless. The Court need not accept as true "pleadings that are contradicted by other matters . . . incorporated by reference." *Larkem* v. *Dep't of Educ.*, No. 17 Civ. 7017, 2018 WL 1959555, at *3 (S.D.N.Y. Apr. 23, 2018); *accord Spiteri* v. *Russo*, No. 12 Civ. 2780, 2013 WL 4806960, at *8 (E.D.N.Y. Sept. 7, 2013). Here, *The Cut* article shows that Ms. Donegan actually, subjectively believed women would tell the truth about sexual assault, not that she viewed the entries on the Spreadsheet as highly likely to be false.[5]

## C.   The Circulation Theory

Mr. Elliott's sole remaining argument is that republishing information from anonymous, unverified sources proves actual malice *per se*. Opp. 11. Not so. The Second Circuit has repeatedly recognized that reliance on such sources is merely one of "several factors . . . relevant to a finding of actual malice." *Karedes* v. *Ackerley Grp., Inc.*, 423 F.3d 107, 114–15 (2d Cir. 2005); *Church of Scientology Int'l* v. *Behar*, 238 F.3d 168, 174 (2d Cir. 2001). *Biro* followed those precedents; it

---

[5]   Although Mr. Elliott believes Ms. Donegan's statement on the Spreadsheet that "[t]his document is only a collection of misconduct allegations and rumors" disposes of the actual malice question, Opp. 8, it doesn't. For starters, it offers no basis for concluding that Ms. Donegan had actual malice *toward Mr. Elliott*. Nor does it indicate which entries Ms. Donegan believed to be "allegations," as opposed to "rumors." And even with respect to "rumors," Ms. Donegan's statement in *The Cut* about this very disclaimer on the Spreadsheet shows she believed the entries would overwhelmingly be true, not that she doubted them. This distinguishes her case from those cited by Mr. Elliott, where there was "no indication" of "any basis for believing the rumor," *Hale* v. *Scott*, 371 F.3d 917, 919 (7th Cir. 2004), or where "the underlying accusation . . . is believed to be false," *Martin* v. *Wilson Pub. Co.*, 497 A.2d 322, 329 (R.I. 1985). And unlike Massachusetts, where repeating "uncorroborated rumors" may be equated with "serious doubt as to the truth," New York has never created such a categorical rule, which would be inconsistent with its general approach to actual malice. *Compare LeBeau* v. *Town of Spencer*, 167 F. Supp. 2d 449, 456 (D. Mass. 2001), *with Liberman*, 80 N.Y.2d at 438 *and Burns* v. *Smith-Corona Marchant, Inc.*, 320 N.Y.S.2d 869, 871 (1st Dep't 1971).

did not rewrite them. This is confirmed by *Cabello-Rondon* v. *Dow Jones & Co.*: "[R]eliance on anonymous sources alone does not support an inference that the publisher acted with actual malice. The *Biro* court reasoned that 'reliance on anonymous or unreliable sources without further investigation *may* support an inference of actual malice,' *where the plaintiff includes additional allegations to buttress such an inference*." 720 F. App'x 87, 89 (2d Cir. 2018) (emphasis added).

Here, as this Court noted at the pre-motion conference held on March 1, 2019, apart from asserting that Ms. Donegan hates men, Mr. Elliott offers no "additional allegations to buttress" his inference of actual malice. Instead, he resorts to the incendiary claim that we "appear[] to be trying to mislead the Court" into a mistaken reading of *Cabello-Rondon*. Opp. 11 n.4. In our view, *Cabello-Rondon*—and the other cases cited above—are clear. Actual malice consists of a subjective intent to lie or to publish statements strongly suspected to be false. Use of certain sources may, in some instances, indicate such nefarious intent. But not here. There isn't a single allegation in the Complaint suggesting that Ms. Donegan sought to defame Mr. Elliott (or anyone else). And looking to *The Cut*, the natural inference is that Ms. Donegan sought only to publish long-unspoken truths—ones she believed contributors would record on the Spreadsheet.

## III.   THE COMPLAINT ESTABLISHES MS. DONEGAN'S CDA IMMUNITY TO MR. ELLIOTT'S SCRIBE AND CIRCULATION THEORIES.

The parties' dispute over CDA immunity is a narrow one. First, the parties agree that CDA immunity is an affirmative defense and must be judged on the face of the Complaint.[6] Second, Mr. Elliott does not dispute the first and third elements of CDA immunity. Finally, Ms. Donegan does not argue that CDA immunity applies if she fabricated the statements at issue. This leaves only

---

[6]    Of course, "a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr* v. *Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). For this reason, courts routinely dismiss pleadings on the basis of a CDA defense. *See, e.g.*, *Ricci* v. *Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015); *Cohen* v. *Facebook, Inc.*, 252 F. Supp. 3d 140, 155, 161 (E.D.N.Y. 2017); *Gibson* v. *Craigslist, Inc.*, No. 8 Civ. 7735, 2009 WL 1704355, at *2 (S.D.N.Y. June 15, 2009).

disagreement as to whether Ms. Donegan became an information content provider under the scribe and circulation theories alleged in the Complaint. The correct view is that she did not.

As to the scribe theory, Mr. Elliott contends that the Complaint is too vague regarding Ms. Donegan's role to support CDA immunity. *See* Opp. 18–19. We agree that the Complaint is vague. But that is why we identified and addressed its alternative theories of Ms. Donegan's role. The scribe theory refers to paragraph 60: "If [Donegan], personally, and/or the other Defendants did not themselves fabricate the false defamatory accusations against Plaintiff, knowing them to be false, then, in the alternative, they wrote and published them with reckless disregard for their truth or falsity." To the extent Mr. Elliott alleges that Ms. Donegan *did not* fabricate his entry, but is liable for defamation because she *did* write it, he is alleging she served as a scribe. And for the reasons given in our opening brief, that does not render her an information content provider, since the Complaint is (for these purposes) clear that she did not come up with the content.[7]  Mem. 16.

Turning to the circulation theory, Mr. Elliott makes two arguments: that Ms. Donegan built the Spreadsheet in a manner that would encourage illegality, and that Ms. Donegan is liable for highlighting his entry in red. Opp. 18–22. Under well-established precedents, however, neither theory defeats application of the CDA.

First, Mr. Elliott asserts that Ms. Donegan designed the Spreadsheet to "specifically and actively 'encourage[]' people" to post defamatory rumors. Opp. 20–21 (quoting ¶ 22). But as we have explained, Mem. 19, "encouragement" that consists of creating an online forum—even one in which unlawful content could be posted—does not transform a publisher into an information content provider. For that to occur, the publisher must personally direct illegal statements, *see Fed.*

---

[7]       Mr. Elliott worries that any person could immunize herself from defamation liability merely by putting online information someone else shared in confidence. *See* Opp. 20. But as Mr. Elliott himself recognizes (Opp. 19 n.8), the CDA applies only if the contents were "provided" for use online in the first place.

*Trade Comm'n* v. *LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016), or require the provision of information that necessarily leads to illegality, *see Fair Hous. Council of San Fernando Valley* v. *Roommates.com, LLC*, 521 F.3d 1157, 1167 (9th Cir. 2008). This case comes nowhere close to that. Nothing on the Spreadsheet necessarily generated defamatory statements; indeed, its stated purpose would be achieved only through *truthful* entries. *See Daniel* v. *Armslist, LLC*, 926 N.W.2d 710, 721–22 (Wis. 2019) ("[T]he difference between a neutral design feature and the development of unlawful content is the potential for lawful use."). And for the circulation theory, the Complaint is clear that Ms. Donegan did not personally create false content. ¶ 66.

This leaves only Mr. Elliott's contention that Ms. Donegan became an information content provider by highlighting his entry in red. *See* Opp. 18. But Mr. Elliott's entry *already* included "Rape accusations." ¶ 24. The red highlighting, on Mr. Elliott's entry and elsewhere, was merely a standard signal for entries that included accusations by "multiple" women of "physical sexual violence." ¶¶ 27–28. According to Mr. Elliott, such highlighting altered the content of his entry because rape is not necessarily violent, and there may have been only *two* accusations of rape (which, he adds, is not "multiple"). Opp. 18 n.7. This is the kind of argument that makes dictionary writers blush. In ordinary usage, "multiple" means more than one and "rape" is a physically violent sexual act. Thus, even assuming that Ms. Donegan did highlight his entry in red, she did not alter its content. She merely exercised a traditional editorial function—and thus remains shielded by the CDA. *See Seldon* v. *Magedson*, No. 11 Civ. 6218, 2012 WL 4475274, at *17 (S.D.N.Y. July 10, 2012) (adding the title "Sexual Pervert" to another user's post "did not alter the substance, meaning or purpose" of statement that plaintiff had "all kinds of perverted photos on his computer").

**CONCLUSION**

The Complaint should be dismissed with prejudice.


Dated:  June 20, 2019                          Respectfully submitted,
         New York, New York


                                               /s/  Roberta A. Kaplan
                                               Roberta A. Kaplan
                                               Joshua Matz
                                               Martha E. Fitzgerald
                                               Thomas A. Rawlinson
                                               KAPLAN HECKER & FINK LLP
                                               350 Fifth Avenue, Suite 7110
                                               New York, New York 10118
                                               (212) 763-0883
                                               rkaplan@kaplanhecker.com
                                               jmatz@kaplanhecker.com
                                               mfitzgerald@kaplanhecker.com
                                               trawlinson@kaplanhecker.com

                                               *Attorneys for Defendant Moira Donegan*

**APPENDIX TO REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANT MOIRA DONEGAN'S MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT**

I.      **ARTICLES AND OPINION PIECES BY MR. ELLIOTT BEFORE HE FILED
        THIS LAWSUIT**

1.      Stephen Elliott, *Silicon is Just Sand*, Epic Magazine,
http://epicmagazine.com/silicon-is-just-sand/

2.      Stephen Elliott, *The Great Film Festival Swindle*, The Rumpus, May 31, 2016,
https://therumpus.net/2016/05/the-great-film-festival-swindle/

3.      Stephen Elliott, *Dear* McSweeney's*: Two Letters from Stephen Elliott*, The
Rumpus, Feb. 18, 2016, https://therumpus.net/2016/02/dear-mcsweeneys-two-letters-from-
stephen-elliott/

4.      Stephen Elliott, *An Oral History of Myself #15: Neil Elliott*, The Rumpus,
Jan. 8, 2016, https://therumpus.net/2016/01/an-oral-history-of-myself-15-neil-elliott/

5.      Stephen Elliott, *The Strange Experience of Having My Memoir Turned Into a
Movie*, Vulture, Apr. 21, 2015, https://www.vulture.com/2015/04/adderall-diaries-memoir-film-
elliott-franco.html

6.      Stephen Elliott, *Bombing the Bookclub*, The Rumpus, Jul. 14, 2014,
https://therumpus.net/2014/07/bombing-the-bookclub

7.      Stephen Elliott, *The Saddest Story I've Ever Read*, The Rumpus, Mar. 21, 2014,
https://therumpus.net/2014/03/the-saddest-story-ive-ever-read/

8.      Stephen Elliott, *The Rumpus Interview with Audrey Petty*, The Rumpus,
Sep. 17, 2013, https://therumpus.net/2013/09/the-rumpus-interview-with-audrey-petty/

9.      Stephen Elliott, *The Rumpus Interview With Michelle Orange*, The Rumpus,
Feb. 12, 2013, https://therumpus.net/2013/02/the-rumpus-long-interview-with-michelle-orange/

10.     Stephen Elliott, *The Rumpus Interview with Dave Eggers*, The Rumpus,
Jun. 4, 2012, https://therumpus.net/2012/06/the-rumpus-interview-with-dave-eggers/

11.     Stephen Elliott, *My Little Brother Ruined My Life*, The Rumpus, Jan. 17, 2012,
https://therumpus.net/2012/01/my-little-brother-ruined-my-life/

12.     Stephen Elliott, *The Rumpus Interview with Marie Calloway*, The Rumpus,
Dec. 29, 2011, https://therumpus.net/2011/12/the-rumpus-interview-with-marie-calloway/

13.     Stephen Elliott, *An Oral History of Myself #14: Judy*, The Rumpus, Mar. 30,
2011, https://therumpus.net/2011/03/an-oral-history-of-myself-14-judy/

14.     Stephen Elliott, *An Oral History of Myself #13: Mato*, The Rumpus, Mar. 1, 2011, https://therumpus.net/2011/03/an-oral-history-of-myself-13-mato/

15.     Stephen Elliott, *Recession Sex Workers #8: The Sex and Politics of Antonia Crane*, The Rumpus, Feb. 4, 2010, https://therumpus.net/2010/02/recession-sex-workers-8-antonia-crane/

16.     Stephen Elliott, *Defending Memoir, or, the Problem with Taylor*, The Rumpus, Jan. 28, 2010, https://therumpus.net/2010/01/defending-memoir/

17.     Stephen Elliott, *No Home I'd Call My Own*, NY Times, Dec. 18, 2009, https://www.nytimes.com/2009/12/20/fashion/20elliott.html

18.     Stephen Elliott, *The Rumpus Interview with MC Lars*, The Rumpus, Sep. 10, 2009, https://therumpus.net/2009/09/the-rumpus-interview-with-mc-lars/

19.     Stephen Elliott, *My Father's Murder*, Believer Magazine, Sep. 1, 2009, https://believermag.com/my-fathers-murder/

20.     Stephen Elliott, *Why I Write*, The Rumpus, Aug. 20, 2009, https://therumpus.net/2009/08/why-i-write-2/

21.     Stephen Elliott, *The Rumpus Interview with Jill Sobule*, The Rumpus, Jul. 30, 2009, https://therumpus.net/2009/07/the-rumpus-interview-with-jill-sobule/

22.     Stephen Elliott, *An Oral History of Myself #12: Wendi*, The Rumpus, Jul. 26, 2009, https://therumpus.net/2009/07/an-oral-history-of-myself-12-wendi/

23.     Stephen Elliott, *An Oral History of Myself #11: Ashley*, The Rumpus, Jul. 13, 2009, https://therumpus.net/2009/07/an-oral-history-of-myself-11-ronit/

24.     Stephen Elliott, *An Oral History of Thao Nguyen*, The Rumpus, Jul. 7, 2009, https://therumpus.net/2009/07/an-oral-history-of-thao-nguyen/

25.     Stephen Elliott, *An Oral History of Myself #10: Jenni*, The Rumpus, Jul. 5, 2009, https://therumpus.net/2009/07/an-oral-history-of-myself-10-jenni/

26.     Stephen Elliott, *An Oral History of Myself #9: Joe*, The Rumpus, Jun. 26, 2009, https://therumpus.net/2009/06/an-oral-history-of-myself-9-joe/

27.     Stephen Elliott, *An Oral History of Myself #8: Mr. Miller*, The Rumpus, Jun. 19, 2009, https://therumpus.net/2009/06/an-oral-history-of-myself-8-mr-miller/

28.     Stephen Elliott, *An Oral History of Myself #7: Fat Mike*, The Rumpus, Jun. 12, 2009, https://therumpus.net/2009/06/an-oral-history-of-myself-7-fat-mike/

29.     Stephen Elliott, *The Rumpus Long Interview with Dave Eggers*, The Rumpus, Jun. 9, 2009, https://therumpus.net/2009/06/the-rumpus-long-interview-with-dave-eggers/

30.     Stephen Elliott, *An Oral History of Myself #6: Pat*, The Rumpus, Jun. 5, 2009, https://therumpus.net/2009/06/an-oral-history-of-myself-7-pat/

31.     Stephen Elliott, *An Oral History of Myself #5: Kevin*, The Rumpus, May 29, 2009, https://therumpus.net/2009/05/an-oral-history-of-myself-5-kevin/

32.     Stephen Elliott, *An Oral History of Myself #4: Aaron*, The Rumpus, May 22, 2009, https://therumpus.net/2009/05/an-oral-history-of-myself-4-aaron/

33.     Stephen Elliott, *An Oral History of Myself #3: Dan*, The Rumpus, May 15, 2009, https://therumpus.net/2009/05/3-dan/

34.     Stephen Elliott, *An Oral History of Myself #2: John*, The Rumpus, May 8, 2009, https://therumpus.net/2009/05/two-john/

35.     Stephen Elliott, *An Oral History of Myself #1: Roger*, The Rumpus, May 3, 2009, https://therumpus.net/2009/05/an-oral-history-of-myself%E2%80%94part-1-roger/

36.     Stephen Elliott, *The Rumpus Interview with Margaret Cho*, The Rumpus, Jan. 27, 2009, https://therumpus.net/2009/01/the-rumpus-interview-with-margaret-cho-2/

37.     Stephen Elliott, *Where I Slept*, Medium, Feb. 3, 2019 (Originally published 2009), https://medium.com/@nowhere500/where-i-slept-2fd238c30a7

38.     Stephen Elliott, *An Interview with Matt Bai*, Believer Magazine, Jul. 1, 2008, https://believermag.com/an-interview-with-matt-bai/

39.     Stephen Elliott, *The Score*, Believer Magazine, Mar. 1, 2007, https://believermag.com/the-score/

40.     Stephen Elliott, *An Interview with Anthony Swofford*, Believer Magazine, Feb. 1, 2007, https://believermag.com/an-interview-with-anthony-swofford/

41.     Stephen Elliott, *The New Middle East*, Believer Magazine, Oct. 1, 2006, https://believermag.com/the-new-middle-east/

42.     Stephen Elliott, *Three Men and a Woman*, NY Times, Sep. 4, 2005, https://www.nytimes.com/2005/09/04/fashion/sundaystyles/three-men-and-a-woman.html

43.     Stephen Elliott, *A Review of: Notice by Heather Lewis's*, Believer Magazine, Nov. 1, 2004, https://believermag.com/heather-lewiss-notice/

44.     Stephen Elliott, *Small Battles in a War of Attrition*, Believer Magazine, Sep. 1, 2004, https://believermag.com/small-battles-in-a-war-of-attrition/

45.     Stephen Elliott, *My Final Days with Howard Dean*, Believer Magazine, Apr. 1, 2004, https://believermag.com/my-final-days-with-howard-dean/

46.   Stephen Elliott, *Looking Forward to It*, Believer Magazine, Sep. 1, 2003, https://believermag.com/looking-forward-to-it

## II.   ARTICLES AND OPINION PIECES BY MR. ELLIOTT AFTER HE FILED THIS LAWSUIT

47.   Stephen Elliott, *How to Build a Bed*, Quillette, Jan. 22, 2019, https://quillette.com/2019/01/22/how-to-build-a-bed/

48.   Stephen Elliott, *Los Angeles*, Medium, Dec. 13, 2018, https://medium.com/@nowhere500/los-angeles-568086709902

49.   Stephen Elliott, *The Demise of Gawker: An Interview with Ryan Holiday*, Quillette, Dec. 13, 2018, https://quillette.com/2018/12/13/the-demise-of-gawker-an-interview-with-ryan-holiday/

50.   Stephen Elliott, *Night at the Oscars*, Medium, Dec. 12, 2018, https://medium.com/@nowhere500/night-at-the-oscars-5a7d538a3884

51.   Stephen Elliott, *How An Anonymous Accusation Derailed My Life*, Quillette, Sept. 25, 2018, https://quillette.com/2018/09/25/how-an-anonymous-accusation-derailed-my-life/

## III.   ARTICLES WRITTEN ABOUT MR. ELLIOTT AFTER THIS LAWSUIT

52.   Michelle Goldberg, *Opinion: Attack of the Right-Wing Snowflakes*, NY Times, Oct. 22, 2018, https://www.nytimes.com/2018/10/22/opinion/free-speech-metoo-lawsuits-snowflakes.html

53.   Gabriella Paiella, *Stephen Elliott's Lawyer Doesn't Want to Bring Up Soviet Russia, But...*, The Cut, Oct. 19, 2018, https://www.thecut.com/2018/10/stephen-elliott-lawyer-andrew-miltenberg.html

54.   Bari Weiss, *Opinion: What Do You Do When You Are Anonymously Accused of Rape*, N.Y. Times, Oct. 13, 2018, https://www.nytimes.com/2018/10/13/opinion/stephen-elliott-moira-donegan-media-men.html

## IV.   ARTICLES WRITTEN ABOUT MR. ELLIOTT BEFORE THIS LAWSUIT

55.   Jennifer Parker, *SOMETIMES I THINK ABOUT IT: ESSAYS (Graywolf, 2017) Author Stephen Elliott Talks About His Web Series DRIVEN*, Pank Magazine, Dec. 19, 2017, https://pankmagazine.com/tag/stephen-elliot/

56.   Lee Matalone, *Stephen Elliott on Domesticity, Queerness and Britney Spears*, L.A. Review of Books, Nov. 8, 2017, https://lareviewofbooks.org/article/stephen-elliott-on-domesticity-queerness-and-britney-spears/

57.     Claire Vaye Watkins, *On Pandering*, Tin House, Nov. 23, 2015, https://tinhouse.com/on-pandering/

58.     Liz Rabiner Lippoff, *Stephen Elliott's Incredible Journey*, Oregon Jewish Life, Apr. 24, 2015, http://orjewishlife.com/stephen-elliotts-incredible-journey/

59.     Ashwin Seshagiri, *The Self-Made Man: How Stephen Elliott Writes His Life*, The Atlantic, Apr. 18, 2012, https://www.theatlantic.com/entertainment/archive/2012/04/the-self-made-man-how-stephen-elliott-writes-his-life/255979/

60.     Sam J. Miller, *Sam J. Miller Interviews the Questioning Stephen Elliott*, Maud Newton, Nov. 5, 2009, http://maudnewton.com/blog/sam-j-miller-interviews-stephen-elliott/

## V.    ARTICLES WRITTEN ABOUT MR. ELLIOTT AFTER THIS LAWSUIT

61.     Hannah Gold, *Is This the End of the Sh\*tty Media Men Lawsuit?*, The Cut, May 8, 2019, https://www.thecut.com/2019/05/is-this-the-end-of-the-sh-tty-media-men-lawsuit.html

62.     Katie Herzog, *Stephen Elliott May Win His Lawsuit, But His Reputation Is Beyond Repair*, The Stranger, Jan. 31, 2019, https://www.thestranger.com/slog/2019/01/31/38489121/stephen-elliott-may-win-his-lawsuit-but-his-reputation-is-beyond-repair

63.     Brittany Martin, *A Lawsuit Against the Creator of the Shitty Media Men List Raises Interesting Questions*, LA Magazine, Jan. 15, 2019, https://www.lamag.com/citythinkblog/shitty-media-men-list/

64.     Kelly Weill, *"Sh\*tty Media Man" Stephen Elliott Sues to Dox Women*, Daily Beast, Oct. 12, 2018, https://www.thedailybeast.com/shitty-media-man-stephen-elliott-sues-to-dox-women/

65.     Esther Wang, *Shitty Media Man Sues Creator of Shitty Media Men List*, Jezebel, Oct. 11, 2018, https://jezebel.com/shitty-media-man-sues-creator-of-shitty-media-men-list-1829694376

66.     Jonah Engel Bromwich, *Writer Who Appeared on 'Media Men' List Sues Its Creators*, N.Y. Times, Oct. 11, 2018, https://www.nytimes.com/2018/10/11/style/stephen-elliott-moira-donegan-media-men-list.html

67.     Ruth Spencer, *Stephen Elliott Sues Moira Donegan, Creator of Shitty Media Men List*, The Cut, Oct. 11, 2018, https://www.thecut.com/2018/10/stephen-elliott-sues-moira-donegan.html

68.     Ruth Spencer, *What 5 Shitty Media Men Think of Stephen Elliott's Lawsuit Against Moira Donegan*, The Cut, Oct. 11, 2018, https://www.thecut.com/2018/10/stephen-elliott-moira-donegan-men-respond.html

16

## V.      FILMS OF MR. ELLIOTT'S WORK

69.     Driven: A Web Series About the Ride Sharing Economy, Stephen Elliott, https://www.driven-series.com/

70.     After Adderall, Stephen Elliott (2016) (feature-length)

71.     Happy Baby, The Rumpus, Stephen Elliott (2016) (feature-length)

72.     The Adderall Diaries, Rabbit Bandini Productions & Wildwood Enterprises, Inc., Pamela Romanowsky (2015) (feature-length)

73.     What We Talk About When We Talk About Zombies, Stephen Elliott (2015) (short film)

74.     Mistress, Stephen Elliott (2013) (short film)

75.     About Cherry, IFC Films, Stephen Elliott (2012) (feature-length)

76.     Mr. Gracie, Stephen Elliott (2012) (short film)

## VI.    MR. ELLIOTT'S BOOKS

77.     Stephen Elliott, Sometimes I Think About It: Essays (2017)

78.     Eric Martin & Stephen Elliott, Donald (2011)

79.     Stephen Elliott, The Adderall Diaries: A Memoir (2009)

80.     Stephen Elliott, Sex for America: Politically Inspired Erotica (2008)

81.     Where to Invade Next (Stephen Elliott, Editors of McSweeney's eds., 2008)

82.     Stephen Elliott, My Girlfriend Comes to the City and Beats Me Up (2006)

83.     Various, Stumbling and Raging: More Politically Inspired Fiction (Stephen Elliott, Greg Larson & Anthony Ha eds., 2006)

84.     Stephen Elliott, Happy Baby (2004)

85.     Stephen Elliott, Looking Forward to It: Or, How I Learned to Stop Worrying and Love the American Electoral Process (2004)

86.     Politically Inspired: Fiction for our Time (Stephen Elliott ed., 2003)

87.     Stephen Elliott, What It Means to Love You (2002)

88.     Stephen Elliott, A Life Without Consequences (2001)

89.    Stephen Elliott, Jones Inn (1998)

## VII.    REVIEWS OF STEPHEN ELLIOTT'S BOOKS

### A.    Reviews of *Sometimes I Think About It: Essays*

90.    Kirkus Review: https://www.kirkusreviews.com/book-reviews/stephen-elliott/sometimes-i-think-about-it/

91.    Publishers Weekly: https://www.publishersweekly.com/978-1-55597-775-7

92.    Shelf Awareness: https://www.shelf-awareness.com/readers-issue.html?issue=666#m11653

93.    Washington Independent Review of Books: http://www.washingtonindependentreviewofbooks.com/index.php/bookreview/sometimes-i-think-about-it-essays

### B.    Reviews of *Donald*

94.    Washington Post: https://www.washingtonpost.com/entertainment/books/dan-feserpman-reviews-donald-by-eric-martin-and-stephen-elliott/2011/02/07/ABt2kZF_story.html?noredirect=on

### C.    Reviews of *The Adderall Diaries: A Memoir*

95.    Bookslut: http://www.bookslut.com/nonfiction/2009_09_015092.php

96.    HTML Giant: http://htmlgiant.com/author-spotlight/giant-review-stephen-elliotts-the-adderall-diaries/

97.    Huffington Post: https://www.huffpost.com/entry/an-interview-with-stephen_b_242535

98.    Kirkus Review: https://www.kirkusreviews.com/book-reviews/stephen-elliott/the-adderall-diaries/

99.    NPR: https://www.npr.org/2012/01/16/142313336/rebel-memoirs-three-confessions-from-the-edge

100.    NY Times: (https://www.graywolfpress.org/books/adderall-diaries)

101.    San Francisco Chronicle: https://www.sfgate.com/books/article/The-Adderall-Diaries-by-Stephen-Elliott-3218771.php

102.    The Boston Globe: http://www.boston.com/ae/books/articles/2009/08/30/stephen_elliott_recounts_his_past/

103.    The Literary Reviews: http://www.theliteraryreview.org/book-review/a-review-of-the-adderall-diaries-by-stephen-elliot/

104.    The Stranger: https://www.thestranger.com/seattle/there-will-be-blood/Content?oid=2242324

105.    The Washington Post: http://www.washingtonpost.com/wp-dyn/content/article/2009/09/17/AR2009091703732_pf.html?noredirect=on

106.    Time Out N.Y.: https://www.timeout.com/newyork/books/the-adderall-diaries

107.    Vanity Fair: (https://www.graywolfpress.org/books/adderall-diaries)

**D.      Reviews of *Sex For America: Politically Inspired Erotica***

108.    Kirkus Review: https://www.kirkusreviews.com/book-reviews/stephen-elliott/sex-for-america/

109.    S.F. Chronicle: https://www.sfgate.com/living/article/Stephen-Elliott-s-Sex-for-America-Will-2509171.php

110.    Sacramento News & Review: https://www.newsreview.com/sacramento/sex-for-america-even-sacramento/content?oid=626203

111.    Time Out N.Y.: https://www.timeout.com/newyork/things-to-do/rachel-kramer-bussels-top-10-erotic-book

**E.      Reviews of *My Girlfriend Comes to the City and Beats Me Up***

112.    Believer Magazine: https://believermag.com/stephen-elliotts-my-girlfreind-comes-to-the-city-and-beats-me-up/

113.    Kirkus Review: https://www.kirkusreviews.com/book-reviews/stephen-elliott/my-girlfriend-comes-to-the-city-and-beats-me-up/

114.    N.Y. Press: http://www.nypress.com/book-review-my-girlfriend-comes-to-the-city-and-beats-me-up/

115.    Publishers Weekly: https://www.publishersweekly.com/978-1-57344-255-8

116.    Salon: https://www.salon.com/2006/11/29/elliott_6/

**F.      Reviews of *Stumbling and Raging: More Politically Inspired Fiction***

117.    Publishers Weekly: https://www.publishersweekly.com/978-1-59692-158-0

G.      Reviews of *Happy Baby*

118.    Compulsive Reader: http://www.compulsivereader.com/2010/07/31/a-review-of-happy-baby-by-stephen-elliott/

119.    Kirkus Review: https://www.kirkusreviews.com/book-reviews/stephen-elliott/happy-baby/

120.    N.Y. Times: https://www.nytimes.com/2004/04/04/books/books-in-brief-fiction-poetry-detained-while-young.html

121.    San Francisco Chronicle: https://www.sfgate.com/books/article/The-gritty-view-of-a-man-who-truly-has-seen-it-all-2791994.php

H.      Reviews of *Looking Forward to It: Or how I Learned to Stop Worrying and Love the American Electoral Process*

122.    Beyond Chron: http://beyondchron.org/looking-forward-to-it-by-stephen-elliott/

123.    Chi. Reader: https://www.chicagoreader.com/chicago/stephen-elliott/Content?oid=917766

124.    New York Magazine: http://nymag.com/nymetro/arts/books/reviews/10157/

125.    NPR: https://www.npr.org/templates/story/story.php?storyId=4124940

126.    NY Times: https://www.nytimes.com/2004/10/17/books/arts/the-alsorans.html

I.      Reviews of *Politically Inspired: Fiction for Our Time*

127.    Kirkus Review: https://www.kirkusreviews.com/book-reviews/stephen-elliott/politically-inspired/

128.    Publishers Weekly: https://www.publishersweekly.com/978-1-931561-58-7

J.      Reviews of *What it Means to Love You*

129.    Hartford Behavioral Health: https://www.hbh1.org/poc/view_doc.php?type=book&id=1627&cn=55

130.    Kirkus Review: https://www.kirkusreviews.com/book-reviews/stephen-elliott/what-it-means-to-love-you/

131.    West Texas Centers: https://www.wtcmhmr.org/poc/view_doc.php?type=book&id=1627&cn=51

**K.**     **Reviews of** *A Life Without Consequences*

132.    Brothers Judd:
http://brothersjudd.com/index.cfm/fuseaction/reviews.detail/book_id/60/Life%20Without.htm

133.    Kirkus Review: https://www.kirkusreviews.com/book-reviews/stephen-elliott/a-life-without-consequences/

134.    The New Social Worker: https://www.socialworker.com/feature-articles/reviews-commentary/A_Life_Without_Consequences/