**KAPLAN HECKER & FINK LLP**

350 Fifth Avenue
Suite 7110
New York, NY 10118
(212) 763-0883
www.kaplanhecker.com

**Direct Dial: 212-763-0884**
**Direct Email: rkaplan@kaplanhecker.com**

July 3, 2019

**By CM/ECF**

The Chambers of the Honorable Judge LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Elliott v. Donegan, et al.*, No. 1:18-civ-05680-LDH-SJB

Dear Judge DeArcy Hall,

Ms. Donegan has no objection to the filing of Mr. Elliott's sur-reply brief, which advances several objections—all meritless—to treating him as a limited purpose public figure.

First, Ms. Donegan did not waive this argument. She twice raised it in her pre-motion letters and reiterated it in her opening brief—at which point Mr. Elliott had *never* substantively disputed the point, including at the Court's March 1, 2019 pre-motion conference, and had pleaded his case with express reference to the actual malice standard. Mr. Elliott was on notice of our position and has now submitted extensive briefing on the issue. The Court should decide it on the merits.

Second, Mr. Elliott's threshold arguments are incorrect. Courts frequently take judicial notice of relevant materials at the pleading stage while assessing public figure status. *See* Reply Br. (ECF 45) at 2 n.2; *see also Turner v. Wells*, 879 F.3d 1254, 1272 n.5 (11th Cir. 2018); *AdvanFort Co. v. Int'l Registries, Inc.*, No. 15 Civ. 220, 2015 WL 2238076, at *10 (E.D. Va. May 12, 2015); *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013); *Condit v. Dunne*, 317 F. Supp. 2d 344, 358 (S.D.N.Y. 2004). They also do so in assessing affirmative defenses. *See Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015); *Conopco, Inc. v. Roll Int'l & Paramount Farms, Inc.*, 231 F.3d 82, 86 (2d Cir. 2000).

But there is a reason why courts in this jurisdiction do not refer to "affirmative defenses" when dismissing for failure to allege actual malice: this is *not* an affirmative defense, on which Ms. Donegan bears the burden of proof, but rather a constitutionally-required element of Mr. Elliott's defamation claim. *See Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1329 n.5 (5th Cir. 1993) ("The First Amendment imposes on libel plaintiffs the burden of proving that the defendant's conduct satisfies a certain standard of fault; it does not create an affirmative defense that must be pled."); Rodney A. Smolla, 1 *Law of Defamation* § 3:24 (2d ed. 2019) ("Although the rules emanating from [*New York Times v. Sullivan*] are popularly described as constitutional 'privileges,' the term privilege is actually a misnomer, for proof of actual malice in public plaintiff cases . . . is now actually part of the plaintiff's prima facie case."). The sole authority on which Mr. Elliott relies—an outlier decision by Judge Leon in the District of Columbia—is unpersuasive and inconsistent with the analysis employed in dozens of E.D.N.Y. and S.D.N.Y. cases, including

Judge Oetken's leading opinion in *Biro*, whose limited-purpose public figure analysis relied heavily on judicial notice and nowhere hinted that actual malice must be raised as an affirmative defense. *See* 963 F. Supp. 2d at 271 n.9, *affirmed by Biro v. Condé Nast*, 622 F. App'x 67, 69 (2d Cir. 2015).

Finally, Mr. Elliott asserts that his undeniable prominence in the literary world and media industry—and his extensive writings on the ethics of consent, the limits of sexual morality, and dynamics of sex, power and domination between men and women—had nothing to do with the public controversy that prompted Ms. Donegan to create the Spreadsheet (and prompted various women to contribute to it). In his view, the only conceivably relevant "public controversy" concerned "sexual harassment or assault against women." Sur-Reply Br. (ECF 46-1) at 5.

Even if that *were* the proper definition of the public controversy, Mr. Elliott still ranks as a limited-purpose public figure, for all the reasons given in Ms. Donegan's reply brief. But Mr. Elliott defines the public controversy far too narrowly. "[I]t would be inappropriate to shrink all controversies to the specific statements of which a plaintiff complains. Defendants' alleged defamatory statements here, as in other controversies, are a part of, and clearly related to, a much larger story." *Nat'l Life Ins. Co. v. Phillips Publ'g, Inc.*, 793 F. Supp. 627, 637 (D. Md. 1992). In this case, that larger story is the #MeToo story, from which Mr. Elliott's writings cannot sensibly be extricated. *See Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 586 (D.C. Cir. 2016) ("When defining the relevant controversy, a court may find that there are multiple potential controversies, and it is often true that 'a narrow controversy may be a phase of another, broader one.' . . . Indeed, courts often define the public controversy in expansive terms." (citations omitted)). Obviously, this is not to say that Mr. Elliott has lost legal protections against defamatory statements by revealing his own sexual desires; it is to say that his extensive, deliberate, profitable, and highly public writings about sex, consent, morality, and power have resulted in a "role in the controversy" that is much "more than trivial or tangential." *Biro*, 963 F. Supp. 2d at 275 (quoting *Underwager v. Salter*, 22 F.3d 730, 734 (7th Cir.1994)); *see also* 1 *Sack on Defamation* ¶ 5:3.4 at 5–29 (5th ed. 2017) ("[T]he statement need be no more than generally related to the dispute to qualify for protection.").

The arguments set forth in Mr. Elliott's sur-reply brief should therefore be rejected.

Respectfully Submitted,

_____
Roberta A. Kaplan, Esq.
Kaplan Hecker & Fink LLP

*Counsel for Defendant Moira Donegan*