UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X  Docket#
ELLIOTT,                       : 18-cv-05680-LDH-SJB
               Plaintiff,      :
                               :
     - versus -                : U.S. Courthouse
                               : Brooklyn, New York
                               :
                               :
DONEGAN, et al.,               : July 23, 2020
             Defendants        : 2:01 PM
------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
BEFORE THE HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE

A   P   P   E   A   R   A   N   C   E   S:


**For the Plaintiff**:       **Nicholas Evan Lewis, Esq.**
                            Nesenoff & Milternberg LLP
                            363 Seventh Avenue
                            5th Floor
                            New York, NY 10001

**For the Defendant**:       **Joshua Matz, Esq.**
                            **Roberta Ann Kaplan, Esq.**
                            Kaplan Hecker & Fink LLP
                            350 Fifth Avenue
                            Suite 7110
                            New York, NY 10118



**Transcription Service**:   **Transcriptions Plus II, Inc.**
                            61 Beatrice Avenue
                            West Islip, New York 11795
                            laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

                              Proceedings

1           THE COURT:  Good afternoon.  This is Judge

2    Bulsara.

3           We're here for a status conference in 18-cv-

4    5680.

5           Who do we have here for the plaintiff?

6           MR. LEWIS:  Good afternoon, Judge Bulsara.

7           Nick Lewis for plaintiff, Stephen Elliott, and

8    good afternoon, counsel.

9           THE COURT:  Good afternoon.

10          Who is here for the defendant?

11          MR. MATZ:  Your Honor, this is Joshua Matz for

12   the defendants, and I'm joined by my colleague, Roberta

13   Kaplan, from Kaplan Hecker & Fink, LLP.

14          THE COURT:  Good afternoon.

15          So we're here primarily to discuss the status

16   of discovery on the narrow issue that has been identified

17   by Judge DeArcy Hall's opinion, and I've received the

18   parties letters.  And it appears, at least from both

19   letters, that the parties wished to first conduct some

20   amount of document exchange, and then proceed to a

21   deposition.  Is that as opposed to, for instance, moving

22   forward with the affidavit and deposition first?  Is that

23   fair?

24          MR. LEWIS:  For plaintiff, your Honor, yes,

25   that is fair.

3

Proceedings

1          MR. MATZ:  Yes, for the defendant as well, your

2    Honor.

3          THE COURT:  Okay.  So I have -- you know, the

4    typical practice would be for the plaintiff or the party

5    seeking documents to serve a document request for there

6    to be a response, and objections, and if following meet

7    and confer, there was no agreement about either

8    objections, or additional production, or other similar

9    issues, the parties seeking documents could move to

10   compel.

11          And I gather also that the parties, you know,

12   within a certain amount of time, wished to do that, as

13   well.

14          MR. LEWIS:  That's correct from plaintiff's

15   side, your Honor.

16          MR. MATZ:  Yes.  Yes, your Honor.

17          THE COURT:  Okay.  So -- and let me ask the

18   plaintiff's counsel this, is the document request and

19   interrogatories, the ones that you've provided in your

20   letter, those are the ones you plan on serving?

21          MR. LEWIS:  Yes, sir.

22          THE COURT:  Okay.  So now, I normally wouldn't

23   do this, but I don't want this process to take a long

24   period of time but, you know, obviously we haven't heard

25   the defendant's objections, but just some observations,

4

Proceedings

1    the document requests strike me as quite broad, and you

2    would have to, if this came to a motion to compel,

3    explain to me how the document requests would -- are any

4    different than what you would serve if the issue in

5    discovery were the entirety of the case, right?

6         We have a narrow issue on which discovery is to

7    be conducted, and if I were to -- just reading your

8    document requests, they seek all kinds of information

9    about, for example, all contributors to content in the

10   list, and a defamation claim has to be content statement

11   of concerning a plaintiff.  And so for example, it's not

12   clear to me why information about all contributors to the

13   list, or -- would be relevant in the case generally, but

14   it's certainly not relevant to the narrow issue on

15   whether immunity attaches for the specific, we'll call

16   it, items in the list, or the spreadsheet that pertain to

17   the plaintiff.

18        So I would urge you strongly to look at the

19   scope of what you've sought, and seek to narrow to them

20   to the issues because they strike me as exceedingly

21   broad.

22        MR. LEWIS:  Noted, your Honor.  I would say as

23   far as just that one particular issue about all

24   contributors, it's my understanding, and now opposing

25   counsel has committed to writing, the fact that Ms.

Proceedings

1   Donegan did, in fact, delete documents that could very
2   well be relevant to the CDA issue, in particular, whether
3   she -- the manner in which she encouraged the other users
4   to post towards the spreadsheet, so of course --
5           THE COURT:  Let me understand that argument.
6   The argument is that knowing how the -- Ms. Donegan
7   interacted with other contributors, i.e., contributors
8   who did not provide information related to the entry for
9   Mr. Elliott, would help inform whether or not she in fact
10  materially altered, for example, information related to
11  Mr. Elliott's entry?
12          MR. LEWIS:  Just the encouraging, whether or
13  not she materially altered, if -- and again, I'm somewhat
14  hamstrung because I don't have the (audio interference)
15  but for example, if in her encouraging users of the
16  spreadsheet, she were to say send a group email, instead
17  of one-by-one emails to those who access the list, I
18  would certainly suggest that the emails to not just the
19  person or people who access Mr. Elliott's cells on the
20  spreadsheet would be relevant.
21          And I also believe that because she deleted --
22  Ms. Donegan deleted the emails, and her Google account,
23  as far as I understand, that there's likely going to be
24  the need for some third-party discovery to see if we
25  can't obtain the emails she was sending to everyone, or

6

Proceedings

1    singular people in particular.  This is what -- I

2    can't --

3              THE COURT:  Well, let's be clear, and maybe I

4    misunderstand what you're saying.  If there's an email

5    that was sent to say ten people, one of whom was the

6    person or two of whom were the persons who gave

7    information related to your client, that email -- we

8    could talk about redaction in a second, would appear to

9    fall within the scope of the issue to be decided, but

10   it's not clear to me why -- because it's, in addition to

11   being an email to other people, it's also an email to

12   potentially the people who contributed to the entry in

13   question.

14             But it's not clear to me at all why emails to

15   people who -- that were not involved in the creation of

16   the content, or that's related to the entry at issue,

17   would be relevant at all, and certainly your document

18   request (audio interference) that information.

19             MR. LEWIS:  Well, I guess, your Honor, I don't

20   know how I'd be able to differentiate which emails

21   specifically are -- I don't even know if Ms. Donegan

22   doesn't, in fact, know who posted to Mr. Elliott's cells,

23   I won't speak for Ms. Donegan's counsel, but if that is a

24   position that Ms. Donegan is taking, then I don't know

25   how we would -- how any of us would be able to

7

Proceedings

1  differentiate who exactly is the relevant person in the

2  email.

3          THE COURT:  So that only proves my limitation,

4  it doesn't undercut it, right?  If the position is, and

5  this is why I as wondering whether we wanted to have the

6  affidavit submitted first, if the position is that she

7  doesn't remember who contributed, or doesn't know who

8  contributed to which entry, then knowing with whom she

9  interacted is not going to help you in figuring out

10 whether the immunity applies, because there's no basis to

11 tie that particular email, or that particular

12 communication to the particular entry involving your

13 client.

14         And the question of immunity turns solely on

15 what she says she did, or what she says she didn't do.

16         MR. LEWIS:  Well, I would disagree with that,

17 your Honor, because I think if there's no way of finding

18 that out, then we might have a spoliation issue.

19         THE COURT:  Well, that's a different question.

20 That's a different question than whether or not --

21         MR. LEWIS:  And that --

22         THE COURT:  -- well, you can make these

23 arguments in response to whatever objections there, but

24 it strikes me that there is little difference than in the

25 document requests that you've propounded, than what would

8

Proceedings

1   the document discovery, save for damages, in the entirety
2   of the case.
3            And so, I am not inclined to make this a full-
4   blown discovery exercise into the entirety of the case,
5   and you'll have to come up with more than spoliation to
6   suggest -- you know, logical inference, or other kind of
7   factual argument to say why information about entries
8   made by others, or information by entries concerning
9   others -- people other than your client would be
10  pertinent or relevant to this immunity issue.  Does --
11           MR. LEWIS:  May --
12           THE COURT:  Go ahead.
13           MR. LEWIS:  -- may I ask just the question,
14  just so I'm clear, your Honor, is information regarding
15  the actual deletion of whether emails or other documents,
16  are those -- would you deem those requests to be relevant
17  for the CDA examination?
18           THE COURT:  Let me make sure I understand
19  before I -- meaning, information about, for example,
20  whether emails that we were just talking about, right,
21  let's say they were --
22           MR. LEWIS:  Yes.
23           THE COURT:  -- concerning your client's entry,
24  or the entry concerning your client, whether those emails
25  were deleted or not.

9

Proceedings

1         MR. LEWIS:  Yes, sir.

2         THE COURT:  Okay.  I can see an argument for

3    why there would be -- appropriate to understand because

4    it goes to the nature of the communications, but -- so

5    I'm not going to -- you know, as to whether we are

6    deciding spoliation --

7         MR. LEWIS:  I understand we're not there yet.

8         THE COURT:  -- and whatever consequences may

9    accrue to that, that I think is well beyond, but I can,

10   you know -- because it goes to the practices of what may

11   have been done with respect to information that's

12   pertinent to the ultimate immunity question --

13        MR. LEWIS:  Sure.

14        THE COURT:  -- I think that would be fair to

15   inquire about.  But so, let me hear from the defendants

16   on any of these points, to make sure I have not

17   misunderstood any of the predicate dynamics, as well as

18   the scope of the immunity question.

19        MR. MATZ:  Thank you, your Honor.  We

20   appreciate that.  The colloquy that you just engaged in

21   with Mr. Lewis will be familiar to him because it's

22   almost verbatim, the colloquy that I engaged in with him

23   about two weeks ago, when I pointed out that the judge's

24   order did not -- Judge DeArcy Hall's order did not

25   contemplate comprehensive, unilateral discovery against

10

Proceedings

1    Ms. Donegan, but that it instead contemplated narrow

2    discovery, limited solely to the four very specific

3    factual questions that relate to the issue of CDA

4    immunity, and obviously the document requests described

5    in Mr. Lewis' letter, come nowhere close to adhering to

6    those boundaries.

7                Most notably, they're not limited in time in

8    any way for example, to the period of October 10th to 12,

9    which is when the underlying events, in fact, occurred.

10               And your Honor raised two other points that I

11   would briefly address.

12               THE COURT:  I'm sorry, on that point, let me

13   just make sure I understand that last point.  October

14   10th through 12th is the period of time when the Google

15   spreadsheet was online, and people could make changes,

16   contributions, alterations, whatever, obviously the

17   characterization is something to be decided, but that's

18   what you mean by the October 10 through 12 period?

19               MR. MATZ:  Yes, and I was actually being

20   generous.  It was only online for twelve hours on October

21   11th of 2017, but I was seeking to -- I was referring

22   generally to the period of time in which any of the

23   underlying communications that Mr. Lewis is talking

24   about, and that I believe Judge DeArcy Hall's order

25   concerns, any of those would, in fact, have occurred

11

Proceedings

 1    within that period.

 2              THE COURT:  Okay.  Well, I just want to make

 3    sure of one point though, and if I have misunderstood the

 4    immunity, please let me know.  I mean, isn't it possible

 5    that if someone has information that they received on

 6    days prior, they put the spreadsheet up, and they

 7    populate the information they received say on October

 8    1st, into the spreadsheet, that that goes to -- knowing

 9    what happened on October 1st, goes to the immunity

10    question, even though it's not the period in which that

11    spreadsheet was live, right, unless -- and obviously,

12    there has to be some reasonable bound to that, but you

13    know, I think it would -- unless there's some evidence,

14    right, that when the spreadsheet, for example, was put

15    online, there was nothing in it.

16              But if the point is -- and obviously we're

17    talking about the entries of, or concerning Mr. Elliott,

18    don't we need to know when that information was received,

19    as it were?

20              Now it may be that your client didn't "receive"

21    information in the sense of getting it beforehand, and

22    you may know that or not know that, but do you understand

23    the point?

24              MR. MATZ:  I completely understand the point,

25    and your Honor is of course correct, the information she

12

Proceedings

1  received earlier in time than the posting of the

2  spreadsheet on the internet could bear on the CDA

3  immunity issue, which as Judge DeArcy Hall defined it,

4  relates specifically to the Elliott entries on the list.

5          And I agree with you also that you would want a

6  reasonable period of time for any such search, if one

7  were to go looking for such documents.

8          I was highlighting in some respects, the fact

9  that Mr. Lewis' position extended to the present, and

10 would cover every communication that Ms. Donegan had,

11 that in any way relates to anything having to do with the

12 list, or anyone on the list, or anyone who maybe glanced

13 at it, you know, out of the side of their eye, both the

14 period in which the list was active through the present.

15         I was merely noting the lack of a temporal

16 limitation, as well as the fact that the requests on

17 their face cover many items that lack relevance to the

18 specific question that Judge DeArcy Hall identified.  And

19 (indiscernible) --

20         THE COURT:  Let me just --

21         MR. MATZ:  Sorry.

22         THE COURT:  Oh, sorry.  Let me just pause on

23 the time frame question because if we can hammer that out

24 now, it's better we do that as opposed to waiting to

25 solve, you know, issues that -- so we can move through

13

Proceedings

1    this discovery promptly, and I'll hear from the plaintiff

2    on this.

3              Why is it, you know, pertinent to the immunity

4    question, communications that are years after the fact?

5    Now I recognize this may be a standard request, right,

6    and it may be simply a function of that, but we are

7    talking about creation of information in 2017, if I have

8    the year correct, and we're talking about, you know, if

9    we think about publication as it relates to a defamation

10   claim, the publication occurred in that period of time,

11   and obviously some -- there might be communications

12   shortly thereafter, which bear upon how the information

13   was obtained or however, I know the plaintiff will

14   disagree about that means exactly but are you prepared to

15   limit the time frame?

16             MR. LEWIS:  Well, your Honor, I think there are

17   some requests, or some potential documents that it would

18   be limiting the time frame could exclude, for example,

19   Ms. Donegan discussing what she did, and the conduct she

20   did surrounding the list, which we know she, at a

21   minimum, wrote an article in which she described the

22   conduct she did in and around the list that could be

23   relevant, so beyond just communications, we have a writer

24   who has written about specifically what she did, and

25   they're -- so for example, if there was an essay what she

Proceedings

1    did in the lead up to the list being published, even in

2    the days leading up to it, if she was encouraging people

3    through her personal communications, whether speaking,

4    texting, social media messaging, emails, her statements,

5    her own statements about the conduct she undertook would

6    be relevant right up till today.

7              THE COURT:  Well, I'm not sure that that's

8    right, but let's think about this in a slightly different

9    way, right?  This is an affirmative defense.  The burden

10   of production and persuasion is from the defendant,

11   right?  Is that the defendant's position?

12             MR. MATZ:  Yes.

13             THE COURT:  So is your client willing to come

14   forward with the affidavit first?

15             MR. MATZ:  Yes, your Honor.  She would be

16   willing to come forward with the affidavit first.

17             THE COURT:  Because I do think some of these

18   issues can be foreclosed quite quickly because you are

19   the one putting forth the defense, and obviously the

20   plaintiff is entitled to attempt to defeat the defense,

21   but some of this is informed by, I think, what exactly is

22   being asserted in asserting the defense, and it may

23   obviate some of these, and I don't want to call them

24   speculative, but where we don't know exactly what -- for

25   example, if the affidavit were to say, let's -- just to

15

Proceedings

1  be clear, right, in no communication after say January 1,

2  2018, did Ms. Donegan communicate with any third-party

3  about the information related to, or concerning Mr.

4  Elliott, you know, going down a long expiration about,

5  and having her turn over all of the essays, writings,

6  drafts, et cetera, seems to me less likely to contain

7  pertinent information, and it maybe wholly

8  disproportionate under Rule 26.

9         So if you're willing to do that, I think it may

10  at least obviate some of these, I would hope, some of

11  these document issues.

12        MR. MATZ:  Yes, your Honor, we understand, you

13  know, and just to clarify one minor point in what your

14  Honor just said, you know, it would be true, I expect,

15  that Ms. Donegan would testify that she has not

16  communicated with anybody about the provenance of the

17  entries on the list concerning Mr. Elliott because as you

18  will find when she gives her affidavit, she did not

19  fabricate it, and does not know who did.

20        Certainly after Mr. Elliott sued her, it is

21  conceivable that there are communications she has

22  received from others, who have opinions as to the

23  underlying truth of the allegations, or who have opinions

24  about Mr. Elliott's decision to sue her for it, but

25  neither of those things, it's my understanding, would be

16

Proceedings

1  relevant to the narrow fact question of what happened on

2  and before October 11th with respect to the Elliott

3  entries.

4           And so fr that reason, she absolutely could,

5  and would in her affidavit, address the issues respecting

6  CDA immunity, and could make representations that she has

7  not communication subsequently about the provenance of

8  the Elliott entries, or how they specifically encouraged

9  anyone to defame Mr. Elliott.

10          But obvious -- I just wanted to flag that one

11  minor point, that there may be other people who have

12  communicated with her about Mr. Elliott who very publicly

13  sued her, but that they wouldn't relate to the CDA issue.

14          THE COURT:  I agree, and this is why I thought

15  some of the requests were overbroad.  So just to take --

16  and again, when I was speaking earlier about

17  representations, I was obviously talking about

18  hypothetically.

19          You know, I don't know what the underlying

20  facts are but hypothetically, there is a-- you know, if

21  there were communications about -- with third parties

22  about Mr. -- about the entries concerning Mr. Elliott,

23  and those communications came to your client, those -- if

24  we were doing discovery about the entire case, okay,

25  those communications would be within the heartland of a

17

Proceedings

1    relevant proportion of the discovery request.

2           If however, in this context, however, the

3    communications are only relevant proportional, if for

4    instance, the substance of that email went to whether she

5    changed the substance of information she received about

6    Mr. Elliott, or whether she just inputted it, or -- et

7    cetera.

8           In other words, the process by which the

9    information was contained in the October spreadsheet.  I

10   hope that makes sense to both parties.

11          MR. MATZ:  It makes sense to the defense, your

12   Honor.

13          MR. LEWIS:  Well, I missed the -- it did not

14   make sense to me, your Honor, only because I think I

15   might have missed a portion of --

16          THE COURT:  Sure.  For instance, as to the

17   question of -- just to differentiate discovery that's

18   appropriate for the narrow issue here, and discovery

19   that's appropriate case-wide, okay, let's say after

20   October of 2017, a third-party email Ms. Donegan, right

21   -- I may be mispronouncing everyone's name, so I

22   apologize, emailed Ms. Donegan, and inquired about the

23   entries relating to Mr. Elliott, okay?

24          If this case were full-on discovery about the

25   entries related to Mr. Elliott, that email and requests

18

Proceedings

1   for it would be in the heartland of discovery, and you

2   would be entitled to it, it would be relevant, it would

3   proportional.

4           In this context, that email would only be

5   relevant, proportional, and be required to be produced if

6   it dealt with the immunity issues.  I.e., if it dealt

7   with how she got the information, how she might have

8   dealt with the information with respect to October 2017.

9           For instance, if somebody emailed her and said

10  do you think this is true, okay --

11          MR. LEWIS:  Uh-hum.

12          THE COURT:  -- that's not a producible email in

13  this context.

14          MR. LEWIS:  What the --

15          THE COURT:  If the email on the other hand

16  said --

17          MR. LEWIS:  I'm sorry to interrupt you.

18          THE COURT:  Yeah.  No, no, okay, just to clear

19  up the example -- and don't worry, it's an audio, people

20  interrupt all the time, it's okay, what's not -- what is

21  producible would be the -- well, when you got the

22  information about Mr. Elliott, what did you do with it,

23  and how did it end up on the spreadsheet.

24          MR. LEWIS:  Okay.

25          THE COURT:  That's a -- right?  The two are

19

Proceedings

1    different.  The first would be if we're doing discovery

2    about the whole case.  The second relates to immunity.

3              MR. LEWIS:  I understand.

4              THE COURT:  And so how long to produce the

5    affidavit?

6              MR. MATZ:  Your Honor, we would propose two or

7    three weeks.

8              THE COURT:  Okay.  So if we said three weeks

9    for the affidavit, and then the parties to exchange

10   document requests and interrogatories two weeks after

11   that, is that sufficient time?

12             MR. MATZ:  Yes, your Honor.

13             THE COURT:  And so --

14             MR. LEWIS:  I'm just looking at my calendar,

15   your Honor.  Your Honor, if I might, just only because I

16   have a commitment that I'm out the 24th to the 28th of

17   August, if I could have just a few extra days, that would

18   be great.

19             THE COURT:  Is three weeks --

20             MR. LEWIS:  Yes, sir.

21             THE COURT:  -- three weeks sufficient?  Okay.

22             MR. LEWIS:  Yes, sir.

23             THE COURT:  Now, you know, there's nothing

24   preventing the defendant from serving a document request

25   or interrogatory here, right, but it obviously -- it's

Transcriptions Plus II, Inc.

20

Proceedings

1  subject to the same burden proportionality, relevance

2  limitation, what's good for the goose is good for the

3  gander, and I don't know if the defendants intend to

4  serve document requests but is that time frame sufficient

5  on your end, if we did it simultaneously?

6          MR. MATZ:  It is, your Honor.

7          THE COURT:  Okay.  And then can we have -- can

8  I set the production of documents and, as well as

9  responses to these requests and interrogatories for

10  thirty days afterwards?  In other words, so three weeks

11  to produce the affidavit, there weeks to do -- make the

12  document requests and demands -- I mean, excuse me,

13  document requests and interrogatories in a month to

14  respondent, provide the documents?

15          MR. MATZ:  Your Honor, we believe that is

16  sufficient time.  I would just note that unless Mr. Lewis

17  is able to formulate his requests in a manner consistent

18  with your Honor's guidance today, a slightly longer

19  period may allow an opportunity for the parties to seek

20  to negotiate and resolve any differences of opinion about

21  the appropriate scope of relevancy and proportionality,

22  but we can easily do thirty days, and if that's the

23  Court's preference, we will of course make it happen.

24          THE COURT:  Well, okay, it's -- I'll do the

25  following.  I set it at thirty days.  If the parties need

21

Proceedings

1   more time, we can deal with the request.  I will point

2   out for both sides, right, the 2015 rule amendments to

3   the document requests will contemplate that the -- if a

4   party is withholding documents on the basis of an

5   objection, they're required to say so, which look, many

6   lawyers don't pay attention to this, which is generally

7   irksome to me, but it has a practical consequence in this

8   context which is, I think when -- I think, at least, the

9   defendant has some sense of what documents there are in

10  their client's possession, you know, it may be that one

11  side or the other's document requests are overbroad, and

12  beyond the scope, et cetera.

13        If, however, there are no documents that are

14  being withheld on the basis of that objection, you can

15  simply state the objection and say there are no documents

16  being withheld because there are none, based on a

17  reasonable search or whatever, and so I would encourage

18  you to do that, and that way this -- you know, perhaps

19  we're not fighting over theoretical objections.  I hope

20  that makes sense.

21        MS. KAPLAN:  Your Honor, this is Ms. Kaplan.

22  We understand all that.  It makes total sense.  One idea,

23  I just kind of have that may facilitate things, is as

24  probably you gleaned from our request for an extension,

25  which we appreciate in our letter, we have now been

22

Proceedings

1   through, you know, her hard drives, and all that, and

2   have a sense -- a good sense of what's there, and one

3   thing we could certainly do within 30 days, or maybe

4   earlier, is produce the documents that we think would be

5   relevant to the CFA issue.

6          THE COURT:  Well, I was going to suggest that

7   anyway --

8          MS. KAPLAN:  Yeah.

9          THE COURT:  -- irrespective of these document

10  requests, because you had made that offer, I was going to

11  suggest that that happen, if only to narrow what might be

12  asked for in addition.

13         MS. KAPLAN:  We'd be happy to do that, your

14  Honor.

15         THE COURT:  Okay.  So that raises the question

16  of the redaction of information of -- sorry, let me be

17  more precise -- the redaction of personally identifiable

18  information in those documents.  Does the plaintiff have

19  objection to that?

20         MR. LEWIS:  Well, honestly, your Honor, if it

21  was more -- as I -- Mr. Matz and I had a couple of

22  conversations that he alluded to.  There's redactions for

23  a completely unrelated person sharing a horrific

24  experience they went through that has nothing to do with

25  the list, we certainly have no objection to that person's

23

Proceedings

1  identifying information being redacted.  The only point

2  of redaction that I think we would derail would be if

3  there's someone specifically that we might need to get

4  third-party discovery from regarding the CDA issue,

5  particularly you know if someone's emailing about my

6  client, for example, those are the redactions that we

7  would not consent to, though we did note that we would

8  certainly be happy to sign any confidential --

9  confidentiality order -- sorry, your Honor, it's been a

10  long week.

11          THE COURT:  That's okay.

12          MR. LEWIS:  -- confidentiality order that your

13  Honor or if your Honor preferred, that the parties could

14  come to an agreement of an extremely extrinsic

15  confidentiality order, we'd certainly be happy to do

16  that.

17          THE COURT:  Well, okay, so let me say this, I

18  thought this -- the issue I am about to raise next was

19  sort of -- I thought was going to come up at one point or

20  another, this is how we'll start at least on the

21  redaction.  I'll permit the defendants to redact

22  information.

23          If you look at the content of the email or

24  whatever, and you want to challenge the redaction, the

25  parties can meet and confer, and then I'm not going to

24

Proceedings

1   suggest a privilege log at this point because I assume it

2   will just say personally identifying information, and it

3   will be the same objections for every person, but -- so

4   I'm not going to require that but if there's a particular

5   redaction that you think is inappropriate, the parties

6   can meet and confer, and then if it needs to be raised to

7   me, it can be raised to me.

8          MR. LEWIS:  Okay.

9          THE COURT:  So we'll deal with it that way, in

10  the first instance, but as to this third-party discovery,

11  and frankly, you know, the parties will have to give me

12  some guidance on this, it is not clear to met at all,

13  okay, how much the third-parties actions bear upon a

14  defendant's ability to invoke the immunity.

15         In other words, if the question is what did Ms.

16  Donegan do, okay, it's not clear to me that the third-

17  party who gave the information is pertinent to this, if

18  you know what the information is that was provided.

19         In other words, if there's no information

20  provided, for example, other than, you know, a few words

21  or et cetera, and that can be identified, then I don't

22  know what the third-party has to do with the ability of

23  the defendant to invoke the immunity because the question

24  for the immunity is what did he or she do, in this case

25  she, what did she do with that information that was

Proceedings

1   provided.

2         I don't know the answer to this question, and

3   it's both legal and factual, and I'm not even sure how

4   much it's a theoretical or an actual question here,

5   because there have been -- and I may have misconstrued

6   some of the prior history, so I apologize for that, there

7   may be some -- there be on the defendant's part, some

8   positions that have been staked out as to whether she

9   recalls from whom information was received, or ever knew,

10  in any event, which makes the immunity question really

11  about what she did, and perhaps what she did in a general

12  way, and how it -- so I'll hear first from the defendant

13  and then the plaintiff but the reference to the third-

14  party discovery, I am not sure, you know, why that's

15  relevant.

16        MR. MATZ:  Your Honor, I think part of what's

17  going on here is that third-party is being used in two

18  different senses.  In our letter, when we acknowledged

19  that Mr. Lewis might wish to undertake third-party

20  discovery, what we had in mind, based on our

21  conversations with him, and as indicated --

22        THE COURT:  Well, Google, Snapchat, and other

23  social media, not the person who was the victim here, or

24  the putative victims.

25        MR. MATZ:  Yes, exactly.  It is emphatically

26

Proceedings

1   our position that we see no need to involve other

2   individual third-parties, and to retraumatize them in the

3   context of this litigation, if they did communication

4   with Ms. Donegan about what, for them, may have been one

5   of the most sensitive, and painful experiences in their

6   lives.

7            We see no need for that, where the only

8   question is, what Ms. Donegan did.  It's about her

9   conduct.  It's not about her mental state, and it's not

10  about what anybody else did.  It's just about what Ms.

11  Donegan did, and so for that reason --

12           THE COURT:  But I --

13           MR. MATZ:  -- we would separate out --

14           THE COURT:  -- would you --

15           MR. MATZ:  -- the two forums of third-party

16  discovery.

17           THE COURT:  Understood.  Would you agree,

18  however, it's both how -- you know, it's her conduct

19  about content in her possession, right?  In other words,

20  you have to know the -- the actions that are being

21  described, it's about what is the -- they make sense in

22  the context of that she's taking those actions with

23  respect to something.  It doesn't matter, I think, and

24  I'll hear from the plaintiff, what the third-party's

25  intent was, what the third-party's message was, even if

27

Proceedings

1  the third-party asked Ms. Donegan to do certain things

2  with the information she provided hypothetically, if she

3  didn't do them, it's irrelevant to the immunity, right?

4  So you don't need to know the communications surrounding

5  the content, but you need to know perhaps what the basic

6  content was.

7          MR. MATZ:  Yes, your Honor.  And if I could

8  just propose something, I think the challenge as your

9  Honor has raised several times, is in the abstract, it

10 can be more challenging to think through the various

11 hypotheticals.  It may be a lot more productive for the

12 parties to engage in the party discovery, and to then

13 assess in the context of very specific documents, if Mr.

14 Lewis concludes that on the basis of a specific document,

15 he thinks it appropriate to serve a third-party subpoena

16 on an individual, it might be a lot easier to work

17 through the questions that would be presented by that, in

18 a more particularized factual setting, than in a more

19 hypothetical posture, because I would suspect that any

20 analysis of that kind, if Mr. Lewis even comes to think

21 that such discovery was necessary, would very much depend

22 on exactly what the communication is, and when it's from,

23 and the extent to which there's any reason to believe

24 subpoenaing a person involved in that communication is

25 relevant, and necessary, and proportionate, and all that.

28

Proceedings

1    THE COURT:  Okay.  Well, let me ask plaintiff's

2    counsel, I think the proposal is as follows.  With

3    respect to individual, third-party discovery towards

4    individuals, we're basically going to punt for now.  In

5    other words, the defendants will produce the documents in

6    their possession with redactions.  If you believe a

7    redaction needs to be challenged, then work it out, if

8    you can't work it out, I'll decide it, and if on the

9    basis of any information you receive, either of that

10   tranche of documents, or in response to the document

11   requests or interrogatories, you believe it's appropriate

12   to subpoena a third-party individual, we could cross the

13   bridge about whether the defendants would agree or object

14   at that point.  Are you okay with that?

15   MR. LEWIS:  With punting?  Yes, your Honor, if

16   we want to punt.  The personal communications are --

17   yeah, we can deal with that --

18   THE COURT:  Yes.

19   MR. LEWIS:  -- later, but I do believe in Judge

20   DeArcy Hall's decision, we -- the personal communications

21   were noted to be something would be relevant but we could

22   certainly deal with that when we get to that bridge.

23   MR. MATZ:  Well, your Honor, may I --

24   THE COURT:  I think (indiscernible) refer to --

25   go ahead.

29

Proceedings

1      MR. MATZ:  Sorry.  I was going to ask if I

2  could raise two very closely related points, but I don't

3  mean to take us off topic.

4      THE COURT:  Well, let me just say this, I'm not

5  sure -- and let me just close this out.  I'm not sure

6  what you mean by personal communications.  If you're

7  talking about subpoenaing the third-party for the

8  communications sent to Ms. Donegan, or someone else about

9  the -- again, entry over concerning Mr. Elliott, I think

10  that too would be whether it's a deposition, which is

11  what I assume someone was talking about when they said

12  individual third-party deposition or documents, we'll put

13  that off.

14      I will say again, even a subpoena to a third-

15  party, you have to -- you know, the fact that their

16  personal communications are pertinent, I think (audio

17  interference) discuss all of issues then.

18      And then I assume that the -- whoever has a

19  phone on, please mute --

20      MR. LEWIS:  Yes, I'm sorry, your Honor.  I'm

21  trying to do that right now.

22      THE COURT:  Yes, it's okay.  If -- sorry, on

23  the third-party subpoenas to Google, et cetera, it sounds

24  like the parties are going to work cooperatively on that.

25  I'm not going to set a schedule for that, other than the

30

Proceedings

1   sort of closing period for all of this discovery.  Am I

2   wrong about that, that the parties are -- with respect to

3   that kind of third-party discovery, the parties are

4   working it out?

5           MR. MATZ:  You're not wrong about that, your

6   Honor.  I would just identify that as in the original

7   Google subpoena, which provided unmasking protections, it

8   will be our position again here, and hopefully Mr. Lewis

9   will agree again, as he did earlier, that affording

10  again, third parties who may be affected by the documents

11  that would be produced in response to any such subpoena,

12  that it would be important to afford them the unmasking

13  protections that he previously agreed to, and that your

14  Honor acknowledged, and adopted in entering the order,

15  governing the Google subpoena.  And so our position as to

16  that would just be that we should follow the path we've

17  already walked down together.

18          THE COURT:  Okay, so I'll let the parties work

19  out that, if you can't agree, I'll obviously decide it.

20          Okay.  Raise the two issues that you wish to,

21  that were related.

22          MR. MATZ:  Well, your Honor anticipated one of

23  them, which was that issue, so there's just the other one

24  left, which was about interrogatory responses, and

25  confirming that -- and again, this is maybe putting the

Proceedings

1    cart before the hypothetical horse, or whatever the right

2    way to phrase it would be but making sure that the

3    redaction principals that we agree on would also apply to

4    interrogatory responses.

5         THE COURT:  Well, let me say the following.

6    I'm not sure the plaintiffs agree with the redaction

7    principles.  If you're talking about I'm permitting you

8    to redact in the first instance, the -- and then if they

9    want to challenge they can, yes, that applies to both

10   documents and interrogatories, and frankly, if it comes

11   to it, portions of the deposition transcript.

12        MR. MATZ:  Thank you, your Honor.  That all

13   sounds right, and those are the principles that we

14   understand.  We will redact in the first instance, that

15   they can come to you, and challenge it, and that you

16   would then resolve it, potentially with notice, and an

17   opportunity for the affected individuals to be heard.

18        THE COURT:  Right, and just to clarify that

19   slightly, I would hope that the parties meet and confer

20   about the redaction before coming to the Court because

21   maybe you can work it out, maybe you can provide a basis

22   that satisfies or, you know, some other accommodation can

23   be worked out.

24        If I set the close of all of this discovery

25   which admittedly also includes a deposition, is as

32

Proceedings

1  October -- excuse me, I'm sorry -- October 30th, is that
2  too aggressive?
3          MR. LEWIS:  I believe so, your Honor.
4          MR. MATZ:  Obviously, the defense will
5  accommodate any deadlines, especially if it's on the
6  understanding that the parties can jointly move for an
7  extension if one proves to be necessary.
8          THE COURT:  Okay.  No criticism to lawyers, you
9  know, but as one who, you know, the New York State Bar
10  considers me retired from the practice of law, if you
11  didn't know judges were considered retired from the
12  practice of law, the work fills the space typically, so
13  I'm going to set October 30th.  If we need to extend it,
14  I'm happy to either for COVID-related reasons or for
15  frankly, substantive reasons.
16          Is there --
17          MR. LEWIS:  Thank you, your Honor.
18          THE COURT:  What's plaintiff's position on the
19  length of a deposition?
20          MR. LEWIS:  Of --
21          THE COURT:  How about this?  I realize it's a
22  little bit of a premature question, maybe you should get
23  the affidavit.  You've seen the defendant's proposal on
24  the time line, I think, right?  You've seen -- sorry, the
25  length of the deposition, and if both sides can't work

33

Proceedings

1  that out, then I'll decide that.

2          MR. MATZ:  Sounds good, your Honor.

3          MR. LEWIS:  Thank you, your Honor.  And can I

4  assume that your Honor would agree that a virtual or a

5  remote deposition is appropriate under the current

6  circumstances?

7          THE COURT:  Yes.  If -- I would hope the

8  parties would agree to that.

9          MR. LEWIS:  Yes, sir.

10          THE COURT:  And if they didn't, I would

11  strongly encourage it, and if necessary, require it, but

12  I'm -- you know, but --

13          MR. LEWIS:  (Indiscernible).

14          THE COURT:  -- we can obviously -- and if you

15  need help on working out the procedures, I'm happy to

16  work those things out with the parties.

17          On plaintiff's side, is there anything else we

18  wish to discuss?

19          MR. LEWIS:  No, your Honor, I think -- well, I

20  believe the remaining things would fall under the cross

21  the bridge when we come to it, as far as communications,

22  and perhaps other issues, as far as obtaining other

23  communications, and it seems like, at least some would

24  not be in Ms. Donegan's possession --

25          THE COURT:  Okay.

34

Proceedings

1          MR. LEWIS:  -- based on her practices

2   (indiscernible).

3          THE COURT:  Okay.  Anything else on defendant's

4   side?

5          MR. MATZ:  No, your Honor.  Thank you for

6   taking the time to hold this conference with us.

7          THE COURT:  Okay, one last thing, just so the

8   parties are under a misapprehension, I do anticipate this

9   Google or other kind of internet service providers, or

10  other social media platform, that third-party discovery

11  to occur within this schedule.  In other words, we

12  wouldn't be doing it afterwards.  Obviously, if we need

13  to extend it because of that, we would do that but I do

14  -- you know, I would expect the parties to move forward

15  with their conversations, and that third-party work, you

16  know, as soon as possible.

17         MR. MATZ:  Yes, your Honor.

18         MR. LEWIS:  If might just note one thing, your

19  Honor, because I was thinking this when we cross the

20  bridge, but I do believe they're -- and we'll wait to see

21  what Ms. Donegan provides, but that there could be a

22  situation where obtaining communications from an

23  individual third-party could come into play.  That's

24  where I thought the 10/30 date -- if there's going to be

25  motion practice surrounding that, would seem to be --

35

Proceedings

1    that would be the thought in my mind, as to why it might

2    take some time if there are, for example, emails from Ms.

3    Donegan of encouragement that were sent to a third-party,

4    that would seem to be irrelevant for Mr. Elliot, so

5    that's the -- I think that was beyond just if there is,

6    you know, ISPs and google subpoenas, those were the

7    third-party discovery tools that I thought could very

8    well come into play, considering Ms. Donegan has deleted

9    at least a portion of these types of relevant documents.

10            THE COURT:  Okay.  Well, all I will say about

11   that, at this point is, I think you should, you know --

12   obviously before 10/30, you should tee-up the issue with

13   me --

14            MR. LEWIS:  Yes, Judge.

15            THE COURT:  -- if the issue needs to be teed-

16   up.  Obviously if I need to extend the schedule, I would,

17   you know, and we'll cross the bridge another --

18            MR. LEWIS:  Whatever metaphor we have.

19            THE COURT:  -- yeah, but -- yeah, exactly, and

20   you know, on the encouragement, I'll just point out, you

21   know, bottom of page 23, top of 24, Judge DeArcy Hall

22   appears to limit the encouragement of things that would

23   pertain to the twelve-hour juncture.  We can debate that

24   in the context of what comes up but I just bookmark that

25   for our future conversations.

36

Proceedings

1          Okay.  I wish all of you and your families good

2    health.  Take care.

3               MR. MATZ:  Thank you, your Honor.

4               MR. LEWIS:  Thank you.

5                  (Matter Concluded)

6                     -o0o-

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

37

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **24th** day of **July**, 2020.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656

Transcriptions Plus II, Inc.