# KAPLAN HECKER & FINK LLP

350 Fifth Avenue
Suite 7110
New York, NY 10118
(212) 763-0883
www.kaplanhecker.com

Direct Email: jmatz@kaplanhecker.com

December 29, 2020

**By CM/ECF**

The Chambers of the Honorable Judge Sanket J. Bulsara
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Elliott v. Donegan, et al.*, No. 1:18-civ-05680-LDH-SJB

Dear Judge Bulsara,

Pursuant to the Court's December 13, 2020 order, I respectfully submit this letter to explain Ms. Donegan's position concerning the proper scope of her deposition.

Background

On or around October 11, 2017, Ms. Donegan created and published a Google Spreadsheet entitled "Shitty Media Men" (the "Spreadsheet"). She did so to protect women by informing them of allegations of sexual misconduct. The Spreadsheet was publicly accessible on the internet for a short period before its deletion—roughly 12 hours—and, for most of that time, any person with a link could edit it. On October 10, 2018, Plaintiff Stephen Elliott filed this lawsuit. He alleges that Ms. Donegan can be held liable for certain alleged defamatory entries that appeared next to his name on the Spreadsheet. In an opinion issued on June 30, 2020, Judge DeArcy Hall held that Mr. Elliott's allegations survive Rule 12(b)(6) but may implicate the Communications Decency Act (CDA). *See* Dkt. 65 (Op.). She therefore ordered the parties to commence "narrowly tailored discovery to address factual issues related to Defendant's CDA immunity defense." Op. at 26. That discovery is nearly complete. Ms. Donegan has provided Mr. Elliott with an affidavit and a supplement to it. She has served responses and objections to Mr. Elliott's nine requests for production and thirteen interrogatories. She has produced 69 documents totaling 362 pages; this includes all documents that Mr. Elliott requested from October 1, 2017 through when the Spreadsheet was deleted, as well as requested articles, drafts, and proposals from any date concerning the Spreadsheet. All that remains is a third-party subpoena that Mr. Elliott served on *The New Republic* and a deposition of Ms. Donegan.

Ms. Donegan's Position

Ms. Donegan most comprehensively described her position to Mr. Elliott in a letter dated December 22, 2020. *See* Ex. 2. The Court may find it helpful to review that letter.[1] To summarize:

---

[1] We have redacted quotes from Ms. Donegan's affidavit in Exhibit 2 because that affidavit has been designated confidential. We can deliver an unredacted version to chambers, or file one under seal, if the Court would so prefer.

There are three elements of CDA immunity. Judge DeArcy Hall has already held that the first element is satisfied, since Ms. Donegan ranks as an "interactive computer service provider." *See* Op. at 18. As to the third element, in suing her for defamation, Mr. Elliott assuredly seeks to treat Ms. Donegan as the publisher of the alleged defamatory statements about him on the Spreadsheet. This leaves only one disputed element of CDA immunity: whether Ms. Donegan "created or developed the allegedly unlawful content." Op. at 20. On this point, Judge DeArcy Hall identified four specific ways in which Ms. Donegan could have lost immunity. *First*, if Ms. Donegan "fabricated the allegations against him and inputted them into the list." Op. at 20. *Second*, if Ms. Donegan "published the allegedly defamatory accusations in the List as relayed to her by another person" and, in so doing, "materially contributed to the allegedly defamatory meaning." Op. at 20. *Third*, if Ms. Donegan "inputted information into the List that was nor provided to [her] for use on the Internet." Op. at 21. *Finally*, if Ms. Donegan specifically encouraged the posting of unlawful content. Op. at 21-24. With respect to all four types of conduct, Judge DeArcy Hall focused on Ms. Donegan's actions vis-à-vis the "allegedly unlawful content"—namely, the specific entries in Mr. Elliott's row on the Spreadsheet that he claims are defamatory. Op. at 20. This Court expressly and repeatedly recognized as much at the July 23, 2020 status conference. *See* Ex. 2 at 2-3.

At that same conference, the Court suggested that the scope of fact discovery could be substantially narrowed if Ms. Donegan opened the process by providing a detailed affidavit. So that is what she did. As her affidavit confirmed, Ms. Donegan did not engage in any of the conduct that Judge DeArcy Hall described as creating or developing alleged unlawful content. Indeed, Ms. Donegan did not know who Mr. Elliott was when she created the Spreadsheet, she did not fabricate or solicit statements about him, she has no recollection of entering any statements about him, and she has no knowledge of who entered the statements that he alleges are defamatory.

Consistent with guidance from Judge DeArcy Hall and from this Court, my December 22 letter identified fourteen appropriate topics of inquiry at Ms. Donegan's deposition. *See* Ex. 2 at 4. To be clear, this reflected Ms. Donegan's best effort to strike a balance; several of the topics identified as proper were included solely in an effort to accommodate Mr. Elliott's views.

The Parties' Disagreements

It appears to Ms. Donegan that the parties disagree on the following fundamental issues.[2]

*First*, the legal inquiry for CDA immunity. In Ms. Donegan's view, Judge DeArcy Hall articulated the applicable law of CDA immunity, identified four unresolved factual issues about creation/development of alleged unlawful content, concluded that those issues precluded a decision on the pleadings, and directed "narrowly tailored discovery" into those four issues to frame a summary judgment motion. Indeed, Judge DeArcy Hall expressly held that Ms. Donegan's conduct in setting up the architecture of the Spreadsheet and highlighting certain entries did *not* deprive her of CDA immunity. Mr. Elliott, however, maintains that Judge DeArcy Hall's CDA analysis was merely illustrative and that—despite Judge DeArcy Hall's use of the words "narrowly tailored"—she actually contemplated a "broad" and more nebulous "exploration[]" into whether Ms. Donegan either "materially contributed to the alleged defamatory meaning" or specifically

---

[2] Mr. Lewis did not send me his December 29, 2020 letter until 3:31pm. Given that this very letter is also due December 29, 2020, I have briefly addressed his revised position and can do so in greater detail at the upcoming conference.

encouraged anyone to post anything on the Spreadsheet (even if it was not unlawful or had nothing to do with Mr. Elliott's entry). *See* Ex. 6 at 1-4. Ms. Donegan respectfully submits that clarity on this point is vital to any assessment of what deposition questions are proper.

*Second*, the relevance of Ms. Donegan's other contributions to the Spreadsheet and, relatedly, her own experiences of sexual misconduct. In Ms. Donegan's view, it is irrelevant to the CDA analysis whether she entered *other* specific names, or *other* specific allegations, on the Spreadsheet; if there is no connection between those entries and Mr. Elliott's, it is erroneous to assert that her conduct somehow contributed to the alleged defamatory meaning of the statements in Mr. Elliott's entry. The same is true concerning Ms. Donegan's highlighting of other allegations, which Judge DeArcy Hall has already passed upon. Mr. Elliott, however, asserts an unlimited prerogative to question Ms. Donegan about any names or statements she added to the Spreadsheet. He has also expressly suggested, *see* Ex. 3—and then denied suggesting, *see* Ex. 5—that he may question Ms. Donegan concerning her own experiences of sexual assault, abuse, or harassment.

*Third*, the relevance of Ms. Donegan's interactions with specific third parties with no demonstrated connection to Mr. Elliott's entry. In Ms. Donegan's view, the question of her CDA immunity can (and should) be answered without any intrusion on the privacy interests of third parties who communicated with her about their own experiences of sexual assault, about non-Elliott entries they (or others known to them) may have written, or about their thoughts on the Spreadsheet in general. While it would be proper to question Ms. Donegan in general terms about her own solicitation or encouragement of third parties to post on the Spreadsheet, it is her conduct alone (not the conduct of third parties or anything else about third parties) that bears on CDA immunity. In contrast, Mr. Elliott asserts that he can question Ms. Donegan in detail (and with personally identifying information) about every single interaction she had with anyone at the time—or that she has since had—pertaining to any entry on the Spreadsheet. There is no basis to think such questions will produce relevant responses, let alone that they are proportionate.

*Fourth*, Mr. Elliott wishes to question Ms. Donegan about her knowledge of the veracity of statements on the Spreadsheet. But her knowledge of such issues has nothing to do with CDA immunity and would turn "narrowly tailored discovery" into full-blown merits discovery.

*Finally*, Mr. Elliott wishes to query Ms. Donegan about her deletion of certain documents long before she could possibly have had any duty to preserve them. *See, e.g.*, *Cruz v. G-Star Inc.*, No. 17 Civ. 7685, 2019 WL 4805765, at *9 (S.D.N.Y. Sept. 30, 2019); *Puebla Palomo v. DeMaio*, No. 5:15 Civ. 1536, 2019 WL 1323927, at *4 (N.D.N.Y. Mar. 25, 2019); *Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102, 109 (E.D.N.Y. 2012). Such questioning is baseless.

Ms. Donegan is grateful for the Court's attention to these matters.

Respectfully submitted,

*[signature]*

Joshua Matz, Esq.
Kaplan Hecker & Fink LLP
*Counsel for Defendant Moira Donegan*