# EXHIBIT 1

**From:** Nicholas E. Lewis <nlewis@nmllplaw.com>
**Sent:** Wednesday, December 9, 2020 2:43 PM
**To:** Joshua Matz <jmatz@kaplanhecker.com>; Martha E. Fitzgerald <mfitzgerald@kaplanhecker.com>
**Subject:** Scope of Deposition

EXTERNAL SENDER

Dear Joshua and Martha,

Please see below for my thoughts on the scope of the deposition topics and what, I believe, represents our main disagreements, if any:

As an initial dispute we have as to the scope of the appropriate inquiry, we disagree that Judge DeArcy Hall limited discovery to the following four issues *only*: (1) whether Ms. Donegan personally fabricated and entered the statements regarding Mr. Elliott; (2) whether Ms. Donegan published another's statements about Mr. Elliott that were "not provided to [her] for use on the Internet"; (3) whether Ms. Donegan published another's statements about Mr. Elliott and in so doing "materially contributed to the allegedly defamatory meaning"; and (4) whether Ms. Donegan "specifically encouraged" the unlawful content about Mr. Elliott. I understand the four issues you have focused on amount to your interpretation of sections in which Judge DeArcy Hall described four different ways in which Ms. Donegan could have created or developed the unlawful content, but I believe the Court's decision, and cases interpreting CDA immunity, permit a broader inquiry into Ms. Donegan's conduct in creating the List.

We are entitled to examine the totality of her conduct from the time she first thought of the List to the point in which she deleted the List and it was no longer accessible by others. We are seeking information about her conduct during this time period and any subsequent description, writing, communication or recording of this period by Ms. Donegan. The things she did and said regarding the List, the information that was entered, not entered, edited, removed, solicited, or described by her—all of that is clearly necessary for the Court to classify her for immunity purposes. We believe the below topics form a good starting point for relevant areas to explore at Ms. Donegan's deposition:

We are entitled to examine whether Ms. Donegan contributed to the alleged defamatory meaning, the very fact on which CDA immunity turns. (Dec. p. 20) This is not limited

specifically to Ms. Donegan's contribution to Elliott's entry, *only*.  Neither Judge DeArcy Hall, nor the relevant case law, specifically limits the inquiry into the development of information to the defamatory words at issue only, so we will not do so either.

Ms. Donegan's contributions to both the development of the List and the dissemination of the List, in general, are relevant to her contribution because they may have contributed to the defamatory meaning.  Just by way of example, a description of the list by Donegan made to third parties as "it contains only verified sexual harassers" or "these are the worst of the worst" would contribute to the defamatory meaning given to Elliot's entry.  Therefore, the statements Donegan made or wrote about the list during its development, publication, and dissemination are clearly within the discovery order.  Any conversations or communications she had about the List, at any point until it was deleted--not merely locked for a select few to see, but no longer viewable by anyone—are well within the scope of authorized discovery.  If Ms. Donegan created the List, or plotted the roll-out of the List, with others, then her communications with those individuals is certainly relevant.   If they developed criteria for what allegations to include in the List, in general, or otherwise edited, promoted or commented on the List's entries that conduct is relevant for examination.

Of course, if Ms. Donegan fabricated the allegations in Mr. Elliott's entry, or input the information into Elliott's entry for another individual, that would be an avenue of inquiry but Ms. Donegan's role in contributing to the content and meaning if other entries and therefore the meaning of Mr. Elliot's entry would be relevant to determine if she was merely a neutral publisher.  Did she develop or solicit other content in any way?

It seems clear that we are also entitled to discovery on "whether Defendant specifically encouraged the posting of unlawful content on the List."  In the Court's decision, Judge DeArcy Hall does not limit the inquiry to specifically encouraging the unlawful content about Mr. Elliott, only, as you suggest.  We are therefore entitled to explore ANY encouragement by Ms. Donegan---this is especially true since she alleges, she does not know who input the allegations into Mr. Elliott's entry.

We would plan to ask how she circulated the List.  For example, was the initial invitation part of a group email or a link on Ms. Donegan's Twitter account.

How did she initially describe the List to users?  How did she advise people to access the List or protect their anonymity?  Did she ask for rape accusations, specifically?  What did she solicit exactly?  Whom did she solicit from?  Did she specify what should be posted, or specific individuals who should be included in the List?

One topic I know we have disagreed on until now:  what did Ms. Donegan contribute to the List, in general?  Did she act as a mere publisher, did she make determinations as to what type of allegations should remain and what should not?  Did she converse with others about these criteria on October 9, 2017?  If so, where?  Did she input any allegations into the List?  Did she circulate the List, once some allegations were input into the List?  If so, did she comment on the individuals named in the List at that point?  Did she vouch for the credibility of certain allegations?  Did she speak with anyone about Elliott, or the veracity of the allegations against him at any point?  Was veracity of claims ever discussed or considered?

We are entitled to all her communications, and everything she discussed regarding the List before it was deleted and, if conduct during the relevant pre-deletion period is discussed

after October 12, 2017, we should be permitted to inquire into this as well.  If she discussed, wrote about or in any way communicated what she did during the time the List was active, at any point, we intend to question her on such communications, writings or documents that contain such information.  All of that information is directly relevant to whether she contributed to the defamatory meaning or not, and therefore enjoys statutory immunity or not.

I know you believe her highlighting should be strictly "off limits" as law of the case, but we disagree.  Judge DeArcy Hall did state that Defendant's categorizing Plaintiff's entry, by text or highlighting, does not alone bring her outside of CDA protection.  That, however, that does not mean we cannot ask about the manner in which Donegan contributed to the List or categorized information to ascertain her conduct specifically.  It is the totality of Ms. Donegan's conduct that grants allows for immunity or not.  DeArcy Hall's order is entirely consistent.  Moreover, Ms. Donegan's affidavit does not clarify this issue.  It is unclear if the highlighting was done by Donegan, or someone else.  Judge  DeArcy Hall noted categorizing information *without more* does not make Ms. Donegan a developer, but we cannot know if there was more unless we question Ms. Donegan on her conduct during this time period, without limitation.  We are entitled to know if Donegan highlighted, or otherwise categorized information and, especially, if she did any *more* in contributing to the List.

Again, did Ms. Donegan add her own allegations into the List?  Much of this conduct remains a mystery.  For example, did she highlight an entry, then send an email writing "another repeat offender rapist added to the List"....of course we do not know if she wrote this specifically, or remembers commenting on the List's entries at all, but we are entitled to find out.  This is especially true since she deleted most of the communications.

Regarding the deletions, it appears we will have another dispute on the scope of questioning here.  We submit we are entitled to explore the deletion by your client.  I know your position there is no spoliation here, but Ms. Donegan's mindset is relevant to her deletion.  Was she fearful of a lawsuit?  Her own emails demonstrate that she was aware of her potential liability for libel and therefore deleted the list.  Judge Bulsara specifically said this may be relevant, and we are entitled to explore the circumstances of her deletion---if you disagree, we will have to bring this to the court's attention.

In general, we disagree with your, at times, artificial narrowing of the issues in this matter.  Judge DeArcy Hall certainly directed narrowly tailored discovery, but not narrowly tailored to what the Defendant thinks should be relevant.  The "limited" or "tailored" discovery from the Order is certainly limited, when compared to discovery for the defamation cause of action, in general,  because discovery is currently authorized only as to the CDA immunity issue.  We do not yet know whether Ms. Donegan materially contributed to the alleged defamatory meaning.  As the case law makes clear, the meaning can be derived from precise words entered, but also from Ms. Donegan's contributions to the development and dissemination of the List itself.

I am currently reviewing the sample deposition protocols and thank you for same.  I realize the Huseby deposition services, and video deposition software, I mentioned last night was utilized in out of state depositions.  My colleagues have had good experiences with Veritext's remote deposition platform.  https://www.veritext.com/remote/I  I am sure we will be able to sort out the logistical issues discussed last night (total deposition time, attorneys on camera etc.) once we sort out any scope issues.

I would suggest requesting one additional week to conduct the deposition. If it works for you, I would be free to conduct the deposition December 21st or December 22nd. I submit this request would be reasonable given the various delays out of our collective control, would provide us the opportunity to raise any unresolved issues with the Court next week and still permits us to wrap up discovery prior to our January 5th conference. I will remain available on your schedule to address these issues.

Best,

Nick

**Nicholas E. Lewis**

363 Seventh Avenue, 5th Floor

New York, NY 10001-3904

212.736.4500   •   212.736.2260 fax

nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.