UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


----------------------------X
                            :
STEPHEN ELLIOT,             :
                            :      18-CV-5680 (LDH)(SJB)
            Plaintiff,      :
                            :      January 5, 2021
                            :
            V.              :      Brooklyn, New York
                            :
MOIRA DONEGAN, et al.,      :
                            :
            Defendant.      :
----------------------------X


TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
BEFORE THE HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        NICHOLAS LEWIS, ESQ.



For the Defendant:        JOSHUA MATZ, ESQ.


Audio Operator:


Court Transcriber:        ARIA SERVICES, INC.
                          c/o Elizabeth Barron
                          102 Sparrow Ridge Road
                          Carmel, NY 10512
                          (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

```
1                THE COURT:  This is Judge Bulsara.  We're

2     here for a status conference/discovery motion

3     conference in 18-5680.

4                Who is here for the plaintiff?

5                MR. LEWIS:  For the plaintiff, Nicholas

6     Lewis of Nesenoff & Milternberg.  Good afternoon, your

7     Honor, and Happy New Year to your Honor and counsel.

8                THE COURT:  Good afternoon.  Happy New Year.

9                Who is here for the defendant?

10               MR. MATZ:  Good afternoon, your Honor.  This

11    is Joshua Matz from Kaplan Hecker & Fink, and I'm

12    joined by my colleague, Martha Fitzgerald.  We

13    appreciate you being available, especially in the

14    evening.

15               THE COURT:  Good afternoon.  Well, the Court

16    is always here.  Evening doesn't start around here

17    until like 9:00 p.m.  So, you know, we'll keep calling

18    it the afternoon for now.

19               I have read the parties' letters.  Let me

20    ask at the outset, has there been a date scheduled for

21    the deposition in this case?

22               MR. LEWIS:  Not yet, your Honor.

23               MR. MATZ:  No, your Honor, there has not

24    been.

25               THE COURT:  Okay.
```

1    MR. MATZ:  The parties consulted about the

2  date for the deposition, and Mr. Lewis indicated he

3  wasn't available early next week.  The latter half of

4  this week is challenging for us and our client, so the

5  parties had conspired in advance to ask if the Court

6  might allow the deposition to occur at the end of next

7  week.

8    THE COURT:  Yeah, I'm certainly happy to do

9  that.  I'm happy to extend the deadline to complete the

10 depositions as necessary.  Let me make a sort of

11 general comment about the papers here.  This is not a

12 criticism, it's an observation.  The Court is in a

13 somewhat unusual and awkward position.  It is the rare

14 case that on a very granular level, I or any other

15 judge is asked to draw the line of deposition inquiry

16 prior to a deposition.

17    Now, obviously, parties are encouraged to

18 move for protective orders and clarification with

19 regard to deposition and they often do, and that's not

20 really what I'm talking about.  Just in reading the

21 papers, it occurs to me that, in some, not all, is not

22 whether there are certain broad areas that ought to be

23 off limits or not but rather whether what amounts to

24 particular questions and very detailed questions should

25 be answered or not.  And that kind of line drawing

1   without the benefit of the actual question as phrased

2   in the context of, whether it be a document or the

3   questions that precede it and the answers to the

4   questions that precede it, is a very difficult task.

5           Usually -- I will say this -- when a court

6   is asked to do that kind of line drawing, the

7   restrictions end up harming one side or the other

8   because those -- the Court doesn't have an actual Q-

9   and-A, and it amounts to drawing something that can be

10  either very over-inclusive or very under-inclusive.

11  And I'm a little worried here that I'm being asked to

12  do something somewhat in the abstract.  I wonder, for

13  some of these items, whether the parties really just

14  need to take the deposition and if there's an

15  instruction not to answer, there's an instruction not

16  to answer and it can be taken up on a later date.

17          I'm just making that as a general comment.

18  You don't have to respond.  Perhaps as we go through

19  these various items that I'm being asked to tick

20  through, I can highlight examples of this.  This is a

21  somewhat, I don't want to say dangerous but perilous

22  exercise that the parties have asked me to engage in.

23          So as we go through these various items, I

24  encourage you to, perhaps as you respond, think about

25  this broad comment that I'm making because I will say -

 1  - I could be very wrong about this but the plaintiff is

 2  asking for very broad rulings on areas of inquiry,

 3  which in the context of an actual deposition, might be

 4  simply a single question or single set of questions

 5  that, in the context of a deposition, defendant's

 6  counsel might find wholly unobjectionable.  And by

 7  asking for the advanced ruling, you're not even giving

 8  yourself that opportunity.  You're potentially putting

 9  me in the position of saying, well, if I don't rule for

10  you, you don't get to even go near that area, and

11  that's the danger of doing it this way.

12          MR. LEWIS:  I understand and certainly

13  appreciate that, your Honor.

14          THE COURT:  Look, you know, in another life,

15  I would take and defend depositions all the time and,

16  you know, if a question -- you know, I might be willing

17  to let certain questions go forward because really

18  ultimately, there's not a lot of there there for my

19  client to answer those questions or it simply appears

20  to follow naturally.  If you're defending a deposition,

21  you might let it go or, on the other side, you may

22  realize that certain areas are just simply not worth

23  spending your time on.  But you're asking for these

24  very broad pronouncements that are often very difficult

25  to pin down in the absence of an actual phrased

1  question.

2          MR. LEWIS:  May I comment on that, your

3  Honor.  This is Nick Lewis for the plaintiff.

4          THE COURT:  You may.

5          MR. LEWIS:  Thank you.  Certainly this is

6  somewhat of a new exercise for me as well.  I think the

7  -- I can only speak for plaintiff's side.  From the

8  perspective of this being sort of a gating issue

9  discovery and then more so the timing of when discovery

10  was winding down.  I frankly was fearful just that

11  going through the deposition, as it had been playing

12  out towards the end of the discovery deadline, that the

13  one deposition I was going to have was going to be the

14  sort of shot I had to question Ms. Donegan.  So from

15  just the timing of the sort of request ahead of

16  schedule -- and these had been issues myself and

17  opposing counsel had discussed.  With regard to other

18  areas of discovery, we've had a lot of meet and

19  confers.  But just from the timing ahead of schedule, I

20  certainly -- if I knew there was going to sort of be

21  another opportunity, after we litigate any specific

22  question issues or a protective order, I think the

23  normal route of going through the deposition and then

24  having litigation if there was going to be a later

25  deposition made sense to me.  So the timing was --

1              THE COURT:  Right, I understand.  Again, I'm

2    just making an observation.

3              MR. LEWIS:  I understand.

4              THE COURT:  Some of the things -- and I say

5    this to defendant's counsel, right, or to both of you.

6    If a witness is told not to answer a question because

7    the witness wants to -- or the lawyer actually feels

8    that this is an area that shouldn't be explored, and at

9    a later date, I or Judge D'Arcy Hall says the

10   instruction not to answer was inappropriate or over-

11   broad and shouldn't have been exercised here, your

12   client -- the witness sometimes has to sit for a second

13   deposition and you have to make the spur-of-the-moment

14   decision, well, perhaps I'll give a little leeway here

15   because I don't actually think the information is

16   harmful and I'm not going to start conceding anything

17   by letting you ask these questions.

18              Let's take these areas one at a time and

19   both of you can -- and all three of you can give me

20   some clarity about what exactly is being sought.  I

21   will say, just sort of to Mr. Lewis, my rulings here

22   are informed by a few things.  One is -- first and

23   foremost, Judge D'Arcy Hall's opinion.  And although --

24   and I think that means we are in the phase of the case

25   of restricting discovery to a very narrow set of issues

1   and -- so if the case were to go forward, I do not see

2   this as the only deposition that would take place of

3   the defendant, but that's a big if.  I'm not inclined

4   to permit inquiry into areas that are beyond the

5   narrowly-tailored issue that is before the Court and

6   the limited discovery we're in.

7              And I think, Mr. Matz, you can correct me if

8   I'm wrong, but you would have to acknowledge that if

9   you lose on the immunity and this case has to go

10  forward to other phases of discovery, your client might

11  have to be deposed.

12             MR. MATZ:  Of course, your Honor, and we

13  have acknowledged that expressly in our conversations

14  with Mr. Lewis.

15             MR. LEWIS:  Yes, he has.

16             THE COURT:  So, you know, I think -- look,

17  obviously, they've made a strategic decision about that

18  and I think -- so I'm informed by Judge D'Arcy Hall 's

19  opinion, I'm informed by the status of discovery and

20  what the discovery should be about.  I also do not

21  believe -- maybe I'm repeating myself by saying Judge

22  D'Arcy Hall's opinion.  I don't believe discovery is a

23  back end to expand or even really litigate the scope of

24  the immunity on what the legal test is, so I'm really

25  drawing on her opinion in making some of the judgments

1   I'm making here tonight.

2           Let me start with what I think is

3   straightforward and easy.  I shouldn't say easy, at

4   least straightforward in my view.  It appears that the

5   parties do not agree on whether Ms. Donegan should be

6   asked about her deletion of certain documents and duty

7   to preserve them.  I view that as beyond the scope of

8   discovery that's been permitted.  I understand that

9   plaintiff may wish to pursue some kind of "sanctions"

10  or other kind of inquiry.

11          Number one, at this stage, I don't think

12  it's been established that the preservation obligation

13  existed at the time plaintiffs believe it existed.  But

14  putting that aside, even if there was a preservation

15  obligation, I don't view this deposition as the

16  appropriate way to discern this information and I view

17  it as beyond the permitted discovery, so I'm not going

18  to permit that.

19          Then there is -- there's an issue which -- I

20  don't know whether they're ships passing in the night.

21  I'm working backwards from Mr. Matz's letter of

22  December 29th.

23          Mr. Lewis, do you wish to ask Ms. Donegan

24  about her knowledge of the veracity of the statements

25  in the spreadsheet?

1          MR. LEWIS:  Well, I don't -- from my

2   understanding, Ms. Donegan says she did not know Mr.

3   Elliot as far as the allegations against him, so I

4   don't believe we had actually -- in the sort of list I

5   compiled, I don't believe that any questions before --

6   I think if there are questions beyond whether she took

7   any steps or didn't know whether she took any steps,

8   not necessarily whether she knew or didn't know whether

9   the statement was true but just whether she took any

10  steps are the only questions of that nature that I

11  would request that I be able to ask.

12          THE COURT:  How does whether she took steps

13  to understand the veracity fit into the framework for

14  the immunity question here?

15          MR. LEWIS:  If, for example, Ms. Donegan was

16  aware of statements that were false that were being put

17  into the spreadsheet and then whatever conduct she took

18  after it circulated around or made comments on -- I

19  think that's the conduct that could be seen as

20  materially contributing to the unlawfulness of the

21  allegation against Mr. Elliot.

22          THE COURT:  Well, I guess I still don't

23  understand because the question of material

24  contribution, for example, doesn't necessarily turn one

25  way or the other as to whether or not the person who is

1    aware of the truth of the statement or not.  In other

2    words, if the inquiry is, did you contribute to

3    defamatory meaning, isn't the question really one of

4    alteration rather than truth?

5            MR. LEWIS:  I think her conduct in general

6    was relevant.  I don't know if it's necessarily just

7    alteration.  I believe I said in my letter -- for

8    example, I think an example of conduct that would be

9    considered materially contributing to the unlawfulness

10   would be in circulating the list that contained the

11   allegations against Mr. Elliot.  If Ms. Donegan

12   circulated a list with her own comment, I do believe

13   that would be materially contributing, even if she did

14   not alter --

15           THE COURT:  That may be, that may be.  But,

16   again, it's not a question of whether the spreadsheet

17   was true or not, or more precisely --

18           MR. LEWIS:  I understand, Judge.

19           THE COURT:  -- whether she knew the

20   statements in the spreadsheet were true or not.  I

21   mean, I understand the position that if you circulate

22   the spreadsheet, you are making a material

23   contribution.  I understand that's your position, or

24   even saying, fill this spreadsheet out.  I'm not saying

25   you're right about that but you don't need to know

1    what's filled in and whether it's truthful or not.

2              MR. LEWIS:  I understand the Court's point.

3              THE COURT:  To the extent that there are

4    questions about the knowledge of the veracity of the

5    statements on the spreadsheet, I find that those are

6    beyond the scope of the deposition limits in the

7    inquiry, so I am granting the protective order with

8    respect to that.

9              Mr. Matz, anything you want to say on that

10   point?

11             MR. MATZ:  No, your Honor.

12             THE COURT:  Okay.  Then there are what I

13   believe -- again, I'm just working backwards.  The

14   relevance of Ms. Donegan's interaction with specific

15   third parties.

16             Mr. Matz, does your position change if I

17   were to say that there can be inquiries about

18   particular entries without the discussion of the names

19   of the people in those entries?  In other words, I'll

20   give you an example.  If there's a row that doesn't

21   relate to Mr. Elliot and it's row number 12,

22   hypothetically, and the questions were, do you recall

23   who gave you the information or how you received the

24   information relating to row 12, do you recall who gave

25   it to you, when you received it, when the information

1    was -- questions along those lines, all of the answers

2    to which -- none of which should be, you know, the

3    actual name of the person.  Then the question is, once

4    you received that information, what if anything did you

5    do with it?

6              Is that still problematic?  In other words,

7    if I permit questioning about other rows on the

8    spreadsheet but do not permit and do not require

9    questioning or answering whether you have any personal

10   identifying information?

11             MR. MATZ:  Your Honor, that is not something

12   to which we would object.  If I could just add one or

13   two quick clarifications.

14             THE COURT:  Sure.

15             MR. MATZ:  To be clear, I actually -- in

16   rereading the letters in advance of today's hearing, I

17   was struck by the fact that I think there's more

18   agreement than perhaps met the eye and that a fair

19   amount of the disagreement comes down to the question

20   that your Honor has identified, which is essentially

21   the privacy interests of third parties and the extent

22   to which Mr. Lewis could, consistent with the scope of

23   Judge D'Arcy Hall's order, inquire about and obtain

24   personal identifying information, the other aspect of

25   which of course would be any entries that Ms. Donegan

1    herself may or may not have made into the spreadsheet.

2              But what I take the Court to be saying is,

3    if there is a row, Mr. Lewis could ask, you know, are

4    you aware of -- in some cases, Ms. Donegan herself --

5    just to clarify, in some cases, Ms. Donegan herself may

6    have entered a name into the spreadsheet or may have

7    entered an allegation.  In other cases, someone else

8    may have sent it to her and she might have entered it

9    at their behest.  In still other cases, a third party

10   may have done it with no involvement whatsoever from

11   Ms. Donegan.

12             So presumably, what I take the Court to be

13   asking is, if Mr. Lewis said, you know, in row 12, do

14   you know how this person's name came to be there, do

15   you know -- do you know the identity of the person who

16   added the name or who added this allegation, and she

17   would say yes or no, hypothetically, but she wouldn't

18   actually give the personal identifying information and

19   Mr. Lewis couldn't ask questions to suss out personal

20   identifying information but could instead ask other

21   questions relating to her knowledge or lack thereof of

22   the provenance and the procedures that surrounded the

23   inputting of non-Elliot allegations into the list?

24             THE COURT:  That is exactly what I am

25   seeking to direct the parties to do.

1          Mr. Lewis, is there an objection to

2    proceeding that way?

3          MR. LEWIS:  No, your Honor.

4          THE COURT:  Okay.  Mr. Matz, let me just say

5    -- I'm assuming, in framing it the way you did for me,

6    your client -- you and your client agree to that.

7          MR. MATZ:  Yes, your Honor.

8          THE COURT:  That's the limitation on the

9    rows that do not relate to Mr. Elliot and that's how

10   the questioning should proceed.  I really don't want to

11   get into -- Mr. Matz, you should warn your client

12   appropriately but sometimes witnesses can blurt out

13   information and then undo the effect of a protective

14   order.

15         I would rather us not have to get into those

16   issues and, obviously, Mr. Lewis I'm confident is going

17   to abide by the Court's instruction not to inquire

18   about identifying information.  But I have seen

19   situations where a witness could err inadvertently and

20   that can raise other issues.  If that does happen, I'm

21   going to direct that the deposition transcript be at

22   least temporarily sealed, and we can deal with any

23   issues of, what does that mean and is further inquiry

24   permitted.

25         MR. MATZ:  Completely understood and

1   appreciated, your Honor, and we will counsel our client

2   appropriately.

3           THE COURT:  Okay.  Mr. Lewis, I wonder if

4   you have Mr. Matz's letter here, and I'm just going in

5   the reverse order.

6           MR. LEWIS:  I do, your Honor.

7           THE COURT:  So I would also ask you at the

8   end if there's anything that's not covered by his

9   letter that you believe a ruling is appropriate or

10  necessary for you here.

11          MR. LEWIS:  Okay.

12          THE COURT:  Mr. Matz, does what we just

13  agreed to and that I incorporated into the limitations

14  of the deposition, does that solve the issue that

15  you've labeled second here or is there something I'm

16  missing, which I see may be about whether or not Mr.

17  Elliot's counsel is going to seek information about Ms.

18  Donegan's own personal experience of sexual assault or

19  harassment?

20          MR. MATZ:  Your Honor, I believe it does --

21  it does, your Honor.  I believe that what you just said

22  does address it in the following respect:  Mr. Lewis

23  presumably could not ask Ms. Donegan, tell me all of

24  the names that you yourself entered here personally,

25  nor could he ask her, point me to the allegations that

1    you entered on the basis of your own personal knowledge

2    as to the non-Elliot cells.

3            He could ask her, is it the case that you

4    entered allegations into the spreadsheet, is it the

5    case that you entered names into the spreadsheet, and

6    he could ask more general questions about her practices

7    and procedures in doing so.  But he essentially

8    couldn't -- he couldn't ask for the specifics, which

9    would be -- that's at least what I understand the Court

10   to be suggesting in terms of how the process that we

11   just discussed would apply to the category labeled

12   second, apart from what your Honor suggested was that

13   one other issue, which Mr. Lewis had suggested and then

14   withdrawn his suggestion.  As you can imagine, out of a

15   super-abundance of caution, we had hoped to ask the

16   Court for clarity and confirmation that he will not

17   question Ms. Donegan about her own experiences of

18   sexual assault, abuse, or harassment, which couldn't

19   possibly be relevant to the CDA immunity issue.

20           THE COURT:  Let's deal with that issue

21   first.

22           Mr. Lewis, I'm assuming that you're not

23   going to ask Ms. Donegan those questions, namely about

24   her own personal experiences with sexual assault,

25   abuse, or harassment.

1          MR. LEWIS:  No, your Honor, I never -- I did

2    not intend to.

3          THE COURT:  And I'm not casting aspersions,

4    I'm simply just confirming, okay, so that's great.

5          Mr. Matz, I'm a little confused and perhaps

6    I misunderstood.  I may be oversimplifying but

7    certainly, Mr. Lewis, under what we just agreed and

8    what I would enter, couldn't say, well, give me the

9    names of the people who you collected information from

10   or give me the names of the people whose information

11   was -- who provided information to you, or if I tell

12   you a name, please connect that to a particular row on

13   the spreadsheet.

14          But what I'm a little uncertain about with

15   the two examples you gave is -- and I'm going back to

16   my row 12 example.  Are you saying that you would like

17   a limitation that said, okay, looking at the

18   information for row 12, who are the allegations about?

19   He certainly couldn't ask that unless it's somehow

20   unredacted or not -- and it was just a verification,

21   for example.  Putting that aside, but he could ask, do

22   you recall who gave you information about an alleged

23   sexual assault committed by this person?  Ms. Donegan

24   either does or doesn't remember.

25          If she does remember, how did you obtain

1  that information, and could ask, what did you do with

2  it after you obtained it?  Did you alter it in any way,

3  did you blah, blah, blah, and could do that on a row-

4  by-row basis or entry-by-entry basis.  Perhaps at a

5  certain point, it's redundant but in order to establish

6  the process for how the spreadsheet came to be, you

7  know, I think Mr. Lewis would be permitted to ask about

8  content relating -- other than specific to Mr. Elliot,

9  in order to verify or understand how the information

10  specifically related to Mr. Elliot -- the content there

11  was altered or not altered.

12          MR. MATZ:  Yes, your Honor, and I realized

13  as you were responding that there's actually a bit of

14  ambiguity here, and the reason why is that there are

15  essentially two respects in which Ms. Donegan may have

16  entered an entry into the spreadsheet.  Broadly

17  speaking, she could have been doing it because she

18  herself had had an experience with the person, so she

19  was giving a first-person account, and that may or may

20  not be the case as to certain entries.

21          In the alternative, it may not have been

22  first person.  She might have received information from

23  a third party and the direction to add it to the

24  spreadsheet.  I had been thinking of the first category

25  and I realized as you were speaking that you were

1    thinking of the second.

2            THE COURT:  Yes.  So then if that's the

3    case, I think are you able to identity -- Mr. Lewis can

4    certainly ask to confirm on the record at the

5    deposition which of the rows relate to information

6    provided by a third party.  The reason I say it this

7    way is, also, there is -- there is a little bit of

8    factual and legal danger perhaps to the immunity

9    defense unless you're crystal clear about how you're

10   drawing the line about what you're permitting inquiry

11   into in this area.

12           If there are entries that relate

13   specifically to Ms. Donegan's own experiences, are you

14   saying in analyzing the immunity attendant to the

15   spreadsheet, those entries should not be considered at

16   all because it's not -- because that's what I think

17   you're asking for at that point.

18           MR. MATZ:  Yes, and I feel comfortable

19   asking for it because I have a wall of authority,

20   including multiple Second Circuit opinions, that would

21   support that position.  I also have, perhaps even more

22   advantageously, Judge D'Arcy Hall's opinion, which

23   refers --

24           THE COURT:  Before I get to that -- but I

25   think that requires you to tell Mr. Lewis which of

1   those portions of the spreadsheet you are drawing that

2   box around, if that makes sense.  In other words,

3   otherwise, he can't conduct the deposition.  In other

4   words, it may be that the content that she contributed,

5   to the extent there is any, that relate to her own

6   experiences is not relevant to the community analysis.

7   And as you indicate, Judge D'Arcy Hall's opinion says

8   -- in a certain section -- don't you have to identify,

9   so that Mr. Lewis knows not to go there with those

10  questions?

11          MR. MATZ:  I completely understand the

12  Court's point and if I can, let me try to explain our

13  thinking.  CDA immunity is always assessed on a

14  statement-by-statement basis.  So the only ground on

15  which Ms. Donegan could lose CDA immunity is if there

16  were a showing that she had created or developed the

17  content in Mr. Elliot's entries.  As Mr. Lewis is well

18  aware, there is no evidence supporting the fact that

19  she did and there is evidence supporting the conclusion

20  that she didn't.

21          As to the other cells on the spreadsheet,

22  whether she would have entered a first-hand account

23  potentially or whether she instead may have entered

24  information at the behest of a third party in my mind

25  would not in fact be relevant to assessing whether she

1  has a CDA immunity defense as to the statements in Mr.

2  Elliot's cells because unless Mr. Lewis could establish

3  that, notwithstanding the fact that she has testified

4  that she had never met Mr. Elliot and had no idea who

5  he was, that she had created or developed the specific

6  alleged defamatory statements in his cells would simply

7  not bear on the CDA immunity question.

8           THE COURT:  Well --

9           MR. MATZ:  And so --

10          THE COURT:  I understand that.  Let me ask

11  you to think about the following, though, right, which

12  is -- again, you know, my job here isn't at this point

13  to figure out who's right or wrong or decide the merits

14  in any way, but one can imagine a situation that, in

15  order to question or respond to the statement that I

16  didn't create the information in -- I didn't alter or

17  create the information related to Mr. Elliot's entry.

18  It would certainly bear on the credibility of that

19  assertion whether or not the same thing was done with

20  respect to people she also did not know, right?

21          In other words, it wouldn't be the first

22  time that someone tries to cross-examine an assertion

23  by saying, is this what you did in the other instances

24  or not?  Look, I realize that puts you in a difficult

25  position but that's a virtually impossible line to

1    draw, and arguably an unfair one to the plaintiff here,

2    not to be able to test that assertion with respect to

3    what I'll call similarly situated cells, in other words

4    individuals unknown to her or that don't relate to her

5    experiences.  I don't know how you expect that -- I

6    recognize that it is a statement-by-statement inquiry.

7    I'm not disagreeing with you on that.

8              MR. MATZ:  Understood, your Honor.  I

9    suppose I have two thoughts in reaction.

10             THE COURT:  Sure, and I have a proposed

11   solution after you go ahead.  Go ahead first.

12             MR. MATZ:  Great.  So what I'm going to try

13   to do is propose two solutions, and then you can tell

14   me whether either of them make sense or whether the

15   Court would instead adopt a different one because I'm

16   trying to be solution-oriented.

17             So one approach -- this is an approach that

18   we suggested in our letter -- is that instead of asking

19   by cell by cell -- and I'll say candidly that based on

20   my conversations with Ms. Donegan, I think Mr. Lewis

21   may be disappointed at her line-by-line recollection of

22   what happened in a twelve-hour period over three years

23   ago.  But one approach --

24             THE COURT:  Which is why I said -- sorry to

25   interrupt -- which is why I said at the beginning, some

1   of these questions are academic -- without doing them

2   before the deposition makes it, you know -- raises

3   issues that might not otherwise be raised, but go

4   ahead.

5           MR. MATZ:  I completely agree with that and

6   I think our position and Mr. Lewis' position were

7   closer than they may have seemed because what we had

8   said is that he should feel free to ask, in general

9   terms, how she responded whenever she received

10  information from a third party for entry into the

11  spreadsheet.  What we had not suggested was that he

12  could literally go line by line in a manner that would

13  make apparent to him which if any entries were entered

14  on the basis of Ms. Donegan's own first-hand

15  experiences.  But we had tried to get about as close to

16  that as we could, in a manner that would still allow

17  him to ask the pattern-and-practice-type questions that

18  I understand the Court to be identifying as reasonable

19  for purposes of assessing the CDA immunity issue.

20          If we call that approach one, which was the

21  approach that we suggested in our letter, an

22  alternative approach which would be consistent with

23  what the Court described just a minute ago would be to

24  allow that line-by-line questioning.  But in that case,

25  we would -- as the Court may understand, our client has

1  rather serious concerns about being publicly identified

2  as having authored any other particular individual name

3  or allegation, especially given that they relate to --

4  they would relate to, you know, personally traumatic

5  experiences and could not in any respect themselves

6  bear on the CDA immunity issue, and she has testified

7  that she did not -- was not the source for Mr. Elliot's

8  entry and indeed had no idea who he was.

9          For that reason, if the Court were to adopt

10  an approach modeled on the one that it described, what

11  we would request is a particularly robust redaction or

12  protective order such that nobody other than Mr. Lewis

13  and the Court could know those names or identities and

14  they would otherwise be concealed and kept private,

15  since they are -- since that information would be both

16  irrelevant and extremely disproportionate to the needs

17  of an assessment of the CDA immunity issue.

18          THE COURT:  So I am -- perhaps this is --

19  let me say at the outset, I will permit proposed

20  redactions and sealing, to the extent it even has to be

21  publicly filed, along the lines you've indicated.  I'm

22  assuming Mr. Lewis would have no objection to that.  I

23  mean the parties, the press --

24          MR. LEWIS:  No, your Honor.

25          THE COURT:  -- may seek to undo that but at

1  least in the first instance, I'm fine with having, to

2  the extent it's required and the parties agree upon it,

3  those portions that we've just discussed redacted.  Is

4  Mr. Lewis okay with that?

5          MR. LEWIS:  Yes, your Honor.

6          THE COURT:  Let me say the following,

7  though.  Mr. Matz, what I was suggesting was -- again,

8  this may be too simplistic, right, is you could just

9  simply tell Mr. Lewis in advance of the deposition

10  which entries he should ask about and which ones he

11  should not.

12          MR. MATZ:  Understood, your Honor.  So that

13  would be a sort of counsel-to-counsel communication

14  that we would be both keep confidential.

15          THE COURT:  Yeah, and that's outside of the

16  deposition.  I mean, it's not -- look, because also,

17  frankly, it's efficient to do that.  I'm assuming that

18  Mr. Lewis does not want to spend time asking about rows

19  themselves that do not bear upon the pattern and

20  practice because it's not information received from

21  somebody else, so he doesn't want to waste time on

22  that, I assume.  So I think, putting aside the privacy

23  interests, et cetera, I think it's just more efficient,

24  and that's what I mean about drawing a box around what

25  should be asked and what should not be asked about.

1            Let's put it this way:  I'm not going to

2    direct counsel to talk to each other about -- make an

3    agreement, but I would encourage discussion along those

4    lines and certainly in the first instance, I will

5    permit, to the extent that something needs to be -- the

6    deposition transcript even need be filed, the

7    redactions and a protective order as appropriate.

8    Obviously, you know, someone may come in and challenge

9    those.

10            I'll also say, you know -- I hate making

11   these kind of advanced rulings but Mr. Lewis -- look,

12   at a certain point, the questioning becomes redundant

13   and, although rare, runs into a 403 problem for being

14   redundant and unnecessary.  So while you don't strictly

15   apply the rules of evidence in a deposition, you

16   certainly apply the Rule 30 limitations and a global

17   question of whether Ms. Donegan has a recollection of

18   any particular cells may obviate, you know, a line-by-

19   line inquiry and may frankly save you time to go on to

20   other things.  So I'll just leave it at that.

21            MR. LEWIS:  If I might just clarify, your

22   Honor.

23            THE COURT:  Yes.

24            MR. LEWIS:  So just regarding the

25   information that these cells or these rows are rows in

1    which Ms. Donegan input them but without speaking to

2    third parties, would that be the way in which these

3    rows would be highlighted?  That's the only part that

4    I'm a bit unclear on, as to which -- how they would be

5    identified and described by Mr. Matz.

6            THE COURT:  He doesn't have to -- I'm not

7    directing him to.  I'm saying he could do that.

8            MR. LEWIS:  Okay.

9            THE COURT:  In other words, he could say,

10   these are the rows that, you know, you're not going to

11   get that relate to information that was provided by

12   third parties, these are the ones that are not related

13   to third parties, and you can use your time as you

14   wish.  It allows you to explore pattern and practice

15   but you don't run afoul, even inadvertently, then of

16   asking about rows that are off limits.

17           Mr. Matz, is that clear?

18           MR. MATZ:  It is, and we -- I personally

19   appreciate -- I appreciate the -- I appreciate the care

20   with which the Court has analyzed an issue that

21   presents perhaps unusual complexities and sensitivities

22   and has done so in advance of the deposition, where

23   those can be resolved in a more concrete, factual

24   posture.

25           THE COURT:  No need to thank the Court.  We

1   just rule and roll with it and see what happens, but I

2   appreciate it anyway. Let me ask you this:

3              Mr. Lewis, there's an item discussed in Mr.

4   Matz's letter as 1 or first. Is that still at issue?

5              MR. LEWIS: Your Honor, it does not seem so.

6   It's my understanding that there will be some

7   questioning permitted as to these rows that are not Mr.

8   Elliot's, so I believe that -- well, your Honor, I

9   guess one -- I'm sorry, this would not be in one. So

10  no, I think that's not an issue. The questioning your

11  Honor just described would cover that issue as well, as

12  far as I understand it. So it's my understanding --

13             THE COURT: Just to be clear, first refers

14  to the legal inquiry for CDA immunity, and the factual

15  inquiry is about other rows but not what the standard

16  is, so I don't need to decide anything here from your

17  perspective. Is that -- is that accurate. I'm

18  obviously going to ask Mr. Matz the same thing.

19             MR. LEWIS: No, that's -- I believe that's

20  correct, your Honor.

21             THE COURT: Okay. Mr. Matz?

22             MR. MATZ: Your Honor, we agree for purposes

23  of the deposition.

24             THE COURT: Okay.

25             MR. MATZ: Whatever disagreements we have

1   with Mr. Lewis about CDA immunity, it sounds like, in

2   terms of the areas of inquiry that are properly at

3   issue, there's enough agreement to proceed.

4           THE COURT:  Okay.  I also felt like during

5   the course of the discussion here, the parties are

6   using very similar language as to what the standard is

7   or what the inquiry is about, and I'll just simply say

8   also for both of you, as in many cases, cases are built

9   on the facts, and questions about what did someone do

10  and how did they do it are more impactful and helpful

11  on a motion than questions that ask, with legal

12  language buried in them -- in other words, questions

13  saying, did you materially alter the spreadsheet or the

14  contents, it's not going to be as helpful as what did

15  you do and when did you do it, because I think the

16  facts will determine whether the legal test is met.

17          I gave up the task of taking depositions so,

18  Mr. Lewis, I'll leave you to it.

19          MR. LEWIS:  Thank you, your Honor.

20          THE COURT:  Anything else from your side,

21  Mr. Lewis?

22          MR. LEWIS:  So just to clarify, your Honor,

23  just from the standpoint of, what did you do, how did

24  you do it, it's my understanding that just the

25  questions of -- I know for example, the highlighting

1   and categorizing -- like in questions such as, did you

2   highlight this row, would be an acceptable question as

3   far as I understand it.  That's just --

4           THE COURT:  Before I determine -- Mr. Matz,

5   are you going to object to that question?

6           MR. MATZ:  Not only will we not object but

7   as Mr. Lewis should know from reading the letter we

8   sent him and submitted to the Court, we're okay with

9   that line of questioning.

10          THE COURT:  That's what I would -- Mr.

11  Lewis, given what I've said this evening --

12          MR. LEWIS:  Right.

13          THE COURT:  -- I think it would be before if

14  he were going to object, to draw that line, and he's

15  indicating he's not going to.  I mean, I think --

16          MR. LEWIS:  Yes, sir.

17          THE COURT:  Which is why I raised the point

18  I did at the beginning, that perhaps the deposition

19  itself will be clarifying as to what will be permitted

20  or not be permitted.  Okay, anything else from your

21  side?

22          MR. LEWIS:  Your Honor, if I might just --

23  may I make one comment just regarding the deletion?  I

24  certainly won't take up a lot of the Court's time.  I

25  understand the Court's position but if I might just

1   make one comment regarding Ms. Donegan's deletion.

2              THE COURT:  Sure.  You'll have to refresh

3   exactly what you mean.

4              MR. LEWIS:  Sure, yes, sir.  So, your Honor,

5   regarding the questions about Ms. Donegan's deletion in

6   the context --

7              THE COURT:  Oh, the sanctions -- the

8   sanctions context, yes, go ahead, I'm sorry.

9              MR. LEWIS:  Just to the extent that Judge

10  D'Arcy Hall's opinion is I guess contributing to that

11  ruling, Ms. Donegan's deletion is a fact that I think

12  is -- would not have been within the Court's -- within

13  the Court's knowledge or within the motion to dismiss

14  decision.  The duty arose as to when preserving any of

15  this evidence would have been a duty assigned to Ms.

16  Donegan.  I just wanted to insure that the Court

17  received the email and affidavit that were sent under

18  seal pursuant to the confidentiality order in which Ms.

19  Donegan --

20             THE COURT:  I did, and let me be clear about

21  my ruling about this, which I think obviates some of

22  this.  There is always occasion at the end of a case

23  for a party to, you know, seek a sanction.  And

24  usually, someone has to lay some factual predicate for

25  that.  But there's also the question of whether or not

1    a sanction is appropriate because the prejudice exists

2    or not.  I was merely trying to kick down the road any

3    discussion of sanctions.  I mean, there's a question in

4    my mind -- if Ms. Donegan is immune, okay, and Judge

5    D'Arcy Hall decides that immunity applies here, whether

6    or not any sanction would be appropriate even if there

7    was an improper deletion.  So I would rather not go

8    down these various sanctions routes if entirely

9    unnecessarily, I suppose.

10              I do think -- in other words, you know, I

11   guess what appears to be, and maybe I misrecollected --

12   it appears undisputed that the real, live, electronic

13   version of this no longer exists.  Is that correct?

14              MR. LEWIS:  Yes, your Honor.

15              THE COURT:  Meaning the spreadsheet itself.

16   And it's not in Google's possession, which I think was

17   the whole subpoena practice.

18              Mr. Matz, I don't have the affidavits of

19   your client and I'm going off recollection here, but I

20   thought that you had communicated to Mr. Lewis or even

21   perhaps to the Court about, perhaps orally even, that

22   the spreadsheet doesn't exist and it was deleted at a

23   certain point by your client or she never kept it.  Is

24   that right?

25              MR. MATZ:  Yes, your Honor.  Ms. Donegan, in

1    both her affidavit and her supplemental affidavit,

2    which Mr. Lewis is in possession of, Ms. Donegan

3    explains the circumstances surrounding her deletion of

4    the Google spreadsheet.  So that is a fact he's been

5    aware of -- he's been aware of.

6              THE COURT:  Okay.  And I guess, look, Mr.

7    Lewis, at that point, I think, you know, the question

8    of going down these other avenues at the deposition --

9    I'm not really sure why they would preclude you -- if I

10   said, don't -- you can't ask these additional

11   questions, why they preclude you in any way from making

12   a sanctions motion at the end.

13             MR. LEWIS:  But, your Honor, there would be

14   relevant facts as to -- as to the sanctions decision

15   that could be uncovered in the questioning of timing,

16   for example, and the -- it was not only the list but

17   also, it seems a great majority of the communications

18   by Ms. Donegan.  Being that it would -- the discussions

19   about communications, certainly during the time the

20   list was active and some brief period before, would be

21   relevant.

22             If Ms. Donegan is going to rely on for

23   example the absence of communications in which she

24   explicitly encourages a third party or a group of third

25   parties to contribute to the list, I would say that the

1    sanctions would very much come into play within the

2    immunity discussion or the immunity determination by

3    the Court, and whether or not the spoliation is found,

4    that might preclude certain arguments or positions to

5    be taken by Ms. Donegan in her defense.

6             THE COURT:  I think we may be talking about

7    two different things, right?  I mean, look, obviously,

8    there is the kind of sword and the shield problem that

9    if someone were to rely on the lack of communication

10   about someone having deleted the communications, you

11   know, it would be -- it could raise a problem.

12             Mr. Matz, this is where it sort of alludes

13   to what I was saying at the beginning.  Your drawing

14   the line here, right, for questions you might otherwise

15   let your client answer, might cut off arguments you

16   might want to assert.

17             MR. MATZ:  Your Honor, we appreciate that.

18   I mean, look, we believed that we had a meritorious

19   motion to dismiss, and Judge D'Arcy Hall, she was the

20   one who directed narrowly tailoring discovery on the

21   CDA immunity issue.  Obviously, we believe that we will

22   have a meritorious, targeted summary judgment motion on

23   that ground.  We appreciate that there are other issues

24   in the case and that, by virtue of compliance with

25   Judge D'Arcy Hall's order respecting CDA immunity,

1    lines of inquiry or topics that may bear on other

2    aspects of the case won't be addressed at this stage

3    and that, you know, there's at least some conceivable

4    circumstances in which CDA immunity issues might

5    overlap with issues that are relevant elsewhere.

6            But at the end of the day, all we're trying

7    to do is comply with Judge D'Arcy Hall's order, and

8    that's why our position has consistently been that we

9    should do what she asks, which is have discovery,

10   narrowly-tailored discovery focused on the CDA immunity

11   issues and then targeted summary judgment practice on

12   that ground, which we have always believed and continue

13   to believe is just dispositive of the allegations

14   against our client.

15           THE COURT:  Let me ask you this:  Are you --

16   are you going to rely on the absence of communications

17   regarding Mr. Elliot as a means of bolstering or in

18   support of, I should say, the immunity defense?

19           MR. MATZ:  Your Honor, we appreciate that

20   the CDA immunity, as Judge D'Arcy Hall explained, is an

21   affirmative defense.  She has testified at length that

22   she did not.  We intend to rely on her testimony and

23   there is a -- there is a document -- there are several

24   hundred pages of documents that we have provided to Mr.

25   Lewis.  We will affirmatively rely on those to the

1  extent that they are relevant because we believe they

2  further support our position.

3          THE COURT:  Look, Mr. Lewis, I think Mr.

4  Matz -- it's obviously very hard -- the summary

5  judgment briefing isn't before me, the 56.1 statement

6  hasn't been filed.  But, obviously, if someone makes an

7  argument and you think, well, I don't have access to

8  those documents and therefore I couldn't rebut it, you

9  can certainly make those arguments.  I'm not sure why

10  that entitles you at this point, though, to go down

11  these other avenues as a means of rebutting sanctions

12  on something that hasn't even been asserted yet.

13          In other words, taking sanctions broadly to

14  mean spoliation, which is basically a way of saying,

15  listen, you can't have the benefit of CDA immunity --

16  you can't have the benefit of your argument because I

17  didn't get access to discovery that directly beared on

18  it or the discovery that directly bears on it was

19  destroyed by your client after she had an obligation to

20  preserve it.

21          At this point, I'm not going to -- I'm going

22  to reiterate my ruling.  I'm not going to permit

23  inquiry into those areas, and that's certainly at Ms.

24  Donegan's request.  Certainly if, down the line, Mr.

25  Matz wants to permit inquiry into that area, he can

1    (ui).  But also, by requesting that line and having the

2    Court draw that line, obviously, then he can't both

3    take the benefit of it and not prevent access to

4    discovery about it.

5            But at this point, I don't -- you know,

6    there's nothing to indicate to me that they're making

7    the kind of argument that you've intimated.  If they

8    do, obviously, they could run into some complications.

9    So I'm in a position of having to issue a kind of broad

10   ruling in this area.  So at this point, I'm not going

11   to permit inquiry into spoliation issues.  Obviously,

12   if that becomes pertinent and a motion is made and

13   someone has to sit for another deposition or an

14   argument can't be made, those are consequences of

15   having the lines drawn on both sides.

16           MR. LEWIS:  I guess, your Honor, my only

17   concern is, this would be -- as discovery is going to

18   end very shortly after -- a matter of days after Ms.

19   Donegan's deposition, this unfortunately would be the

20   only time in which further information that would be

21   relevant to that would be -- just given the nature of

22   if CDA immunity is found, then there won't be further

23   discovery into -- inquiry into whether Ms. Donegan --

24           THE COURT:  At that point -- well, if CDA

25   immunity exists, then we run into questions at that

1    point of, what are the sanctions based on and why would

2    I impose a sanction for no prejudice, particularly in

3    the area where you're trying to give breathing space to

4    First Amendment concerns, right?  So I'm not sure what

5    the sanction would be.  So now you're talking about the

6    other kind of sanction.

7              If you're saying, look, summary judgment

8    will be filed and at that point, if they meet arguments

9    based on communications which they themselves claim

10   that they have deleted and I wasn't allowed to inquire

11   as to why they deleted, et cetera, number one, you can

12   still make the argument, hey, they can't get the

13   benefit of the argument because they didn't permit

14   discovery into it and they deleted it.  You saw when

15   the deletions happened, so I don't know why you still

16   can't make the argument.  I don't know why I need to

17   expand the scope of the deposition.

18             Number two, you wouldn't be the first party

19   in the world to seek to expand discovery and make a

20   56(d), if I've got that right, opposition to summary

21   judgment and say, listen, more discovery needs to

22   happen.  At this point, it's somewhat theoretical and I

23   take -- Mr. Matz I think acknowledges and understands

24   that the lines that are being drawn may require

25   depositions in the future.  Particularly if CDA

1   immunity doesn't exist, there's a deposition on a whole

2   manner of topics.  Okay, anything else on your end?

3              MR. LEWIS:  Yes, your Honor, I'm sorry, I

4   recognize it's late.  I just have one other -- just to

5   clarify.  I of course understand the identity of third

6   parties who shared information regarding sexual

7   harassment are certainly off limits from an asking

8   standpoint.

9              Regarding individuals if any that Ms.

10  Donegan spoke with or collaborated with in actually

11  creating the list or circulating the list, is plaintiff

12  able to inquire into any communications or individuals

13  who -- not regarding whether they had shared

14  allegations of sexual assault or harassment, in other

15  words Ms. Donegan, but just their identities of people

16  whom she communicating with and corroborated with in

17  creating the list.  Are those avenues permissible for

18  inquiry?

19             THE COURT:  At a future point, they could

20  be.  But unless I hear something otherwise, I don't

21  know why -- for instance, as to circulation and

22  distribution, it seems to me that goes to a question of

23  a potential -- issue of publication and/or damages.  I

24  don't see a connection to the immunity question.

25             The question is, whether it's the role

1    relating to Mr. Elliot or the roles of other people, I

2    don't know why you need -- certainly with respect to

3    roles relating to other people, I don't know why you

4    need the identity.  In other words, why you couldn't do

5    the deposition by simply asking, do you recall who gave

6    you this information, was it more than one person, how

7    many people was it, did you speak with them, did you

8    email with them?

9              MR. LEWIS:  Okay, so non-specific.

10             THE COURT:  Right, without using their name.

11   I don't know why you need to use their name for the

12   purposes of immunity.

13             MR. LEWIS:  Right, I understand.

14             THE COURT:  Okay.  Is there anything else?

15             MR. LEWIS:  I do not believe so, your Honor.

16   I'm just going through the list.

17             THE COURT:  Okay.  Let me ask Mr. Matz and

18   I'll come back to you.

19             MR. LEWIS:  Sure.

20             THE COURT:  Mr. Matz, anything else?

21   Anything on your side?

22             MR. MATZ:  No, your Honor, and we appreciate

23   the Court's attention to these issues.

24             THE COURT:  Okay.

25             MR. LEWIS:  Yes, thank you very much, your

1   Honor.

2          THE COURT:  Mr. Lewis?

3          MR. LEWIS:  Yes, thank you, your Honor,

4   especially for the late call and the Court's time

5   certainly.

6          THE COURT:  This is early for us.  Anything

7   else?

8          MR. LEWIS:  I'm sure there's plenty of work

9   to be done, of course.

10          THE COURT:  Hearing nothing otherwise, I

11   will extend the close of this limited period of

12   discovery.  Is until the end of next week sufficient or

13   do you need more time than that?

14          MR. MATZ:  I believe that would be

15   sufficient, your Honor.

16          THE COURT:  Okay.  Mr. Lewis, that's fine?

17          MR. LEWIS:  Yes, your Honor.  So that's just

18   for the date of the 15th.

19          THE COURT:  The 15th.

20          MR. LEWIS:  Okay, that's fine, your Honor,

21   thank you.

22          THE COURT:  All right.  I wish everyone

23   continued good health.  Have a good night.

24          MR. LEWIS:  Thank you, your Honor, you as

25   well.

1          MR. MATZ:  Thank you, your Honor.

2                    * * * * * * *

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18          I certify that the foregoing is a correct

19   transcript from the electronic sound recording of the

20   proceedings in the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                    January 11, 2021