UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN ELLIOTT,<br><br>Plaintiff,<br><br>- against -<br><br>MOIRA DONEGAN, and JANE DOES (1-30),<br><br>Defendants. | **STATEMENT OF UNCONTESTED FACTS ON MOTION FOR TARGETED SUMMARY JUDGMENT BASED ON IMMUNITY UNDER THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230**<br><br>No. 1:18-cv-05680-LDH-SJB |

Pursuant to Local Civil Rule 56.1 and Section III.A.6 of the Court's Individual Practices, Defendant Moira Donegan respectfully submits the following statement of material facts with references to supporting evidence. Set forth below are all facts for which there is no genuine issue to be tried, in support of Ms. Donegan's contemporaneously filed motion for summary judgment on the issue of CDA immunity.

**I.    The Parties**

1.    Defendant Moira Donegan is a writer and editor based in Brooklyn, New York. Exhibit A, Affidavit of Moira Donegan ¶ 1 [hereinafter Donegan Affidavit].

2.    Plaintiff Stephen Elliott is a writer based in New Orleans, Louisiana. *See* Second Amended Complaint ¶ 8.

**II.    The Origins and Structure of the Google Spreadsheet on October 11, 2017**

3.    Sometime before noon on October 11, 2017, Ms. Donegan used her personal Google account to create a Google Spreadsheet entitled "Shitty Media Men" ("the Spreadsheet"). Donegan Affidavit ¶ 2; Exhibit B, Deposition of Moira Donegan 18:11-18:16, *Elliott v. Donegan*, No. 18 Civ. 5680 (E.D.N.Y. Jan. 14, 2021) [hereinafter Donegan Dep.].

4.      Ms. Donegan wanted the Spreadsheet to be "a place where women could warn each other about sexual harassment and sexual assault without fear of retaliation or punishment or violent retribution for doing so." Donegan Dep. 115:17-115:20. She has also described the Spreadsheet as an "act of real solidarity and community among the women who work in this industry to attempt to keep one another safe." Exhibit C, ELLIOTT00000029. Ms. Donegan believed that women could be trusted to tell the truth about their experiences and to protect each other where so many institutions had failed. *See* ELLIOTT00000029.

5.      Ms. Donegan added the following headings to the Spreadsheet: "Last Name", "First Name", "Affiliation", "Alleged Misconduct", and "Notes". *See* Donegan Dep. 12:2-12:4.

6.      Above those headings, Ms. Donegan filled in three separate cells with the following text:

  i. "DISCLAIMER: This document is only a collection of misconduct allegations and rumors. Take everything with a grain of salt. If you see a man you're friends with, don't freak out." Donegan Dep. 9:5-9:8.
  ii. "Men accused of physical sexual violence by multiple women are highlighted in red." Donegan Dep. 9:11-9:13, 9:16-9:17.
  iii. "**You can edit anonymously by logging out of your gmail.** Please never name an accuser, and please never share this document with a man." Donegan Dep. 10:16-10:19.

7.      Underneath the headings, there were empty cells for other individuals to populate with information about their experiences. Donegan Affidavit ¶ 6.

8.      The Spreadsheet did not limit the text that could be entered, and it did not otherwise require or ask users to enter any text. It also did not offer any menu of proposed or required entries.

2

Donegan Affidavit ¶¶ 5-6; *see also* Exhibit D, DONEG00000053. Anonymous editors were identified with small animal icons at the top of the Spreadsheet. Donegan Affidavit ¶ 5.

9. Ms. Donegan did not communicate with anyone about having the idea for the Spreadsheet, nor did she communicate with anyone about the Spreadsheet's purpose, headings, and structure, or what content would or should be included. Donegan Dep. 19:8-19:16, 19:25-20:10, 61:5-61:10.

10. Early in the day, the Spreadsheet could be edited only by individuals who had received the link to the Spreadsheet from Ms. Donegan. Donegan Affidavit ¶ 4.

11. A few hours later, on October 11, 2017, Ms. Donegan modified the settings on the Spreadsheet to make it editable by anyone who had received a link from any source, even those who received it from someone unknown to her. Donegan Affidavit ¶ 4. These individuals could edit it either anonymously or in a manner that revealed their identity. Donegan Affidavit ¶ 4.

**III.  Sending the Spreadsheet to Third Parties**

12. Before noon on October 11, 2017, Ms. Donegan sent the link to the Spreadsheet, via email, to between approximately three and twelve people. Donegan Dep. 18:8-18:16, 20:25-21:3, 21:7-21:10. She does not recall either the identity of those people or writing anything in the body of the emails she sent them. Donegan Dep. 21:14-17, 25:25-26:2, 27:17-27:20.

13. Ms. Donegan would not characterize this email as asking people to input into the Spreadsheet. Donegan Dep. 45:2-45:4.

14. To the best of her recollection, this email to approximately three and twelve people was the first time Ms. Donegan communicated with anyone about the Spreadsheet. Donegan Dep. 22:10-22:16.

15. Aside from those few acquaintances, Ms. Donegan recalls sending the link to the Spreadsheet only to women who specifically requested access. *See* Donegan Dep. 24:8-24:15. Despite only sending it to a few women at first, others heard about the existence of the Spreadsheet and, throughout the day, asked Ms. Donegan to send them the link to the document via email or Twitter direct message. Donegan Dep. 46:8-46:12, 48:22-48:24. She complied with these requests whenever she received them. *See* Donegan Dep. 74:14-74:16.

16. When granting access to the Spreadsheet, Ms. Donegan did not solicit or encourage any entries, of any kind, nor did she seek to control what people wrote; her responses were generally purely administrative. *See* Exhibit E, DONEG00000054; Exhibit F, DONEG00000228.

17. On one occasion, she explained how to edit the spreadsheet anonymously, gave a brief disclaimer, and noted "Any help you can give is really appreciated!" DONEG00000054, in reference to "the help that is provided by solidarity and empathy [among] women who have experienced sexual violence," Donegan Dep. 73:12-73:15.

18. Occasionally, instead of requesting that Ms. Donegan give them access to allow them to edit the Spreadsheet themselves, some individuals requested that Ms. Donegan add a submission to the Spreadsheet on their behalf. *See* Donegan Affidavit ¶¶ 17-19. This outreach occurred by electronic communication, rather than in person or by phone. Donegan Dep. 49:19-49:25, 83:1-83:8. Consistent with her understanding of the instructions from these individuals, Ms. Donegan added the information to the Spreadsheet. Donegan Affidavit ¶ 18.

19. Ms. Donegan added information to the spreadsheet on another's behalf only when she was specifically asked to do so and took great care to add that information to the spreadsheet "faithfully and accurately." *See* Donegan Affidavit ¶ 19.

20. On one occasion, a person who had asked Ms. Donegan to add a submission to the Spreadsheet changed their mind, and asked Ms. Donegan to remove their entry; Ms. Donegan complied with that request. *See* Donegan Dep. 50:6-50:11.

21. At no point since Ms. Donegan created the Spreadsheet "has anyone who sent [her] information which [she] then added to the Spreadsheet informed [her] that the information [she] added was incorrect, altered from their communications with [her] in any respect, or added against their wishes." Donegan Affidavit ¶ 20.

22. To protect the privacy of persons with whom she communicated about the Spreadsheet, she "attempted to promptly delete all communications regarding the Google Spreadsheet that [she] sent or received." Donegan Affidavit ¶ 21.

**IV.     Ms. Donegan's Interactions with the Spreadsheet**

23. Other than adding and removing information when requested to do so by others, Ms. Donegan does not recall making any edits to the Spreadsheet. Donegan Dep. 99:7-99:11. She does not recall highlighting any entries in red, she did not direct anyone else to do so, and she does not know who highlighted any specific entry. Donegan Dep. 39:16-39:19, 94:23-94:25, 95:24-96:2.

24. Ms. Donegan did not disseminate the Spreadsheet to individuals who do not request access apart from her initial email to approximately three to twelve people. *See* Donegan Dep. 24:8-24:15.

25. Ms. Donegan did not publicize the Spreadsheet to others via her public Twitter handle or any other social media platform. *See* Donegan Dep. 31:6-31:14, 64:12-65:3; *see also* Exhibit G, DONEG00000226.

26. Ms. Donegan otherwise went about her day normally on October 11, 2017: she woke up at home in Crown Heights, went to work at her office in Union Square, had dinner at a friend's house, and returned to her home. Donegan Dep. 46:25-47:8.

27. During the twelve-hour period when the Spreadsheet was editable by others, Ms. Donegan looked at the Spreadsheet only "intermittently." Donegan Affidavit ¶ 6.

28. When, on those intermittent occasions, Ms. Donegan viewed the Spreadsheet, she saw many small animal icons—perhaps dozens—populating the Spreadsheet with information, but Ms. Donegan, just like any other person shared on the Spreadsheet, had no idea who any of the anonymous editors were. Donegan Affidavit ¶ 6. As she has recalled, "I don't even know who saw it, or who had it, added to it." ELLIOTT00000029.

29. Ms. Donegan did not encourage, solicit, pressure, invite, or instruct anyone to enter any information on the Spreadsheet, let alone to post false content. Donegan Affidavit ¶ 14; Donegan Dep. 91:17-91:21 ("I wouldn't say that I encouraged or incited or invited or solicited. I would say that I made the document available for women to put their experiences of sexual violence and sexual harassment into it.").

30. Ms. Donegan has explained: "I made the document available to women to input their own experiences of sexual harassment and sexual violence. It was very important to me at the time that no women felt pressured or as if there was an expectation for them to disclose such sensitive information even in an anonymous context." Donegan Dep. 108:17-108:23.

31. When someone asked Ms. Donegan if she thought it was worth "adding a note in the doc about criteria for inclusion," she did not do so; she instead stated that "it's dicey" and noted that others might "include anything that made them feel uncomfortable or unsafe, and [] only highlight in red men who have been physically violent." DONEG00000053.

## V.     Shutting Down the Spreadsheet

32. On the evening or night of October 11, 2017, after attending a dinner at a friends' home in Brooklyn, Ms. Donegan learned that an article on *Buzzfeed* would soon make the Spreadsheet public. *See* Donegan Dep. 47:5-47:6; Exhibit H, Supplemental Affidavit of Moira Donegan ¶ 4 [hereinafter Supp. Donegan Affidavit].

33. Ms. Donegan feared that the *Buzzfeed* article would create a media firestorm over the Spreadsheet and would overshadow its purpose as a means to protect women; she therefore resolved to take down the document. Supp. Donegan Affidavit ¶ 4; *see also* DONEG00000226.

34. In the night of October 11, 2017 or the early morning of October 12, 2017, approximately twelve hours after she had first shared it with anyone else, Ms. Donegan first restricted who could access the Spreadsheet; then she made it only accessible from her own account; then she deleted the Spreadsheet from her personal Google account. *See* Donegan Affidavit ¶ 3; Supp. Donegan Affidavit ¶ 5-6, 8. To the best of her recollection, the Spreadsheet was deleted from her Google account by 2:00 or 3:00 a.m. on October 12, 2017. Supp. Donegan Affidavit ¶ 8.

35. Ms. Donegan recalls taking these steps over a very short time span while alone in her apartment. The Spreadsheet was deleted from Ms. Donegan's Google account before she went to sleep in the early morning of October 12, 2017. Supp. Donegan Affidavit ¶ 6.

## VI.    Mr. Elliott's Entry

36. When Ms. Donegan deleted the Spreadsheet from account, more than 70 men had entries on the Spreadsheet, including a man named Stephen Elliott. Donegan Affidavit ¶¶ 7-8.

37. Mr. Elliott's entry contained Mr. Elliott's name under the "First Name" and "Last Name" headers. The entry also contained the following text: "Freelance writer/novelist"; "Rape

7

accusations, sexual harassment, coercion, unsolicited invitations to his apartment, a dude who snuck into Binders???"; and "Multiple women allege misconduct." Donegan Affidavit ¶ 8. The row was highlighted in red, indicating that Mr. Elliot had been accused of physical sexual violence by more than one woman. Donegan Affidavit ¶ 8.

38. When Ms. Donegan created the Spreadsheet on October 11, 2017, she did not know who Mr. Elliott was. To her recollection, they had not met or spoken before that date. In fact, Ms. Donegan has no recollection of ever having even heard his name. Donegan Affidavit ¶ 9.

39. Of the small number of communications that remain on Ms. Donegan's Google account from the period while the Spreadsheet was active, which were produced to Plaintiffs' counsel in this action, none mention Mr. Elliott, nor any of the allegedly defamatory allegations in his entry. *See* Donegan Affidavit ¶¶ 22-23.

40. Ms. Donegan did not write Mr. Elliott's entry herself, or otherwise originate or fabricate its contents, including the allegedly defamatory statements. Donegan Affidavit ¶¶ 10-11.

41. Ms. Donegan does not recall adding any information about Mr. Elliott to the Spreadsheet or receiving any request to add any information about Mr. Elliott to the Spreadsheet on someone else's behalf. Donegan Affidavit ¶¶ 24-25.

42. Ms. Donegan did not solicit or encourage anyone to add false statements or false allegations against Mr. Elliott in the Spreadsheet, including the allegedly defamatory statements. Donegan Affidavit ¶¶ 12-13.

43. Ms. Donegan did not solicit or encourage anyone to add false allegations about any person who appeared on the Spreadsheet. Donegan Affidavit ¶ 14. She has no recollection of soliciting or encouraging anyone to add information about Mr. Elliott to the Spreadsheet. Donegan Affidavit ¶ 15.

44. Because Ms. Donegan did not know who Mr. Elliott was, if she had received such a communication, there is no reason that she would have added it to the Spreadsheet against the sender's wishes. Donegan Affidavit ¶ 26.

45. Ms. Donegan does not know the identity of the person or persons who added the allegedly defamatory statements about Mr. Elliott to the Spreadsheet. *See* Donegan Affidavit ¶¶ 10-11, 27; *see also* Donegan Dep. 96:10-96:15 ("Mr. Elliott's row, I don't know who input any of the alleged defamatory statements into Mr. Elliot's row."). And she has no recollection of adding any information about Mr. Elliott herself. Donegan Affidavit ¶ 24.

46. Because she does not recall highlighting any entry in red, she does not recall highlighting Mr. Elliott's entry in red, and she did not direct anyone to do so, nor does she know the identity of the person who did so. *See* Donegan Dep. 96:3-96:6.

47. To this day, Ms. Donegan has no idea who originated and added the allegedly defamatory statements about Mr. Elliott to the Spreadsheet. Donegan Affidavit ¶¶ 27, 29.

Dated:        New York, New York
                  March 22, 2021

**KAPLAN HECKER & FINK LLP**
*Attorneys for Defendant Moira Donegan*

By: */s/ Joshua Matz*
    Roberta A. Kaplan
    Joshua Matz
    Raymond P. Tolentino
    350 Fifth Avenue, Suite 7110
    New York, New York  10118
    (212) 763-0883
    rkaplan@kaplanhecker.com
    jmatz@kaplanhecker.com
    rtolentino@kaplanhecker.com