# EXHIBIT I

**From:** Nicholas E. Lewis <nlewis@nmllplaw.com>
**Sent:** Tuesday, December 29, 2020 3:31 PM
**To:** Joshua Matz <jmatz@kaplanhecker.com>; Martha E. Fitzgerald <mfitzgerald@kaplanhecker.com>
**Subject:** Letter

EXTERNAL SENDER

Dear Joshua

See attached. I have summarized my understanding of the few actual disputes we have on page five.

Nick

**Nicholas E. Lewis**
363 Seventh Avenue, 5th Floor
New York, NY 10001-3904
212.736.4500    •    212.736.2260 fax
nmllplaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents.



| | Ira S. Nesenoff<br>Andrew T. Miltenberg<br>_____<br>Stuart Bernstein | Barbara H. Trapasso<br>Tara J. Davis<br>Diana R. Warshow<br>Gabrielle M. Vinci<br>Kara L. Gorycki<br>Cindy A. Singh<br>Nicholas E. Lewis<br>Adrienne D. Levy<br>Ryaan Nizam<br>Regina M. Federico | Philip A. Byler<br>*Senior Litigation Counsel*<br>Rebecca C. Nunberg<br>*Counsel*<br>Jeffrey S. Berkowitz<br>*Counsel*<br>Marybeth Sydor<br>*Title IX Consultant* |
|---|---|---|---|

ATTORNEYS AT LAW
_____

nmllplaw.com

December 29, 2020

**VIA EMAIL**
Joshua Matz, Esq.
Kaplan Heckler & Fink LLP
jmatz@kaplanhecker.com

     Re:  *Elliott v. Donegan, et al.,* No.: 1:18-cv-05680-LDH-SJB

Dear Joshua,

  I write to supplement our prior correspondence and conversations regarding the proper scope of inquiry into Ms. Donegan's affirmative defense of immunity under §230 of the ("CDA").

  As discussed often, Plaintiff disagrees with Defendant's attempts to artificially narrow the appropriate scope of the forthcoming deposition in order to avoid questioning that would reveal facts that prevent her from meeting her burden for immunity under the CDA. Ms. Donegan maintains the scope of the narrowly tailored discovery contemplated by Judge DeArcy Hall in the Court's June 30, 2020 Memorandum and Order (ECF 65, the "Opinion" or "Op."). Defendant has posited the instant inquiry is limited to only four issues: (1) whether Defendant personally fabricated and entered the statements regarding Plaintiff; (2) whether Defendant published another's statements about Mr. Plaintiff that were "not provided to [her] for use on the Internet"; (3) whether Defendant published another's statements about Plaintiff and in so doing "materially contributed to the allegedly defamatory meaning"; and (4) whether Defendant "specifically encouraged" the unlawful content about Plaintiff. Plaintiff understands, and agrees, these four issues are sections in which Judge DeArcy Hall explained Defendant's conduct, as alleged, would disqualify her from CDA immunity. We submit your treatment of the Court's list as an exhaustive one amounts to an unjust restriction on the subject inquiry.

  Judge DeArcy Hall also clarified; the focus of the inquiry is on whether Defendant "materially contributed to the allegedly defamatory meaning-which is the very fact on which CDA immunity turns." Op. at *20 citing *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016). Plaintiff submits the scope of Defendant's deposition should be into any conduct engaged in by Ms. Donegan that materially contributed to the defamation of Plaintiff. The "key fact not known to the Court at this juncture," is, again, whether Ms. Donegan materially contributed to the defamatory meaning at issue. *Id*.

  The Opinion authorizes discovery on at least two broad, yet interrelated, explorations of Defendant's conduct, in general, with respect to the List: (1) whether Defendant materially contributed to the alleged defamatory meaning (Id.) and (2) whether Defendant "specifically encouraged" the posting of unlawful content on the List (Op. at 19-20). The aforementioned areas submitted by Plaintiff would include relevant evidence of Defendant's conduct in contributing to the List, in general, and warrants broader examination. Defendant takes the position that the only conduct that would be relevant for this examination would be Defendant's conduct pertaining to Plaintiff's entry, only. Plaintiff submits the Opinion, relevant



jurisprudence and the relevant facts already known to the parties support a broader, yet still narrowly tailored, review of Defendant's conduct regarding the List, in general. This conduct, along with the totality of the circumstances in which the conduct was performed, are relevant avenues for exploration to determine if Defendant developed unlawful content during the relevant time period.[1]

**Material Contribution:  Defendant's Development of Unlawful Content, in whole or in part**

An appropriate examination must permit any and all questions that may reveal whether Defendant qualifies as an "information content provider" under 47 U.S.C. § 230(f)(3). Despite Defendant's matter-of-fact breakdown of the issues for narrowly tailored discovery, Plaintiff agrees with the Court's assertion that this inquiry, determining what constitutes the development of information, is a stickier task. Op. at 19. The Court noted, "[O]ne is responsible for the 'development' of information when [she] engages in an act beyond the normal functions of a publisher (such as deciding to publish, withdraw or modify third-party content) that changes the meaning and purpose of content." *Id*. citing *Ascentive, LLC v. Opinion Corp.*, 842 F.Supp.2d 450, 474 (E.D.N.Y. 2011) (citing *Roomates.com*, 521 F.3d at 1163).

In *Ascentive, LLC*, this Honorable Court also referenced the lack of clarity provided by the CDA in determining what makes a party responsible for content development and further noted courts will often look to the totality of the circumstances in making this assessment. *Ascentive, LLC*, 842 F. Supp. 2d at 474 citing, e.g., *Roomates.com*, 521 F.3d at 1169 (quotation omitted); *Doe v. City of New York*, 583 F.Supp.2d 444, 448 (S.D.N.Y. 2008) ("When [the defendant] Tefft attached his own commentary to his listserv, he ceased to be a passive host of third-party information [and] Section 230(c)(1) would not immunize defendants with respect to any information they developed or created entirely by themselves."). A review of the totality of the circumstances would therefore be warranted here. Defendant could not be treated as a passive, neutral host of third-party information if she, for example, attached her own commentary to the List or within communications containing links to the List.

The appropriate examination is, again, whether Defendant "assisted in the development of what made the content unlawful." Op. at 19 citing *LeadClick* 838 F.3d at 174. Plaintiff submits Defendant's conduct in contributing to the List, in general, should be deemed relevant for this inquiry. As we have shared previously, we believe a recent case from the Third Circuit, while not binding here, contains sound reasoning as to the proper scope of discovery for this matter. In *Pace v. Baker-White*, 432 F. Supp. 3d 495 (E.D. Penn. 2020), the defendants created a website called the Plain View Project. The defendants dug up thousands of statements by police officers that appeared to endorse violence, racism, and bigotry, and reposted them on a website to expose the police officers. A police officer sued the website for defamation, alleging that "Defendants' publication of his name and comment implied that he is an officer who endorses violence, racism, and bigotry and who undermines public trust in the police by acting on those biases." *Id.* at 500. In *Pace*, the defendants argued that the CDA granted them immunity because they were only reposting content created by "another information content provider"—namely, the plaintiff police officer

---

[1] The relevant time period for examination of Ms. Donegan's conduct should include the time up until the List was deleted, and accessible by third parties, which is alleged to be approximately a 12-hour period from October 11, 2017 to October 12, 2017. Nonetheless, the parties agree the time period the List was active is clearly relevant. Plaintiff also submits the time between Defendant's conceiving of the List and posting it online would be a relevant time for inquiry, particularly any communications Defendant had in furtherance of the List's creation. The parties did agree, for document production purposes, to start the relevant time period on October 1, 2017, and I believe the time period before the List's posting from the time Ms. Donegan conceived of the List would be relevant. Moreover, although it is Defendant's conduct during the relevant time period that is at issue, subsequent correspondence between Defendant and third parties or her personal writings could describe or shed light on her conduct during that time period. Questions regarding the relevant time period, as well as subsequent correspondence and writings discussing same, some of which were produced, would be appropriate.



himself. The plaintiff responded, in essence, that the defendants helped develop the content by providing "a framing narrative" through the website's homepage, disclaimer, and "About" tab. *Id.* at 507. The court denied defendants' claim of CDA immunity:

> In adding the framing narrative, Defendants did much more than merely "packaging and contextualizing [,]" structuring a website layout, increasing content's prominence, or selecting what to publish. . . .
>
> Here, the PVP website was not a "typical Internet bulletin board[,]" neutrally facilitating the sharing of harmful content. *See Accusearch*, 570 F.3d at 1199. It was "much more than a passive transmitter." *See Roommates*, 521 F.3d at 1166. Defendants created the introductory narrative on the PVP website thereby making a material contribution to the creation of the allegedly defamatory content, and are therefore "responsible ... for the creation or development of information" at the core of this lawsuit. *See* 47 U.S.C. § 230(f)(3). Accordingly, they are not entitled to Section 230 immunity.

*Id.* at 507–08.

As *Pace* makes clear, the immunity question turns on the degree of Defendant's material contribution, responsibility for, and involvement in the publication of the defamatory content. The court's inquiry in *Pace* was obviously not limited to the sole individual entry regarding the plaintiff police officer. Rather, the court correctly analyzed the defendants' involvement in the overall web page and the overall narrative created by the website. In the instant matter, Defendant's conduct and statements with respect to the List as a whole are similarly relevant to her claim of immunity. Any conduct taken by Defendant, in which she provided the "framing narrative" through which Plaintiff's defamation was viewed should be appropriate grounds for inquiry here.

The aforementioned case law provides for a wide range of relevant potential conduct by Defendant that warrants, at a minimum, exploration at a deposition in this narrowly tailored discovery process to ascertain whether she qualifies as an information content provider. Defendant's conduct in developing the List, in whole or in part, should be fair game. Plaintiff submits, he should be permitted to inquire into the following: (1) Defendant's communications about the List, in general, until the time the List was no longer accessible by third parties; (2) Defendant's conduct in creating the List, including the selection of criteria to be used in the List, plans with others regarding the creation of the List and whether Defendant shared responsibilities and/or delegated to these individuals; (3) Defendant's conduct in disseminating the List to others, including the manner in which the List was circulated and promoted, the medium(s) utilized to circulate the List, how Defendant chose the individuals she sent the List to and any comments or solicitations she sent to said individuals whether as instructions, encouragement or otherwise; (4) Defendant's own contributions to the List, including allegations she input and any comments made in regard to same in communications about, or containing access to the List; (5) Defendant's conduct in editing, organizing, categorizing or supplementing other individuals' contributions to the List, in general[2]; (6) Defendant's conduct in accessing and managing the List, including how she assisted others in contributing to the List, maintaining their anonymity, switching from private to public and the length of time the List

---

[2] I know your position that the categorizing of information, including highlighting or annotating Plaintiff's entry is not a permissible line of inquiry for the depositions. Plaintiff understands the Court held the categorizing of information, *without more*, does not amount to development of content. Op. at 25. We submits, however, that this would still be a relevant topic of brief inquiry at deposition. Defendant certainly engaged in "more" conduct which can be considered along with categorization to determine her status an information content provider.

3



was active to the best of her recollection; (7) Defendant's comments about the List, made either within the List, or transmitted in communications with the List; and, of course, (8) the four types of conduct Defendant aims to limit this inquiry to, as described above.

**Specific Encouragement of Unlawful Content**

Defendant would also forfeit her CDA immunity if through her website's design, or its headers, or through her personal communications with other people, or, otherwise, she 'specifically encourage[d]' the posting of the unlawful content. Op. at 21 citing *LeadClick* 838 F.3d at 174. As the Court noted, "The full contours of Defendant's conduct during the approximately 12 hour period during which her Google spreadsheet was online are unknown at this juncture." Id. Defendant submits the inquiry should be limited to Defendant's encouragement of posting to Plaintiff's entry only, but this is, again, an unwarranted narrowing of the permissible inquiry into relevant subject matter. Judge DeArcy Hall does not limit the inquiry to Plaintiff's entry, only, for specific encouragement. Specific encouragement, in general, is particularly relevant here, given the fact Defendant affirms that she does not know who posted the defamatory content to Plaintiff's entry. See Donegan Aff., Para 27. In that case, anyone she sent the List to with encouragement or solicitation to post, could have been the person who defamed Plaintiff. The communication that encouraged their contribution would certainly be relevant to the CDA immunity inquiry. Defendant's lack of recollection, combined with her deletion of the majority of relevant communications, should provide Plaintiff with more leeway for this inquiry, not less.

Plaintiff should be permitted to question Defendant on the following topics regarding her specific encouragement: (1) Defendant's communications with anyone in which she encourages, solicits or otherwise assists an individual to post to the List, in general, including the specific language used to encourage, solicit or assist others; (2) the manner in which Defendant circulated the list, including the instructions or comments which accompanied the List; (3) in addition to the substance of the encouragement and solicitation, the timing and frequency of these solicitations; (4) whether Defendant participated in the specific encouragement with others, including any plans or communications with other individuals who assisted with the creation, circulation and/or promotion of the List.

**Defendant's Deletion of Relevant Information**

Plaintiff submits he should be permitted to question Defendant on her deletion of relevant information relevant to spoliation. Defendant admits she deleted the subject Google spreadsheet from her personal Google account. Donegan Aff., Para. 7. Defendant also admits she deleted communications regarding the List that she sent or received. Donegan Aff., Para 21. While Defendant states she did so to protect the privacy of those who communicated with her, Plaintiff submits this is a credibility issue and the deletion of relevant documents should amount to spoliation under Rule 37(e). At a minimum, Plaintiff submits he should be able to question Defendant on her deletion of the relevant documents to further clarify her conduct, mind state and motivation in deleting said information. The spoliation would certainly be relevant to her CDA immunity defense. Plaintiff would seek spoliation sanctions in accordance with Rule 37 and the Court's inherent power to cure the prejudice caused by Defendant's deletion. The duty to preserve evidence attaches "when the party has notice the evidence is relevant to litigation or when a party should have known that evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). The parties dispute whether Defendant had a duty to preserve evidence when she deleted the evidence. There is evidence to support Plaintiff's position that Defendant knew, or at least had reason to know, there would be future litigation for her role in creating the List. Plaintiff should be able to question Ms. Donegan regarding same.



**The Parties' Disputes as to Appropriate Scope of Inquiry**

Despite the aforementioned positions of the parties, it appears our disputes regarding the scope of the narrowly tailored discovery and questions Ms. Donegan should answer can be summed up by the following list of disputes:

1. Plaintiff's position that Defendant's contributions to the List and communications about the List during the relevant time period, as well as her communications and writings in which she describes said involvement with the List during the relevant time period—whether related to Plaintiff's entry or not—are appropriate topics for questioning.

2. Plaintiff's position that ANY encouragement or solicitation of third parties by Defendant would be relevant for her CDA immunity, particularly given Defendant's affirmation that she does not know who contributed to Plaintiff's entry. Defendant submits appropriate questions would generally be limited to whether Defendant solicited defamatory or otherwise illegal content.

3. Plaintiff's position is Defendant Donegan's specific contributions to the List, in general. Defendant would limit the inquiry to Defendant's contributions to Plaintiff's entry only. Plaintiff submits communications that Defendant sent or received about allegations of sexual harassment, abuse or assault, within the List would be appropriate, but Plaintiff would agree to a process to protect the identity of senders in accordance with currently effective confidentiality orders. Plaintiff would not inquire as to communications about sexual harassment, abuse or assault unrelated to the List, or Ms. Donegan's own experiences, if any.

4. Plaintiff's position that any communication Defendant Donegan had regarding the List, during the relevant time period, would be appropriate. Defendant disagrees due to privacy concerns, and submits the inquiry is not relevant nor proportionate to the needs of the case.

5. Plaintiff submits Donegan's knowledge of the veracity of published statements, and communications regarding their credibility, would be relevant for this inquiry. Defendant disagrees.

6. Plaintiff submits questions regarding Donegan's highlighting or categorizing of allegations in the List are relevant line of inquiry, even though the Court suggested such categorization without more would not affect Defendant's CDA immunity. Defendant's position is those lines of questioning are prohibited as "law of the case."

7. Plaintiff submits questions regarding Donegan's deletion of information is relevant and pertains to spoliation of evidence by Defendant. Defendant denies there was spoliation and thus any questions should not be answered.

                Very truly yours,

                By:   */s/ N.E. Lewis*
                      Nicholas Lewis, Esq.
                      Nesenoff & Miltenberg LLP