UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEPHEN ELLIOTT,

        *Plaintiff*,

- against -

MOIRA DONEGAN, and JANE DOES (1–30),

        *Defendants*.

**Oral Argument Requested**

No. 1:18-cv-05680-LDH-SJB

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MOIRA DONEGAN'S MOTION FOR TARGETED SUMMARY JUDGMENT BASED ON IMMUNITY UNDER THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230

Roberta A. Kaplan
Joshua Matz
Raymond P. Tolentino
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
(212) 763-0883
rkaplan@kaplanhecker.com
jmatz@kaplanhecker.com
rtolentino@kaplanhecker.com
*Attorneys for Defendant Moira Donegan*

Served on May 21, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 1

I. THIS COURT CAN AND SHOULD GRANT SUMMARY JUDGMENT BASED ON THE EVIDENTIARY RECORD .................................................................................. 1

    A. MS. DONEGAN'S DEPOSITION AND SWORN AFFIDAVITS ARE SUFFICIENT EVIDENCE UPON WHICH TO GRANT SUMMARY JUDGMENT ........................................................................................................ 2

    B. MR. ELLIOTT'S CONCLUSORY ATTACKS ON MS. DONEGAN'S CREDIBILITY ARE UNAVAILING ................................................................... 4

II. MS. DONEGAN SATISFIES THE SECOND ELEMENT OF CDA IMMUNITY .......... 6

    A. MS. DONEGAN DID NOT DEVELOP ILLEGAL CONTENT THROUGH A "FRAMING NARRATIVE" ........................................................................... 6

    B. MS. DONEGAN DID NOT SPECIFICALLY ENCOURAGE THE CREATION OF ILLEGAL CONTENT ................................................................................. 8

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Associated Bank-Corp. v. Earthlink, Inc.*,
  No. 5 Civ. 233, 2005 WL 2240952 (W.D. Wis. Sept. 13, 2005) .................................. 3

*Ben Ezra, Weinstein & Co., Inc. v. Am. Online, Inc.*,
  No. 97-485, 1999 WL 727402 (D.N.M. Mar. 1, 1999) ............................................. 3

*Crawford-El v. Britton*,
  523 U.S. 574 (1998) .................................................................................. 4

*Elliott v. Donegan*,
  469 F. Supp. 3d 40 (E.D.N.Y. 2020) ............................................................. 3, 7

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ...................................................................... 7

*Gottlieb v. County of Orange*,
  84 F.3d 511 (2d Cir. 1996) ........................................................................... 1

*Hiam v. HomeAway.com, Inc.*,
  267 F. Supp. 3d 338 (D. Mass. 2017) ............................................................. 3

*Johnson v. Riverhead Cent. Sch. Dist.*,
  420 F. Supp. 3d 14 (E.D.N.Y. 2018) ........................................................... 2, 3

*Joseph v. Amazon.com*,
  46 F. Supp. 3d 1095 (W.D. Wash. 2014) ........................................................ 3

*Marinacci v. United States Postal Service*,
  403 F. Supp. 3d 116 (E.D.N.Y. 2017) ............................................................ 3

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) ........................................................................ 9

*Pace v. Baker-White*,
  432 F. Supp. 3d 495 (E.D. Pa. 2020) ............................................................. 7

*Prickett v. InfoUSA, Inc.*,
  561 F. Supp. 2d 646 (E.D. Tex. 2006) ........................................................... 3

*Roskowski v. Corvallis Police Officers' Ass'n,*
  3 Civ. 474, 2005 WL 1429917 (D. Or. June 15, 2005) ............................................................. 3

*Scott v. Coughlin*,
  344 F.3d 282 (2d Cir. 2003) .................................................................................................... 2

*Island Software Comput. Serv., Inc. v. Microsoft Corp.*,
  413 F.3d 257 (2d Cir. 2005) .................................................................................................... 4

*Shred-It USA Inc. v. Mobile Data Shred*,
  222 F. Supp. 2d 376 (S.D.N.Y. 2002) ..................................................................................... 4

*Simmons v. Danhauer & Assocs., LLC*,
  No. 8 Civ. 3819, 2010 WL 4238856 (D.S.C. Oct. 21, 2010) ................................................... 3

*Theobald v. City of New York*,
  406 F. Supp. 3d 270 (E.D.N.Y. 2019) ..................................................................................... 2

*Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*,
  No. 4 Civ. 47, 2008 WL 450095 (M.D. Fla. Feb. 15, 2008) ................................................... 3

**Other Authorities**

10A Fed. Prac. & Proc. Civ. § 2722 (4th ed.) ................................................................................. 2

10A Fed. Prac. & Proc. Civ. § 2726 (4th ed.) ................................................................................. 4

**PRELIMINARY STATEMENT**

Mr. Elliott's opposition confirms that this is a straightforward case for immunity under the Communications Decency Act. Mr. Elliott concedes that Ms. Donegan meets the first element, Pl. Opp. 1, and his only argument on the third element is that Ms. Donegan cannot meet her burden because "the second element of CDA immunity is not met," *id.* at 19. Summary judgment therefore turns on the second element. And on that front, Mr. Elliott advances only two arguments. First, he argues that summary judgment is improper because Ms. Donegan's unrebutted testimony (in her affidavits and three-hour deposition) raises credibility issues. Second, he argues that Ms. Donegan fails to meet her burden of establishing the second element of CDA immunity—either because she created a "framing narrative" for the Spreadsheet or because she "specifically encouraged" the creation of illegal content by inviting others to contribute to the Spreadsheet. Both of Mr. Elliott's arguments rest on errors of law and fact. The Court should therefore grant summary judgment.

**ARGUMENT**

**I. THIS COURT CAN AND SHOULD GRANT SUMMARY JUDGMENT BASED ON THE EVIDENTIARY RECORD**

After months of narrowly tailored discovery, Ms. Donegan produced hundreds of pages of documents and provided sworn testimony—in the form of two affidavits and a three-hour deposition—establishing all three elements of CDA immunity. *See* Opening Br. 9-21. Mr. Elliott offers hardly any evidence in his attempt to show otherwise. Instead, he repeats allegations in his pleadings, offers conclusory statements, and asserts that Ms. Donegan's testimony is not credible. But that is not sufficient to defeat summary judgment. *See, e.g.*, *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (holding that a nonmovant "cannot defeat the [summary judgment] motion by relying on the allegations in his pleadings, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible" (cleaned up)). Summary judgment

should therefore be granted based on the unrebutted testimony in Ms. Donegan's sworn affidavits and deposition—which is confirmed by and consistent with all other evidence before the Court.[1]

**A. Ms. Donegan's Deposition and Sworn Affidavits Are Sufficient Evidence Upon Which to Grant Summary Judgment**

Courts routinely grant summary judgment based on a movant's testimony. That is not surprising, for "sworn statements are more than mere conclusory allegations subject to disregard; they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion." *Scott v. Coughlin*, 344 F.3d 282, 289 (2d Cir. 2003). "Because a deposition is taken under oath and the deponent's responses are relatively spontaneous, it is one of the best forms of evidence for supporting or opposing a summary judgment motion." Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2722 (4th ed.).

Consistent with these principles, this Court has recently granted summary judgment based on testimony contained in affidavits and depositions, even when that evidence comes from the moving party. *See, e.g.*, *Johnson v. Riverhead Cent. Sch. Dist.*, 420 F. Supp. 3d 14, 26 (E.D.N.Y. 2018) (DeArcy Hall, J.) (granting summary judgment based on movant's affidavit); *Theobald v. City of New York*, 406 F. Supp. 3d 270 (E.D.N.Y. 2019) (DeArcy Hall, J.) (granting summary judgment on affirmative defense based on deposition testimony offered by the movant); *cf. Marinacci v. U.S. Postal Serv.*, 403 F. Supp. 3d 116, 127 (E.D.N.Y. 2017) (DeArcy Hall, J.)

---

[1] Because the evidentiary record does not support his position, Mr. Elliott reprises an argument that he previously raised before Magistrate Judge Bulsara—that Ms. Donegan improperly deleted email communications "after consultation with attorneys." Pl. Opp. 18. Judge Bulsara deemed that spoliation argument premature at this stage and declined to consider it. *See* Transcript of Telephone Conference before the Honorable Sanket J. Bulsara at 38:5-38:15, *Elliott v. Donegan*, 18 Civ. 5680 (S.D.N.Y. Jan. 5, 2021), ECF No. 81. This Court should do the same. Regardless, the argument is baseless. Ms. Donegan was under no obligation to retain the e-mails in question because litigation was not reasonably foreseeable when she deleted them. Mr. Elliott places undue emphasis on a 2017 email in which Ms. Donegan stated that she "got advice from some lawyer friends" regarding potential liability for "libel suits." *See* Pl. Exhibit 8. But stray late-night warnings from "lawyer friends"—who were not in fact her lawyers, who were not positioned to understand the relevant circumstances, and who apparently offered no thoughts on document preservation or any other specific course of conduct—did not trigger a preservation duty for Ms. Donegan (a non-lawyer), especially given that there was no threatened claim or no specific reason for Ms. Donegan to anticipate that she would be sued for her involvement with the Spreadsheet as its publisher. *See* Fed. R. Civ. P. 37(e).

(granting summary judgment based an affidavit offered by the movant). This Court's decision in *Johnson* is illustrative. In that case, the defendants "produced a sworn affidavit" showing that the plaintiff failed to demonstrate the requisite causation for his Title VII retaliation claim. 420 F. Supp. 3d at 26. Because the plaintiff "provided no evidence to the contest this proof," this Court granted summary judgment and dismissed his retaliation claim. *Id.*; *see also id.* at 36 (denying reconsideration on retaliation claim because the plaintiff "failed to produce any evidence" rebutting the defendants' "sworn affidavit" showing a lack of causation). *Johnson* thus teaches that summary judgment is appropriate where unrebutted testimony in a movant's affidavit or deposition establishes the absence of any genuine dispute of material fact.[2]

Here, Ms. Donegan submitted two affidavits describing the "full contours of Defendant's conduct during the approximately 12-hour period during which her Google spreadsheet was online," the sole issue on which this Court ordered "narrowly tailored discovery." *Elliott v. Donegan*, 469 F. Supp. 3d 40, 59, 61 (E.D.N.Y. 2020); *see* Exhibits A & H. Ms. Donegan also sat for a three-hour deposition, during which Mr. Elliott's counsel questioned her on many of the topics he now claims are "disputed questions," *see* Pl. Opp. 18, including: "why she created the Spreadsheet," *see, e.g.*, Exhibit B 114:24-115:3; "her actions during and in relation to the Spreadsheet," *see, e.g., id.* 9:14-9:15; 12:9-12:16; "her solicitation [of] contributions for the Spreadsheet," *see, e.g., id.* 91:14-16; 107:24-108:4; "her communications with others about the

---

[2] Indeed, courts regularly rely on sworn testimony—among other sources of evidence—to grant summary judgment on CDA immunity. *See, e.g.*, *Hiam v. HomeAway.com, Inc.*, 267 F. Supp. 3d 338 (D. Mass. 2017), *aff'd*, 887 F.3d 542 (1st Cir. 2018); *Joseph v. Amazon.com*, 46 F. Supp. 3d 1095 (W.D. Wash. 2014); *Simmons v. Danhauer & Assocs., LLC*, No. 8 Civ. 3819, 2010 WL 4238856 (D.S.C. Oct. 21, 2010), *aff'd*, 477 F. App'x 53 (4th Cir. 2012); *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, No. 4 Civ. 47, 2008 WL 450095 (M.D. Fla. Feb. 15, 2008); *Prickett v. InfoUSA, Inc.*, 561 F. Supp. 2d 646 (E.D. Tex. 2006); *Associated Bank-Corp. v. Earthlink, Inc.*, No. 5 Civ. 233, 2005 WL 2240952 (W.D. Wis. Sept. 13, 2005); *Roskowski v. Corvallis Police Officers' Ass'n*, 3 Civ. 474, 2005 WL 1429917 (D. Or. June 15, 2005), *aff'd*, 250 F. App'x 816 (9th Cir. 2007); *Ben Ezra, Weinstein & Co., Inc. v. Am. Online, Inc.*, No. 97-485, 1999 WL 727402 (D.N.M. Mar. 1, 1999), *aff'd*, 206 F.3d 980 (10th Cir. 2000).

Spreadsheet," *see, e.g., id.* 88:2-88:11; and "the timing of her deletion of the Spreadsheet," *see, e.g., id.* 34:11-34:17. As we explain in our Opening Brief, the undisputed facts drawn from that record confirm that Ms. Donegan neither created nor developed the alleged defamatory statements about Mr. Elliott. She is therefore entitled to summary judgment.

### B. Mr. Elliott's Conclusory Attacks on Ms. Donegan's Credibility Are Unavailing

Unable to demonstrate a genuine dispute of material fact based on the evidentiary record, Mr. Elliott asserts that a jury may not believe Ms. Donegan's testimony. *See* Pl. Opp. 19-22. But it is well-established that a nonmovant cannot survive summary judgment merely "by relying on conclusory statements or on mere assertions that affidavits . . . are not credible" or "that discovery is not finished." *Shred-It USA Inc. v. Mobile Data Shred*, 222 F. Supp. 2d 376, 378, 380 (S.D.N.Y. 2002); *see also, e.g., Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) ("[I]f the [defendant] has made a properly supported [summary judgment] motion, the plaintiff may not respond may not respond simply with general attacks upon the defendant's credibility . . . ."); *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261-62 (2d Cir. 2005) ("Broad, conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact. . . . [Plaintiff] was required to submit specific and affirmative evidence demonstrating that genuine issues of material fact existed. This, it did not do."). Simply put, "[u]nsupported allegations that credibility is in issue will not suffice." Wright & Miller, *supra*, § 2726. Otherwise, the outcome "would be to deny summary judgment whenever the motion depended on facts presented by affidavit—a restriction that would cripple the summary-judgment procedure." *Id*.

In addition to his conclusory attacks on her affidavits and deposition, Mr. Elliott asserts that Ms. Donegan contradicted herself. On this point, however, he is mistaken.

First, Mr. Elliott asserts that it "defies logic" and "strains credulity" for Ms. Donegan not to remember certain details of her conduct over a 24-hour period in October 2017. As her testimony makes clear, Ms. Donegan recalls important aspects of her conduct on the day she created the Spreadsheet. For example, "to the best of [her] recollection," Ms. Donegan believes that she sent "somewhere between three people and twelve people" who "were not strangers" a link to the Spreadsheet. Exhibit B 21:7-21:21. She has further testified, "I don't recall that I wrote anything in the body of that email," *id.* 25:25-26:2. More broadly, Ms. Donegan has testified about her mindset and general approach to communications with third parties: "It was very important to me at the time that no women felt pressured or as if there was an expectation for them to disclose such sensitive information even in an anonymous context." *id.* 108:17-108:23. Nonetheless, Mr. Elliott faults Ms. Donegan for not remembering the exact names of the individuals she emailed or what (if anything) she wrote in those emails. *See* Pl. Opp. 4, 20-21. There is no contradiction here. It is understandable and unremarkable that Ms. Donegan cannot recall every detail of her conduct on October 11, 2017—and it is hardly "specious" for her to remember how she first shared a link to the Spreadsheet, or to remember that she did not solicit or pressure recipients to enter information, without also remembering the "BCC" and "Subject" lines of a few specific emails.

In a related vein, Mr. Elliott suggests there is a "question of fact" and a "credibility issue" as to "whether Ms. Donegan publicized the Spreadsheet on Twitter." Pl. Opp. 21. No, there isn't. Ms. Donegan has testified that she did not post about the Spreadsheet on Twitter. *See* Exhibit B 31:6-14; 64:15-16. Further, there is no record anywhere of any such tweet, and Ms. Donegan's connection to the Spreadsheet was not publicly known until she revealed it *much* later (which obviously would not have been true if she had tweeted the Spreadsheet on October 11, 2017). Given the immediate public controversy surrounding the Spreadsheet, it is inconceivable that Ms.

5

Donegan tweeted about the Spreadsheet the very day she created it without anybody noticing, remarking upon it, or saving it online. Mr. Elliott, however, insists otherwise, seizing upon a single email that Ms. Donegan received from a third party, which reads "Hey Moira, I saw your tweet, and it gave me all the feels (reminding me of some stuff I went through years ago . . .)." Pl. Opp. 5 (quoting Exhibit E). Based on this email, which does not specify when (or what) Ms. Donegan had tweeted, Mr. Elliott argues that Ms. Donegan's testimony must be rejected in its entirety, since (he insists) she lied about a tweet that apparently nobody else has ever seen and whose supposed content remains wholly unknown. No reasonable juror would buy this argument. There is simply no evidence that Ms. Donegan issued a tweet about the Spreadsheet—and Mr. Elliott's scattershot, conclusory attacks on Ms. Donegan's sworn testimony cannot defeat summary judgment.

## II. MS. DONEGAN SATISFIES THE SECOND ELEMENT OF CDA IMMUNITY

Apart from his attack on the record, Mr. Elliott advances two arguments against summary judgment. He first claims that Ms. Donegan constructed a "framing narrative" for the Spreadsheet and therefore materially contributed to any defamatory statements contained in the document. Pl. Opp. 10-14. Second, he argues that Ms. Donegan specifically encouraged others to contribute to the Spreadsheet through e-mail (and possibly Twitter). *Id.* at 14-17. Neither of these arguments establishes a genuine issue of material fact for trial. *See* Opening Br. 10-20.

### A. Ms. Donegan Did Not Develop Illegal Content Through a "Framing Narrative"

Mr. Elliott first contends that Ms. Donegan lacks CDA immunity because she "took the raw material provided by others and shaped it into a narrative about sexual misconduct and impropriety." Pl. Opp. 14. This argument rests on a demonstrable misstatement of the facts. Most obviously, it gets things backward: the Spreadsheet came *first*, the entries came *later*. In that crucial respect, this case is nothing like *Pace v. Baker-White*, where the defendants handpicked posts by police officers on Facebook, copied and pasted them onto their own site, and then contextualized

those cherry-picked posts with content of their own. *See* 432 F. Supp. 3d 495, 500 (E.D. Pa. 2020). Unlike the defendants in *Pace*, Ms. Donegan did not start with "raw material" from third parties and build it into a narrative. *See* Pl. Opp. 15. Nor did she distribute "a blank google spreadsheet," obtain a list of random names, and then add headings to the top of that list designed to impose a narrative of sexual impropriety on the list of names she had received. *See id.* at 12-13. Instead, she created the Spreadsheet, drafted its headings and advisories, and only then shared it with others, who were free to post (or not post) as they saw fit. *See* Opening Br. 2-3. This did not constitute the creation or development of illegal content any more than sharing a comment box with a prompt to write "a paragraph or two describing yourself and what you are looking for in a roommate." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1173-74 (9th Cir. 2008) (en banc). Indeed, this Court has already expressly held that Ms. Donegan's conduct in setting up the architecture of the Spreadsheet did not itself constitute the creation or development of illegal content. *See Elliott v. Donegan*, 469 F. Supp. 3d at 60.

Mr. Elliott fares no better in arguing that Ms. Donegan lost CDA immunity by virtue of her role as "manager" of the Spreadsheet. Pl. Opp. 13. In advancing this argument, Mr. Elliott relies on an email where Ms. Donegan tells a third party why she shut the whole thing down: "People were starting to use the sheet for calling out aggressive dates and creepy DMs, which are real violations but also not what I want to use the document for—it put me in a position of arbitrating whose trauma 'counted' and whose didn't, which just felt so awful." *Id.* (quoting Pl. Exhibit 8). No reasonable juror would read this email as establishing that Ms. Donegan was actively controlling, editing or altering the content of the Spreadsheet. In fact, it establishes the very opposite proposition: she did *not* want to be in that position and therefore shut the Spreadsheet down rather than seek to arbitrate what content would appear. This reading is consistent with both

the text of the email and Ms. Donegan's detailed testimony concerning her limited interactions with the Spreadsheet after she shared it with others. *See* Opening Br. 1-7 (citing sworn testimony confirming that Ms. Donegan did not add, edit, or remove third party content except at their express direction, and did not otherwise control what appeared on the Spreadsheet).

At bottom, there is no evidentiary basis for Mr. Elliott's assertion that "Ms. Donegan was in the position of actively arbitrating the content, and therefore the meaning, of the Spreadsheet." Pl. Opp. 14. The evidence is all to the contrary. No reasonable juror could find otherwise.

### B. Ms. Donegan Did Not Specifically Encourage the Creation of Illegal Content

Mr. Elliott's final argument is that Ms. Donegan specifically encouraged the posting of unlawful content. Nothing in the record supports that contention. *See* Opening Br. 16-18.

Mr. Elliott first cites an email (discussed above) in which the sender says that a tweet by Ms. Donegan "gave [her] all the feels." Pl. Opp. 16 (quoting Exhibit E). For reasons we have already discussed, there is no evidence that Ms. Donegan issued any tweets about the Spreadsheet while it was active on the internet (and there are decisive reasons to conclude that she did not do so). *See supra* pp. 5-6. Accordingly, this email does not create a genuine dispute as to whether Ms. Donegan tweeted about the Spreadsheet—let alone a genuine dispute as to whether she tweeted in a manner that specifically encouraged the posting of *unlawful* content. *See* Opening Br. 17-18.

That leaves only two more emails cited by Mr. Elliott. In one, Ms. Donegan concluded a message by writing, "Any help you can give is greatly appreciated!" Pl. Opp. 16 (quoting Exhibit E). In the other, according to Mr. Elliott, Ms. Donegan emailed someone and said, "I know you have people to add, though." *Id.* at 17 (quoting Exhibit B). As to the first of these emails, Ms. Donegan has testified that she was referring "to the help that is provided by solidarity and empathy, women who have experienced sexual violence." Exhibit B 73:13-15. As to the second email, Mr. Elliott has misunderstood the document: as Ms. Donegan explained in her deposition testimony

8

about the email exchange (which Mr. Elliott does not address in his opposition brief), "somebody sent the document to me unaware that I had created it." *Id.* 104:23-24. In other words, this was not an email *from* Ms. Donegan, it was an email *to* Ms. Donegan, sent by someone who didn't know about her involvement in the Spreadsheet and thought she had "people to add." Accordingly, neither of the emails that Mr. Elliott cites shows that Ms. Donegan solicited contributions to the Spreadsheet—and for that reason alone, they do not demonstrate specific encouragement.

In any event, no reasonable juror could find that any of these emails specifically encourage the posting of *unlawful content*. As we have explained, "specific encouragement" defeats CDA immunity only where a publisher's actions directly implicate them in the publication of illegal content. *See* Opening Br. 16-17. Because it is not illegal for people to report their own experiences of sexual assault or misconduct, "there is nothing unlawful about developing this type of content." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 257 (4th Cir. 2009). Mr. Elliott has not identified (and cannot identify) any evidence showing that Ms. Donegan specifically encouraged any posts on the Spreadsheet. And he most assuredly cannot identify any evidence showing that Ms. Donegan specifically encouraged *illegal* content. *See* Opening Br. 16-18. There is thus no genuine dispute of material fact as to the second element of CDA immunity.

\*     \*     \*     \*     \*

Ms. Donegan's entitlement to summary judgment on her CDA immunity defense is clear. She did not fabricate the entry about Mr. Elliott. She did not add it against a third party's will or in a manner that materially altered its meaning. She did not take "raw material" from third parties and unilaterally impose some sort of "framing narrative" upon it. She did not create or develop illegal content through the architecture of the Spreadsheet. And she did not specifically encourage anyone to post anything on the Spreadsheet—let alone to post illegal content. Although Mr.

9

Elliott's arguments against CDA immunity have shifted throughout this litigation, every single one is disproven by the record, which confirms that there is simply no basis for holding Ms. Donegan responsible for the alleged defamatory statements about Mr. Elliott. The Court should therefore grant Ms. Donegan's motion for summary judgment based on CDA immunity.

## CONCLUSION

For the foregoing reasons, and those set forth in the Opening Brief, the Court should grant Ms. Donegan's motion for targeted summary judgment based on CDA immunity.

Dated: May 21, 2021

New York, New York

Respectfully submitted,

*/s/ Joshua Matz*

Roberta A. Kaplan
Joshua Matz
Raymond P. Tolentino
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
(212) 763-0883
jmatz@kaplanhecker.com

*Attorneys for Defendant Moira Donegan*