UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEPHEN ELLIOTT,

       Plaintiff,

v.

MOIRA DONEGAN AND JANE DOES (1-30),

       Defendants.

**MEMORANDUM AND ORDER**

18-CV-5680 (LDH)(SJB)

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

Stephen Elliott ("Plaintiff") brings the instant action against Moira Donegan ("Defendant") and Jane Does (1-30), alleging defamation of character by libel. Defendant moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment to dismiss Plaintiff's second amended complaint in its entirety.

### STATEMENT OF UNDISPUTED FACTS[1]

Plaintiff is a writer based in New Orleans, Louisiana. (Def.'s Rule 56.1 Statement ("Def.'s 56.1") ¶ 2, ECF No. 92-2.) Defendant is a writer and editor based in Brooklyn, New York. (*Id.* ¶ 1.) Sometime before noon on October 11, 2017, Defendant used her personal Google account to create a Google Spreadsheet entitled "Shitty Media Men" (the "Spreadsheet").

---

[1] Unless otherwise indicated, the undisputed facts are taken from the parties' statements of material facts and annexed exhibits pursuant to Local Rule 56.1. To the extent any fact is disputed, it is so indicated. Properly asserted facts that are not contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("if the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). That being said, both parties included arguments and legal conclusions in their respective 56.1 statements, which is expressly prohibited under this Court's Individual Rules. Specifically, Rule III.A.6(h) provides: "No statement of fact should be included in a 56.1 statement unless it can be established by direct evidence. Factual contentions that parties believe are undisputed by circumstantial evidence should be argued in memoranda." The Court does not consider arguments and legal conclusions contained in the parties' 56.1 statements. *See, e.g., Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("Rule 56.1 statements are not argument. They should contain factual assertions, with citation to the record. They should not contain conclusions[.]"), *aff'd*, 56 F. App'x 27 (2d Cir. 2003).

(*Id.* ¶ 3.) Defendant added the following headings to the Spreadsheet: "Last Name", "First Name", "Affiliation", "Alleged Misconduct", and "Notes". (*Id.* ¶ 5.) Above those headings, Defendant filled in three separate cells with the following text:

> i. "DISCLAIMER: This document is only a collection of misconduct allegations and rumors. Take everything with a grain of salt. If you see a man you're friends with, don't freak out."
>
> ii. "Men accused of physical sexual violence by multiple women are highlighted in red."
>
> iii. "**You can edit anonymously by logging out of your gmail.** Please never name an accuser, and please never share this document with a man."

(*Id.* ¶ 6.) The cells underneath the headings were left empty. (*Id.* ¶ 7.)

Defendant testified that before noon on October 11, 2017, she sent a link to the Spreadsheet, via email, to between approximately three and twelve people. (*Id.* ¶ 12.) She does not recall the identity of the people to whom she sent the email or whether she wrote anything in the body of the email. (*Id.*) This initial email was the first time Defendant communicated with anyone about the Spreadsheet. (*Id.* ¶ 14.) Although Defendant sent the email to only a select group of women, others heard about the existence of the Spreadsheet and, throughout the day, asked Defendant to send them the link to the document via email or Twitter direct message. (*Id.* ¶ 15.) Defendant complied with these requests. (*Id.*) That is, Defendant recalls sending the link to the Spreadsheet only to women who specifically requested access. (*Id.*) For at least some of the time that the Spreadsheet was active, individuals other than Defendant were able to edit the Spreadsheet. (*See id.* ¶¶ 17–18; *see also* Decl. of Joshua Matz ("Matz Decl."), Ex. E, ECF No. 92-8 ("Anyone with a link can edit the spreadsheet . . .").) Defendant testified that she added information to the Spreadsheet on behalf of other individuals when asked to do so. (Def.'s 56.1 ¶

18.) At her deposition, Defendant recalled one instance in which an individual who had asked Defendant to add an entry to the Spreadsheet subsequently asked Defendant to remove the entry, which Defendant did. (*Id*. ¶ 20.) Other than adding and removing information when requested to do so by others, Defendant does not recall making any edits to information that was added to the Spreadsheet by other individuals. (*Id*. ¶ 23.) Defendant further testified that she does not recall highlighting any entries in red, she did not direct anyone else to do so, and she does not know who highlighted any specific entry. (*Id*.)

Sometime on the night of October 11, 2017, Defendant learned that an article on Buzzfeed would soon make the Spreadsheet public. (*Id*. ¶ 32.) Subsequently, on October 11, 2017 or early on October 12, 2017, Defendant deleted the Spreadsheet. (*Id*. ¶ 34.) Defendant also attempted to "promptly delete" all communications regarding the Spreadsheet that she sent or received. (*Id*.) Only a few of the communications remain. (*Id*. ¶ 39.) At the time of its deletion, the Spreadsheet contained entries regarding more than 70 men, including Plaintiff. (*Id*. ¶ 36.) Plaintiff's entry contained his name under the "First Name" and "Last Name" headers along with the following text: "Freelance writer/novelist"; "Rape accusations, sexual harassment, coercion, unsolicited invitations to his apartment, a dude who snuck into Binders???"; and "Multiple women allege misconduct." (*Id.* ¶ 37.) The row containing the entry regarding Plaintiff was highlighted in red. (*Id.*) Defendant maintains that she did not know who Plaintiff was at the time she created the Spreadsheet. (*Id.* ¶ 38.) Of the small number of communications that remain on Defendant's Google account from the period during which the Spreadsheet was active, none mention Plaintiff or the allegedly defamatory content. (*Id*. ¶ 39.)

**STANDARD OF REVIEW**

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movant's initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *See Celotex Corp.*, 477 U.S. at 325. "But where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—[her] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis omitted) (quoting W. Schwarzer, *Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)); *see also Leone v. Owsley*, 810 F.3d 1149, 1153–54 (10th Cir. 2015) (collecting cases). Once the movant meets her initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996). "Summary judgment in favor of the party with the burden of persuasion . . . is

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Desieno v. Crane Mfg. & Serv. Corp.*, 127 F. App'x 551, 553 (2d Cir. 2005) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

## DISCUSSION

Section 230(c)(1) of the Communications Decency Act ("CDA") provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). To invoke the protection of the CDA, a defendant must show that: (1) she is a provider or user of an interactive computer service; (2) the claim is based on information provided by another information content provider; and (3) the claim would treat the defendant as the publisher or speaker of that information. *See Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016). Because the CDA provides limited immunity, the burden of proving the availability of such immunity rests with the defendant. *See Elliott v. Donegan*, 469 F. Supp. 3d 40, 56 (E.D.N.Y. 2020) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("Since qualified immunity is a defense, the burden of pleading it rests with the defendant.")). As such, a defendant must affirmatively prove that she meets each of the three elements for invoking CDA immunity. *See Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) ("When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." (citation omitted)). Failure to adduce evidence to satisfy even one of these elements would preclude summary judgment in a defendant's favor. *See F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1196 (10th Cir. 2009) ("If [defendant] fails to satisfy any one of the three [elements], it is not entitled to immunity.");

*BlackBerry Ltd. v. Facebook, Inc.*, 487 F. Supp. 3d 870, 876 (C.D. Cal. 2019) ("[A] moving party with the burden of persuasion must establish 'beyond controversy every essential element of its [claim or defense]' to satisfy its burden at summary judgment . . . . Therefore, in order to defeat such a motion, the nonmoving party need only raise a genuine issue of dispute on a single element of the claim." (citation omitted)), *aff'd*, 831 F. App'x 502 (Fed. Cir. 2020).

Defendant seeks to invoke CDA immunity. The parties do not dispute that Defendant is a provider or user of an interactive computer service and that she therefore meets the first element. (Def.' Mem. L. Supp. Mot. Summ. J. ("Def.'s Mem.") at 9, ECF No. 92-1; Pl.'s Mem. L. Opp'n Mot. Summ. J. ("Pl.'s Opp'n") at 1, ECF No. 93.) However, a provider of an interactive computer service may claim CDA immunity only with respect to information provided by another information content provider.[2] *Accusearch Inc.*, 570 F.3d at 1197 (citing 47 U.S.C. § 230(c)(1)). Thus, "[i]f an interactive service provider . . . also serves as an 'information content provider [i.e., is the developer] of the content which gives rise to the underlying claim,' CDA immunity does not attach." *Elliott*, 469 F. Supp. 3d at 56 (citing *LeadClick*, 838 F.3d at 174). It is with regard to this issue—the second element—that the crux of the parties' current dispute is revealed.

Plaintiff argues that Defendant has not met the second element because she has failed to show that the claim is based on information provided entirely by another information content provider. Specifically, Plaintiff maintains that (i) because Defendant is responsible for the context of the Spreadsheet, she materially contributed to the defamatory meaning of Plaintiff's entry and (ii) Defendant has failed to show that she did not specifically encourage the creation of

---

[2] An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

6

illegal content. (Pl.'s Opp'n at 10–17.) Further, Plaintiff contends that Defendant cannot meet her burden as to the third element because "the second element of CDA immunity is not met." (*Id.* at 19.) Thus, the Court's analysis turns on whether Defendant acted as an information content provider.

Some additional legal backdrop may be helpful. The Second Circuit has instructed that a defendant will not be held responsible as an information content provider "unless it assisted in the development of what made the content unlawful." *LeadClick*, 838 F.3d at 174. "[O]ne is responsible for the 'development' of information when [she] engages in an act beyond the normal functions of a publisher . . . that changes the meaning and purpose of the content." *Ascentive, LLC v. Op. Corp.*, 842 F.Supp.2d 450, 474 (E.D.N.Y. 2011) (citing *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LCC*, 521 F.3d 1157, 1163 (9th Cir. 2008). Thus, merely engaging in the "normal functions of a publisher" such as "deciding to publish, withdraw or modify third-party content" does not give rise to liability. *Id.* The key question in determining whether a defendant is liable for developing content is whether she "materially contribut[ed] to the content's alleged unlawfulness." *LeadClick*, 838 F.3d at 176 (alterations omitted) (quoting *Roommates.Com*, 521 F.3d at 1168).

In deciding Defendant's motion to dismiss in this case, the Court identified four categories of conduct that would bring Defendant's conduct within the ambit of an information content provider and therefore preclude CDA immunity. Specifically, the Court found that Defendant would be foreclosed from invoking CDA immunity if she: (1) through her own unlawful acts, "fabricated the allegations against [Plaintiff] and inputted them in the [Spreadsheet]"; ; (2) "inputted information into the [Spreadsheet] that was not provided to Defendant for use on the Internet"; (3) "published the allegedly defamatory accusations in the

[Spreadsheet] as relayed to her by another person" and, in so doing, "materially contributed to the allegedly defamatory meaning"; or (4) specifically encouraged the posting of unlawful content. *Elliott*, 469 F. Supp. 3d at 57–59 (citations omitted).

Defendant argues that, among other reasons, CDA immunity must attach because she did not specifically encourage unlawful content about Plaintiff. The Court is mindful that it previously held that the Spreadsheet's design and headers, including the disclaimer, do not, without more, constitute specific encouragement. *See id*. at 59 (holding that Defendant's circulation of the Spreadsheet, even considering the Spreadsheet's disclaimer and design, did not on its own constitute specific encouragement of unlawful content). Nonetheless, the Court's inquiry into the question of whether Defendant specifically encouraged unlawful content was not fully resolved on the motion to dismiss. Indeed, the Court found that the "full contours of Defendant's conduct during the approximately 12 hour period during which [the Spreadsheet] was online [was] unknown." *Id*. at 59. Defendant now maintains that "[f]ollowing discovery into [Defendant's] conduct relating to the [Spreadsheet] . . . there can be no genuine dispute of fact . . . . She did not specifically encourage any unlawful content." (Def.'s Mem. at 16.) Defendant's full-throated assertion cannot act as a substitute for evidence.

As a threshold matter, Defendant's opening memorandum of law in support of her motion fails altogether to cite to any evidence on the question of whether Defendant specifically encouraged unlawful content. (*See* Def.'s Mem. at 16–18.) Instead, in the three pages devoted to this argument, Defendant merely makes naked assertions unbuttressed by a single citation to the record.[3] Be that as it may, Defendant argues that she:

---

[3] This of course is contrary to this Court's explicit direction that all "material facts in any . . . memorandum of law in connection with a motion for summary judgment must cite to relevant paragraphs of 56.1 statements." *See* Individual Practices of Judge LaShann DeArcy Hall, III.A.6.l.

- did not, through the headers or design of the spreadsheet, urge or require users to input defamatory statements—or otherwise unlawful content—to be able view or contribute to the Spreadsheet;

- did not pay anyone for their entry or instruct anyone to post specific content;

- did not exercise control over what third party content was included or deleted, but provided access and entered information for third parties as requested;

- did not publicize the Spreadsheet on social media;

- did not send out additional emails promoting the Spreadsheet; and

- did not solicit or encourage anyone to make any entry.  (*Id.* at 17–18.)

That said, Defendant conceded at her deposition that before noon on October 11, 2017, Defendant did send the link to the Spreadsheet, via email, to between approximately three and twelve people.  (Matz Decl., Ex. B (Deposition of Moira Donegan ("Def.'s Dep.")) at 18:8–16, 20:25–21:3, 21:7–10, ECF No. 92-5.)  Defendant likewise conceded that throughout the day, upon request, Defendant did send a link to the Spreadsheet to other individuals via email or Twitter direct message.  (*Id*. at 46:8–12, 48:22–24.)  Conspicuously absent from the record, however, is any evidence of what was stated by Defendant in the initial email or subsequent transmissions of the Spreadsheet.  Indeed, Defendant has provided the Court with little to no help in this regard.

As evidence that she did not encourage unlawful content, Defendant points the Court to her affidavit where she attests that:

- "I did not solicit or encourage anyone to add false statements or false misconduct allegations about [Plaintiff] to the Google Spreadsheet. . . .  That includes the

alleged defamatory statements." (Def.'s 56.1 ¶ 42; Matz Decl., Ex. A ("Def.'s Aff.") ¶¶ 12–13, ECF No. 92-4.)

- "I did not solicit or encourage anyone to add false statements or false misconduct allegations about any person who appeared on the Google Spreadsheet." (Def.'s 56.1 ¶ 43; Def.'s Aff. ¶ 14.)

- "I have no recollection of soliciting or encouraging anyone to add any information about [Plaintiff] to the Google Spreadsheet. . . . That includes the alleged defamatory statements." (Def.'s 56.1 ¶ 43; Def.'s Aff. ¶¶ 15–16.)

These statements amount to nothing more than legal conclusions, upon which the Court cannot rely.[4] *See Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) ("To the extent that these affidavits contain bald assertions and legal conclusions—for example, that Howe 'was always making racial slurs about minorities,' and that Schwapp 'was working in a hostile or abusive working environment,'—the district court properly refused to rely on them." (internal citations omitted)). Indeed, the proffered affidavit is devoid of any fact as to what Defendant said in emails, Twitter direct messages, or other transmittals of or about the Spreadsheet. In short, Defendant's attestations as to whether she specifically encouraged unlawful content are insufficient to satisfy Rule 56. *See Urb. v. Cap. Fitness*, No. 08-CV-3858, 2010 WL 4878987, at *7 (E.D.N.Y. Nov. 23) ("[S]worn testimony, to satisfy Rule 56(e), 'must be based on concrete particulars, not conclusory allegations.'" (quoting *Schwapp*, 118 F.3d at 111)); *Paul T. Freund Corp. v. Commonwealth Packing Co.*, 288 F. Supp. 2d 357, 369 (W.D.N.Y. 2003) ("[C]onclusory allegations, . . . examination of thoughts, . . . opinions, . . . argument, . . . and

---

[4] Plaintiff disputes these statements in his responses to paragraphs 42 and 43 of the 56.1 statement, denying Defendant's characterization of her conduct and arguing that an issue of fact remains as to whether any of Defendant's communications contained solicitation or encouragement. (Pl.'s Resp. to Def.'s 56.1 ("Pl.'s Opp'n 56.1") ¶¶ 42–43, ECF No. 93-1.)

legal conclusions . . . are all prohibited from affidavits submitted in support of, or in opposition to, a motion under Federal Rule of Civil Procedure 56." (internal citations omitted)).

Seemingly ignoring the deficiency of her affidavit, Defendant cites multiple cases for the proposition that courts, including this Court, routinely grant summary judgment based on testimony contained in affidavits. (Def.'s Reply at 2–3.) This is true. But the affidavits relied upon by this Court set forth specific factual content from which a court may draw its own legal conclusions.

Defendant highlights *Marinacci v. United States Postal Service*, a discrimination case in which this Court relied, in part, on an affidavit to find that the defendant met its burden of providing a legitimate, non-discriminatory reason for terminating the plaintiff's assignment. 403 F. Supp. 3d 116, 127 (E.D.N.Y. 2017). There, the defendant employer attested in detail the reasons for removing the plaintiff from his work assignment, including that employees had complained that the plaintiff was creating a hostile and potentially violent work environment, and that the plaintiff had "allowed a lower-level employee to represent management at certain meetings instead of doing so himself, which was [the plaintiff's] own responsibility[,]" "failed to investigate an alleged assault of an employee by one of his subordinates[,]" "informed [his supervisors] that he was going to conduct surveillance of an employee who was out on extended sick leave[,]" and "did not follow accepted procedures for posting the USPS holiday schedule, which purportedly put the USPS in jeopardy for monetary losses[.]" *Id.* at 127–28.

As *Marinacci* demonstrates, sworn testimony can, under certain circumstances, be properly relied upon for the purposes of a motion for summary judgment. But that is not the case when the affiant recites legal conclusions as opposed to the underlying facts themselves. Had the movant in *Marinacci* submitted an affidavit saying merely that "I did not discriminate" or "I

terminated plaintiff for reasons other than his race," the Court would not have relied upon, or even considered, it. As it were, the affidavit in *Marinacci* offered specific facts from which the Court could draw legal conclusions. Here, Defendant's affidavit does not. Indeed, Defendant's affidavit, as far as it relates to whether she specifically encouraged unlawful content, stands in stark contrast to the affidavit relied upon by the Court in *Marinacci*.

Defendant also directs the Court to *Johnson v. Riverhead Central School District*. (Def.'s Reply at 2–3.) In *Johnson*, the Court granted summary judgment in favor of defendants on the plaintiff's retaliation claim where the plaintiff failed to establish any causal connection between the purported adverse employment action and his protected activity—the filing of an EEOC complaint. 420 F. Supp. 3d 14, 26 (E.D.N.Y. 2018). The Court found that the plaintiff had provided no evidence that the defendants were aware of the plaintiff's complaints before the purported adverse employment action. *See id*. at 25–26. In contrast, the defendants presented, together with other evidence, an affidavit in which the district deputy superintendent attested that, following exhaustive searches of the defendant's files, neither he nor the district clerk identified any documents indicating that the defendants had received a complaint from the plaintiff prior to the date of the adverse employment action. *Id*. at 26. The affidavit was offered in addition to a letter from the U.S. Department of Education ("DOE") indicating that it did not receive a complaint from the plaintiff until after the alleged adverse employment action. *Id*. The plaintiff provided no evidence to contest this. *Id*. In light of the affidavit evidence, together with the DOE letter, and plaintiff's failure to adduce any evidence to support his claim, the Court found that summary judgment was warranted. *Id.*

Here, unlike in *Johnson*, Defendant's affidavit does not offer any factual averments that might support her defense with respect to whether she specifically encouraged unlawful content.

12

Moreover, the reliance on *Johnson* suggests that Defendant misapprehends her burden. That is, Defendant overlooks a crucial distinction between *Johnson* and the instant motion. In *Johnson*, because the plaintiff had the burden at trial, the defendant had only to show that the plaintiff had failed to adduce sufficient evidence to support his claim. The defendant in *Johnson* did more by offering affirmative evidence, including, inter alia, the affidavit demonstrating that the plaintiff could not meet his burden at trial. Here, where Defendant bears the burden at trial on the affirmative defense of CDA immunity, she has a higher burden at summary judgment than the defendant in *Johnson*. That is, Defendant may not rely on the absence of evidence but must adduce affirmative evidence to meet her burden.[5] On the question of specific encouragement, Defendant's affidavit falls far short of the mark.

The deposition testimony upon which Defendant relies fares no better. Rather than providing facts regarding her communications with respect to the Spreadsheet, Defendant's testimony simply highlights that she does not recall what she said or wrote to others regarding the Spreadsheet:

- Defendant, at some point, sent an email to three to twelve people that contained a link to the Spreadsheet, but she does not recall who these people were, the content

---

[5] To the extent Defendant argues that "[n]othing in the record supports a contention" that Defendant "specifically encouraged the posting of unlawful content" (Def.'s Reply at 8) or that there is no evidence or record that Defendant tweeted about the Spreadsheet (Def.'s Reply at 5, 8), such arguments are improperly asserted here, where Defendant bears the burden of proving her affirmative defense. (*See also* Pl.'s Opp'n at 22, n.1.) These arguments are particularly ill-made given that Defendant deleted the majority of the communications she sent or received regarding the Spreadsheet, such that only a small number of the communications were produced to Plaintiff's counsel during discovery. (Def.'s Aff. ¶¶ 21–22; Def.'s 56.1 ¶ 39.) That Defendant points to the absence of communications directly contradicts her representation to Magistrate Judge Bulsara that she intended only to affirmatively rely on the produced documents. (Tr. Jan. 5, 2021 Conf. ("Tr.") at 36:19–37:2, ECF No. 81.) Moreover, at the January 5, 2021 discovery conference, Judge Bulsara granted Defendant's request to preclude discovery into Defendant's deletion of documents but warned Defendant that she could not "both take the benefit of [the deleted communications] and prevent access to discovery about [them]." (Tr. at 37:21–38:4.) In other words, Defendant was not permitted to rely on a lack of evidence, which she herself created, to support her summary judgment motion. Yet Defendant does exactly that.

- of the email, or whether she wrote anything in the body of the email. (Def.'s Dep. at 20:25–21:21, 25:22–26:2, 27:17–20, 28:2–6.)

- Defendant recalls that individuals reached out to her regarding the Spreadsheet via email and Twitter direct message, and states that "there may have been other avenues of communication, but if so, [she doesn't] remember them." (*Id.* at 46:7–12.)

- Defendant recalls that "most of [her] conversations about the [Spreadsheet] . . . during the time that it was active were . . . via email and Twitter direct message. But [that her] memory is quite partial." (*Id.* at 84:21–25.)

- Defendant "[doesn't] recall with a great deal of certainty or completeness" any conversations she had on the day the Spreadsheet was active. (*Id.* at 49:11–12.)

- Defendant does not recall whether she included the disclaimer language, or whether she sent the same language, in every response she sent to individuals who requested access to the Spreadsheet or asked her to add information to the Spreadsheet on their behalf. (*Id.* at 89:17–25, 90:12–14.)

- Defendant does not recall receiving or writing emails about the Spreadsheet that she produced during discovery. (*Id.* at 55:25–56:6.)

- Defendant does not recall "having any conversation about the idea for the [Spreadsheet] or the existence of the document before [she] sent the initial email to three to 12 people." (*Id.* at 61:20–25.)

- Defendant's "memory of the exact content of communications from [the day the Spreadsheet was active] is very partial." (*Id.* at 72:12–13; *see also id.* at 73:15–16 ("But again, my memory is very partial.").)

As Plaintiff correctly asserts, Defendant's inability to recall the contents of her communications leaves open the possibility that Defendant did specifically encourage the posting of unlawful content. (Pl.'s Opp'n at 15–16.) In other words, the deposition testimony does not foreclose the notion that Defendant specifically encouraged unlawful content.

This, of course, is not to say that deposition testimony can never support a defendant's motion for summary judgment on an affirmative defense. Indeed, as Defendant points out, in *Theobald v. City of New York*, this Court relied on deposition testimony to conclude that defendant officers had probable cause to arrest the plaintiff for disorderly conduct. 406 F. Supp. 3d. 270, 275 (E.D.N.Y. 2019). There, a non-party deponent testified, consistent with the defendants' argument, that he told the officers that the plaintiff was refusing the fire department entry to her apartment to address an emergency situation. *Id*. The deposition transcript reflects that the non-party testified in detail regarding the events leading up to the officers' arrival on the scene, and what and how he communicated to those officers when they arrived. *Id*. This testimonial evidence, which set forth specific factual contentions, was sufficient to support a finding that the officer defendants had probable cause and were entitled to summary judgment on a qualified immunity affirmative defense. *Id*. In *Theobald*, the testimony included factual averments that went directly to the matters at issue in the motion. Not so here.

To assess whether Defendant specifically encouraged unlawful content, the Court could have relied on Defendant's sworn testimony setting out what Defendant said or wrote to individuals with whom she shared the Spreadsheet, the sworn testimony of witnesses regarding the communications they received from Defendant with or about the Spreadsheet, or a fulsome documentary record of Defendant's communications regarding the Spreadsheet, such as emails and Twitter direct messages. The Court, not Defendant, could then have determined whether

15

such conduct or statements constituted specific encouragement of unlawful content. Defendant denied the Court that ability to make that determination.

Most of Defendant's remaining arguments are undermined by her legally deficient affidavit and inadequate deposition testimony.[6] However, Defendant did testify unequivocally that she did not know who Plaintiff was when she created the Spreadsheet. (Def.'s Aff. ¶ 9.) As Defendant's argument goes, because she did not know who Plaintiff was and did not herself provide or input the alleged defamatory content about him, there can be no genuine dispute that she did not specifically encourage the posting of the allegedly unlawful content regarding Plaintiff as a matter of law. (Def.'s Mem. at 18.) This argument is worthy of some attention. Unfortunately, Defendant offers no authority for this proposition and the court has found none. To the contrary, the Ninth Circuit's refusal to afford CDA immunity where the targets of the unlawful content—potential roommates—were unknown suggests that Defendant's argument is without merit. *See Roommates.Com*, 521 F.3d at 1172 (defendant required users to select among pre-populated responses to inherently discriminatory questions to match users with unknown potential roommates based on unlawful criteria).

---

[6] For example, Defendant claims that rather than "specifically encouraging" anyone to add information to the spreadsheet, she "provided access to a group of potential users," entered information into the Spreadsheet at the behest of third parties, and answered basic questions about the Spreadsheet, all of which falls within the recognized functions of a publisher. (Def.'s Mem. at 18; *see also* Def.'s Dep. at 91:17–21 (Defendant "made the Spreadsheet available to women to input their own experiences of sexual harassment and sexual violence."), 108:19–23.) That Defendant provided access to potential users or engaged in other conduct that falls within the recognized functions of a publisher, does not mean that she did not also specifically encourage the posting of unlawful content. Moreover, Defendant testified that "she made the [Spreadsheet] available to women to input their own experiences of sexual harassment and sexual violence." (Def.'s Dep. at 108:19–23; Def.'s 56.1 ¶ 30.) But whether the purpose of the Spreadsheet was for "women to input their own experiences" is relevant only if Defendant communicated that purpose to potential contributors. Defendant does not assert that she did. Having rejected Defendant's affidavit and deposition testimony as insufficient to support Defendant's initial burden on a motion for summary judgment, the Court need not address Plaintiff's argument that contradictions between Defendant's sworn statements and the documentary evidence create disputed issues of material fact that further foreclose summary judgment in Defendant's favor. (Pl.'s Opp'n at 17–18, 19–22.)

Because Defendant has not met her burden on the question of whether she specifically encouraged unlawful content, her motion must fail. The Court need not address whether Defendant has met her burden with respect to the other categories of conduct.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
      March 31, 2022

/s/ LDH
L<small>A</small>SHANN D<small>E</small>ARCY HALL
United States District Judge